CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 27, 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:18-CV-00066 |
| v. | ) |
| | ) |
| NEXUS SERVICES, INC., | ) |
| | ) By: Michael F. Urbanski |
| Defendant, | ) Chief United States District Judge |
| | ) |
| v. | ) |
| | ) |
| JUAN VALOY, et al., | ) |
| | ) |
| Intervenors. | ) |

## MEMORANDUM OPINION

This matter is before the court on defendant Nexus Services, Inc.'s ("Nexus") motion for leave to file a counterclaim and amended answer. ECF No. 43. The matter has been fully briefed. The court dispenses with oral argument because the legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process. For the following reasons, Nexus' motion for leave to file counterclaim and amended answer is **GRANTED**.

I.

RLI Insurance Company ("RLI") and Nexus entered into an indemnity agreement on January 20, 2016 ("Indemnity Agreement") as consideration for RLI's agreement to issue immigration bonds. As detailed in the court's opinion on the extensively litigated preliminary

injunction, RLI alleges that Nexus breached the Indemnity Agreement for a variety of reasons, including failure to provide access to Nexus' books, records and accounts. The court granted RLI a preliminary injunction that required Nexus to give access to a selection of its books, records and accounts. ECF No. 60.

During the course of briefing and argument for the preliminary injunction, Nexus moved to amend its answer and add a counterclaim. ECF No. 43. The counterclaim, brought under both Virginia and Illinois law, alleges RLI breached the Indemnity Agreement under the implied duty of good faith and fair dealing through its demand to access Nexus' books, records and accounts and its request that Nexus discharge all bonds issued or, in the alternative, furnish RLI with collateral security sufficient to secure against anticipated loss and exposure under the bonds.

Nexus argues that Federal Rule of Civil Procedure 15 supports amendment because "the court should freely give leave when justice so requires." ECF No. 44, at 2. According to Nexus, none of the factors that support denial of leave to amend—prejudice to the opposing party, bad faith, or futility—apply, and thus leave should be granted. Trial is set for May 20, 2019, discovery has not commenced (but for the disclosures now ordered by the preliminary injunction), and Nexus claims RLI cannot be surprised by the counterclaim's allegations as they arise from the same transaction and occurrence. Additionally, the counterclaim is made in good faith and separate litigation of this claim would be a waste of time and resources.

RLI, for its part, objects to the amendment and alternatively moves to dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 53. RLI argues that Nexus fails to allege RLI breached a duty established by the Indemnity Agreement or that an

injury resulted. In RLI's view, the Indemnity Agreement does not confer rights upon Nexus nor impose obligations upon RLI, and thus there is no implied duty to act with good faith under these circumstances. RLI further argues that Nexus has no grounds for damages, as the Indemnity Agreement does not provide for attorney's fees to Nexus or confer a right to dispute bond claims to Nexus, and there is no proximate cause between Nexus' injuries and RLI's alleged breach.

## II.

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course within 21 days after serving it. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15 allows courts to freely grant leave to amend a pleading "when justice so requires." Id.; see also Johnson v. Oroweat Foods Co., 785 F.2d 503, 511 (4th Cir. 1986). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). The grant or denial of leave lies in the sound discretion of the district court. See Gambelli v. United States, 904 F. Supp. 494, 497 (E.D.Va.1995), aff'd, 87 F.3d 1308 (4th Cir. 1996). Denial of leave to amend constitutes abuse of discretion without sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments. See Foman, 371 U.S. at 182.

"Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, conjecture about the merits of the litigation should

3

not enter into the decision whether to allow amendment." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) (internal citations and quotations omitted). A proposed amendment is futile when it would not survive a motion to dismiss. See United States ex. Rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). A district court "determines futility under the standard of Fed. R. Civ. P. 12(b)." Chattery Int'l, Inc. v. JoLida, Inc., No.: WDQ-10-2236, 2011 WL 4527337, at *3 (D. Md. Sep. 27, 2011). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 700 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 597 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Therefore, a motion to amend pleadings is futile if it does not state a claim to relief that is plausible on its face.

### III.

Courts favorably review motions to amend with few exceptions: futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments. See Foman, 371 U.S. at 182. RLI primarily contests the amendment on futility grounds. RLI's arguments fail to persuade the court to diverge from the generally accepted path of permitting amendment early in litigation.

### A.

RLI first contends that Illinois and Virginia law do not provide for an independent claim based in the implied duty of good faith and fair dealing, and even if they did, Nexus

4

fails to allege facts supporting such a claim.[1] At this stage of the litigation and accepting the facts as pled, the court finds that Nexus sufficiently alleges that RLI demanded discharge of the bonds or collateral not in good faith as part of a breach of contract claim.

1.

Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. See, e.g., Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc., 212 F.3d 373, 381 (7th Cir. 2000); Voyles v. Sandia Mortg. Corp., 196 Ill.2d 288, 256 Ill. Dec. 289, 751 N.E.2d 1126, 1130–31 (2001). However, Illinois courts have recognized an action for breach of the implied duty when it is based in a breach of contract claim. See LaSalle Bus. Credit, Inc. v. Lapides, No. 00 C 8145, 2003 WL 722237, at *15 (N.D. Ill. Mar. 3, 2003) (citing LaSalle Bank Nat'l Assoc v. Paramont Properties, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008)); 4536 N. Sheridan Condo Ass'n v. Maduff, 2016 IL App (1st) 152006-U, ¶ 30 ("The duty of good faith and fair dealing is a limitation on the exercise of one party's broad discretion in performing its obligations under the contract. It requires that party to exercise the discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations under the contract." (internal citation omitted)); cf. Envision Healthcare, Inc. v. Fed. Deposit Ins. Corp., No. 11 CV 6933, 2014 WL 6819991, at *9 (N.D. Ill. Dec. 3, 2014) ("Envision has not pleaded its duty-of-good-faith theory (Count III) as part of its breach-of-

---

[1] RLI argues that Illinois law applies to the proposed claim because the parties do not dispute that the Indemnity Agreement is governed by the laws of Illinois. As discussed in the preliminary injunction opinion, the parties have not fully briefed choice of law issues in this action. Mem. Op., ECF No. 59, at 10 n.2. For purposes of this motion, and at this stage of litigation, the court need not decide the applicable law because the result is the same.

contract claim (Count I), as it was required to do."). As explained in Gore v. Indiana Ins. Co., 376 Ill. App. 3d 282, 286, 876 N.E.2d 156, 161 (2007),

> It is well established that the duty of good faith and fair dealing is implied in every contract. Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations. However, in general, it is not an independent source of duties for contracting parties.

Id. (citing Dayan v. McDonald's Corp., 125 Ill. App. 3d 972, 990–91, 81 Ill. Dec. 156, 466 N.E.2d 958, 971–72 (1984); Cramer v. Insurance Exchange Agency, 174 Ill.2d 513, 525, 221 Ill. Dec. 473, 675 N.E.2d 897, 903 (1996)).

"Problems relating to good faith performance typically arise where one party to the contract is given broad discretion in performance. The dependent party must then rely on the party in control to exercise that discretion fairly." Dayan, 125 Ill. App. 3d at 990, 466 N.E.2d at 971. Specifically, "[w]here a party acts with improper motive, be it a desire to extricate himself from a contractual obligation by refusing to bring about a condition precedent or a desire to deprive an employee of reasonably anticipated benefits through termination, that party is exercising contractual discretion in a manner inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith." Id. at 991, 466 N.E.2d at 972. The motivating concern where a party withholds a condition precedent is

6

that "the controlling party could have avoided incurring any contractual obligation by refusing to bring about the relevant condition." Id.

Although courts recognize an implied duty of good faith and fair dealing, it "does not create an enforceable legal duty to be nice or to behave decently in a general way" and only "require[s] [a party] to exercise the discretion afforded to it by the . . . agreement in a manner consistent with the reasonable expectations of the parties." Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1445 (7th Cir. 1992) (internal citation and quotation marks omitted)). Courts cannot simply "decide whether one party ought to have exercised privileges expressly reserved in the document. Rather 'good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting." Paramont Properties, 588 F. Supp. 2d at 857 (citing Lapides, 2003 WL 722237, at *15 (quoting Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357 (7th Cir. 1990)). Moreover, where a defendant is not alleged to violate a specific obligation, the implied duty as a tool of construction is not relevant because it does not permit enforcement of an obligation not present in the contract. See Cushman & Wakefield, Inc. v. Illinois Nat'l Ins. Co., No. 14 C 8725, 2015 WL 2259647, at *8 (N.D. Ill. May 11, 2015) ("Cushman does not argue that ACE violated a specific obligation imposed by the ACE Policy, and thus it is unclear why the implied duty as a tool of construction is relevant to the court's analysis."); Envision Healthcare, 2014 WL 6819991, at *9 ("Envision has not adequately explained how the good-faith duty even comes into play as a necessary tool of construction in this case." (internal citation omitted)).

In practice, courts have allowed claims to move forward where parties did not receive the benefit of the bargain they reasonably expected. See Grabianski v. Bally Total Fitness Holding Corp., 169 F. Supp. 3d 785, 793–94 (N.D. Ill. 2015) ("[A] jury could conclude that Bally's conduct deprived plaintiffs of the benefit of the bargain they reasonably expected when they paid a premium to obtain renewable, Premier or Premier Plus plans granting them access to all 'local and nationwide' Bally clubs."); Nathan v. Morgan Stanley Renewable Dev. Fund, LLC, No. 11 C 2231, 2012 WL 1886440, at *13 (N.D. Ill. May 22, 2012) ("Here, Nathan has alleged that TPW 'failed to award him any discretionary bonus in 2010 [and that] TPW's failure to evaluate the award of any discretionary bonus in good faith constitutes a breach of the Contract.' This is sufficient to state a claim upon which relief may be granted." (internal citation omitted)). Courts have dismissed claims or denied amendments where the alleged obligations were precontractual representations, see Rumick v. Liberty Mut. Ins. Co., No. 17 C 2403, 2018 WL 3740645, at *5 (N.D. Ill. Aug. 6, 2018), or where express contractual provisions did not provide for discretion. See Resolution Tr. Corp. v. Holtzman, 248 Ill. App. 3d 105, 112–13, 618 N.E.2d 418, 424 (1993) ("Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties."). Relevantly, the court in Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd., No. 04 C 0146, 2008 WL 4287704, at *9 (N.D. Ill. Sept. 11, 2008), held that an implied duty of good faith and fair dealing was necessary where a party has broad discretion in terminating a contract and the contract did not include a list of potential activities that could trigger termination. As the court explained, "[s]uch a broad grant of discretion demands the safeguards of the implied covenant of good faith to ensure that [the

8

defendant] exercises the discretion afforded to it by [the contract] in a manner consistent with the reasonable expectations of the parties." Id. (internal quotation marks omitted).

Here, Nexus sufficiently alleges a breach of implied duty of good faith and fair dealing under Illinois contract law for purposes of a motion to amend. There is no dispute that the Indemnity Agreement created a contractual relationship between RLI and Nexus. The issue is whether RLI fairly exercised its discretion in performing under the Indemnity Agreement, and did so "with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." Gore, 876 N.E.2d at 161–62; see also Dayan, 125 Ill. App. 3d at 990, 466 N.E.2d at 971. Nexus alleges that RLI had discretion in exercising its rights under the Indemnity Agreement pursuant to its obligation to issue immigration bonds. The proposed amended counterclaim alleges:

> After receiving its premiums in full, RLI Insurance Company made demands that were not in good faith or fair dealing, including but not limited to immediate access to all books, records and accounts of Nexus as well as entities not parties to the Agreement; demand discharge of all immigration bonds issued; and additional collateral in an amount of $10 million.

Proposed Countercl., ECF No. 43-1, at ¶ 156. Despite paying $2.6 million in premiums, Nexus alleges that RLI demanded, without a good faith basis, discharge without loss from all bonds issued on the same day, or a $10 million deposit for collateral security; RLI barred Nexus from disputing invoices despite Nexus' success in appealing other invoices and RLI's alleged promise to consider appeals on a case-by-case basis; and RLI requested information unessential to evaluation of its exposure from entities other than Nexus Services, Inc. as pretext for ending its relationship with Nexus and maintaining its millions in premiums. Id. at ¶¶ 41–42, 49–78, 90–95, 97–114.

9

Although Nexus points to a number of actions allegedly taken not in good faith, the court focuses on RLI's demand for a discharge from the immigration bonds without loss or a deposit of $10 million in collateral security, either on the same day of the demand or within a matter of days. While RLI disagrees with the factual accuracy of the "same-day" aspect of the demand, Nexus' facts as alleged show that RLI had some discretion in how it sought discharge or collateral. Id. at ¶¶ 97–102. The Indemnity Agreement gave discretion to RLI about when, how, or why it could assert its rights to demand collateral and seek discharge of bonds. Given that Nexus alleges RLI demanded discharge of all of the immigration bonds, or collateral equaling approximately a third of the risk that RLI assessed for the issued bonds,[2] within a matter of days, Nexus presents a plausible claim that these demands were not made in good faith. As the court reads the counterclaim, Nexus alleges that RLI's decisions about how it exercised these rights under the Indemnity Agreement led to its decision to no longer administer bonds for Nexus and thus led to the alleged breach of contract. These allegations track the concerns of other cases involving the implied duty of good faith and fair dealing, where parties used their discretion to avoid or nullify their obligations. Accepting the facts as pled, Nexus plausibly alleges that RLI sought discharge or millions in collateral within a short period of time to excuse itself from its duties to issue or administer immigration bonds.

RLI points out that the case law largely focuses on the use of discretion in performing obligations, and that the Indemnity Agreement focuses on RLI's rights.

---

[2] At the preliminary injunction hearing held on April 27, 2018, counsel for RLI repeatedly represented that RLI faced a risk in excess of $29 million. See generally Prel. Inj. Hrg. Tr. The court notes that the proposed counterclaim sufficiently states a claim without reference to the preliminary injunction hearing, but the argument of RLI's counsel at the preliminary injunction hearing further supports the plausibility of Nexus' claim.

However, RLI's rights to demand collateral and seek discharge are bound up with its obligation to issue immigration bonds on behalf of Nexus. The parties entered into the Indemnity Agreement as part of RLI's obligation to issue immigration bonds. See Ex. A to Compl. ECF No. 1-2, at 2 ("This Commercial Surety General Indemnity Agreement (hereinafter Agreement), made and entered into this 20th day of January, 2016, is executed by the Indemnitor(s) (Indemnitor is defined hereunder) for the purpose of indemnifying RLI Insurance Company, as Surety (hereinafter Surety) from all losses and costs of any kind incurred by Surety, in connection with any Bond (Bond is defined hereunder) for which it now or hereafter becomes Surety for any of the following as Principal. . . ."). RLI's rights to demand collateral and seek discharge of bonds were part and parcel of its performance of its obligation to issue bonds, and the Indemnity Agreement gave great discretion to RLI about when or why it could assert these rights.

Ultimately, this case involves a souring business relationship, and for purposes of the motion to amend, Nexus has alleged that RLI had discretion in acting pursuant to the Indemnity Agreement and that the discretion was not used in good faith. This court must allow amendment unless the amendment is clearly futile. See Davis, 615 F.2d at 613. The case law surrounding the implied duty of good faith and fair dealing does not set clear bounds for when a party has discretion or unfairly uses that discretion, and Nexus has alleged that RLI used its discretion under the Indemnity Agreement to effectively terminate their business relationship. Therefore, at this stage of the litigation, Nexus has sufficiently alleged a breach of the implied duty of good faith and fair dealing under Illinois law.

11

## 2.

The same result occurs under Virginia law. Virginia case law does not present a clear picture of the availability of an implied covenant of good faith and fair dealing. The Virginia Supreme Court has recognized such a covenant in common law contracts in the employment context. See CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 28–29, 431 S.E.2d 277, 282 (1993). Federal courts similarly have recognized every contract in Virginia contains an implied covenant of good faith and fair dealing. See Waites v. Wells Fargo Bank, N.A., No. 2:2015cv00353, 2016 WL 659084, at *9 (E.D. Va. Feb. 16, 2016); see also Wolf v. Fed. Nat. Mortg. Ass'n, 512 Fed. App'x 336, 345 (4th Cir. 2013) (unpublished) ("In Virginia, every contract contains an implied covenant of good faith and fair dealing." (internal quotation marks omitted))); Jones v. Fulton Bank, N.A., No. 3:13-CV-126, 2013 WL 3788428, at *7 (E.D. Va. July 18, 2013) (emphasis omitted) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action."); SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of North Carolina, 806 F. Supp. 2d 872, 893–95 (E.D. Va. 2011) (examining how state and federal courts in Virginia have acknowledged an implied duty of good faith and fair dealing in contractual relationships, and finding no reason to differentiate between contracts falling under the Uniform Commercial Code and the common law); Land & Marine Remediation, Inc. v. BASF Corp., 2:11CV239, 2012 WL 2415552 (E.D. Va. June 26, 2012) (recognizing the duty in contracts regarding leases). But see Harrison v. U.S. Bank Nat. Ass'n, 3:12–CV–00224, 2012 WL 2366163 (E.D. Va. June 20, 2012) ("Virginia [ ] does not recognize an implied covenant of good faith and

fair dealing in contracts outside of those governed by the Uniform Commercial Code."). Most courts reviewing Virginia law regarding the implied covenant recognize that a breach of that covenant can exist as part of a breach of contract claim but not as an independent action.[3] See Vance v. Wells Fargo Bank, N.A., 291 F. Supp. 3d 769, 774–75 (W.D. Va. 2018).

Although a breach of contract action can be sustained based on an implied covenant of good faith and fair dealing, courts have recognized the action in limited circumstances. In general, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." Ward's Equip., Inc. v. New Holland N. Am., 254 Va. 379, 493 S.E.2d 516, 520 (Va. 1997). Case law has recognized breaches of contract based on the implied covenant under two circumstances.

First, "a party does not breach the [d]uty by acting arbitrarily if the party is exercising a clear contract right. . . . [H]owever, that arbitrary conduct may be a breach of the [d]uty when the party is exercising contractual discretion." Stoney Glen, LLC v. S. Bank & Tr. Co., No. 2:13CV8-HCM-LRL, 2013 WL 4539736, at *1 (E.D. Va. Aug. 27, 2013) (internal citations omitted) (citing Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 251 Va. 28, 35, 466 S.E.2d 382, 386 (1996)); Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn., 156 F.3d 535, 542 (4th Cir. 1998)). Exercise of discretion can lead to a breach if it is exercised in bad faith. See Virginia Vermiculite, 156 F.3d at 542 ("[A] party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party."); Fam v. Bank of Am., N.A., No. 117CV319AJTJFA, 2017 WL 5139262, at *5 (E.D. Va. Oct.

---

[3] Additionally, "the Fourth Circuit and this Court have been clear on the duty existing in all contracts, and absent an intervening Virginia decision which repudiates the Fourth Circuit and this Court's interpretation of Virginia law on the applied duty, the Court will apply that interpretation." Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 469 (E.D. Va. 2013), clarified on denial of reconsideration, No. 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013).

13

6, 2017), aff'd sub nom. Fam v. Bank of Am. (USA), No. 17-2298, 2018 WL 3546873 (4th Cir. July 24, 2018). Second, "the duty may also be breached in relation to an express contractual right if a party employs dishonesty in the exercise of that contractual right." Norman v. Wells Fargo Bank, N.A., No. 3:17-CV-585-HEH, 2018 WL 1037048, at *3 (E.D. Va. Feb. 23, 2018) (citing Stoney Glen, LLC, 944 F.Supp.2d at 466); see also Herold v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 3:17-CV-00395-JAG, 2018 WL 1950641, at *4 (E.D. Va. Apr. 25, 2018) ("A breach of the implied covenant of good faith and fair dealing occurs where a defendant acts dishonestly or exercises his discretion arbitrarily or unfairly in a contractual relationship.").

The case most instructive for this action is Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 467–69 (E.D. Va. 2013), clarified on denial of reconsideration, No. 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013). In Stoney Glen, the contract required plaintiffs to produce financial statements for the defendant's review and permitted the defendant to terminate the contract if the defendant's review led to the determination or discovery that the statements "contained a material misrepresentation or omission. . . ." Id. at *1. The court held that the defendant was required to undertake that review in good faith and that "the review of the financial statements involved some degree of discretion whereby arbitrarily declaring a financial statement false without any real review would be a breach of the Duty." Id.

Under Virginia law, Nexus again sufficiently alleges a breach of implied duty of good faith and fair dealing under a breach of contract action for purposes of a motion to amend. See Stoney Glen, 944 F. Supp. 2d at 464–66 (explaining that a claim for breach of an implied

14

covenant of good faith and fair dealing is alleged if there is (1) a contractual relationship between the parties, and (2) a breach of the implied covenant). As explained above, the parties do not dispute the existence of a contractual relationship and Nexus alleges a breach of that relationship based on RLI not exercising its discretion in good faith. RLI allegedly did not administer its bonds in good faith through unfair requests for discharge of bonds or collateral. For the reasons explained above, and based on the allegations of the proposed counterclaim, Nexus has sufficiently alleged a breach of the implied duty of good faith and fair dealing under Virginia law.

**B.**

RLI next contends that Nexus has no grounds for damages because the Indemnity Agreement does not provide for attorney's fees to Nexus and does not confer a right to dispute bond claims to Nexus. RLI also argues that Nexus has not shown proximate cause between its injuries and RLI's alleged breach. Nexus does not specifically address whether it has sufficiently alleged damages in its reply brief, but argues that it properly states a claim for breach of contract on the whole.

Under both Illinois and Virginia law, damages are a necessary element for alleging breach of contract. See Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) ("The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."); Feldstein v. Guinan, 499 N.E.2d 535, 537 (Ill. App. Ct. 1986) ("An adequate complaint based upon breach of contract must allege the existence of damages as a consequence of the breach."). In its counterclaim,

Nexus seeks damages for attorney's fees incurred responding to breaches of good faith, including this lawsuit; amounts paid on invoices because of RLI's refusal to cooperate or dispute invoices; and additional premiums that may be incurred to discharge RLI's immigration bonds, including the $2.6 million already paid. Proposed Countercl., ECF No. 43-1, at ¶ 157.

In assessing whether Nexus sufficiently alleges damages, the court again focuses on RLI's request for full discharge of the bonds or millions in collateral security. In Count II of its complaint, RLI asks the court to "order[ ] Nexus to immediately discharge RLI from any Bond and all liability incurred by reason of RLI's issuance of any Bonds at Nexus' request orders, and if such discharge is unattainable, to immediately provide RLI with collateral security in the amount that RLI hereafter determines to be sufficient to cover all exposure under the Bonds." Compl., ECF No. 1, at 17. Both prior to litigation and as part of this litigation, RLI has demanded discharge or collateral in a manner that Nexus claims is not in good faith.

Nexus sufficiently alleges damages of $2.6 million in paid premiums resulting from these demands for purposes of the motion to amend. Proposed Countercl., ECF No. 43-1, at ¶¶ 152, 157. To be sure, Nexus describes its damages from these premiums in an inartful manner: "[a]ny additional premiums it is required to pay to discharge any RLI Insurance Company-issued immigrations bonds including but not limited to the $2.6 million paid to RLI Insurance Company." Id. at ¶ 157. Although premiums it may need to pay in the future are speculative, the $2.6 million in premiums already paid are sufficiently alleged as damages. In the proposed counterclaim, Nexus effectively alleges that it did not reasonably expect to

receive demands for full discharge or millions in collateral security after paying this $2.6 million in premiums. Therefore, similar to other cases where implied duty claims are advanced, Nexus asserts that it did not receive the benefit of the bargain that it reasonably expected due to RLI's actions not taken in good faith. Cf. Grabianski, 169 F. Supp. 3d at 793–94. To the degree RLI argues that these premiums were consideration for issuance of the bonds and were not affected by Nexus' allegations, the court cannot consider those facts as they extend beyond the scope of this proposed pleading; those arguments are relevant to a later stage of litigation. Discovery in this dispute ultimately may lead to a finding that there is no proximate cause between the alleged breach and damages. However, as alleged by Nexus, RLI's discretionary decisions were not taken in good faith and led to some monetary loss through paid premiums.

Therefore, Nexus has sufficiently alleged damages through its premium payments to RLI. The court need not decide the availability of the remaining damages at this stage of the litigation.

### C.

The court finds that leave to amend the counterclaim is appropriate. RLI primarily argues that amendment would be futile. While there ultimately may be no merit to Nexus' counterclaim, the allegations in the proposed counterclaim are sufficient to survive this stage of litigation. RLI does not argue that Nexus brings this counterclaim for purposes of undue delay, bad faith, or dilatory motive, and does not argue that RLI would face undue prejudice. See Foman, 371 U.S. at 182. There has been no substantive motion work other than on the preliminary injunction, and discovery has not yet commenced beyond that required by the

injunctive relief. There is no evidence of Nexus intending to delay this action or moves with bad faith or dilatory motive. Therefore, Nexus "ought to be afforded an opportunity to test [its] claim on the merits." Id.

### IV.

For these reasons, the court will **GRANT** Nexus' motion for leave to file counterclaim and amended answer. Nexus shall **FILE** its amended counterclaim and answer within **ten (10) days** of the date of this opinion.

An appropriate Order will be entered.

Entered: 08-25-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge