CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 30 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:18-CV-00066 |
| v. | ) |
| | ) |
| NEXUS SERVICES, INC., | ) |
| | ) By: Michael F. Urbanski |
| Defendant, | ) Chief United States District Judge |
| | ) |
| v. | ) |
| | ) |
| JUAN VALOY, et al., | ) |
| | ) |
| Intervenors. | ) |

## MEMORANDUM OPINION

This matter is before the court on a motion to intervene filed by Juan Valoy, Edgar Alfredo Ramos-Ramos, Marcelino Ramirez-Sanchez, Cesar Augusto Gramajo, and Gerson Castro Segeda. ECF No. 8. The matter has been fully briefed. The court dispenses with oral argument because the legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process. For the following reasons, the motion to intervene is **DENIED**.

I.

RLI Insurance Company ("RLI") and Nexus Services, Inc. ("Nexus") entered into an indemnity agreement on January 20, 2016 ("Indemnity Agreement") as consideration for RLI's agreement to issue immigration bonds. As detailed in the court's opinion on the

extensively litigated preliminary injunction, RLI alleges that Nexus breached the Indemnity Agreement for a variety of reasons, including failure to provide access to Nexus' books, records and accounts. ECF No. 59. The court granted RLI a preliminary injunction that required Nexus to give access to a selection of its books, records and accounts. ECF No. 60.

During the course of briefing and argument for the preliminary injunction, Juan Valoy, Edgar Alfredo Ramos-Ramos, Marcelino Ramirez-Sanchez, Cesar Augusto Gramajo, and Gerson Castro Segeda (the "Intervenors") moved to intervene as defendants in this action. ECF No. 8. The Intervenors claim they have a right to intervene under Federal Rule of Civil Procedure 24(a) because (1) they have a legally protected interest at stake—their sensitive and confidential personal information located in documents held by Nexus and requested by RLI; (2) their interest is impaired once the personal information is disclosed; and (3) neither RLI nor Nexus adequately represents their interests because of the parties' financial interests in compliance with the bond terms. ECF No. 8, at 3–10. The Intervenors also argue that the court could grant permissive intervention under Rule 24(b) because they intend to directly oppose the relief sought by RLI and their defenses share the same questions of law and fact at issue in this action. ECF No. 8, at 10–12. Additionally, the Intervenors note that they have standing because disclosure of their personal information is an injury directly caused by RLI's request, which would be redressed by a favorable decision by this court. ECF No. 8, at 12–13.

RLI objects to the intervention as a Nexus-created strategy to frustrate RLI's enforcement of its contractual rights. ECF No. 71, at 2. RLI argues that the Intervenors have not carried their burden of demonstrating their right to intervention or that

circumstances support permissive intervention. ECF No. 71, at 4–14. RLI claims: (1) the alleged harm of the information's future use is speculative; (2) the Intervenors and Nexus have nearly identical interests in opposing enforcement of the Indemnity Agreement for privacy purposes, as well as defenses and relief sought; (3) orders in this proceeding preclude RLI from disclosing this information to most third parties; (4) the Intervenors have not shown adversity of interest, collusion, or nonfeasance; and (5) the Intervenors have not pled facts connecting them to the Indemnity Agreement or the immigration bonds, including for purposes of standing. Id. Moreover, RLI contends that intervention could open the floodgates to the 2,400 other bond principals, their families, and friends, and could prejudice RLI because the Intervenors may work with Nexus to frustrate RLI's enforcement efforts through dilatory litigation tactics. ECF No. 71, at 14–17.

In response, the Intervenors denied RLI's accusations that their proposed intervention was a litigation tactic benefiting Nexus. ECF No. 75, at 2. Nexus, for its part, agreed with the Intervenors' motion and notes that counsel for the Intervenors possesses knowledge about immigration proceedings and Nexus' clients. ECF No. 78.

## II.

Rule 24(a)(2) governs intervention by right, and provides as follows,

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Thus, in addition to demonstrating timeliness of the motion, an applicant must show: (1) interest in the subject matter of the action; (2) that the protection

3

of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation. See Teague v. Bakker, 931 F.2d 259, 260–61 (4th Cir. 1991). "[A] district court is 'entitled to the full range of reasonable discretion' to determine whether the requirements of intervention as a matter of right have been met." Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc., 314 F.R.D. 180, 183 (E.D. Va. 2016) (quoting Com. of Va. v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976)).

Rule 24(b) provides for permissive intervention of parties. Rule 24(b)(1)(B) states that on timely motion, the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court enjoys substantial discretion over allowing or rejecting motions to intervene under Rule 24(b). See Smith v. Pennington, 352 F.3d 884, 892 (4th Cir. 2003); Hill v. Western Elec. Co., 672 F.2d 381, 385–86 (4th Cir. 1982).

### III.

The Intervenors argue that they are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a), or alternatively, that the court should permit them to intervene under Rule 24(b). The court finds that the Intervenors fail to demonstrate their need to intervene under either Rule 24(a) or (b).

### A.

Under Rule 24(a), the Intervenors cannot establish each element required for intervening as a matter of right. The Intervenors do satisfy the timeliness requirement. The Intervenors moved to intervene within two weeks of RLI filing its complaint and the motion

for preliminary injunction. The case is still in its early stages, with only the initial pleadings filed and discovery recently commencing per the Joint Discovery Plan.[1] See United States v. Virginia, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely."). However, the Intervenors fail to demonstrate that they have an interest in the subject matter of the action, that this action would impair the protection of that alleged interest, or that their interest is not adequately represented by the existing parties to the litigation. See Teague, 931 F.2d at 260–61.

The Intervenors fail to explain how they have an interest in the subject matter of this action, which is the alleged breached of the Indemnity Agreement. To demonstrate intervention by right, the Intervenors need to show "a significantly protectable interest," as "a general interest in the subject matter of pending litigation does not constitute a protectable interest within the meaning of Rule 24(a)(2)." Dairy Maid Dairy, Inc. v. United States, 147 F.R.D. 109, 111 (E.D. Va. 1993) (quoting in part Donaldson v. United States, 400 U.S. 517, 542 (1971)). An interest is protectable if an intervenor's claim or defense "bear[s] a close relationship to the dispute between the existing litigants and therefore must be direct, rather than remote or contingent." Id. Here, the Intervenors make conclusory assertions about their interest in this action. Although the Intervenors undeniably have an interest in their information disclosed in this action, that alone does not establish a right of intervention. Their privacy interest does not bear a close relationship to whether RLI or Nexus breached the Indemnity Agreement during the course of their business relationship. This is bolstered by the fact that the Intervenors do not claim to be third-party beneficiaries

---

[1] The court notes that disclosures have been released per the preliminary injunction, but they have been subject to a protective order.

5

to the Indemnity Agreement and have not argued that they possess a specific legally protectable right in this information. Cf. United States v. Virginia, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Furthermore, the Petitioners have a significant, protectable interest in receiving the appropriate care of their choice and protecting their rights under the ADA. . . . [T]he Complaint contains a very broad request for relief that directly implicates the rights and interests of the Petitioners.").

Moreover, "[t]he Fourth Circuit has held that an interest contingent on the outcome of other pending litigation qualifies as 'significantly protectable.'" Linkous v. Am. Alternative Ins. Corp., No. 7:11-CV-278, 2011 WL 4894233, at *2 (W.D. Va. Oct. 13, 2011) (citing Teague, 931 F.2d at 261); see also Titan Atlas Mfg. Inc. v. Sisk, No. 1:11CV00012, 2014 WL 837247, at *3 (W.D. Va. Mar. 4, 2014) (denying intervention by right where the intervening indemnitor "argues that its disputes with Titan in New York and South Carolina are influenced by Titan's dispute with PMR in this court" and "admits that it is not part of that dispute"). Here, however, the Intervenors' interest is not contingent on the outcome of this litigation, and they have not shown that they have a significantly protectable interest.

The Intervenors also have not demonstrated that this action may practically impair or impede their alleged interest in this information. The court has implemented privacy protections for the disclosures made to date in this action. The court further notes that Nexus' current and former clients, which may include the Intervenors, have waived their privacy rights to at least some of the information held in Nexus' books, records and accounts. For example, the GPS Addendum to the Contract for Immigration Bond

6

Securitization and Indemnity Agreement[2] states: "I understand that information provided to Libre by Nexus is likewise provided to the licensed surety who posts the bond in the respondent's case." ECF No. 13-2, at 22.

Additionally, as noted above, the Intervenors' interests would not be impaired because they have the opportunity to litigate whether their privacy interests are violated in another action. A separate action regarding these privacy interests is far more appropriate than defending against a breach of contract action in which the Intervenors are neither a signatory to the contract nor alleged to be in breach of said contract. Ultimately, the Intervenors offer no more than conclusory allegations as to how their interest would be impaired by this breach of contract action. See Linkous, 2011 WL 4894233, at *2 ("Plaintiff would not change as a result of this case. While it has spilled considerable ink describing its interest, State Farm has not made a single non-conclusory argument as to why that interest would be impaired or impeded without intervention."); cf. In re: Holocaust Victim Assets Litig., 225 F.3d 191, 199 (2d Cir. 2000) (upholding district court's denial of intervention as of right even where proposed intervenors "would face many significant obstacles" without intervention).

Perhaps most importantly, the Intervenors have not shown that Nexus may inadequately represent their interests. The Intervenors "need not show that the representation by existing parties will definitely be inadequate," see JLS, Inc. v. Pub. Serv. Comm'n of W. Virginia, 321 F. App'x 286, 289 (4th Cir. 2009), and the burden of showing inadequacy of representation is minimal. See Trbovich v. United Mine Workers of Am., 404

---

[2] The parties did not reference this form in the briefing, but the court takes notice of it as Nexus filed the form as an exhibit to its memorandum of law in opposition to the motion for preliminary injunction.

U.S. 528, 538 n.10 (1972). However, the Intervenors have not shown that the representation has been inadequate in any way to date, and their concerns about inadequate representation moving forward are speculative. Nexus and the Intervenors seek the same relief of preventing the disclosure of the clients' information in Nexus' books, records and accounts, and advance nearly identical affirmative defenses. Both the Intervenors and Nexus want to prevent the dissemination of the Intervenors' personal information during and after this lawsuit. They share the same objective regarding disclosure of information in this action.

"When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." Com. of Va. v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) (citing Ordnance Container Corp. v. Sperry Rand Corp., 478 F.2d 844 (5th Cir. 1973)). Although Nexus' and the Intervenors' interests are not precisely aligned, as Nexus has financial interests and the Intervenors have privacy interests, the Intervenors have not presented evidence of adversity of interest, collusion, or nonfeasance. Nexus has aggressively defended the privacy rights of its former and current clients in this action. A representative of Nexus in fact testified that its commitment to maintaining their clients' privacy is essential to their business model. See, e.g., Prel. Inj. Hrg. Tr. ECF No. 23, at 110 (Apr. 27, 2018) (responding to the question of how Nexus' business model would be affected by a surety sharing information for the purpose of detention, Nexus' vice president of risk management stated: "It would absolutely destroy our business model because no one—people come to us because we understand and

8

we support them and walk with them. If they thought that if they came to us there would be a short amount of time and they would just be re-detained, no one would use our service.").

Any concern that Nexus may change course is entirely speculative at this juncture. See Westinghouse Elec. Corp., 542 F.2d at 216 (finding proposed intervenor's concern about settlement negotiations being conducted in a manner adverse to its interests as "unfounded" without the introduction of proof supporting the concern); cf. Virginia Uranium, Inc. v. McAuliffe, No. 4:15-CV-00031, 2015 WL 6143105, at *3 (W.D. Va. Oct. 19, 2015) ("The strong presumption arises that Defendants adequately represent the basin associations' interests. Both are ultimately concerned that the Court hold that the AEA does not preempt Va. Code Ann. § 45.1–283."). There also has not been any suggestion of collusion between RLI and Nexus, as evidenced by the extensive litigation to date, or nonfeasance by Nexus.[3] Based on the argument and information provided by the Intervenors, Nexus can adequately represent their interests.

The Intervenors failed to show that they have a significantly protectable interest in the subject matter of the action, that the protection of this interest would be impaired because of the action, or that the their interest is not adequately represented by Nexus. See Teague, 931 F.2d at 260–61. They have not carried their burden for purposes of demonstrating their right to intervene in this action.

---

[3] Additionally, although not addressed by the parties, the Intervenors do not allege that Nexus will prioritize their privacy interests less than other clients' information, nor does the record suggest such a concern. Cf. United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc., 819 F.2d 473, 476 (4th Cir. 1987) (finding trustee did not adequately represent proposed intervenor's interests because "the Bank here has a broader interest in protecting all of the certificate holders than does Philadelphia's narrower interest in protecting its own mortgage certificates").

## B.

Under Rule 24(b), the court may permit intervention "[o]n timely motion" by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to permit intervention, the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. Civ. P. 24(b)(3). Thus, where movants seek permission to intervene under Rule 24(b), they must establish each of the following elements: (1) that their motion is timely; (2) that their claims or defenses have a question of law or fact in common with the main action; and (3) that intervention will not result in undue delay or prejudice to the existing parties. See Wright v. Krispy Kreme Doughnuts, Inc., 231 F.R.D. 475, 479 (M.D.N.C. 2005).

As explained previously, the Intervenors satisfy the timeliness requirement. However, based on the papers presented, the Intervenors do not have a claim or defense that shares a question of law or fact with this action. The Intervenors acknowledge that they do not advance new claims, but "intend to directly oppose [RLI's] requests for relief. . . ." ECF No. 8, at 11. These defenses include challenging the enforceability and interpretation of the Indemnity Agreement, and relying on the equitable defenses of unclean hands, waiver, and estoppel. ECF No. 8, at 11–12. The Intervenors do not claim to be third-party beneficiaries of the Indemnity Agreement and do not present a clear argument as to how a third-party could challenge a private contract. Moreover, all of these defenses are ones advanced by Nexus and are not specific to the Intervenors. It is unclear how the Intervenors substantively could add to the case given the advancement of the same defenses and Nexus' active and

zealous pursuit of safeguarding its books, records and accounts in this action. Cf. Westinghouse Elec. Corp., 542 F.2d at 217 ("The trial court, deluged with additional briefs and pleadings, would be provided with no new viewpoints and little if any illumination to the original Westinghouse contracts disputes.").

The Intervenors may have an equitable privacy interest in the highly personal information subject to the Indemnity Agreement. However, assessing whether current and former clients of Nexus may have some equitable privacy interest in the information held by Nexus is a remarkably different inquiry than whether Nexus or RLI breached the Indemnity Agreement. In fact, denying intervention is unlikely to lead to inconsistent rulings as it is conceivable that this court could find the Indemnity Agreement enforceable while another court considers the Intervenors' interest in Nexus' books, records and accounts without even addressing the validity of the agreement. Cf. U.S. ex rel. Milestone Tarant, LLC/Highland Ornamental Iron Works, Inc. v. Fed. Ins. Co., 815 F. Supp. 2d 36, 39 (D.D.C. 2011) ("The Joint Venture is more likely to be prejudiced if this Court doesn't allow Manhattan to intervene to have the conflicting claims sorted out because sorting them out one at a time could lead to conflicting rulings and would certainly take much more time."). The Intervenors may share an interest in the disclosed information, but they do not share a common question of law or fact with the breach of contract at the heart of this action.

The Intervenors' lack of clear defenses as nonparties to the Indemnity Agreement also risks unduly delaying this action and prejudicing RLI. The Intervenors' proposed defenses overlap with Nexus, but they have no clear stake in the Indemnity Agreement and thus the Intervenors' approach inherently differs from Nexus. Cf. United States v. State, No.

11

1:16CV425, 2016 WL 3626386, at *3 (M.D.N.C. June 29, 2016) ("Because the proposed intervenors' defenses and counterclaims largely overlap with the legal and factual issues that are already present in the main action, the addition of these parties is not likely to significantly complicate the proceedings or unduly expand the scope of any discovery in this case."). Determining whether the Intervenors have standing to pursue these defenses and the necessarily different manner in which they pursue these defenses (as they did not sign the contract) will significantly complicate the proceedings. There likely would need to be discovery to determine whether the Intervenors have standing in this action and to what degree they have an interest in the enforceability of the Indemnity Agreement. Furthermore, the proposed answer does not state the Intervenors' residency status, leaving the court unable to determine whether their addition would destroy jurisdiction.

Ultimately, intervention would prejudice RLI by requiring it to defend this action on multiple fronts and undoubtedly delay and complicate this action through expanded discovery and additional pretrial motions. The court will not allow that to happen. This case already has been remarkably complex with a number of hearings for the preliminary injunction, the appointment of a special master, and now a motion for a second preliminary injunction. If the Intervenors want to challenge their privacy interests in the information covered by the Indemnity Agreement, they may separately pursue a case against RLI or Nexus. This action remains a dispute between the two parties that signed the Indemnity Agreement and will be limited to a breach of contract action.

The court recognizes that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency

and due process." Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotation marks omitted). However, permitting intervention in this action only would tack on ancillary issues arising from Nexus' business practices in relation to the Indemnity Agreement. Intervention is not compatible with efficiency and due process in this action. Accordingly, the court will allow not the Intervenors to permissively intervene in this action under Federal Rule of Civil Procedure 24(b). As the Intervenors' motion to intervene will be denied, their motion for Dallas S. LePierre to appear pro hac vice on their behalf in this action is now moot. ECF No. 10.

### IV.

For these reasons, the court will **DENY** the Intervenors' motion to intervene as defendants (ECF No. 8) and motion for Dallas S. LePierre to appear pro hac vice (ECF No. 10).

An appropriate Order will be entered.

Entered: 10/30/2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge