IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| RLI Insurance Company, | ) | |
|    Plaintiff, | ) | Civil Action No. 5:18-cv-00066 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Nexus Services, Inc. et al, | ) | By:   Joel C. Hoppe |
|    Defendants. | ) |        United States Magistrate Judge |

This matter is before the Court on Plaintiff RLI Insurance Company's ("RLI") Motion for a Protective Order to Preclude the Deposition of Craig W. Kliethermes. ECF No. 434 ("Pl.'s Mot. for Protective Order"). Defendants Nexus Services, Inc., Libre by Nexus, and Homes by Nexus (collectively "Nexus" or "the Defendants") seek to depose Mr. Kliethermes, RLI's President and Chief Operating Officer, about the company's decision to stop issuing immigration bonds for the Defendants. Pl.'s Mot. for Protective Order 2. For the reasons set forth below, RLI's motion will be granted.

I. Procedural History

The parties are familiar with this case's long and contentious history. On November 12, 2019, I granted the parties' motion to amend the scheduling order, which extended their deadline to complete fact discovery through March 20, 2020. ECF No. 311. During a discovery hearing on February 11, 2020, the Defendants' counsel indicated that Mr. Kliethermes may be able to "shed important light" on issues in the case, but that Defendants were "not pushing" RLI on deposing him at that time. Tr. of Feb. 11, 2020 Disc. Hr'g 25, ECF No. 413. On February 13, I issued an order directing that any remaining depositions of RLI's witnesses would take place at Defendants' counsel's office in Northern Virginia. ECF No. 397. The Defendants deposed

several RLI witnesses in late February and early March 2020. *See* Pl.'s Mot. for Protective Order 3–4; Defs.' Am. Br. in Opp'n 2–3, ECF No. 451.

On March 11, 2020, the Defendants purported to notice Mr. Kliethermes for an in-person deposition to begin at 10:00 a.m. on March 18, 2020 in McLean, Virginia. *See* Pl.'s Mot. for Protective Order Ex. J, ECF No. 434-10. RLI filed its motion for protective order on March 17, followed shortly thereafter by written objections to the Defendants' Notice, filed on the evening of March 20, purporting to "suspend" four depositions (including Mr. Kliethermes's) in light of the COVID-19 crisis. *See* ECF No. 442. Plaintiff's motion has been fully briefed, *see* ECF Nos. 447, 451, 469, and can be resolved without oral argument, *see* Fed. R. Civ. P. 78(b); W.D. Va. Gen. R. 4(c)(2).

## II. RLI's Motion for a Protective Order

RLI requests a protective order to prohibit Nexus from taking Mr. Kliethermes's deposition. *See generally* Pl.'s Mot. for Protective Order 1–16. RLI argues that as a high-level executive Mr. Kliethermes is protected by the "apex doctrine," *id.* at 2–3, 8–14, and that the Defendants failed to properly and timely notice his deposition, *see id.* at 2, 8, 14 (citing Fed. R. Civ. P. 30(b)(1)). The Defendants counter that the apex doctrine does not apply because, while Mr. Kliethermes is a high-ranking executive at RLI, he "has unique personal knowledge of facts relevant to this case," Defs.' Am. Br. in Opp'n 1, specifically the reasons why RLI decided to terminate Nexus's immigration bond program, *see id.* at 2–3. According to the Defendants, David Sandoz, "a former Vice President of Surety at RLI[] who was the primary point of contact between RLI and Nexus, testified in his deposition on March 5, 2020, that Kliethermes told him directly to terminate the Nexus program because a principal of the company ha[d] a criminal record." *Id.* at 2 (citing *id.* Ex. 1, at 3–4, ECF No. 451-1). *Contra* Defs.' Am. Br. in Opp'n Ex. 1,

2

at 3–4 (Mr. Sandoz testifying that, although he was "not sure [he] got the full explanation" why RLI decided to terminate the bond program, he recalled having a "pretty brief conversation" over the phone with Mr. Kliethermes, "who indicated that they [were] not interested in the program going forward," and that Mr. Sandoz "believe[d]" Mr. Kliethermes "didn't like the [criminal] background on the owner," Mr. Donovan).[1] Defendants also argue that giving Mr. Kliethermes seven days' notice of his deposition "was adequate, and as a practical matter irrelevant at this juncture," because the COVID-19 pandemic has indefinitely postponed the deposition. Defs.' Am. Br. in Opp'n 3.

A. *The Legal Framework*

A civil litigant generally is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Rule 26(b)(1) does not precisely define relevancy," *In re: Am. Med. Sys., Inc.*, MDL No. 2325, 2016 WL 3077904, at *4 (S.D. W. Va. May 31, 2016), other than to instruct that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1). Consistent with this instruction, federal courts have long understood that "[r]elevancy for discovery purposes is defined more broadly than relevancy

---

[1] The Defendants also argue that the March 6, 2020 deposition of Ira Sussman supports their position that Mr. Kliethermes has unique personal knowledge of RLI's decision to cease issuing immigration bonds. Defs.' Am. Br. in Opp'n 2 (citing *id.* Ex. 2, ECF No. 451-2). Mr. Sussman testified that he learned about Mr. Donovan's criminal history after "Googl[ing]" him, as was his normal practice whenever a claim came in, and that he shared this information with three or four RLI coworkers. *Id.* Ex. 2, at 3. He recalled telling Burt Davis, Greg Chilson, and "probably Dave Sandoz at some time or another." *Id.* Asked whether he discussed Mr. Donovan's criminal history with Mr. Kliethermes, Mr. Sussman responded, "It's possible, but I don't remember." *Id.* at 4. Defendants assert that Mr. Sussman's "testimony about Kliethermes'[s] personal knowledge conflicted [to] some degree with Sandoz'[s] testimony," Defs.' Am. Br. in Opp'n 3, which "begs the question of when and how did Kliethermes learn about the criminal history, and what decisions were made based on this knowledge," *id.* at 2, "Accordingly, [they] noticed Kliethermes on March 11 for a deposition on March 18." *Id.* at 3; *see id.* at 4 ("There is a solid basis to believe that Kliethermes may have relevant information to which Nexus is entitled under the Fedeal Rules of Civil Procedure.").

for evidentiary purposes." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000); *see, e.g.*, *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader."). Amendments to Rule 26(b)(1) gradually have narrowed the scope of permissible discovery from nonprivileged matters relevant to "the subject matter involved in the action" to nonprivileged matters relevant to a "party's claim or defense." *See Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, 209 F. Supp. 3d 810, 816–24 (W.D. Pa. 2016) (discussing the 2000 and 2015 amendments to Rule 26(b)(1)'s relevancy standard). Nevertheless, "it remains true that relevancy in discovery is broader than relevancy for purposes of admissibility at trial," *In re: Am. Med. Sys.*, 2016 WL 3077904, at *4 (internal quotation marks omitted), and that the district court has broad discretion to determine if proposed discovery is relevant under this standard, *Downs v. Va. Health Sys.*, No. 5:13cv83, 2014 WL 12776888, at *2 (W.D. Va. June 2, 2014). "Moreover, notwithstanding Rule 26(b)(1)'s recent amendment placing an emphasis on the proportionality of discovery, the discovery rules, including Rule 26, are still 'to be accorded broad and liberal construction.'" *In re: Am. Med. Sys.*, 2016 WL 3077904, at *4 (quoting *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

"At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Under Rule 26(b), for example, "the court must limit the frequency or extent of discovery . . . if it determines" the proposed discovery, even if relevant, is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C). Rule 26(c) provides that a Court may issue a protective order, for good cause shown, to "protect a person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Ordinarily,

the movant bears the burden of establishing "good cause" by showing that "specific prejudice or harm will result if no protective order is granted." *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). For the following reasons, I find that RLI has shown good cause for a protective order precluding the deposition of Mr. Kliethermes.

*B.     Discussion*

RLI moves for a protective order primarily on grounds that the "apex doctrine" shields Mr. Kliethermes from having to sit for a deposition by the Defendants' attorneys because Mr. Kliethermes is a high-ranking, or "apex," corporate executive at RLI who does not have any "unique, personal knowledge" about RLI's decision to terminate the immigration bond program. Pl.'s Mot. for Protective Order 2 (emphasis omitted); *see Performance Sales & Mktg. LLC v. Lowe's Co., Inc.*, No. 5:07cv140, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012) ("[A] broad rule allowing liberal discovery does not necessarily bestow upon a party the right to have his or her attorney depose a highly ranked corporate executive."). Rooted in Rule 26, the apex doctrine "was developed as an aid" to ensure that the liberal rules for obtaining discovery by deposition "are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs." *Performance Sales & Mktg.*, 2012 WL 4061680, at *3; *see also Wal-Mart Stores, Inc. v. Vidalakis*, No. 5:07mc39, 2007 WL 4591569, at *1 (W.D. Ark. Dec. 28, 2007) ("This doctrine is normally aimed at high level decision makers who have no particular direct knowledge of the facts pertaining to the particular lawsuit."); *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991) (discussing cases where district courts required a party seeking to "depose high-level decisionmakers who are removed from the daily subjects of the litigation . . . [to] first

demonstrate that the would-be deponent has 'unique personal knowledge' of the matter in issue"). The doctrine instructs that a party cannot depose its opponent's high-level (or "apex") executive officer unless the party first "show[s] that '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'"[2] *Performance Sales & Mktg.*, 2012 WL 4061680, at *3 (quoting *Wal-Mart Stores,* 2007 WL 4591569, at *1)). Put differently, it creates a "rebuttable presumption" that requiring an opponent's high-ranking corporate executive to sit for a deposition "either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Id.* at *4 (quoting Fed. R. Civ. P. 26(c)(1)). "Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition." *Id.*

    I find that the Defendants have failed to show that Mr. Kliethermes has unique or special knowledge of the issues in this case. *See Smithfield Bus. Park*, 2014 WL 547078, at *2. The Defendants rely on Mr. Sandoz's uncorroborated recollection that Mr. Kliethermes told him to stop issuing immigration bonds. *See* Defs.' Am. Br. in Opp'n 2. Even assuming that is a fair representation of Mr. Sandoz's deposition testimony, *see* Pl.'s Reply in Supp. of Mot. for

---

[2] Although the Fourth Circuit has yet to consider the apex doctrine, district courts in the Fourth Circuit have applied the doctrine in cases, like this one, where a party seeks to depose its opponent's high-ranking corporate officials. *See, e.g.*, *Cross by & through Steele v. XPO Express, Inc.*, Civ. Nos. 4:15-2480, 4:15-2481, 4:15-2773, 4:16-1253, 4:16-1254, 2017 WL 10544637, at *2 (D.S.C. May 15, 2017) (finding that the party seeking to depose its opponent's apex executive failed to demonstrate he had special or unique knowledge that could not be obtained through other less burdensome means); *Smithfield Bus. Park LLC v. SLR Int'l Corp.*, No. 5:12cv282, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (same); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12cv525, 2014 WL 12544827, at *1, *3 (E.D. Va. Jan. 9, 2014) (finding that the defendant's apex executive had personal knowledge of the issues in the litigation and the defendant had failed to make any lower-level personnel with that information available for deposition).

Protective Order 4–5 (quoting Defs.' Am. Br. in Opp'n Ex. 1, at 3–4), RLI has certified that Mr. Kliethermes does not have unique personal knowledge about the immigration bond program, *see* Pl.'s Mot. for Protective Order Ex. L, at 5 ("Mr. Kliethermes has a general awareness of RLI's immigration bond program and of RLI's decision to terminate the immigration bond program. Upon further investigation, RLI has confirmed that Mr. Kliethermes has no personal knowledge regarding either of these topics beyond what is known by Messrs. Sussman, Davis and Chilson."), ECF No. 434-12. RLI is a large company with various lines of business, and the surety bond program accounts for less than one percent of its gross annual premiums. Pl.'s Mot. for Protective Order 8. The Defendants have failed to point to any piece of discovery, aside from Mr. Sandoz's vague recollection, that Mr. Kliethermes has unique personal knowledge of the issues in this case. In fact, Mr. Sussman's deposition testimony indicates that others at RLI, namely Bart Davis and Greg Chilson, had knowledge of Mr. Donovan's criminal background and RLI's decision to terminate the bond program, *see* Pl.'s Reply in Supp. 6; *id.* Ex. B at 3, therefore making any knowledge that Mr. Kliethermes might possess not "unique." *Cf. Reese v. United States*, No. 1:12cr337, 2017 WL 3016822, at *7 (M.D.N.C. July 14, 2017) ("An attorney could reasonably conclude that the Fourth Circuit [in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc),] chose the adjective 'unique' carefully, with full appreciation of its then-established definition: 'Of which there is only one; one and no other; single, sole, solitary . . . . the only one of a kind; having no like or equal; standing alone in comparison with others . . . .'" (quoting Unique, *Oxford English Dictionary* (2d ed 1989) (cleaned up))). Nexus may not like RLI's assertion but, absent any evidence of bad faith, I will take RLI at its word that Mr. Kliethermes does not have unique personal knowledge of the issues in this case.

I also find that the Defendants have failed to show that they have exhausted other less burdensome means to obtain the information they seek. *See Smithfield Bus. Park*, 2014 WL 547078, at *2. On January 24, 2020, RLI's amended interrogatory answer indicated that Mr. Davis and Mr. Chilson, both vice presidents of surety at RLI, had personal information about RLI's decision to cease issuing immigration bonds. Pl.'s Mot. for Protective Order Ex. L, at 5. RLI has also submitted declarations from Mr. Davis and Mr. Chilson stating the same. ECF Nos. 434-14, 434-15. Nexus deposed both Mr. Davis and Mr. Chilson on February 25, 2020. Pl.'s Mot. for Protective Order 9. Nexus's counsel did not ask Mr. Chilson about this topic, and he only briefly explored the topic with Mr. Davis before counsel said he thought his "record [was] sufficient." Pl.'s Mot. for Protective Order Ex. M, at 4, ECF No. 434-13. Nexus had one month between the time RLI amended its interrogatory answer and Nexus's depositions of Mr. Davis and Mr. Chilson to prepare to question them about RLI's decision to cease issuing immigration bonds. Its failure to do so shows that it did not exhaust its discovery options to obtain the information it now asserts can only be obtained from Mr. Kliethermes.

Furthermore, I find that the Defendants' notice to depose Mr. Kliethermes was improper under Rule 30. "A party who wants to depose a person by oral questions must give reasonable written notice to every other party." Fed. R. Civ. P. 30(b)(1). The Court has discretion to determine what is "reasonable notice" on a case-by-case basis. *See Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) ("Although Kolon maintains that the five-days' notice was reasonable under the circumstances, the district court acted within its discretion in concluding otherwise."); *see also Parks v. Louisiana-Pacific Corp.*, No. 5:18cv12, 2019 WL 166559, at *2 (W.D.N.C. Jan. 10, 2019) (holding that six days' notice was not reasonable); *Ike-Ezunagu v. Deco, Inc.*, No. 09cv526, 2010 WL 4822511, at *2 (D. Md. Nov. 22,

8

2010) (holding that notice given eleven days before the discovery deadline, and after almost thirteen months of discovery, was not reasonable).

Defendants assert that giving Mr. Kliethermes fewer than seven days' notice of his deposition was "adequate, and as a practical matter irrelevant at this juncture," because the COVID-19 pandemic has indefinitely postponed the deposition. Defs.' Am. Br. in Opp'n 3. I disagree. First, the Defendants do not satisfactorily explain why they waited almost until the close of fact discovery to notice Mr. Kliethermes's deposition. They note that "[s]everal depositions were being telescoped in the weeks of March 9 and 16 due to the summary judgment briefing schedule," Defs.' Am. Br. in Opp'n 3, but there is no indication the Defendants believe Mr. Kliethermes would testify to otherwise-unavailable "facts essential to justify [their] opposition," Fed. R. Civ. P. 56(d), to RLI's motion for summary judgment. *See generally* Defs.' Am. Br. in Opp'n 2–4. Second, the Defendants could have issued a deposition notice for Mr. Kliethermes on February 13, 2020, when they issued notices for Mr. Michael, Ms. Klobnak, and Mr. Kennedy. Instead, they told the Court and RLI's counsel that they were "not pushing" RLI to let them depose Mr. Kliethermes. The Defendants' lacked diligence in pursuing a deposition of Mr. Kliethermes, and they failed to give proper timely notice of the deposition.

It appears that RLI has made available those employees with knowledge of the reasons for RLI's decision to cease issuing immigration bonds. Nexus's failure to diligently pursue its discovery on this issue was its own choice. Nexus should not be able to take advantage of the COVID-19 pandemic to rewrite the procedural history and argue that it should be granted more time to depose Mr. Kliethermes.

### III. Conclusion

For the reasons set forth above, RLI's Motion for a Protective Order, ECF No. 434, is hereby **GRANTED**.

It is so **ORDERED**.

The Clerk shall deliver a copy of this Order to the parties.

ENTER: May 8, 2020

Joel C. Hoppe
United States Magistrate Judge