IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | Civil Action No. 5:18-cv-66 |
| Plaintiff, | ) | |
| | ) | |
| | ) | By:   Michael F. Urbanski |
| v. | ) | Chief United States District Judge |
| | ) | |
| NEXUS SERVICES INC, <u>et al.</u>, | ) | |
| Defendants, | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on several pending motions tangential to this contract dispute, including plaintiff RLI Insurance Company's ("RLI") first motion for sanctions, ECF No. 452, alleging delayed payments in violation of court orders, and RLI's second motion for sanctions, ECF No. 498, alleging failure to perform under the books and records provision of the Indemnity Agreement and court orders.

Additionally, before the court are several motions arising from an ECF filing RLI made on September 8, 2020 concerning its pending sanctions motions, which attached unredacted exhibits listing login data for certain Nexus Services, Inc. ("Nexus") databases. This filing was immediately noted by Nexus's counsel and passwords were changed. Although there is no evidence that any confidential Nexus information was compromised, this episode has ignited a firestorm in this lawsuit, resulting in protests on the streets of RLI's hometown, Peoria, Illinois, and the filing of myriad motions. These include Nexus's motion for sanctions, ECF No. 531; RLI's motion to compel Nexus to cease and desist from bad faith and defamatory protest activity, ECF No. 533; Nexus's motion to reopen discovery, ECF No. 553; RLI's

1

expedited motion for protective order, ECF No. 560;[1] and Nexus's motion to order RLI to pay costs and fees associated with responding to the September 8, 2020 ECF filing, ECF No. 565. The court heard argument on the various motions during the September 21 and 22, 2020 evidentiary hearing as well as during an October 16, 2020 hearing. As the issues are fully briefed and the court has already entered judgment on the substantive issues in this case, the remaining matters in this lawsuit are resolved in this opinion.

### 1. RLI's First Motion for Sanctions.

RLI's first motion for sanctions was filed on April 2, 2020. RLI Mot. for Sanctions, ECF No. 452. RLI argues that Nexus failed to comply with the terms of the second preliminary injunction order, last modified January 29, 2020, ECF No. 392, which required Nexus to pay all breached bonds within 120 days of the date of invoice. RLI demands reimbursement for all costs and attorney's fees related to the motion.

Since the court amended the second preliminary injunction order, RLI claims Nexus failed to pay five separate invoices, totaling $67,673.51. RLI concedes that four of the five invoices were paid before it filed its motion,[2] and that the fifth invoice was paid shortly after it filed its motion. RLI Mot. for Sanctions, ECF No. 452 at 5; Nexus Opp. to Mot. for Sanctions, ECF No. 466 at 4; RLI Reply to Opp., ECF No. 471 at 5. RLI also complains that three checks for separate invoices were returned due to insufficient funds. ECF No. 452 at 2.

---

[1] RLI also filed a motion requesting the unredacted portion of its memorandum in support of the expedited motion for protective order and exhibits be filed under seal. ECF No. 559. This motion will be **GRANTED**.
[2] Two invoices were received by RLI one day after the 120-day deadline. The remaining two invoices were paid within one week of the 120-day deadline, though one of the payments was short $100. The fifth invoice, which RLI claims was never paid, was due April 1, 2020. RLI filed its motion 24 hours later. Nexus contends it was not told of the invoice due April 1, 2020 until March 30, 2020 and that it paid the invoice by the time it filed its response to the motion for sanctions on April 16, 2020.

However, RLI does not dispute that these payments were also satisfied by April 3, 2020 through cashier's checks sent to RLI via overnight mail. Nexus Opp. to Mot. for Sanctions, ECF No. 466 at 4; RLI Reply to Opp., ECF No. 471 at 5. Finally, RLI complains that seven payments made did not include the amount of interest accrued. However, three of the seven payments were rectified by a supplemental check accounting for the interest accrued by the time RLI filed its motion. ECF No. 452-2.

RLI claims these late payments, bounced checks, and failure to pay interest are evidence of bad faith and noncompliance by Nexus. It cites Nexus's pattern of noncompliance as support for its claim of willfulness and bad faith. For its part, Nexus claims it took care to comply with the court's order, but inadvertently made errors in payments due to complications shifting its finance department to remote work due to the COVID-19 pandemic. ECF No. 466, at 1–2. Nexus concedes it made some payments late during this period, and claims the payments returned for insufficient funds were due to the finance department transferring funds for those checks into the wrong account. It also claims that the finance department incorrectly calculated interest amounts during the transition period. Further, Nexus claims it did not know about the issues with its attempted payments until RLI filed its motion for sanctions. ECF No. 466 at 4. Once aware, it acted promptly to rectify the issues by overnighting cashier's checks or sending payments for the incorrectly calculated interest amounts.

On September 16, 2020, RLI filed an additional brief renewing its first motion for sanctions against Nexus on two grounds: (1) Nexus made seven additional delayed payments since RLI filed its most recent sanctions brief on April 23, 2020; and (2) Nexus has "failed to

discharge outstanding claims on RLI bonds in the aggregate amount of $240,020.76" under the court's order of specific performance of paragraph 2.a.(ii) of the Indemnity Agreement. ECF No. 520 at 2. The court notes that each of the seven delayed payments were received by RLI within one day of the 120-day deadline.

The court agrees that Nexus's delayed or faulty payments constitute a violation of the court's orders. A district court has wide latitude in entering an order of civil contempt. Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (holding a district court's contempt ruling is reviewed for abuse of discretion). To support a finding of civil contempt, each of the following elements must be established by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge, (2) that the decree was in the movant's favor, (3) that the alleged contemnor violated the terms of the decree and had knowledge or constructive knowledge of such violation, and (4) that the movant suffered harm as a result. Id. F.3d at 301. There is no dispute that the first two elements are satisfied here. Nexus argues that sanctions would be inappropriate because it acted reasonably, it did not know about the noncompliance, and RLI has made no showing of harm.

Nexus claims it did not know about the delays, incorrect interest rates, or returned payments, but its years' long history of making late and insufficient payments plainly establishes its constructive knowledge of noncompliance. The court has addressed Nexus's delayed payments on many occasions. See, e.g., Order Granting Second Prelim. Inj., ECF No. 139; Order Granting in Part Mot. to Enforce Second Prelim. Inj., ECF No. 278; Second Order Granting in Part Mot. to Enforce Second Prelim. Inj., ECF No. 372. Despite this court's

admonitions, Nexus did not sufficiently alter its payment practices to ensure compliance. A party subject to a preliminary injunction has a "duty to keep a safe distance from the line drawn by the district court's injunction." Simone v. VSL Pharm., Inc., No. 15-1356, 2016 WL 3466033, at *16 (D. Md. June 20, 2016), modified sub nom. De Simone v. VSL Pharm., Inc., No. 15-1356, 2018 WL 4567111 (D. Md. Sept. 24, 2018) (quoting Oral-B Labs. v. Mi-Lor Corp., 810 F.2d 20, 24 (2d Cir. 1987)).

Nexus's defense that it acted reasonably is unavailing. Intent is not an element of civil contempt. Simone, 2016 WL 3466033, at *16 (finding it irrelevant that the party intended to merely "get up to the line without crossing it"). "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) (internal citations omitted).

Moreover, Nexus cannot raise the substantial compliance defense. To benefit from this defense, the violating party must show that it took all reasonable steps to ensure compliance. Schwartz v. Rent-A-Wreck of Am., 261 F. Supp. 3d 607, 615–16 (D. Md. 2017) (citing United States v. Darwin Const. Co., 873 F.2d 750, 755 (4th Cir. 1989)). Importantly, inadvertent omissions are excused only if reasonable steps were taken to prevent them. Id. (citing United States v. Darwin Const. Co., 679 F. Supp. 531, 536 (D. Md. 1988), aff'd as modified, 873 F.2d 750 (4th Cir. 1989) ("If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." (internal citations omitted)). "[T]he efforts made by [Nexus]to ensure [compliance]

5

were, to say the least, substandard." Id. at 616. Evidence of curative steps does not bear on whether reasonable measures were taken in the first instance.

However, even if Nexus's marginal delays on payments constitute a violation of the court's orders, RLI has not shown any harm. The moving party "bears the burden of proving both the fact and the amount of its losses," and the amount of damages awarded in a contempt finding must only meet the preponderance of the evidence standard. In re Gen. Motors Corp., 110 F.3d 1003, 1016–18 (4th Cir. 1997). Even so, RLI has provided no specific showing of harm. The court's January 29, 2020 Order provides, "[f]or each succeeding month until the time of trial, to prevent these invoices from being turned over to Treasury for collection, Nexus must pay DHS, or RLI for submission to DHS, any bond breach invoices within 120 days of the date of the DHS invoice, unless such invoices are withdrawn and/or cancelled by DHS." ECF No. 372 at 3. The single purpose of the preliminary injunction was to protect RLI's status as a surety. RLI has made no representation that any breached bonds have been referred to Treasury or that its reputation as a surety has been injured in any way. The preliminary injunction has cured the irreparable harm in that RLI is reimbursed for all breached bonds eventually, and there has been no evidence that the short payment delays have caused further injury. Therefore, RLI fails to meet the burden to establish civil contempt.

### 2.  RLI's Second Motion for Sanctions.

RLI's second motion for sanctions, filed August 25, 2020, alleges that Nexus violated this court's summary judgment order in continuing to deny access to its books, records, and accounts. ECF No. 498. RLI claims that it sent a demand letter on August 6, 2020, ECF No. 495-1, requesting access to its financial records and remote access to "fourteen enumerated

categories of electronically maintained documents" pursuant to the court's July 3, 2020 Order, ECF No. 488, by no later than August 20, 2020.[3] ECF No. 498 at 6. RLI states access to these documents was integral to its assessment of Nexus's financial condition, which was necessary for the evidentiary hearing. Id. at 2. Nexus responded to the letter with a motion requesting a hearing and indicating it could not comply with the books and records demand and prepare itself for the evidentiary hearing and it sought guidance in the "breadth and scope" of "permissible discovery" in advance of the evidentiary hearing. ECF No. 495. RLI claims access to these systems would be easy to provide remotely by handing over temporary login credentials. ECF No. 498 at 3. It argues that Nexus willfully evaded its obligations and that, without sanctions, Nexus will continue to thwart compliance. Id.

Magistrate Judge Joel C. Hoppe conducted a hearing on August 26, 2020 to address the motion for sanctions and Nexus's request for guidance on preparation for the evidentiary hearing. ECF Nos. 502, 504. During the hearing, Judge Hoppe confirmed that Nexus's obligation began with the court's July 3, 2020 summary judgment Order. He found the July 3, 2020 Order reiterated the scope of the first preliminary injunction and unambiguously provided for unfettered access by RLI to Nexus's records to prepare its risk assessment. Regarding access, Judge Hoppe interpreted the order to require Nexus to "open up access so [RLI] can look through the documents themselves. It's unfettered access. It's not waiting for Nexus to provide documents that it selects." ECF No. 504 at 21.

---

[3] These reports include access to KPI reports (monthly revenue reports used by Nexus to monitor income and conduct revenue comparisons to prior months), Lightspeed (records comprising Nexus' daily revenue receipts) and the Capsule database (database containing an array of information, including tracking information, of all bonded principals).

Judge Hoppe also confirmed this included financial information to determine Nexus's risk position and information regarding RLI bonded immigrants to determine the extent of Nexus's monitoring of principals. Nexus argued that RLI should not have access to the entire Capsule database because it includes information about non-RLI bonded principals. RLI argued that records indicated Nexus owes $750,000 for breached RLI bonds, but $2 million for breached FCS bonds, which it claims bears on Nexus's overall "financial wherewithal" and justifies access to data about non-RLI principals. Id. at 26–27. Nexus claimed that while discovery might have included this under the first preliminary injunction, specific performance only requires Nexus to provide to RLI what it would obtain under the Indemnity Agreement, which is limited to RLI bonded principals. It claimed that to read the provision more broadly would be tantamount to saying RLI has unlimited access at any time to the sensitive, personal information of program participants beyond its own, which would violate personal privacy. Id. at 29–30, 34.

Judge Hoppe agreed that the privacy of bonded principals, especially non-RLI participants, must be maintained but suggested that the fact of breached bonds, including non-RLI bonds, but not the identity of the individuals, is necessary to ascertain Nexus's financial position. Judge Hoppe ordered Nexus to produce financial documents related to all breached bonds, including non-RLI bonds. Id. at 42. His order required "immediate expansive access" under the following conditions:

> [F]or the reasons stated on the record, Nexus is hereby DIRECTED to provide RLI with immediate access to its books, records, and accounts. "Access" means providing the means to view the information in its original format, including login information to the various accounts and databases in which the

> information is maintained or physical access to any paper records. The examples Judge Urbanski listed in his Memorandum Opinion are not exhaustive. Nexus is DIRECTED to provide RLI with immediate access to any and all information that could bear on the financial condition of Nexus and RLI's risk assessment.

ECF No. 499 at 2–3.

On September 2, 2020, Nexus filed a notice with the court indicating compliance with the court's Order. ECF No. 505. The notice stated Nexus had provided RLI with full access to QuickBooks, KPI reports, and Lightspeed. The notice further represented that Nexus had provided RLI with full access to Capsule data for RLI bonded principals and "offered specific times for shared-screen access to Nexus' non-RLI bonded program participants." Id. at 1–2.

RLI refuted those claims:

> Nexus still has not provided, among other requested records, its: (i) program-wide bond breach records (compare RLI Req. ¶ 3, 8 (ECF No. 495-1) with Nexus Notice ¶ 3, 8 (ECF No. 505)); (ii) bank records or statements (or electronic access to such accounts) (see id. ¶ 1(vi)); (iii) credit card statements (see id. ¶ 1(vii)); (iv) updated accounting statements, or any of the related information provided to or received from the third-party accountants it retained well over one year ago (Grant Thornton and/or Fusion CPA) to prepare the same (see id. ¶¶ 1, 9)); (v) tax returns (see id. ¶ 1(viii)); and (vi) bills and invoices for legal, electronic-monitoring, and other expenses (see id. ¶¶ 7, 8). Additionally, Nexus has not provided any access to its routinely utilized databases such as Google Share drive, Verified Valid/Deluxe eChecks or other databases containing financial information such as to generate KPI reports. See id. ¶¶ 3.a.

ECF No. 506 at 2. RLI also claimed the documents Nexus provided are incomplete or inaccurate. Id. at 2–3. Rather than provide the underlying data in its original format, as required

by Judge Hoppe's order, it claims Nexus has only provided summary reports. Regarding the

financial data, Nexus claimed at the hearing that it would provide updated numbers in the

middle of September after its auditor completed its work. RLI countered:

> In this regard, after years of disclaiming the accuracy of its
> QuickBooks records, several Nexus witnesses testified in
> depositions more than six months ago that, since as early as 2018,
> Nexus has been working with two third-party accounting firms,
> Grant Thornton and Fusion CPA, to audit Nexus' books and
> records and to prepare updated financial statements. See, e.g.,
> ECF No. 496-10 at 305:21–307:13. In its Rule 30(b)(6)
> deposition, Nexus testified that, as of March 3, 2020, it was in the
> process of finalizing those financial statements, as well as its tax
> returns for the last few years. See ECF No. 496-3 at 273:6–
> 278:16. Notwithstanding, Nexus has failed to provide any
> updated financial statements or tax returns (none since 2016), and
> in fact has produced no records at all that were prepared by or
> exchanged with Grant Thornton or Fusion CPA.

Id. at 5. RLI contended that not only has Nexus's refusal to provide access to books and

records prevented a thorough risk assessment of Nexus's financial condition, but that it also

hindered RLI from preparing thoroughly for the September 21 and 22, 2020 evidentiary

hearing.

At the evidentiary hearing, RLI identified several sources of information to which

Nexus had not provided access at any point during the litigation, including after Judge Hoppe's

most recent order. ECF No. 549 at 125–27. It cited the Deluxe eCheck system, a Google

shared drive, financial spreadsheets regarding breaches, segments of the Lightspeed database,

Key Performance Indicator ("KPI") reports, and revenue collecting software as some

examples of records denied. It pointed to testimony provided by Evan Ajin, a Nexus Vice

President, as evidence that Nexus is aware these sources exist and have not been provided to

RLI. RLI also represented that in response to an inquiry regarding property assets, Nexus had

told them there were no updates to provide, but that RLI has learned through independent sources that Nexus has transferred $3 million in property. Id. at 127–28. RLI claimed the lack of candor, the unresponsiveness, and the false representations made by Nexus prevented any meaningful financial assessment.

The court finds Nexus's persistent noncompliance with this court's orders granting RLI access to all books and records bearing on Nexus's financial condition inexcusable. The first two elements of civil contempt are clearly met. The court issued clear orders, including its first preliminary injunction Order, the July 3, 2020 summary judgment Order, and Judge Hoppe's August 26, 2020 Order, requiring access to Nexus's books and records. Although the court has since clarified that RLI need not produce  information about non-RLI bonded principals and, given the September 8, 2020 developments, need not provide real time login access to Nexus accounts, the court remains convinced that Nexus hid the ball as to its financial condition throughout the course of this litigation by providing delayed, incomplete, and inaccurate information to RLI.

At the evidentiary hearing, RLI requested as a remedy that Nexus be prevented from challenging the reasonableness of RLI's collateral security demand and assessment of damages. ECF No. 549 at 129. However, given that the court has made its substantive ruling on the issue of collateral security and damages, the court will address the appropriate remedy for Nexus's intransigence after considering the remaining motions.

### 3.  RLI's September 8, 2020 ECF Filing.

#### a.  Background.

As noted, on August 25, 2020, RLI filed a Second Motion for Sanctions against Nexus on the books and records issue. ECF No. 498. Nexus countered by filing a notice on September 2, 2020, claiming compliance with the court's July 3, 2020, summary judgment Order, ECF No. 489, and Judge Hoppe's directive made during the August 26, 2020 hearing, ECF No. 504 at 49. RLI replied to Nexus's notice of compliance, rebutting its claims and attaching as evidence several exhibits in support. ECF No. 506. This ECF filing was made on September 8, 2020 at 10:18 p.m., at which point ECF registrants following this lawsuit were notified of its docketing. Counsel for Nexus immediately noticed the unredacted login information and notified Nexus, which promptly changed the database passwords. ECF No. 533 at 4. Nexus communicated the improper disclosure, but not the password change, to RLI on September 9 at 9:17 a.m., at which point RLI replaced its September 8 ECF filing with a redacted version. Id. at 6. RLI requested information regarding the time of the password change and any evidence of actual or attempted access to the Nexus database information. Id. at 6–7.

On September 9, 2020, RLI received a letter from Jose Guzman, an individual associated with Nexus, claiming injury as a result of the September 8 ECF filing and demanding RLI drop its lawsuit and destroy the discovery in this case or face protests against its actions. Id. at 7–9. Guzman also filed a lawsuit in the Central District of California against RLI claiming a data breach affecting immigrants. Id. at 12. Counsel for Nexus denied its involvement in the Guzman letter or the related lawsuit at a September 11, 2020, hearing before Magistrate Judge Joel C. Hoppe, ECF No. 513 at 25, but later recanted this

representation upon learning that Nexus's President, Micheal Donovan, had collaborated with Guzman. ECF No. 522.

On September 17, 2020, RLI filed a letter with the court detailing the developments arising out of the September 8 ECF filing and requesting the court order Nexus to cease and desist from all protest activity. ECF No. 525. On the eve of the evidentiary hearing, Nexus filed a motion for sanctions, ECF No. 531, and RLI filed a motion to compel the cease and desist order requested in its letter to the court, ECF No. 533.

During the first day of the evidentiary hearing, September 21, 2020, RLI asserted that there was no evidence that any Nexus information had been compromised. Nexus represented that it had made mandatory disclosures to its program participants of a suspected breach, notified the attorney generals of several states, and retained the assistance of a third-party cybersecurity vendor to conduct a breach assessment. It claimed that the investigation was ongoing, that no conclusion could be made, but that there is evidence of at least one suspicious attempted access of the database during the time period the database credentials were exposed. At the end of the first day of the evidentiary hearing, the court ordered Nexus to produce to RLI "any evidence of or information related to a specific data breach of their systems" and "copies of the emails confirming the September 8 or September 9, 2020 password change for the database login credentials." ECF No. 535.

On October 2, 2020, RLI sent a second letter to the court to apprise it of developments regarding the alleged data breach and the ensuing protests against RLI, including demonstrations outside the homes of RLI executives in Peoria. ECF No. 552. RLI informed the court that, based on PACER's response to RLI's Rule 45 subpoena, only two individuals

accessed the document with login information after it was posted: (1) Nexus Vice President of Risk Management Erik Schneider; (2) David Briggman. Id. at 1–2. Briggman, the only non-party to access the document, executed a sworn declaration stating that he did not use or attempt to use any information contained in the PACER filing for any purpose. Id. at 2; see also Briggman Decl., ECF No. 552-1.

In response, Nexus filed a motion for leave of court to depose Briggman. ECF No. 553. RLI proceeded to file an expedited motion for protective order. ECF No. 560. The court conducted a hearing on October 16, 2020 to once again address the fallout from the September 8 ECF filing. During the hearing, counsel for RLI argued that Nexus was sustaining the fiction of a data breach despite the absence of any evidence that any sensitive data had been compromised. Nexus disagreed that there was no evidence of breach, arguing that its cybersecurity expert's investigation was ongoing, again claiming without specification that suspicious activity had been found. At the hearing's conclusion, the court ordered Nexus to conclude its investigation into the breach within one week, upon representation by counsel for Nexus that the investigation could be concluded within that period. The court also ordered Nexus to file a declaration or affidavit with the court itemizing the costs and fees it has incurred due to the September 8 ECF filing. ECF No. 581 at 92–94.

On October 23, 2020, Nexus filed a notice with the court indicating it had failed to complete its cybersecurity investigation and requesting the court to refrain from issuing its judgment on the substantive issues of damages and collateral security until the investigation was completed. ECF No. 583. In its notice, Nexus speculated Briggman could have accessed the Capsule database between August 26, 2020, when the login credentials were first provided

to RLI, and September 8, 2020, when the credentials were changed in response to its disclosure. Id.

### b.  Nexus's Motion for Sanctions and Motion for Costs and Fees.

The court will address Nexus's motion for sanctions, ECF No. 531, and its motion to recover costs and fees, ECF No. 565, together as they both pertain to RLI's alleged error in publicly filing the login credentials and the costs incurred by Nexus in responding to the disclosure. Nexus seeks an order of civil contempt and sanctions against RLI for its "extremely reckless conduct of placing known, highly sensitive information in the public domain, thereby providing access to the acknowledged confidential and sensitive information of thousands of immigrants." ECF No. 531 at 1; see also ECF No. 565 at 2.

Several things are clear concerning this episode. First, RLI had no business filing the Nexus database login information on ECF and should have exercised greater care in reviewing and redacting the exhibits to its filing before placing them on the public docket. Second, Nexus's counsel immediately discovered the unredacted filings, and Nexus quickly neutralized any ongoing risk by changing its passwords to the relevant databases. Third, in the intervening minutes, only two persons, one a Nexus executive, and the other a former Nexus employee, viewed the filing on PACER. The former employee, David Briggman, has executed a declaration stating that he did not use the login information displayed in the September 8 ECF filing to access any Nexus database. Fourth, and perhaps most importantly, although more than two months have passed, during which cybersecurity experts have investigated the incident, no evidence has been uncovered that there was any unauthorized access to any Nexus database. Thus, there is no evidence of any data breach.

Nexus argues nonetheless that it is entitled to the costs and fees it incurred in responding to the September 8 ECF filing. While it is indeed true that Nexus would not have incurred these expenses but for RLI's September 8 ECF filing, these costs are offset by those incurred by RLI in enforcing the books and records provision of the Indemnity Agreement. Given this offset, the court declines to award sanctions to either party.[4] Although RLI's September 8 ECF filing and Nexus's failure to provide access to its books and records are potentially sanctionable conduct, the court declines to impose sanctions as each side has incurred costs and fees associated with each other's transgressions such that further cost shifting is unnecessary to wipe the slate clean.

### c.  RLI's Motion to Cease and Desist and for Protective Order.

The court will address together RLI's motion for a cease and desist order and RLI's expedited motion for protective order as they both arise out of the Peoria protest activity in response to the September 8 ECF filing. ECF Nos. 533 and 560. RLI seeks a court order requiring Nexus "to cease and desist from engaging in and encouraging harassing, improper, bad faith litigation tactics." ECF No. 533 at 1. RLI demands the court order Nexus to cease and desist from all protest-related activities in Peoria, notify protestors that no evidence of unauthorized breach exists, and to reimburse RLI for costs associated with this motion. ECF No. 533 at 14.

---

[4] Relatedly, Nexus seeks to reopen discovery to take the deposition of David Briggman. ECF No. 553. The court finds no justification to reopen discovery at this juncture. The court has granted summary judgment, the substantive issues have been resolved, and there is ample evidence independent of Briggman's declaration to demonstrate that there was no unauthorized access of Nexus's databases as a result of the September 8 ECF filing. Accordingly, Nexus's motion to reopen discovery, ECF No. 553, is **DENIED**.

In RLI's October 3 letter to the court, it renewed its request that the court order Nexus to cease its involvement in the protests at RLI's headquarters in Peoria and at the homes of its executives, because there is no evidence that an actual data breach occurred compromising sensitive information about Nexus program participants. ECF No. 552 at 3.  Second, it argued that Nexus inappropriately disclosed the report of its actuarial expert, Josie Waldman, to non-parties, who used content from her report to target RLI executives with letters containing false accusations and demands to resign for employing "discriminatory pricing policies." Id. at 4. Third, it claims that Nexus has admitted to filing the lawsuit in the Central District of California, which claims a data breach based on the September 8 ECF filing. RLI argues that these three strategies constitute inappropriate litigation tactics done in bad faith to coerce RLI to drop the lawsuit and destroy the evidence it has obtained. Id. at 5. Although the request involves speech, RLI asks  the court  to enjoin the false representations, such as the claim of an actual data breach, and harassing communications, such as the protests and demands to drop the lawsuit. Id.

RLI followed up its letter to the court by filing an expedited motion for protective order demanding Nexus refrain from protest activity, media interviews, flying drones over RLI buildings and the homes of executives, and submitting letters demanding RLI drop the litigation and destroy the evidence it has obtained. ECF No. 560. RLI claims these tactics must be prevented by a court order because they undermine the integrity of the judicial process and constitute the spread of misinformation, given the outcome of the data breach investigation. ECF No. 560 at 1–4. RLI claims that Nexus exercises dominion over the protestors and that they act at the company's behest, including in sponsoring the class action suit in California. Id.

at 5–6. RLI further complains of the narrative the protestors, including Nexus executives, erroneously claiming that RLI has an anti-immigrant bias based on actuarial data referencing the country of origin in the Waldman report. Id. at 6. Because there is no evidence of a data breach, RLI asserts that Nexus's continued involvement in protests spreading claims about the data compromise impacting thousands of immigrants is a false representation and "defamatory." Id., at 11. Moreover, RLI claims that the protective order is necessary to mitigate the harm to immigrants themselves, who incorrectly believe their data has been compromised. Id. at 15. It urges the court to enjoin Nexus' behavior to avoid forcing "RLI to commence yet another lawsuit against Nexus in order to get relief from the defamation and harassment and tortious interference…." ECF No. 560 at 15.

Nexus responded, arguing that its protests are not claiming that a third party actually accessed the data, but that RLI's reckless actions made that a possibility which in itself is unacceptable conduct. ECF No. 572 at 2–4. Further, Nexus claims that its investigation into the question of whether the information was accessed by a third party is ongoing, which means that its claims that RLI may have put thousands of immigrants at risk has not yet been proven false. Id. at 4. Nexus also claims the Waldman report was not inappropriately disseminated, because only the exhibits to the report, not the report itself, were filed under seal. Id. at 5. Accordingly, Nexus rejects the notion it should be enjoined from sharing the contents of the Waldman report because it violates the protective order. Nexus claims its motion refers to the report without disclosing the underlying sensitive subject matter that was protected by seal, but that the public has the right to know about the manner in which RLI is making its legal arguments. Id. at 6.

Courts have inherent power to impose sanctions on a party for bad faith conduct that offends the legal process. Chambers v. NASCO, 501 U.S. 32, 46 (1991) (explaining that inherent power is not displaced by statutory sanctions, because where "each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses"). The court has authority to "impose order, respect, decorum, silence, and compliance with lawful mandates," which RLI claims extends to enjoining harassing speech. United States v. Shaffer Equip. Co., 11 F. 3d 450, 461 (4th Cir. 1993). If the conduct in question could be adequately sanctioned under the Rules, a court should ordinarily use the rule, but "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id. at 50. Such sanctions may include assessing fees and costs, excluding evidence or defenses, dismissal of a party's claims, or an injunction. See, e.g., Carefirst of Md., Inc. v. First Care, P.C., 422 F. Supp. 2d. 592, 597–600 (E.D. Va. 2006); Macias v. Target Stores Inc., 188 Fed. Appx. 210, 211–13 (4th Cir. 2006); Price v. First Star Mortgage, No. 2:03cv568, 2006 WL 2381921, at *3 (E.D. Va. Aug.15, 2006), aff'd, 296 Fed. Appx. 369 (4th Cir. 2008); Am. Sci. & Eng'g, Inc. v. Autoclear, LLC, 606 F. Supp. 2d 617, 625 (E.D. Va. 2008).

To rest on its inherent powers to sanction or order an injunction, the Court must find the party acted in "bad faith." See Chambers, 501 U.S. at 49–50. The court possesses "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'" Williams v. Family Dollar Servs., Inc., 327 F. Supp. 2d 582, 585 (E.D. Va.2004) (quoting Chambers, 501 U.S. at 45). Bad faith may be found not only in actions

filed in bad faith, but also in the "conduct of the litigation." <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 766 (1980) (quoting <u>Hall v. Cole</u>, 412 U.S. 1, 15 (1973)). The burden of demonstrating sanctionable conduct rests on the moving party. <u>Morris v. Wachovia Secs., Inc.</u>, 448 F.3d 268, 284 (4th Cir. 2006).

The court has the authority to enjoin Nexus from making false representations and using harassing tactics concerning the September 8 ECF filing. False statements do not enjoy First Amendment protection. <u>See</u> <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 776 (1984) ("False statements of fact harm both the subject of the falsehood and the readers of the statement"); <u>Cornwell v. Sachs</u>, 99 F. Supp. 2d 695, 708 (E.D. Va. 2000) ("An injunction that restrains only false or misleading commercial speech 'is consistent with the First Amendment'") (quoting <u>In re Corey</u>, 892 F. 2d 829, 839 (9th Cir. 1989)). Courts may also sanction parties for false representations that hinder the fair adjudication of substantive issues. <u>Stradtman v. Republic Services, Inc.</u>, 121 F. Supp. 3d 578, 587 ("A court's inherent power allows district courts to sanction attorneys who inhibit courts' ability 'to manage their own affairs.'") (quoting <u>Royal Ins. v. Lynnhaven Marine Boatel, Inc.</u>, 216 F.Supp.2d 562, 567 (E.D. Va. 2002)); <u>see also</u> <u>Autoclear</u>, 606 F. Supp. 2d. at 625–26 ("Courts may disallow prejudicial extrajudicial statements by litigants that risk tainting or biasing the jury pool."). Courts can also make "a distinction between communication and harassment" in that one is "free speech" and the other is "conduct that may be proscribed." <u>United Artists Corp. v. United Artist Studios, LLC,</u> No. CV 19-828-MWF, 2019 WL 6917918, at *6–7 (C.D. Cal. Oct. 17, 2019).

As the court stated during the evidentiary hearing, it will not tolerate a party litigant making deliberately false or misleading statements to gain advantage in the litigation. At the

same time, the court is also mindful of the integral role protesting plays in civil discourse and free expression. The court will not enjoin non-parties from engaging in constitutionally protected rights to communicate complaints and assemble in public spaces.

While RLI argues forcefully that Nexus and its officers have engaged in litigation harassment requiring sanctions, the court finds the issue to be a bit more nuanced. To be sure, there is no evidence of a breach of any Nexus database or compromise of any confidential information about a Nexus program participant. Nor is there any credence to Nexus's suggestion that the Waldman actuarial report displays any anti-immigrant bias by RLI. See Mem. Op., ECF No. 584, at 6 n.5. Moreover, in response to the court's inquiry, counsel reports that the protests in Peoria have subsided. However, RLI did file Nexus's login and password information on ECF in an unprotected manner. To the extent Nexus asserts that counsel for RLI failed to take adequate care in publicly filing the Nexus database login information, that much is true. But Nexus did not stop there and has perpetuated the fiction of a massive data breach compromising information about thousands of immigrants, a narrative unsupported by a shred of evidence.

From the evidence presented, it is clear to the court that Nexus has sought to exploit RLI's September 8 ECF docketing error to gain an advantage in this litigation. Because assertions of a data breach compromising the confidential information of Nexus program participants lacks evidentiary foundation, Nexus must cease these efforts. Plainly, Nexus has sought to use the false claim of a diabolical data breach to pressure RLI and its executives to drop this lawsuit. As such, the court finds that Nexus's false claim of a dangerous data breach has been inappropriately propagated to influence the fair adjudication of this lawsuit. Plainly,

the court has the authority to prohibit future misrepresentations of its findings. See Am. Sci. & Eng'g, Inc. v. Autoclear, LLC, 606 F. Supp. 2d 617, 625–26 (E.D. Va. 2008) (holding that "publishing false information about the Court's rulings is egregious and vexatious misconduct justifying the imposition of sanctions…").

Although the court exercises broad discretion in deciding "when a protective order is appropriate and what degree of protection is required," Furlow v. United States, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)), protective orders "should be sparingly used and cautiously granted." Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C. 1987)). Accordingly, the court will enter a narrowly tailored protective order requiring Nexus and its officers and executives, directly or indirectly, to cease perpetuating the falsehoods that (1) the confidential information of any Nexus program participant was disclosed or compromised as a result of RLI's September 8 ECF filing; and (2) the Waldman actuarial report reflects anti-immigrant bias on the part of RLI. Although the accompanying Order closes out this litigation, the possibility of appeal remains and so the prejudicial harm of Nexus continuing to perpetuate falsehoods persists. However, the court declines to go further. The substantive issues central to this dispute have been resolved, the court has been well apprised of the true nature of the September 8 ECF filing and its lack of impact, and so the risk of harm to the fair adjudication of this case by previously made false representations is minimal. In fact, it appears that the remedy of a mandatory injunction is unnecessary as the Peoria protests have subsided and the substantive disputes at issue in this action have been resolved.

### 4.  Conclusion.

For the foregoing reasons, the court **DENIES** RLI's first motion for sanctions, ECF No. 452, finding no harm as a result of Nexus's marginally delayed payments. The court finds merit to RLI's second motion for sanctions, as Nexus impermissibly frustrated RLI's ability to access Nexus's books and records. Likewise, RLI ought not to have made the September 8 ECF filing in an unprotected manner. To the extent that each side seeks costs and fees associated with these failings, the court finds they offset and declines to shift these costs or otherwise award sanctions. Accordingly, the court **DENIES** RLI's second motion for sanctions, ECF No. 498, and **DENIES** Nexus's motions for sanctions, for discovery, and for compensation by RLI for the costs and fees associated with responding to the September 8 ECF filing. ECF Nos. 531, 553, and 565. Finally, the court **GRANTS in part** and **DENIES in part** RLI's motion for a  protective order, ECF No. 560, and **DENIES as moot** RLI's motion to compel a cease and desist order, ECF No. 533. As all matters in this case have been adjudicated, it will be **DISMISSED** from the active docket of the court.

An appropriate Order will be entered.

Entered: November 19, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.11.19 16:42:39 -05'00'

Michael F. Urbanski
Chief United States District Judge