IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 5:18-cv-66-MFU |
| | ) | |
| NEXUS SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED REQUEST FOR APPOINTMENT OF THIRD PARTY
TO PERFORM SPECIFIC ACTS ORDERED UNDER RULE 70(a)
OR ALTERNATIVELY A RECEIVER UNDER RULE 66
<u>AND FOR SANCTIONS; AND DEFENDANTS' CROSS-MOTION FOR SANCTIONS</u>**

Defendants, NEXUS SERVICES, INC., LIBRE BY NEXUS, INC., and HOMES BY NEXUS, INC. (collectively, "Nexus"), hereby oppose the Renewed Request for Appointment of Third Party to Perform Specific Acts Ordered under Rule 70(a) or Alternatively a Receiver under Rule 66, and Motion for Contempt Against Defendants (ECF No. 694) (this "Third Party/Receiver Motion") filed by Plaintiff, RLI INSURANCE COMPANY ("RLI"). Further, Nexus cross-moves for Contempt Sanctions against RLI for its violation of multiple standing protective orders by filing Nexus's confidential financial information through PACER in this Third Party/Receiver Motion.

RLI's Third Party/Receiver Motion is untimely and excessive; it is the fourth brief filed by RLI (without leave of Court for extra briefing) in support of its request for extreme sanctions. More importantly, RLI's requested remedies would only be counterproductive to achieving its stated goals. Further, while the Court has the inherent power to enforce its judgements, under *this* set of facts, as detailed below, such extreme remedies would be unprecedented as a matter of

law. On the other hand, RLI's recklessness in making public filings disclosing Nexus's confidential data, in defiance of multiple Court protective orders and statements, must be remedied and prevented in the future.

**Procedural Background**

In December 2020, RLI filed a Motion for Order to Show Cause why Defendants Should not be Held in Contempt and Sanctioned (ECF No. 607) (RLI's "Show Cause/Sanctions Motion") for Nexus's alleged lack of compliance with the Court's October 23, 2020, Order awarding RLI certain injunctive relief (ECF No. 585) (the "Final Order"). Among other suggested remedies (including several citations to precedents purportedly supporting *imprisonment* for contemptors), RLI moved for the appointment of an RLI-nominated receiver pursuant to Fed R Civ P 66.

Given RLI's request for such an extreme remedy in its Show Cause/Sanctions Motion, Nexus filed a Motion for Hearing (ECF No. 645) (Nexus's "Hearing Motion") requesting an opportunity to present evidence before the Court rules on the matter.

On March 4, 2021, the Court held a teleconference hearing to address RLI's Show Cause/Sanctions Motion. Thereafter, RLI submitted a further Statement of Authorities Regarding the Court's Jurisdiction to Enforce Final Judgment (ECF No. 647) where, for the first time, it expanded its litany of requested remedies to include the appointment of a third-party (separate from a Rule 66 receiver) pursuant to Fed R Civ P 70, to "perform a specific act," namely, "(i) to collect and produce to RLI all books, records, and accounts … at regular intervals, (ii) marshal and transfer Nexus assets to RLI to satisfy [§A(1) of the Final Order]… and (iii) on an ongoing basis, marshal and transfer Nexus assets to RLI to satisfy [§A(2) of the Final Order]." ECF No. 647 at p. 4.

On April 13, 2021, the Court issued an Order regarding RLI's Show Cause/Sanctions Motion (ECF No. 654) (the "Sanctions Order"). The Sanctions Order denied as moot RLI's Show Cause/Sanctions Motion, and instead appointed Special Master St. Ours, pursuant to Fed R Civ P 53, to advise the Court of Nexus's compliance with the Collateral and Financial Records Orders. Further, the Sanctions Order took Nexus's Hearing Motion "under advisement" because "the court has postponed consideration of a receiver until after it obtains the report of the special master." ECF No. 654 at p. 4.

Now, while the Special Master process remains ongoing, and—in fact— shows signs of genuine utility to facilitate collateral security deposits and the production of financial records, RLI files its *fourth brief* styled as this "Renewed Request" for a Rule 70 Third Party or Rule 66 Receiver to support its Show Cause/Sanctions Motion currently postponed and under advisement by the Court.

## OPPOSITION ARGUMENT

**1. RLI's Third Party/Receiver Motion is untimely, excessive, and counterproductive.**

As discussed in the last status conference before this Court on July 15, 2021, Nexus has already established a process to pay RLI twenty percent (20%) of its daily revenues toward satisfaction of the collateral ordered by the Court in Sections A(1) and (2) of the Final Order. ***These payments have started and remain ongoing***. The Court already stated its intent to verify this claim at the next scheduled conference on August 10th. Further, Nexus represented to the Court that RLI has the unilateral discretion to allocate these funds to either Final Order § A(1) [the $2.4 million collateral pool] ***or*** Final Order § A(2) [NTD-issued bond collateral], which resolves RLI's concern that certain NTD-issued bonds are not being collateralized in a timely

fashion because RLI may allocate these payments based on its own financial security risk assessment.

Likewise, Nexus continues to fully embrace the Special Master process established by this Court in its Sanctions Order and has produced voluminous copies of financial records at great expense. As but one recent example, the Special Master asked Nexus to volunteer direct and unfettered financial-database access— over and above the Court's standing financial books and records Order (*i.e.*, Section C(3) of the Final Order), to allow RLI to confirm the adequacy of Nexus's monthly share-drive productions under Final Order § C(3) and its openness to sharing its financial records and databases so that RLI can conduct a financial risk assessment. Nexus had to suspend ongoing system upgrades, payment processing, and accounting reconciliation efforts to accommodate this request, plus incur some incremental expense, yet Nexus complied.

Finally, Nexus sent a communication to RLI indicating Nexus's desire to participate in mediation per the Court's referral Order (ECF No. 695) (the "Mediation Order"). As of the date of this filing, Nexus awaits RLI's response.  Nexus would like to take note, that refusing to participate in mediation is a trend where RLI refuses to comply with orders that promote tranquility and business-minded solutions outside the court process.  Instead, this strategy seems designed at times to punish individuals rather than facilitate compliance with the Order, as in the case when RLI refused to cooperate with a substitute surety which could have eliminated an element of the injunctive relief at issue.

The appointment of a third party to complete a specific act or receiver would only slow or impede Nexus's current practice of committing 20% of its daily revenues toward its collateral obligations as required under the Final Order. Nexus is a consumer service business, not an asset heavy enterprise; its ability to meet RLI's collateral requirements will necessarily come from the

4

business's cash flow. Bringing in an inexperienced outsider, unfamiliar with Nexus's operations, and locking out the current managers, cannot possibly serve to protect the ongoing cash coming into the business. To the contrary, it would likely undermine the most likely path to full compliance with the Court's collateral order: the 20% daily income transfer to RLI. In fact, this is a certain outcome, as Nexus' current sureties would likely move to discharge liability in the event of a receiver being appointed, which would end Nexus' revenue streams while simultaneously exposing tens of thousands of immigrants to potential re-incarceration. Perhaps there is a fact pattern where such an extraordinary punishment would be in order, but certainly not in a case where the Plaintiff actively prevents the Defendant from satisfying the judgment.

For these reasons, RLI's [fourth] renewed briefing for extraordinary sanctions is untimely, excessive, and counterproductive. The *status quo ante* does not describe a scenario in need of such extraordinary remedies. The Special Master process is working and seeing results, and another round of mediation has been requested and is waiting to begin, all while RLI is receiving a substantial portion of Nexus's daily income. Any of RLI's requested remedies would only serve to undermine this favorable progress and set back the progress made pursuant to the Special Master process.

**2. RLI's requested remedies are unavailable as a matter of law under this set of facts.**

*a. Rule 70(a) allows third-party appointments for <u>discrete</u> tasks only; not for ongoing duties.*

Fed. R. Civ. P. 70(a), states, "If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done--at the disobedient party's expense--by another person appointed by the court. When done, the act has the same effect as if done by the party."

The focus of this provision is limited to <u>discrete</u>, <u>specific</u> acts, expressly part of a court order, as evidenced by the list of examples the start the clause: conveying land, delivering a deed, *etc.* While the Rule does expand into "other acts," even that clause is limited to "other ***specific*** acts" (emphasis added.) In contrast, RLI's request is of a continuous and ongoing nature: "(i) to collect and produce to RLI all books, records, and accounts … ***at regular intervals***, (ii) ***marshal*** and transfer Nexus assets to RLI to satisfy [§A(1) of the Final Order]… and (iii) ***on an ongoing basis***, ***marshal*** and transfer Nexus assets to RLI to satisfy [§A(2) of the Final Order]." ECF No. 647 at p. 4 (emphasis added). In its Third Party/Receiver Motion, RLI further describes its request for a third-party "with a financial accounting background to marshal Nexus' assets and perform the specific **acts** required to achieve compliance with Nexus's discrete Injunctive Relief obligations." (emphasis added) ECF No. 694 at p. 17. These ongoing activities are not discrete and specific and therefore fall outside the scope of Rule 70(a).

Furthermore, it is likewise fatal that "marshalling Nexus's assets" is not an express element of the Court's Final Order; therefore, Rule 70 does not provide a legal basis to appoint a third party to do so. Nexus has not failed to act and is currently making payments and producing volumes of financial records. The Rule 70 relief requested by RLI does not withstand a four-corners reading of RLI's own description.

Finally, of equal importance, RLI cites no examples (in ***any*** Circuit) where a district court utilized Rule 70 to "marshal" an operating business's assets (outside of bankruptcy), or to otherwise impede or essentially take-over the management and daily operations of an ongoing business enterprise. That is what RLI is requesting. Nexus represents that it conducted a national review of case law and also found no fact pattern even remotely similar to RLI's immediate request. Rule 70 is simply inapplicable here.

*b. A Rule 66 Receiver is also inapt* given the status quo ante.

Although a district court has within its equity power the authority to appoint receivers and to administer receiverships, "the appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court." *Hutchinson v. Fidelity Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939). Moreover, "[t]he appointment of a receiver is an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property." *Id.* Nexus points out that with the 20% daily receipts payments and/or deeds of trusts of properties similar to the collateral provided to other surety companies, Nexus has put forth mechanisms to accomplish the collateral security requirements whereby negating the need for a receivership. Therefore, there are equitable solutions available to the Court short of a receivership to accomplish the collateral requirements of the Order.

"Neither the Supreme Court nor the Fourth Circuit has provided a concrete list of factors for courts to weigh in considering whether to appoint a receiver." *LNV Corp. v. Harrison Family Bus., LLC*, 132 F.Supp.3d 683, 689 (D. Md. 2015). However, other circuits' appellate courts have described a set of common factors to consider: (i) fraudulent conduct on the part of defendant; (ii) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (iii) the inadequacy of the available legal remedies; (iv) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment. See Wright & Miller, § 2983; *Wilmington Trust v. Homes4Families, LLC*, 2019 WL 5787985, at *3 (D. Md. Nov. 6, 2019).

None of these factors are met here. RLI, by its own admission, and as confirmed by the Special Master, has received multiple monthly financial productions in accordance with Section C(3) of the Final Order. RLI is receiving 20% of daily cash receipts to satisfy the collateral

7

security requirement of the Order.  RLI has also been granted, *in excess of* the Final Order, bilateral, real-time, administrative-level access to review Nexus's financial databases (of those currently in use and previously in use since the date of the Final Order). The Special Master participated in this review and can attest to RLI's unfettered access. Despite such access, RLI has not produced any actual evidence of "fraudulent conduct." RLI's hunches, protestations, and insinuations aside, there is simply no fraud entered into evidence.

Specifically, RLI has not identified any fraudulent conduct on the part of Nexus given the thousands of pages of financial records and access to financial databases.  Equally important, RLI has not outlined how Nexus's mechanism to pay the collateral security requirement (absent one lump sum equal to the collateral security amounts) is evidence that Nexus is causing the "imminent danger of the property [daily cash receipts now flowing to RLI] being lost, concealed, injured, diminished in value, or squandered…."

RLI has also not identified specifically how the Special Master process has failed, is an inadequate legal remedy or is not producing the desired outcome of providing collateral security payments and the production of volumes of financial records.  Nexus has long maintained that it could not comply with the collateral security requirements of the Order without a payment plan or some other means to provide the collateral security to RLI.  Additionally, Nexus has vastly improved its financial maturity since the October 23, 2020 Order and still has a long road ahead. This financial maturity is reflected in the financial record and database productions to date.

As for the "probability of harm" balancing test other circuits use in contemplating appointment of a receiver, RLI appears to favor advocacy over practicality and may need the Court's wisdom to save it from itself. The imposition of a receiver will most likely harm RLI more than the *status quo ante*, where Nexus continues to generate cash through business

8

operations and dedicate 20% of such gross receipts toward RLI's collateral. Alternatively, should a receiver take control of the business, there is no guarantee that new management will be able to maintain the business and its cash flow. Bringing in new, inexperienced management into a niche business-model like Nexus's will most likely cause both short and long-term harm to the business—*to both parties' detriment*. So, while this balancing test contemplates weighing the probability of harm to plaintiff (if the appointment is denied) against the harm to Nexus (under receivership), in this case the harm is clear: everyone loses if a receiver is injected into this process.

Nexus also points out that the appointment of a receiver will result in the likely cancellation of thousands of immigration bonds through demands by its other sureties[1]. Nexus participants would no longer be free on bonds backed by a solvent indemnitor. The result from this determination would have severe impacts outside the facts of this case alone. This result alone is greater than any probability of harm to plaintiff.

In an unrelated case from 2016, this Court had the opportunity to evaluate a scenario where appointment of a receiver was deemed appropriate, *Sky Cable, LLC v. Coley,* 2016 U.S. Dist. LEXIS 93537 (W.D. Va. July 18, 2016) (RLI recently cited this case in support of the extraordinary remedies it is also seeking for enforcement of damages, see ECF No. 692). In *Sky Cable*, this Court found that a receivership was appropriate, but under a very different set of facts. There, the judgment creditor didn't run a legitimate business, it diverted programming revenue intended for DIRECT TV and unlawfully pocketed the money for itself; defendant's business was nothing more than a scam (in contrast to Nexus, an entity with whom RLI elected

---

[1] Other agreements with Nexus's current sureties contain clauses that point to insolvency. Should those sureties determine that Nexus is insolvent, it requires the revocation of the release conditions, arrest and continued detention of the bond participants. The appointment of a receiver would automatically trigger that result and impact thousands of additional bond participants.

9

to enter into a legitimate bargained for business relationship); following an adverse judgment, the creditor failed to respond at all to the discovery in aid of execution (in contrast to the volumes of documents produced for and sums of payments directed towards RLI here); then, the creditor gave conflicting testimony under oath about the flow of his monies and produced fraudulent and backdated documents pertaining to an LLC that he owned; it was also determined—in fact, not by presumption—that the LLC was comingling the creditor's personal funds including the proceeds of his fraud, the very subject of the judgment.

*Sky Cable* is relevant to the immediate Third Party/Receiver Motion here only for its dramatic contrast with the facts. In this case, Nexus is cooperating with the Special Master, producing books and records, and committing 20% of its daily gross revenues toward a Collateral Order that it is not otherwise financially able to pay in a single lump sum. Most importantly no fraud has taken place. The kind of facts described in *Sky Cable* can be seen as a generalized standard for the appointment of a receiver, and that standard is clearly not met here. The drastic remedy of a receiver, with its attendant risks, is simply not appropriate for the current stance of the parties, and it would be especially inapt now while the Special Master process is delivering results.

## ARGUMENT FOR CROSS MOTION SANCTIONS

Finally, Nexus cross-moves for sanctions against RLI for its inclusion, ***yet again***, of Nexus's confidential Nexus information in the public record (RLI's Third Party/Receiver Motion, ECF No. 694 at pp. 9-10), without redaction or request for seal, in contravention of numerous, long-standing Court protective orders, instructions, and admonitions that RLI shall not disclose Nexus's confidential financial data in the public ECF system. These standing orders have been in place since 2018, and RLI continues to flout them See, *e.g.*, ECF No. 59 at p. 24

10

("Although this court will require Nexus to produce or provide access to documents, it will… subject all produced or reviewed documents to a protective order."); *Id.* at p. 33 ("Only RLI, its agents, or its consultants shall review the documents produced [then, under the Preliminary Injunction, and now, under the Final Order], of "any and all books, records and accounts of Nexus Services, Inc."); see also, Transcript of 9/21/20 Hearing, at p. 13: (*the Court*: [there is] "an oral order from this Court that nothing that is subject to a Court Order in this case, a protective order, may be shared with nonparties. I don't know how hard that is. It's very easy. The order says you don't share things that are subject to Court Order with nonparties.")

And yet, on pages 9-10 of its Third Party/Receiver Motion, RLI lists examples of specific payments allegedly made by Nexus to various third parties. RLI lists the name of such third parties, certain bank account information, and exact payment amounts. There cannot be a clearer example of "books, records, and accounts of Nexus Services, Inc.," *i.e.*, material subject to standing protective orders issued orally and in writing by this Court. Filing such information in an ECF document on the public facing PACER system, without redaction or an accompanying motion to seal, is per se "sharing" of such information with nonparties (i.e. the public).

This defiance of the Court's clear orders, especially following the impact RLI caused by its prior disclosure of Nexus's database login credentials, must be remedied. Wherefore, Nexus respectfully requests that RLI be sanctioned by reassigning 100% of the costs of the Special Master to RLI, and/or any other remedy the Court feels would be an appropriate remedial and punitive sanction.

RLI seeks to enforce the Courts order by claiming an urgent need to protect itself, yet over and over again it shows itself incapable of protecting Nexus's confidential information. This Court has openly questioned why Nexus seemed unwilling to share its confidential information,

11

but the Court has acknowledged that RLI has violated the order on multiple occasions. These problems can be remedied by enforcing the Courts orders against all parties. Nexus is complying with the Court's order, paying a substantial amount of its revenue each day and providing unprecedented access to its financial records and systems. RLI is misusing the judicial process by requesting the Court destroy a company it claims is violating the Court orders. RLI and Nexus's mutual bond participants as well as thousands of immigrant families are impacted by these actions.

## CONCLUSION

RLI's Third Party/Receiver Motion is untimely, excessive, and counterproductive. There is no reasonable basis to impose the extreme remedies sought by RLI, which would be unprecedented as a matter of law. On the other hand, RLI's recklessness in disclosing Nexus's confidential data, in defiance of multiple Court protective orders and statements, must be remedied. RLI's motions should be denied as sanction because they continue to contain confidential information.

WHEREFORE, Nexus respectfully requests that (i) RLI's Renewed Request for Appointment of Third Party to Perform Specific Acts Ordered under Rule 70(a) or Alternatively a Receiver under Rule 66, and Motion for Contempt Against Defendants (ECF No. 694), and, to the extent it is still operative, RLI's Motion for Order to Show Cause why Defendants Should not be Held in Contempt and Sanctioned (ECF No. 607) should be denied in their entirety, and (ii) Nexus's Cross Motion for Sanctions for RLI's breach of certain Protective Orders be granted, with any remedy the Court feels would be an appropriate remedial and punitive sanction.

Respectfully submitted this 25rd day of July 2021.

/////

/s/ CHRISTOPHER M. OKAY
Christopher M. Okay (VSB #35611)
Chris Okay, Attorney at Law
117 South Lewis Street, Suite 218
Staunton, Virginia 24401
Tel: (540) 466-3130
chrisokay@icloud.com

/s/ CARL A. ANDERSON
Carl A. Anderson
Rock Spring Law Group, PLLC
1050 30th Street, NW
Washington, DC 20007
Tel: (202) 258-2776
caa@rockspringlaw.com

*Counsel for Defendant*

/////

## CERTIFICATE OF SERVICE

I certify that on this 25th day of July, 2021, a copy of the foregoing was filed via CM/ECF, which will send a notification of such filing to all counsel of record.

By: 

/s/ CHRISTOPHER M. OKAY
Christopher M. Okay (VSB #35611)
Chris Okay, Attorney at Law
117 South Lewis Street, Suite 218
Staunton, Virginia 24401
Tel: (540) 466-3130
chrisokay@icloud.com

/s/ CARL A. ANDERSON
Carl A. Anderson
Rock Spring Law Group, PLLC
1050 30th Street, NW
Washington, DC 20007
Tel: (202) 258-2776
caa@rockspringlaw.com

*Counsel for Defendant*