## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

RLI INSURANCE COMPANY,

       Plaintiff,

v.

NEXUS SERVICES, INC., *et al.*,

       Defendants.

Case No.: 5:18-cv-00066-MFU

## REPLY IN SUPPORT OF PLAINTIFF'S RENEWED REQUEST FOR APPOINTMENT OF THIRD PARTY TO PERFORM SPECIFIC ACTS ORDERED UNDER RULE 70(a) OR ALTERNATIVELY A RECEIVER UNDER RULE 66 AND FOR SANCTIONS

RLI, by counsel, respectfully submits this Reply in support of its renewed request for appointment of a third party to perform the specific acts ordered of Nexus under Rule 70(a), or alternatively a receiver under Rule 66, and for sanctions, based on Nexus' undisputed ongoing violations of the injunctive provisions of this Court's October 23, 2020 Order.

## INTRODUCTION

The time has come to appoint a third-party administrator or receiver to enforce the Injunctive Relief granted in the Court's October 23, 2020 Order. If Nexus has made one thing clear over the past nine months, it is that, without such an appointment, Nexus will never voluntarily comply with the Order. Plainly, Nexus does not agree with the Court's Order, so it has simply decided, from day one, to completely ignore the Order. For instance, the December 1, 2020 deadline for the $2.4 million Collateral Deposit came and went, but Nexus did not pay a dime. Meanwhile, DHS continued to issue Notices to Deliver ("NTDs") – 39 NTDs with an aggregate penal sum of $442,500 since October 23, 2020 alone – but Nexus never paid one penny of Additional Security. Nexus likewise refused to produce any of its Books and Records, despite the

Court's mandated daily, weekly, and monthly requirements.  Even when the Court held a hearing on RLI's Motion for Contempt, in March 2021, Nexus did nothing.

In fact, it was not until after the Court appointed the Special Master in April 2021, almost six full months after issuing the October Order, that Nexus took any action whatsoever in response to the Order, and, to describe Nexus' ensuing response as underwhelming would give Nexus more credit than it is due.  To that end, from April through the end of June 2021, Nexus provided a *de minimus* **$4,500** in collateral security despite collecting, at a minimum, average monthly revenues in excess of $1.6 M and total revenues since October 2020 of, at minimum, more than $14.6 M – all figures which Nexus does not dispute.  While Nexus did finally begin producing some of its records, it stalled—if not purposely hid—production of its meaningful financial Books and Records from RLI (and the Special Master) for months, initially generating unnecessary volume and confusion with duplicative, stale and partial records, in disorganized productions, and thereafter only from databases that RLI could identify – a particularly unreasonable expectation given Nexus' frequent changes from one system to the next.

Nexus has simply continued to operate over the past nine months as though the Order never issued, choosing, for instance, (i) to engage in rampant unnecessary discretionary spending (*e.g.*, on the production of various reality-TV series on the Unleased platform, and recurring multi-thousand-dollar charitable donations) and extensive transfers to insiders, including to its shareholders and the many subsidiaries and affiliates within the Nexus corporate family (*e.g.*, Fangistics, LLC (a subsidiary of Entlest Brands, LLC (Richard Moore) (*see* Ex. A), Fixify Solutions, LLC (a subsidiary of Entlest Brands (Richard Moore) (*see* Ex. B), Executive Investigation Consultants (Erik Schneider) (*see* Ex. C)), rather than paying collateral security as ordered; and (ii) continuing to hide the financial databases and accounts that it actually uses on a

daily basis, rather than producing its Books and Records as ordered.  For example, in early letters to the Special Master, Nexus represented that all bank statements had been produced.  They had not.  It was only after RLI demonstrated, from its review of a belatedly produced, partial KPI report, (*see* Ex. D), that the aggregate balances from the bank statements produced fell well short of Nexus' more than $1.6M in reported monthly revenues that Nexus suddenly disclosed, and produced any records from, a new bank, Trustco, which Nexus had by then been using for months for its main operating accounts.  Similarly, Nexus did not voluntarily disclose that it had switched from Lightspeed to a replacement Point-of-Sale (POS) system from late 2020 through the end of February 2021.  After ignoring several requests for the Lightspeed records from this time period, Nexus eventually disclosed that a substitution had been made but, even then, it withheld the name of the replacement, American Spirit, until after the July 15, 2021 hearing, on July 22, 2021. Likewise, it was only at that late date that Nexus apparently felt compelled to disclose two other databases that it had never previously identified but had been using for months, Fluid-Pay, another POS system, and Airbase, a database that processes and tracks Nexus' payables.  Notably, Nexus' disclosure of Airbase came only after RLI, just before the July 15 hearing, and through independent means outside the Special Master process, had discovered and identified two other similar payables databases, Melio and Stampli, that Nexus had used – and for at least Stampli, continues to use – for extended durations after the October Order issued.  This same pattern of RLI noting deficiencies and missing data, and only then Nexus belatedly disclosing some other source of records, has continued since the October Order and throughout the Special Master process.

Nexus' conduct since the July 15, 2021 hearing, wherein the Court gave Nexus a "last chance" 26-day window to make every effort to purge its contempt before the Court rules, has only solidified the need for the requested appointment of a third-party or receiver.  Consistent with

3

Nexus' undisputed historic intransigence, Nexus' response to this final warning from the Court has been virtually imperceptible.  Specifically, now 17 days into its 26-day window:

- Nexus has provided a paltry total of **$9,282.60** in collateral security, despite its undisputed receipt of, at minimum, more than $1.6M in monthly revenues (and, at least, over $14.6 M in total revenues from October 2020 through June 2021);

- Nexus has provided **no** Additional Security at all in response to three new NTDs received, and has thereby allowed the total unpaid Additional Security on NTDs issued since October 23, 2020, alone, to grow by $35,500 to a total of **$442,500**;

- Nexus has not provided anything close even to the 20% of daily gross receipts that it falsely assured the Court, in the Opposition, that it has been doing since July 15, 2021 – rather, in the 17 days since July 15, 2021, Nexus has made payment from only *two days*' receipts, and even then in a total amount (*i.e.*, the above-referenced $9,282.60) that, by Nexus' own accompanying calculations, is *less than 14%* of the alleged gross receipts for those *two days* (*see* Ex. E, hereto);

- Although Nexus partially acquiesced to a long-outstanding request for bilateral review, as to certain of its financial databases – most of which Nexus had not voluntarily disclosed[1] – that review only led to RLI's belated discovery of:

  - the very system of databases that Nexus actually uses on a daily basis to manage its daily receipts, cash balances and disbursements, which appears to be the exclusive source of certain critical funds-tracking records, but to which Nexus has summarily refused to provide review access in response to repeated requests from both RLI and the Special Master;

  - two financial accounts actively used by Nexus since October 2020, one "debit card" and one credit card, for which no records have been produced, which were discovered during the review of the Melio database that Nexus failed to disclose until RLI discovered it just before the July 15 hearing (*see* Ex. F);

  - extensive, previously undisclosed transfers to Richard Moore, including many in the Melio database, with vague references to invoices that, to RLI's understanding, have never been produced (*see* Ex. G);

---

[1] The bilateral review involved seven financial databases that Nexus has used for extended durations since the October 2020 Order issued: (i) NetSuite; (ii) Lightspeed; (iii) American Spirit; (iv) Fluidpay; (v) Melio; (vi) Stampli; and (vii) Airbase.  RLI only discovered Nexus' use of Melio and Stampli by independent investigation, outside of the Special Master process, and Nexus did not disclose its use of American Spirit, Fluid Pay and Airbase until after the July 15, 2021 hearing.

- o numerous other vendor invoices that were not available for review in the various databases and which, to RLI's understanding, have not been produced;

- o numerous Nexus real property transactions (also from Melio) involving many different real properties, including those carried on Nexus' accounting books, (*see, e.g.*, Ex. H) despite Nexus' failure to produce any real estate records at all and its denial, including throughout the Special Master process, of any interest in any real property;

- o the inexplicable destruction of all records from Nexus' Verified Valid/Deluxe eCheck payables processing and tracking database, which Nexus used at least through December 2020 – after evading RLI's repeated requests for access to this database, both before and throughout the Special Master process, Nexus first advised of the destruction of these documents on July 30, 2021; and

- Nexus has produced **none** of the extensive missing books and records delineated in RLI's moving brief and in the Special Master's last, pre-hearing report.

Thus, rather than taking advantage of its "last chance" opportunity to demonstrate compliance, Nexus has only further shown that it has no intention of performing the specific acts ordered.

Given that Nexus' monthly receipts since October 2020 undisputedly average over $1.6M, from which Nexus reportedly recognizes an approximate 75% profit margin, Nexus could <u>not</u> establish an inability to fully comply with the Order's collateral security provisions, even if it had tried – which, significantly, it has never done.[2]  Moreover, even if Nexus had demonstrated an inability to fully comply, Nexus' payment of only $9,282.60 in collateral security over the past two weeks plainly does not comport with the "all reasonable efforts" standard, which Nexus also does not attempt to establish, or even address, in its Opposition.  Rather, Nexus' negligible deposit is an affront to both the Court's Order and its related July 15, 2021 admonition.  Likewise, Nexus' continued lack of transparency and production deficiencies only further manifest its contempt.

---

[2] At most, Nexus has only ever vaguely averred, without any substantiating evidence, that at some single point in time, it could not pay the entirety of the ordered collateral security deposits.

Despite the many opportunities this Court has afforded Nexus to purge its contempt, Nexus has only ever shown time and again that it has no intention of performing the acts specifically ordered by this Court.  Instead, whenever called to answer in Court, as in its current Opposition, Nexus responds with a never-ending parade of entirely unsubstantiated, grossly exaggerated and illogical excuses,[3] coupled with completely inaccurate representations regarding its current efforts and empty promises of future partial compliance.  Rather than introducing any evidence of an inability to fully comply or that it has made all reasonable efforts to comply with the terms of the Order, Nexus – all the while concealing the records that show the true extent of its financial wherewithal – constantly asks the Court and RLI to accept whatever lesser alternative performance *Nexus* deems suitable and then proceeds to act as though the Order never issued.  Meanwhile, RLI continues to be deprived of the contract rights for which it bargained, including RLI's essential right to be secured against loss by collateral deposits – a matter of increasingly significant concern as claims from other creditors continue to mount – notwithstanding the Court's enforcement of such rights by its clear Order of specific performance.  RLI is entitled to enforcement of the Order as written.  Given Nexus' patent unwillingness to abide by the Order, if RLI is to be provided any relief at all, it is time to appoint a third party to perform the specific acts ordered of Nexus.

Accordingly, for the reasons set forth herein and in its moving brief, RLI renews its request for the appointment of a third-party administrator, with a financial accounting background, or in the alternative, a receiver, to perform the specifically ordered acts that Nexus clearly will not perform on its own, as well as for monetary sanctions.

---

[3] *E.g.*, Nexus' financial condition has no bearing whatsoever on the status of outstanding bonds, which cannot simply be cancelled by its other sureties, or upon the released status of the bonded immigrants, who already have a surety-backed bond to which Nexus is not a party.  Only DHS, which does not look to or rely upon Nexus *for anything*, can cancel outstanding bonds.

## **ARGUMENT**

I.   **There Is No Dispute that Nexus Remains in Contempt of the Collateral Security Provisions of the Order**

More than <u>nine months</u> since entry of the final Order, Nexus remains in clear contempt of its obligations both (i) under Paragraph A.1 to make the Collateral Deposit of $2.4 million with RLI by December 1, 2020; and (ii) under Paragraph A.2 to pay bond penal sums to RLI, on an ongoing basis, as Additional Security, within 48 hours' receipt of a DHS Notice to Deliver, as to which Nexus has provided no collateral security whatsoever on the 39 new NTDs received since the Order issued, on bonds with a total penal sum of $442,500.  *See* Supplemental Declaration of David J. Grycz ("Suppl. Grycz Decl.") ¶ 6 & Ex. C thereto.  Nexus has failed to refute RLI's evidence establishing Nexus' contempt, and it has failed to substantiate a meritorious defense.

A.   <u>Nexus Does Not Contest RLI's Evidence of Contempt</u>

As substantiated in RLI's moving brief, it was not until seven months after the October Order, almost six months from the December 1, 2020 deadline, almost three months after the hearing on RLI's Motion for Contempt, and a month and half after the appointment of a Special Master that RLI received its first payment of collateral security under the Order, on May 27, 2021, and then only in the negligible sum of **$4,500**.  That payment, like its paltry provision of only **$9,282.60** since the July 15, 2021 hearing, is plainly *de minimus* in light of the **$2.4M** Collateral Deposit that was due on December 1, 2020 <u>and</u> the fact that, since the October Order, alone, Nexus received 39 additional NTDs, with a total penal sum of **$442,500**, for which Nexus has never deposited one dime of Additional Security.  Meanwhile, as RLI further noted, Nexus received total revenues for the period of October 2020 through June 2021 of <u>at least</u> $14,607,501.40.[4] (*see* Ex.

---

[4] RLI's limited review of the American Spirit database, from which Nexus has not produced most of its records, suggests that these reported revenue figures may be significantly understated.

D). Significantly, Nexus does not contest any of the foregoing facts, which, alone, clearly establish Nexus' egregious ongoing contempt of the Order's collateral security requirements.

> B.   Nexus Has Failed to Sustain Its Evidentiary Burden of Demonstrating a Meritorious Defense to Contempt

Nexus failed entirely to satisfy its burden, to avoid a contempt finding, by proving that it could not have paid the full Collateral Deposit and the Additional Security as required under the Order, or at any time since entry of the October 23, 2020 Order.  *See United States v. Rylander*, 460 U.S. 752, 756–57 (1983).  Nor has Nexus introduced any evidence to satisfy its burden of demonstrating that it has made "all reasonable efforts to comply," so as to avoid a finding of civil contempt.  *See Consumer Fin. Protection Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020).

Instead, Nexus relies on the single, entirely conclusory allegation that "Nexus has long maintained that it could not comply with the collateral security requirements of the Order without a payment plan or some other means to provide the collateral security to RLI."  Opp. at 8.  This unsubstantiated allegation, which serves as the premise of Nexus' entire defense to enforcement of the collateral security provisions of the Order, does not constitute evidence and thus is plainly insufficient, as a matter of law, to sustain a defense based on any alleged inability to comply.  Moreover, the allegation is wholly contradicted by Nexus' own financial records, which as noted previously, show significant revenues from which Nexus clearly could have satisfied the entire $2.4 million collateral deposit obligation as well as the ongoing Additional Security requirements, at the very least, over the past nine months, in which Nexus has recognized, not less than $14.6 million.  Further, Nexus' election to instead pay only *de minimus* amounts toward this obligation (most of which was belatedly provided just before the July 15 hearing), clearly establishes that Nexus has <u>not</u> made "all reasonable efforts" to comply with the Order.  Accordingly, Nexus has failed to raise a meritorious defense and should be held in contempt.

Moreover, Nexus has entirely squandered its "last chance" opportunity to purge its contempt. In the ensuing 17 days, RLI has received only **$9,282.60** in purported collateral security deposits from Nexus. Suppl. Grycz Decl. ¶ 4[5] Meanwhile, since the July 15 hearing, Nexus has received 3 additional NTDs, with a combined penal sum of $35,500, increasing Nexus' total outstanding penal sum liability on NTDs issued since October 23, 2020, alone, to $442,500, *see* Suppl. Grycz Decl. ¶ 6 & Ex. C thereto, and Nexus has yet to make a meaningful dent in the $2.4M Collateral Deposit obligation, due since December 1, 2020. Plainly, Nexus' *de minimus* provision of collateral security since July 15, 2021 does not constitute anything close to full compliance with the Order's collateral security provisions. Nor would it under any scenario suffice to satisfy Nexus' burden to demonstrate "all reasonable efforts" in an effort to avoid contempt. Nexus' bald assertion that the payment plan it has allegedly followed since July 15, 2021 should resolve RLI's collateral security concerns – even it has been followed (which it has not) – is patently absurd.

Given the foregoing undisputed evidence and Nexus' failure to substantiate a meritorious defense, Nexus should be held in contempt as to the collateral security provisions of the Order.

## II.   There Is No Dispute that Nexus Remains in Contempt of the Books and Records Provisions of the Order

---

[5] On July 19, 2021, RLI received, via email, seven "Payment Confirmation" notices from Nexus purporting to "confirm" Nexus' alleged payment of money orders totaling $59,592, each of which supposedly constituted partial payment toward 20% of Nexus' gross receipts for July 1-4, 2021. *See* Suppl. Grycz Decl. ¶ 5. On July 30, 2021, RLI received, via email, an additional "Payment Confirmation" electronic notice from Nexus purporting to "confirm" Nexus' alleged payment of $7,453.40 by ACH transmission, which allegedly constituted partial payment toward 20% of Nexus' gross receipts for July 6, 2021. *Id.* While it remains unclear whether any of these eight "Payment Confirmation" notices are intended to memorialize the $50,325 in money orders that RLI had already received prior to the July 15, 2021 hearing, as reflected in the Special Master's last Report, they do not line up with RLI's actual receipts. RLI has not received any collateral payments since entry of the October 23, 2020 Order other than as described herein. *Id.*

Notwithstanding the facilitative efforts of the Special Master, which, since his appointment in April 2021, have included convening _at least eight_ status conferences (each of which was approximately 1.5 to 2 hours in duration), issuing numerous detailed correspondences, disseminating two written status reports (with a third report due by August 6, 2021) and, most recently, presiding over four different bilateral reviews of certain Nexus financial databases, Nexus remains in clear and indefensible contempt of its obligations to provide RLI with access to all Books and Records, including, principally, its obligation to provide RLI with extensive books and records bearing on Nexus' financial condition under paragraph C.3 of the Order.  As with the collateral security issue, Nexus does not dispute or even address the vast majority of specific deficiencies delineated in RLI's moving brief, and RLI expects that further deficiencies will be delineated in the Special Master's forthcoming August 6, 2021 report.

As the Court is well-aware from the history of this case, Nexus has resisted every effort to disclose its true financial condition.  To that end, Nexus has engaged, RLI, the Court, and the Special Master in an elaborate ongoing "shell game" – marked by (i) continuous shifts in databases, accounting systems, accountants, and counsel; (ii) a seamless flow of assets and liabilities between and among the alter-ego Defendants and their shareholders, and their combined fleet of subsidiaries; (iii) a persistent refusal to disclose and produce records from the significant databases, systems and accounts actually used by Nexus, at least unless and until RLI can specifically identify them; and (iv) an endless litany of empty promises of the near completion of its efforts to reorganize and reconcile its books and records, which somehow is never achieved  – so as to keep the records Nexus actually uses to operate its business and that reflect Nexus' true financial wherewithal and transactions out of RLI's hands.  Despite the Special Master's exhaustive efforts, little has changed in this regard.

Indeed, Nexus has continued to "hide the ball" during the latest bilateral review exercise, which served more to demonstrate Nexus' production deficiencies and lack of transparency than to demonstrate compliance. For instance, it was not until after it became clear from the limited databases initially made available for review that Nexus had not disclosed essential records that any business would need to operate – including records of receipts, cash balances, and disbursements – that Nexus for the first time, on July 26, 2021, disclosed that it uses a system of online banking portals on a daily basis to manage its receipts, cash balances and disbursements. Although this highly relevant system appears to be the exclusive source of critical records, including deposit source information and transfer detail, Nexus has summarily refused requests from RLI and the Special Master to provide review access to it.

Nexus' lack of transparency and production deficiencies were also exposed in several other ways by the bilateral review, which, contrary to the representations in Nexus' Opposition, was <u>not</u> something Nexus volunteered, nor that constituted unfettered access or compliance under the Order. By way of background, long before the hearing, RLI, with the Special Master's support, had been requesting a bilateral review of Nexus' then-known databases, specifically Lightspeed and NetSuite, not as substitution for the ordered production, but as a means of evaluating the extent of compliance. Nexus steadfastly refused all such requests. It was not until two days before the July 15, 2021 hearing that Nexus finally acquiesced, albeit for a future date and as to Quickbooks, Lightspeed and NetSuite only, and even then, Nexus imposed a 3-hour limit on the entire review.

At about that time, RLI independently discovered through a post-judgment third-party subpoena that Nexus had been using two other, previously undisclosed databases since October 2020, Stampli and Melio, to manage and track disbursements, and so advised Nexus. RLI had also been pressing for access to the unnamed system, which Nexus had only belatedly disclosed (only

in response to RLI's pursuit of unproduced Lightspeed records) had been used as substitute for Lightspeed from late 2020 through February 2021.  Nexus then agreed, on July 20, 2021, to expand the scope of the bilateral review to include Stampli, but not Melio or the Lightspeed substitute.

At that time, Nexus imposed the further restriction that RLI would not be permitted to print or screen-shot anything observed during the bilateral review.  The purpose of this latter restriction, which further precluded unfettered access, became clear when Nexus later argued in its Opposition that RLI could not substantiate Nexus' deficiencies or fraudulent conduct with evidence. To the extent RLI's descriptions from the bilateral review are not supported with records, it is because Nexus has failed to produce them in violation of the Order.

In any event, the initial review of Lightspeed and Stampli revealed that other unproduced databases and records had been withheld.  It was not until then, specifically July 22, 2021, that Nexus for the first time disclosed the name of the Lightspeed database, American Spirit, along with two other databases used since October 2020 that it had not previously disclosed: Fluidpay, yet another POS system, and Airbase a third, previously undisclosed disbursement managing and tracking database.  While Nexus thereafter for the first time allowed limited bilateral review of Melio, American Spirit, FluidPay and Airbase, to RLI's understanding, Nexus has not produced any documents at all from Melio, American Spirit, and Fluidpay, and only limited productions from Stampli and Airbase.

RLI's limited review of these databases further revealed Nexus' lack of transparency and production deficiencies.  For instance, the Melio database, which is the only database from which RLI was authorized to take screen-shots, RLI discovered: (i) two new financial accounts, one "debit card" and one credit card, which Nexus had used after October 2020 to pay expenses, but for which no statements have been produced (*see* Ex. F); (ii) extensive, previously undisclosed

transfers to Richard Moore, with vague references to invoices that, to RLI's understanding, have never been produced (*see, e.g.*, Ex. G); (iii) numerous Nexus real property transactions involving many different real properties, including those carried on Nexus' accounting books (*see, e.g.*, Ex. H); and numerous vendor invoices that, to RLI's understanding, have never been produced.  RLI's review of the other databases raised similar concerns (*e.g.*, showing numerous other transfers to Richard Moore, referencing many other invoices that, to RLI's understanding, have not been produced).  The discovery of real property transactions further reveals Nexus' lack of transparency and production deficiencies as Nexus has inconsistently asserted throughout the Special Master process that Nexus has no real property, and it has produced no real property records at all.

Additionally, Stampli, Melio, and Airbase, appear to be at least a partial replacement for the Verified Valid/Deluxe eCheck database that Nexus used to manage invoice payments as recently as December 2020.  RLI had known about Verified Valid/Deluxe eCheck prior to the October 2020 Order and repeatedly pushed for production of those records.  When Nexus was called to answer that inquiry before the Special Master, Nexus consistently provided completely evasive responses until finally advising for the first time, on July 30, 2021, that all Verified Valid/Deluxe eCheck records have now inexplicably been destroyed.

In light of the foregoing, as well as the many other deficiencies noted in RLI's moving brief and as expected to be noted in the Special Master's impending final report, it cannot be genuinely disputed that Nexus is in purposeful contempt of the Books and Records requirements of the Order.  It is clear that Nexus has continued to "hide the ball" by consistently shifting its databases and accounts to avoid disclosure and production of its true financial records, refusing to produce all financial records – including the very systems it uses daily to record and track receipts and disbursements – until confronted by RLI with evidence of their existence.  This scenario

screams for the appointment of a third party and leaves no doubt that Nexus remains in contempt of the Books and Records provisions of the Order.

### III. Appointment of a Third Party-Administrator to Perform the Specific Acts that Nexus Clearly Will Not Perform Is Appropriate

In light of the clear and convincing record of Nexus' continuing noncompliance with its Injunctive Relief obligations – even after the Court, at the July 15, 2021 status conference, afforded Nexus a "last chance" window to remediate its contumacy – as well as Nexus' failure to make "all reasonable efforts" to comply therewith, the imposition of sanctions commensurate with Nexus' unabashed ongoing defiance of the Order is clearly warranted. It is also urgently needed in light of, *inter alia*, the increasing threats to RLI's bargained-for right to be secured against loss.

As a preliminary matter, it is uncontested that district courts have inherent authority to hold parties in civil contempt and to sanction them for violation of court orders. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain inherent powers … includ[ing] the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") (citation and internal quotation marks omitted); *Redner's Mkts., Inc. v. Joppatowne G.P. LP*, 608 F. App'x 130, 131 (4th Cir. 2015) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

Notwithstanding, Nexus erroneously contends that RLI's requested remedy – namely, the appointment of a third-party administrator with a financial accounting background under Rule 70(a) – is "unavailable as a matter of law" because Nexus' Injunctive Relief obligations are "of a continuous and ongoing nature" such that they are, allegedly, not "discrete, specific acts" subject to the ambit of Rule 70(a). After extensive deliberation, this Court carefully crafted a detailed final Order in which it required Nexus to perform specific, discrete Injunctive Relief acts. The Court provided <u>sums certain</u> to be deposited in collateral ($2.4 million under paragraph A.1 and

additional security in the amounts of the penal sums of bonds for which DHS issues NTDs under paragraph A.2); precise timing requirements for the deposits thereof (Collateral Deposit to be made by December 1, 2020 and Additional Security to be deposited within 48 hours of Nexus' receipt of NTDs); and, with regard to Nexus' Books and Records, a highly-specific, three-tiered set of production obligations subject to specific periodic deadlines, *see* Order ¶ C.  These injunctive obligations are more than sufficiently discrete, specific, and detailed such that they fall squarely within the scope of acts that a third-party administrator may perform under Rule 70(a).[6]

In light of the Court's broad discretionary powers to enforce its Orders and fashion contempt remedies, and as provided in Rule 70(a), the Court is fully authorized to, and should here, appoint a third-party administrator with a financial accounting background to perform the Court-ordered specific acts, at Nexus' expense.  *See, e.g.*, *Columbia Gas Transmission Corp. v. Mangione Enter. of TurfValley, L.P.*, 964 F. Supp. 199, 204 (D. Md. 1996) (appointing a trustee under Rule 70(a) – with authority to take all necessary actions on behalf of the disobedient party, and at its expense, to perform the specific acts ordered); *U.S. Bank Nat'l Ass'n v. Poblete*, 2017 WL 4736712, at *4 (D.D.C. Oct. 19, 2017) (under Rule 70(a) and its inherent equitable authority, court appointed a trustee "with authority to execute and record releases, termination statements, and other instruments necessary to confirm that [defendant] has no interest in the [subject

---

[6] Nexus argues that "marshalling" its assets "is not an express element of the Court's Final Order; therefore, Rule 70 does not provide a legal basis to appoint a third party to do so."  Opp'n at 6.  Again, Nexus is mistaken.  A third-party administrator would perform the specific Injunctive Relief acts that Nexus has failed and refused to do on its own and, incidental to its performance of those discrete acts, may marshal Nexus' assets to the extent necessary to ensure compliance with the Order (*i.e.*, marshal Nexus' assets to ensure immediate performance of Nexus' Collateral Deposit and Additional Security obligations).  *See, e.g.*, *Solis v. Williams*, 2013 WL 497972, at *1-2 (N.D. Cal. Feb. 8, 2013) (appointing independent third party under Rule 70(a) with authority to "collect, marshal, pay out, and administer" the assets of a company's 401(k) Plan for noncompliance with judgment requiring defendant to restore funds owed to the Plan).

property]"); *Almeida-Leon v. WM Capital Mgmt., Inc.*, 2021 WL 2654958, at *3 (D.P.R. June 28, 2021) (granted defendant's motion to appoint Rule 70(a) designee to "execute documents necessary to enforce the Court's judgment"); *Solis v. Williams*, 2013 WL 497972, at *1-2 (N.D. Cal. Feb. 8, 2013) (appointing an independent fiduciary under Rule 70(a) with the authority to "collect, marshal, pay out, and administer" the assets of a company's 401(k) Profit Sharing Plan after the defendant fiduciary and trustee to the Plan failed to comply with a judgment requiring the defendant to restore certain funds owed to the Plan); *see also Dell, Inc. v. Advicon Computer Servs., Inc.*, 2008 WL 2157047, at *10 (E.D. Mich. May 22, 2008) (recognizing authority to appoint third party to perform acts granted in the absence of a supersedeas bond); *and* ECF No. 647.

It is clear that without the requested appointment, Nexus will continue with "business as usual," squandering its assets for unrelated business expenses, and thwarting the Court's Orders. In the nine months since the Order issued, Nexus clearly has had sufficient funds to pay the ordered collateral security but has chosen instead to pay for unnecessary expenses, such as hundreds of thousands of dollars spent on the production of a reality TV series and related social media marketing. Nexus has also diverted extensive funds to Nexus' shareholders. Indeed, in one month alone, May 2021, Nexus transferred $104,399.88 to Richard Moore, from a single bank account, through a series of small mostly-round numbered transactions. (Ex. G). Nexus likewise has transferred significant sums to closely affiliated entities, including extensive monthly payments to Fangistics, LLC and Fixify Solutions, LLC, which are purportedly subsidiaries of Entlest Brands, Inc., for which Richard Moore is the President (Exs. A-B), and Executive Investigation Consultants, LLC, which appears to be run by Nexus' Erik Schneider, (Ex. C). Meanwhile, Nexus has continuously hidden its Books and Records and its true financial condition, including through the concealment of numerous databases and accounts, such as the Trustco bank accounts and the

numerous only recently disclosed financial databases discussed above, for many of which it has produced no records at all.  It has also refused outright to provide access to the databases that it uses daily to manage receipts and disbursements, thereby preventing RLI from identifying the source of incoming funds and to determine how they are being expended, and most recently, has further asserted that its records from one principal disbursement tracking database have been destroyed.  Again, this undisputed evidence of contempt calls out for appointment of a third party.

Moreover, the need for the appointment of a third-party administrator is particularly urgent to effectuate RLI's clear right to be secured with collateral, particularly given Nexus' increasing appearance as a defendant in other lawsuits across the country, each of which significantly amplifies the risk of RLI's irreparable loss of its right to be secured against loss.  Plainly, the impending specter of Nexus' potential liability to new creditors that did not contract to be secured, accentuates the emergent need for the appointment of a third-party administrator to ensure that RLI is immediately provided the bargained-for collateral security to which it is entitled. Accordingly, as Nexus clearly will not perform the specific acts ordered, despite ample opportunity over the past nine-plus months, it is time to appoint a third party to perform in its place.

Nexus' conclusory, self-serving assertion that its business is too sophisticated to allow for the introduction of a financial professional is belied by its own acknowledged prolonged and continuing inability to achieve "financial maturity."  Given its well-documented historic difficulty in managing its own finances and records, Nexus might actually benefit from the appointment of a knowledgeable accounting professional who would (i) facilitate the discharge of Nexus' specifically ordered collateral security obligations to RLI from Nexus' substantial revenues, accounts, and assets; and (ii) review and identify the relevant Books and Records specifically required to be produced under the Order.  Both of the companies identified by RLI in its moving

brief, employ professionals with extensive experience in managing difficult bond programs, including the efficient operation of financial accounts.  RLI can provide the Court with further information in this regard.

## IV.   Alternatively, Appointment of a Receiver Is Justified under the Circumstances

In the alternative, and as previously demonstrated, the appointment of a receiver under Rule 66 would certainly be justified under the circumstances of this case.  *See Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001); *Sky Cable, LLC v. Coley*, 2016 WL 3926492 (W.D. Va. July 18, 2016) (Urbanski, J.); *Chesapeake Bank*, 2014 WL 5500872, at *4 ("The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary.") (quoting *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)); *SEC v. First Fin. Group.*, 645 F.2d 429, 438 (5th Cir. 1981) (where defendants have engaged in deception, "it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste"); *SEC v. R.J. Allen & Assoc.*, 386 F. Supp. 866, 878 (S.D. Fla. 1974) ("the appointment of a receiver is necessary to prevent diversion or waste of assets to the detriment of those for whose benefit, in some measure, the injunction action is brought").   For all the reasons set forth in RLI's Statement of Authorities (ECF No. 647), and in light of Nexus' amplified contempt over the ensuing four months, as detailed in RLI's renewed request and in this Reply, the appointment of a receiver is necessary and appropriate to secure RLI the relief to which it is entitled.

In its Opposition, Nexus principally argues that the appointment of a receiver is unwarranted because RLI "has not produced any actual evidence of 'fraudulent conduct.'"  Opp. at 8.  As previously explained, courts typically consider a range of numerous factors when

determining the propriety of appointing a receiver, only one of which is the existence of fraudulent conduct on the part of the defendant.[7]  *See* ECF No. 647 at 7.  In its initial request from March 3, 2021, RLI included a nine-page detailed analysis of the factors that support the appointment of a receiver based on Nexus' ongoing refusal to comply with the Order, which, in the interest of judicial economy, RLI incorporates herein by reference.  *See* ECF No. 647 at 7-15.  Based on those factors, as amplified by Nexus' ongoing contempt over the ensuing four months, the appointment of a receiver is necessary and appropriate to secure RLI the relief to which it is entitled.

Notwithstanding, even though a showing of fraudulent conduct is not a necessary or dispositive factor for securing the appointment of a receiver, *see id.*, the Court need only consider Nexus' historic and continuing refusal to disclose its true financial condition, transactions, and related records – initially aided by Nexus' years-long refusal to acknowledge the lack of corporate distinction between the alter ego Defendants – to find ample indicia of fraud.  Nexus' analysis of *Sky Cable, LLC v. Coley*, 2016 WL 3926492 (W.D. Va. July 18, 2016) (Urbanski, J.) is actually instructive here, albeit in RLI's favor.  In its Opposition, Nexus attempts to distinguish this case from the facts of *Sky Cable*, in which this Court determined that a receivership was appropriate "given [defendant's] history of deception and efforts to evade judgment, a receivership is appropriate."  2016 WL 3926492, at *1.  Given Nexus' long history of evasion and deception with respect to its finances and records in this case, including in pre- and post-judgment discovery, RLI disagrees with Nexus' conclusion that *Sky Cable* represents "a very different set of facts."

As Nexus notes, the defendant in *Sky Cable*, among other improper conduct, "diverted programming revenue intended for [plaintiff]," "following an adverse judgment, … failed to

---

[7] Importantly, a showing of fraudulent conduct is *not at all* the standard, or in any way a prerequisite, for appointing a third-party administrator under Rule 70(a).

respond at all to [post-judgment] discovery in aid of execution" and "gave conflicting testimony under oath," Opp'n at 10.  The Court need only review the motions currently before Judge Hoppe to see evidence of some strikingly similar facts in this case, including without limitation, refusals to respond post-judgment discovery and conflicting testimony under oath regarding asset transfers between and among Nexus owners and subsidiaries.  *See* ECF No. 653 at 1–5; ECF No. 660 at 8–10; ECF No. 678 at 4–5; ECF No. 689 at 4-5.  Further, in expending at least $14.6 million in revenues over the nine months during which it wholly refused to satisfy its collateral security obligations as ordered, including on patently unnecessary expenditures, (e.g., large unexplained transfers to Nexus shareholders and their side ventures, such as the production of reality-TV series, extensive transfers to Richard Moore and other insiders, and large charitable donations), Nexus has clearly diverted revenues that could and should have been used to collateralize RLI.  Additionally, like the *Sky Cable* plaintiffs, RLI has been "forced to file countless motions in an effort to secure [defendant's] compliance with Court orders," and, absent appointment of a third-party administrator or, in the alternative, a receiver, there is a strong "probability" that Nexus' delay and obstruction tactics "will continue in an effort to frustrate [RLI's] valid claim as a judgment creditor."  *Sky Cable,* 2016 WL 3926492, at *20; *see also Projects Mgmt. Co. v. DynCorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) (courts "must consider the whole of the case in choosing the appropriate sanction").  Based on Nexus' own analysis, and its well-established nine-month history of diverting funds to profligate and unnecessary expenditures, transfers to insiders, and concealment of the records that show its true financial wherewithal, it is clear that the facts of the instant case entirely justify appointment of a receiver.

Nexus also mistakenly maintains that the "imposition of a receiver will most likely harm RLI more than the *status quo ante*."  Opp'n at 8.  After more than 3 years of contentious litigation,

in which RLI *still has not been provided* its bargained-for, Court-ordered collateral security and access to Nexus' books, records and accounts to enable RLI to develop a reasonable assessment of Nexus' financial condition, despite expending significant fees to obtain such relief, RLI is confident that the *status quo* will do far more harm to RLI than would result from the appointment of either a third-party administrator, or, in the alternative, a receiver.

Nexus further erroneously argues at length that appointment of a receiver is unnecessary because, by allegedly funneling 20% of its daily revenues/gross receipts to RLI, "Nexus has put forth mechanisms to accomplish the collateral security requirements whereby negating the need for a receivership." Opp'n at 7. As a threshold matter, Nexus has not established an inability to pay, and the entire amount required under the Order, without modification, is required to be paid as collateral. Additionally, as Nexus has clearly not been transparent with the disclosure of its records, Nexus has not established the amount of its daily revenues/gross receipts. In any event, the relatively small size of such payments, pales in comparison to the security required under the Order, which the Court determined was the bare minimum needed to secure RLI against loss.

Additionally, Nexus' heavy reliance upon its unsubstantiated assertion that it has been paying 20% of its daily revenues to RLI as collateral security is misplaced in that the allegation is entirely untrue. Specifically, since the alleged commencement of these payments on July 15, 2021, RLI has received *only three such additional payments* from Nexus – specifically, (i) an **$18.00** ACH transmission received on July 22, 2021;[8] (ii) a **$5,000** wire transfer received on July 23,

---

[8] According to Nexus' notation accompanying this ACH transmission, its "gross receipts for 7/4/21 was $20,758. 20% was allocated for RLI in the amount of $4,151.60. This [$18] is a partial payment towards this balance." (*See* Ex. E).

2021;[9] and (iii) a **$4,264.60** wire transfer received on July 26, 2021.[10]  *See* Suppl. Grycz Decl. ¶ 4. Nexus' notations accompanying these three payments indicate they are derived from Nexus' calculation of 20% from *only 2 days'* receipts – specifically July 4 and 5, 2021.  Moreover, the *de minimus* sum of the only three payments actually received, $9,282.60, even falls well short of the promised 20% of gross receipts for the corresponding days, which Nexus calculates as $13,415.60. *See fns.* 8-10, *supra*.  Nexus' representations regarding both the actual implementation and the value of this alleged self-imposed payment plan, which in no way reflects meaningful compliance with the collateral security orders, are wildly exaggerated and warrant no consideration regarding the requested appointment.

Accordingly, and in light of Nexus' indisputable contempt of the Order and long prior history of contumacy in these proceedings, RLI renews its request that the Court implement a third-party administrator with a financial accounting background under Rule 70(a), or in the alternative, a receiver under Rule 66, including either of the companies proposed in RLI's moving brief – Vertex Funds Control and Accounting Services or the Guardian Group – from which RLI may identify specific individual candidates to assist the Court.

V.      **RLI Should Be Compensated for Its Enforcement Costs and Fees through Sanctions, and Nexus' Nominal Cross-Motion for Sanctions Should Be Summarily Denied**

As indicated in its moving brief, through this Motion and other ongoing enforcement efforts, including related to the months-long proceedings before the Special Master, RLI is clearly being required to expend significant additional legal costs and fees as a direct result of Nexus'

---

[9] According to Nexus' notation accompanying this wire transfer, its "gross receipts for 7/5/21 was $46,323.  20% was allocated for RLI in the amount of $9,264.30.  This [$5,000] is a partial payment towards this balance."  (*See* Ex. E)

[10] According to Nexus' notation accompanying this wire transfer, its "gross receipts for 7/5/21 was $46,323.  20% was allocated for RLI in the amount of $9,264.60.  This [$4,264.60] is a partial payment towards this balance."  (*See* Ex. E).

ongoing contumacy.  RLI has requested that the Court exercise its inherent contempt powers and broad discretion to compensate RLI for these related losses by, at minimum, awarding RLI a further damages judgment as to its additional legal costs and fees incurred in connection with this Motion and other enforcement proceedings.[11]  *See Rainbow School, Inc.*, 887 F.3d at 617 ("To ensure compliance with its orders, a district court['s]…power includes the ability to award damages and attorney's fees to an aggrieved party.") (internal citations omitted).

Nexus did not directly address – and certainly did not rebut – the propriety of RLI's request for enforcement costs and fees through sanctions.  Given the extensive additional costs and fees that RLI has been forced to incur in its nine-month pursuit of the yet-to-be obtained relief that it was expressly granted, which are substantial and vastly outweigh the pittance of collateral received to date – all resulting from Nexus' entirely obstinate refusal to perform as ordered – the Court should, as a contempt sanction, grant RLI a further judgment for its legal fees and costs incurred.

Rather than engaging on the substantive merits of RLI's request, Nexus has reverted to its familiar, yet still-unavailing tactic of going on the "offensive" to deflect attention from its noncompliance with the Order and related liability for the resultant legal costs and fees incurred by RLI.  In this regard, in concluding its brief, Nexus shoehorned in an approximately 1.5-page section, a purported cross-motion for sanctions, vaguely alleging that RLI violated the protective order by filing "Nexus's confidential financial data in the public ECF system."  Opp'n at 11.

As the Court may recall, Nexus' principal argument for an expansive protective order in this case was facially premised on the noble purpose of protecting the privacy of the immigrant bond principals.  However, Nexus has since attempted to use the protective order to keep virtually all of its own business information out of the public record.  Indeed, it stamped nearly every record

---

[11] RLI intends to submit an itemized accounting of its updated legal expense for the Court's review.

produced in discovery in the underlying case as "confidential" and "subject to the protective order," in an improper transparent attempt to impair RLI's ability to prosecute its case.  When RLI attempted to file such documents under seal, the Court clarified that Nexus' business records, generally were not the object of the protective order, but rather the order was intended to cover the private information of the bond principals.  Judge Hoppe has since admonished Nexus for abusing the protective order in similar fashion, ruling that Nexus could not avoid ECF publication of information "identifying information for businesses, including names, locations, employees, owners, and/or purchase price" and "other information such as invoice numbers, amounts paid or due, or bank names."  ECF No. 493, Order at 4.  Judge Hoppe further ordered that Nexus could not shield from the public record, "[r]eferences to bank names and locations, statements, collateral, company accounts, profit and loss statements" as well as "[f]inancial information like revenue and charges."  *Id.* at 6.

Nexus has failed to demonstrate any violation of the protective order.  Indeed, Nexus makes no effort to show how any specific record actually warrants protection by a protective order.  Certainly, documents are not inherently subject to a protective order simply because they list *names* of payees and the *amounts* of those payments.  Nexus' surface-level contentions fail to establish a violation of the protective order, and the Court should not entertain Nexus' retaliatory impromptu motion.

For these reasons, RLI respectfully submits that, upon the Court's review of RLI's forthcoming itemized accounting of its updated legal costs and fees incurred in connection with this Motion and other enforcement proceedings, the Court enter a further damages judgment to

compensate RLI accordingly, and that it summarily deny, with prejudice, Nexus' factually and legally deficient "cross-motion for sanctions."[12]

## CONCLUSION

WHEREFORE, for the foregoing reasons and for the reasons set forth in its prior related pleadings, including ECF Nos. 607, 622, 647, 694, RLI respectfully renews its request that the Court: (i) appoint a third-party administrator with a financial accounting background – or, in the alternative, a receiver under Rule 66 – to perform the specific acts previously ordered as Injunctive Relief; (ii) enter a further damages judgment ordering Nexus to pay all legal fees and costs incurred by RLI in attempting to enforce the same; and (iii) deny, with prejudice, Nexus' "cross-motion for sanctions."

DATED:          August 1, 2021                    Respectfully submitted,

                                                  **RLI INSURANCE COMPANY**

                                                  By its Counsel:

                                                  */s Vivian Katsantonis*
                                                  Vivian Katsantonis (VSB No. 30448)
                                                  Christopher M. Harris (VSB No. 48361)
                                                  John F. Finnegan III (VSB No. 93880)
                                                  *Counsel for RLI Insurance Company*
                                                  Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
                                                  1765 Greensboro Station Place, Suite 1000
                                                  McLean, Virginia 22102
                                                  Tel: (703) 749-1000
                                                  Fax: (703) 893-8029
                                                  Email: vkatsantonis@watttieder.com
                                                  Email: charris@watttieder.com
                                                  Email: jfinnegan@watttieder.com

---

[12] Should the Court elect not to deny Nexus' desperate sanctions gambit, RLI requests seven (7) additional days to prepare a responsive brief dedicated solely in opposition to Nexus' nominal cross-motion.  *Compare* L.Civ.R. 11(c)(1) (non-moving party "must file a responsive brief … within 14 days after service") (emphasis added) *with* ECF No. 699, 7/20/21 Order ¶ 1 (issued prior to Nexus' filing of its cross-motion in which the Court provided RLI 7 days to submit a reply brief).

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

*s/ Vivian Katsantonis*
Vivian Katsantonis