IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:18-cv-00066-MFU |
| | ) | |
| NEXUS SERVICES, INC., et al., | ) | |
| Defendants, | ) | |
| _____ | ) | |

**NEXUS SERVICES, INC.'S MOTION FOR SANCTIONS AGAINST RLI FOR IMPROPER CONDUCT UNDER THE COURT'S INHERENT POWER TO SANCTION**

Defendants NEXUS SERVICES, INC., *et al.* ("Nexus"), through undersigned counsel, hereby move pursuant to the inherent power of the court, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), for sanctions on plaintiff RLI INSURANCE COMPANY ("RLI") and RLI's counsel: Vivian Katsantonis, Christopher M. Harris, and John F. Finnegan III (collectively RLI's "Counsel") and for other and further relief as the Court deems just and proper. In support, Nexus submits its statement of facts, authority, and argument below dated August 9th, 2021.

**PRELIMINARY STATEMENT**

RLI's Counsel engaged in bad faith conduct, disruptive litigation tactics, the hampering of a protective order, and litigation designed with the specific intent to pursue a personal vendetta. Courts have a duty to control their court proceedings and may punish conduct that disrupts a court order. Courts may exercise a variety of methods in controlling their court proceedings, including granting sanctions

against attorneys, ordering compliance with a protective order, conducting investigations, and barring persons from their court rooms.

## STATEMENT OF FACTS

On July 15, 2021, RLI was before this Court with the same predictions of doom and gloom that they've brought to this court, on multiple occasions, for the sole purposes of vexatiously gaining an edge in litigation.

The Court is aware of Nexus' offer of depositing 20% of its daily revenues to RLI. In fact, this Court expressed particular interest in judging Nexus' compliance. The clear inference from the Court, by calling the hearing "Nexus' Last Chance Hearing", is that if Nexus failed in its commitment the Court may well order a receivership.

Nexus has complied, yet RLI is still not satisfied as RLI's primary focus is not for a business solution, but for a receivership which would be the Demise of Nexus; Receivership has been sought since April of 2018 in this case. The receiver is the point of this abusive and vexatious litigation tactic, and the practice is designed to compel the Court through patent misrepresentation to improperly alter its order, which is currently on appeal to the 4th Circuit.

RLI wants this court to help it commit a business execution rather than finding a business solution to a business problem. Facing the prospect of losing its receivership request, counsel for RLI chose rather to lie to the Special Master.

On August 1, 2021, Chris Harris filed a brief with the Court (ECF709, p.4) contesting the payments Nexus had reported. Mr. Harris told the Court that Nexus had not made paymentsa when their own system confirms the payments. This lie was continued for nearly a week. When Nexus responded that each of the payments had receipts from RLI's internal payment processor, RLI brazenly capitulated

and acknowledged the extra payments after causing significant delay in reporting to the Special Master, which in turn caused nexus to incur additional costs by having to work through the weekend.

Despite RLI's misrepresentations to the Master regarding received payments, Mr. Harris then sends an 11th hour email on August 6, 2021, acknowledging the payments, but now contesting Nexus' payments by credit card. Nexus learns through this communication of RLI's intent to not accept any collateral payments through their credit card portal, making it even harder for Nexus to make collateral payments to RLI.

Nexus complied with its commitment to the Court despite RLI's hinderance and outright interference. Nexus made the following payments since the July 15 hearing (and in the weeks before the hearing) when Nexus made its 20% revenue commitment:

1. On July 1, 2021 Nexus paid RLI $15,500, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

2. On July 2, 2021 Nexus paid RLI $3,749.20, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepesentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

3. On July 2, 2021 Nexus also paid RLI $5,575.80, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentation of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

4. On July 7, 2021 Nexus paid RLI $11,661.60, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentation of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

5. On July 7, 2021 Nexus also paid RLI $4,838.20, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

6. On July 8, 2021 Nexus paid RLI $4,133.60, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

7. On July 15, 2021 Nexus paid RLI $10,000, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

8. On July 16, 2021 Nexus paid RLI $10,000, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

9. On July 16, 2021 Nexus paid RLI $10,000, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations

of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

10. On July 20, 2021 Nexus paid RLI $5,000, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

11. On July 20, 2021 Nexus paid RLI $4,264.60, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021. RLI had received hundreds of thousands of dollars at that time.

12. On July 25, 2021 Nexus paid RLI $10,000, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021. RLI had received hundreds of thousands of dollars at that time.

13. On July 27, 2021 Nexus paid RLI $10,000, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021. RLI had received hundreds of thousands of dollars at that time

14. On July 27, 2021 Nexus paid RLI $7,453.40, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

15. On July 28, 2021 Nexus paid RLI $8,775.00, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021. RLI had received hundreds of thousands of dollars at that time.

16. On July 29, 2021 Nexus paid RLI $7,053.40, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresetnations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021. RLI had received hundreds of thousands of dollars at that time.

17. On July 30, 2021 Nexus paid RLI $8,992.80, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresetnations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

18. On August 2, 2021 Nexus paid RLI $4,279.60, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresetnations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021

19. On August 2, 2021 Nexus paid RLI $3,785.20, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

20. On August 3, 2021 Nexus paid RLI $7,285.20, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

21. On August 3, 20201 Nexus also made an additional payment to RLI for $4,000.00. RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

22. On August 4, 2021 Nexus paid RLI $6,735, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

23. On August 4, 2021 Nexus also paid RLI $19,618.00, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60  up to August 6, 2021.

24. On August 4, 2021 Nexus also paid RLI $20,660.40, RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made

        misrepresentations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

25. On August 4, 2021 Nexus paid RLI $16,674.40. RLI provided false information to the Court and the Special Master by denying this payment was made. RLI made misrepresetnations of fact and asserted to the Court and the Special Master that Nexus had only paid $9,282.60 up to August 6, 2021.

In addition to the above made payments, there are currently several payments processing and awaiting acceptance by RLI in the amount of $17, 641.50.

In all of the above instances as a whole, RLI had received hundreds of thousands of dollars for which RLI refused to acknowledge with candor to the Court and the Special Master. Because RLI is intent on a business execution with regards to Nexus's business solution, Nexus has no choice but to pursue sanctions against RLI for RLI's intentional actions in abusing this Court's Order.

**Nexus' total revenue in lightspeed for the period of July 15 – August 1 is $859,901 (obtained from Lightspeed). Nexus's total remittance to RLI in the same period was $$174,577. This represents 20.3% of Nexus' daily revenue**. This calculates revenue as of August 1, because due to RLI's obstinance in accepting payments it takes several days to credit. Were the Court to compare the revenue of the period of July 15 – August 8, the total revenue is $1,106,482.  Even though no payments from after Aug 1 have yet credited, but counting the 20% payments from when they began at the biggening of the month, the percentage of revenue payments is still 21.3%  If you take into account the payments currently pending,  the  revenue percentages of what Nexus has paid are even higher.

The Court should take note that complying with this order was made nearly impossible by RLI and their Counsel demanding three bilateral reviews, knowing they would shut our finance department

down, made it impossible to transfer payments on three separate occasions. Additionally, on August 6, 2021 RLI seized approximately $9,000 from a Libre by Nexus Comerica account. This account seizure, on the weekend just before the hearing on RLI's motion for sanctions, is yet another tired and desperate attempt by RLI to manufacture a crisis and compel the Court to act through untruths and innuendo. In addition to taking note of Nexus' compliance, nexus requests the Court note RLI's obstinance. Nexus further asks the Court to note that without the Special Master's involvement, RLI's efforts to thwart Nexus' payments would have been successful.

When considering RLI's report to the Special Master of August 1, that only $9,282.60 had been paid to RLI, the Court must acknowledge that it is RLI that has actively worked against Nexus' compliance. The problem is this behavior has been occurring from the beginning of this litigation. It will only end if the Court punished RLI's obstinance and, indeed, the fraud committed upon the Court when they provided false information to the Special Master. Given this fraud on the Court occurred on the eve of a hearing where Counsel for RLI is seeking the dramatic penalties of receivership and jail for Nexus executives, and this fraud on the Court becomes more shocking. RLI's hubris and their willingness to provide false information to this Court requires the Court to evaluate their motives to determine if RLI has only one goal in mind… receivership. They have been asking for it since the first preliminary injunction hearing in April of 2018, and that request has been renewed dozens of times. However, at each turn RLI is the cause of its own crisis, a series of which were designed to bring us to this day. Fortunately for justice's sake this Court can now clearly interpret the agenda of RLI. That agenda seeks to use the injunctive relief process to completely change the Court's order, after preventing Nexus from discharging liability by providing a new surety (which is Nexus' right). RLI came to this Court seeking a ridiculous $10,000,000 collateral fund. When they did not get that from this Court, they began to engage

in a strategy to push Libre into receivership at all costs. This is improper, and as a fraud was committed on this Court by RLI the Court must respond.

RLI filed this lawsuit on April 12, 2018, and from the first filings in this case RLI's counsel has raised the specter of the immediate bankruptcy or insolvency of Nexus. This Court responded to RLI's concerns by entering multiple preliminary injunctions. As has been noted by the Court, RLI's predictions have not come true. In fact, RLI has used both the preliminary and post judgment injunctive relief to intentionally cause the result it wrongly predicted. RLI's conduct demonstrates its true intention of sending Nexus into receivership, and ultimately destroying the company.

RLI's enforcement of the Order is not for the purpose of conducting an actual risk assessment of its pool of immigration bonds, as the Court intended (indeed, during one of the bilateral reviews, RLI'S counsel even stated that it was "not interested in our bond data" but only interested in Nexus's "financial records) As should be clear, RLl's sole agenda, now, is to force Nexus into receivership at all costs and consistent with its recent filings.

RLI has yet to reasonably investigate Nexus's and the Special Master's requests to resolve the issue with RLIs payment system that prevented Nexus from sending large dollar payments to RLI through its online portal.

RLI frustrated Nexus' payment of the 20% in the period before the August 10 hearing, delaying Nexus' ability to transmit large payments and continuing to refuse or delay in answering questions posed by Nexus and the Special Master.

Ms. Katsentonis specifically rejected Nexus's offer to pay RLI 20% of receipts directly from Nexus's merchant bank. RLI must first authorize its bank to receive these direct payments from Nexus's merchant bank. This is separate from the ACH and credit card information RLI recently provided on

July 8, 2021. Nexus does not have the authority to set this up on its own. RLI knows this yet ignores its refusal to permit said deposits and then attacks Nexus payment processing delays. This is another problem of RLI's own making.

Separately, Nexus (and the Special Master) are still awaiting an answer from RLI on how to remove the artificial limits RLI has placed on Nexus's ability to make larger collateral payments to RLI through RLI's credit card portal.

RLI's obfuscation required Richard Moore to make large payments on personal credit cards, which RLI then uses to accuse Nexus' principals of wrongdoing. Indeed, it was Moore's commitment to following the Court order that led to Nexus (and the Special Master) asking multiple times for information that would facilitate Nexus' payment of the 20% daily amount Nexus offered. The Special Master asked RLI no less than 7 times to provide information concerning how Nexus could make larger payments, and only at the end of the process did RLI state they do not wish to allow Nexus to make credit card payments. RLI frustrates Nexus' ability to comply with the Court's order, then runs to the Court using its own manufactured crisis. The Court has four years of ECF records that demonstrate RLI's tendency to use this abusive litigation practice. By providing false information or manufacturing crises to compel the Court to install a receivership belies RLI's ultimate goal in this litigation, to destroy Nexus. This Court's order never intended that, nor did it intend to shut down a company that serves tens of thousands of vulnerable immigrants by entering injunctive orders that permit RLI to engage in this practice. The Court must use its inherent power to right this wrong that has been perpetrated against this Court for four years of litigation.

RLI materially misrepresented to the Court and the Special Master that Nexus has only paid $9,282.60 in collateral, for the sole purpose of skewing the Special Master report. Indeed, a review of the Special Masters final report shows dozens of instances where the Special Master had to rein in RLI's

dramatic and spurious claims. Counsel are officers of the Court and are commanded to conduct themselves in a manner consistent with that responsibility. Intentionally providing false and misleading information to obtain such a dramatic litigation advantage is not clever lawyering, its blatant disregard of the Court process. On July 15, 2021, this Court made it clear that the Special Master stood in the shoes of the Judge. RLI's conduct demonstrates its non-compliance for this process, as they seek no business solution; RLI prefers a business execution.

Nexus's compliance with its 20 Percent commitment is of great concern to RLI—not because RLI is eager to receive such funds, but instead because Nexus's compliance might upset their tactical goal of destroying Nexus via receivership. Nexus has made good faith efforts to comply with repayment of funds, however, RLI has created their own obstacles into receiving said payments. The evidence for this claim is not merely founded in RLI's blatant refusal to facilitate payments by limiting manners in which funds are received but found further in RLI's latest filing to the Court, which materially misrepresents Nexus' 20 Percent payments since July 15, 2021.

Had the Special Master not been involved in this litigation, RLI would have made it impossible to comply by not providing payment options and by not agreeing to accept collateral payments. These concessions came because of the Special Master's involvement, and they pave the way for a business solution to the parties pending dilemma. Thus, for equity purposes alone, this Court must reign in RLI's abuse of the injunctive relief process in order to enable a business solution to occur.

RLI also asserts that Nexus has not provided any additional security for three more NTD bonds that arrived since July 15, 2021. The very premise of this complaint is confounding (and another perfect example of RLI's bad-faith efforts to try and confuse the Special Master and/or overwhelm Nexus with so many complaints that a response within the designated time periods becomes an impossibility.) As the Court may recall, and as RLI knows, Nexus consented—after numerous attempts to confer—to allow

12

RLI to allocate all of Nexus's collateral payments as RLI sees fit, in RLI's sole discretion. To reiterate this point, Nexus provides RLI with at least 20% of its daily gross revenues, and RLI chooses how it wants to allocate these funds against A(l) and A(2) Of the Order. Therefore, if RLI has chosen to allocate 100% of Nexus's collateral contributions to A(l), as is their right, then they have no cause to complain that RLI itself chose to not allocate any additional security toward A(2). Nexus can only refer RLI to its own internal personnel to determine why RLI elected to deny an application of Nexus-collateral to NTD bonds.

Additionally, the accusations brought by RLI with regards to Nexus destroying records is nothing more than an attempt to seduce this court through baseless and defamatory allegations against Nexus to gain an edge in litigation and to abuse the injunctive relief processes. RLI, in bad faith, accused Nexus of destroying records related to Verify Valid and ECheck portals. These accusations lack candor as RLI knows that once Nexus closed these accounts, access to their portals was lost; Nexus did not retain any data internally because, while such accounts were open, the data was viewed only from the relevant company's portal. To date, Nexus has provided everything in its possession on this topic and Nexus has not destroyed any documents in its possession in this area. Further, Nexus, for the sake of transparency, invited RLI to approach the vendors to obtain their records. Thus, if RLI is missing records, it is from their own lack of diligent review, and not from some nefarious attempt by Nexus.

RLI is not litigating for a business solution, its litigating for a business execution. Nexus is confused about RLI's interest in real estate when it simultaneously asserts that Nexus's offer to cover its entire A(l) collateral obligation is useless as such properties are encumbered when equity exists on these properties to satisfy the injunctive relief Ordered. See **Exhibit 1**, Email from Chris Harris concerning RLI's disinterest in the properties in question. Despite Nexus' principals to offer property not owned by

13

Nexus as collateral, RLI refused to consider the collateral security and has instead concurrently sought to hold the parties in contempt over the same property refused as collateral.

Nexus has offered not one, but two potential replacement sureties. Both sureties (Financial Casualty and Surety and American Surety) had clarified to RLI that they required RLI to (1) identify its book of business enabling a due diligence review, and (2) seek approval from DHS to transfer the liability from one surety (RLI) to the receiving surety. In both cases RLI refused to comply, instead stating to the Court that it was the responsibility of the potential receiving surety to obtain the necessary approvals for the transfer of liability. Again, RLI makes misrepresentations to the Court because a surety cannot gain transfer a book of business it does not own.

Lastly, RLI proposed a forensic accountant that should be disqualified for conflict of interest and lack of specialized knowledge. Raymond Peroutka, the forensic accountant offered by RLI, has no experience or expertise with NetSuite or the systems Nexus uses. Rather, Mr. Peroutka is an expert on receiverships, which has been the goal of RLI since April of 2018 in this case. RLI had an opportunity to hire an expert on the systems Nexus uses. Why would RLI rather hire an expert on receiverships than someone with even a baseline experience with systems like NetSuite? The answer is clear… RLI has one goal… destroying Nexus and bringing the company into receivership. They asked pretrial, and this Court rightly said NO. They asked after summary judgment, and this Court rightly said NO. They have asked several times since. They chose an expert who has no experience with NetSuite, but a career's worth of experience as a receiver. RLI was unhappy with the Court's decision in this case. Not able to achieve their goal of Libre's destruction legally, they have resorted to abusing the Court process and misrepresenting facts to the Court. There can be no more serious allegation against a lawyer, but the facts speak for themselves.

# ARGUMENT

A. **Sanctions Under the Inherent Power of the Court Are Appropriate Because RLI and its Counsel Engaged in Harassment, Bad Faith, Disruptive Litigation Tactics, the Hampering of a Protective Order, and Litigation with the Specific Intent to Pursue a Personal Vendetta.**

Courts may impose sanctions awarding attorney costs, dismissing actions, prohibiting access to courts when the opposing party exhibits litigation abuse, bad faith conduct, or the misuse of litigation proceedings. A judge possesses the inherent authority so sanction a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The judge's inherent power "extends to a full range of litigation abuses." *Michel v. United States*, 112 Fed. Appx. 252, 256 (4th Cir. 2004).

In *Chambers*, Petitioner Chambers used fraud, false and frivolous pleadings, and attempted "oppression, harassment, and the massive [production of] expenses to reduce [NASCO] to compliance." *Chambers*, 501 U.S. at 33 (referencing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). Rule 11 was inapplicable in *Chambers* because the conduct became apparent *after* the completion of the trial. *Id* at 32. The Court thus used its "inherent power in imposing sanctions" to "assess attorney's fees as a sanction for bad-faith conduct in litigation.," in which the United States Supreme Court held was proper. *Id.*

Just like in *Chambers*, RLI has used fraud through misrepresentations made to the court via false and frivolous pleadings, and has attempted oppression, harassment, and created impossibilities for Nexus to confer payments to remain in compliance with this Court's ruling. Thus, this Court has the inherent authority in imposing sanctions, as well as assessing attorney's fees against RLI, for its bad faith conduct in litigation.

B. **Federal Courts Have a Duty to Control Their Court Proceedings and May Pursue a Variety of Methods for Exercising Such Duty When Attorney Conduct Rises to the Level of Bad Faith.**

Federal district courts also have the inherent power and interest in "controlling the administration of [their] court proceedings [when bad faith conduct exists by imposing appropriate sanctions]. *Interstate Narrow Fabrics, Inc. v. Century United States, Inc.*, 2006 WL 435726 at *18 (M.D.N.C. 2006). Typical methods for exercising a court's inherent authority include: "[1] issu[ing] orders, [2] punish[ing] for contempt, . . . [3] conduct[ing] investigations as necessary to exercise [its] power, [4] bar[ring] persons from their court room, [5] assess[ing] attorney's fees, and [6] dismiss[ing] actions." *Id.* Federal courts find this inherent power and methodology in an organic manner: it is "not defined through reference to a specific rule or statute." *Id.* Attorneys who lack candor with the Court in order to gain an edge to litigation fall under this authority and grant this Court the power to sanction bad faith counsel.

Here, counsel for RLI has made direct misrepresentations to this Court, proposed forensic accountants that have glaring conflicts of interest and stand to profit off Nexus's demise, and have advised their client to create impossibilities for Nexus to pay on the Judgment ordered by this Court. Thus, counsel for RLI is sanctionable under this Court's authority, and Nexus requests such action.

### C. Courts May Exercise Their Inherent Power to Sanction to Punish the Disruption of a Court Order.

In addition to bad faith generally, "a federal district court may wield its inherent sanctioning powers "when a party shows bad faith by delaying or disrupting the litigation or by hampering the enforcement of a court order." *Blue Cross Blue Shield of N.C. v. Jemsek Clinic, P.A. (In re Jemsek Clinic*, P.A.), 850 F.3d 150, 157 (4th Cir. 2017). Particularly, courts possess the inherent power to sanction a party for noncompliance with a protective order. *Hunt v. Enzo Biochem, Inc.*, 2011 WL 4840713 at n. 45 (S.D.N.Y. 2011).

Finally, *Byrd v. Hopson* particularly speaks to the case at bar. In *Byrd v. Hopson*, the U.S. Court of Appeals for the Fourth Circuit affirmed the district court's judgment awarding sanctions because the continuation of the lawsuit was pursued inappropriately because of (1) the "specific intent to harass and pursue a personal vendetta"; and (2) the court's opinion that Byrd and Diggs (Bryd's attorney) pursued the case "with the specific intent of circumventing the state Court's dismissal of their earlier suit [by Diggs] multiplying the proceedings [in violation of 28 U.S.C. § 1927] by identifying 34 individuals as having discoverable information." 108 Fed. Appx. 749, 755-56 (4tth Cir. 2004).

By creating obstacles and impossibilities in Nexus's abilities to pay their Judgement, RLI has shown bad faith by delaying and disrupting the instant litigation by hampering the enforcement of this Court's Order.  In December, after being alerted those payments were enroute, RLI seized bank account funds before the checks could clear. They also cashed the checks, and then made the returned checks part of their argument for contempt. In that instance they seized more than $300,000 and credited it to attorney's fees. The act of applying the funds is certainly a matter for their discretion, but to seize money you know has been paid to you, alter how its paid, then run to the Court for sanctions is not clever, its contemptuous. Even during the recent Special Master process RLI seized approx. $9,000 from a Libre Comerica bank account. This was an effort further designed to frustrate Nexus' ability to comply, as the account seizure took place on Friday August 6, 2021. Thus, by turning down payments from Nexus and by making barriers in how Nexus can pay, RLI has delayed and disrupted this Courts Order and are thus sanctionable.

**D. The United States Code Allows Courts to Award Attorney's Fees as a Sanction for Multiplying Proceedings.**

28 U.S.C. § 1927 additionally governs awarding attorney's fees as a sanction, stating: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by

17

the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Nexus has had to incur substantially more cost over and above the Judgement Ordered on the post-litigation end because it has had to incur further fees in connection to the drafting of this Motion, as well as Court appearances to defend the numerous misrepresentations filed by RLI post judgement. Thus, this Court should award attorney's fees to Nexus.

## CONCLUSION

For the reasons set forth above, Nexus's Motion for Sanctions Under the Court's Inherent Power to Sanction should be granted, RLI and its Counsel should be held jointly liable to pay Nexus's attorney's fees and expenses incurred since July 15, 2021, and the Court should order compliance with the confidential information protective order, conduct an investigation as necessary into RLI's abuse of the injunctive relief process. The Court should order the Special Master to continue his work for the next 6 months, at which time the Injunctive relief judgment should be satisfied in full. The Court should order the Special Master to review pleadings for inaccuracies or signs of abusive or vexatious litigating and should take such steps as necessary to sanction or otherwise recommend to this Court appropriate sanctions should the behavior continue. Finally, the Court should consider the serious nature of the contempt shown to the Court by Counsel for RLI, particularly Ms. Katsantonis. The Court should fashion a punishment that is sufficient to prevent similar abuse in the future.

Respectfully submitted this 10th day of August 2021.

/s/ Christopher M. Okay
Christopher M. Okay  VSB#35611

Chris Okay, Attorney at Law
117 S. Lewis St, Suite 218

Staunton, VA 24401

/s/ Carl A. Anderson

Carl A. Anderson
Rock Spring Law Group, PLLC
2000 Pennsylvania Ave, NW
Washington, DC 20006
Tel: (202) 258-2776
caa@rockspringlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this 10th day of August, 2021, a copy of the foregoing **DEFENDANT NEXUS SERVICES, INC.'S MOTION FOR SANCTIONS UNDER THE COURT'S INHERENT POWER TO SANCTION** was served by ECF, correctly addressed to:

Vivian Katsantonis
Christopher M. Harris
John F. Finnegan III
 Counsel for the Plaintiff

                                                /s/ Christopher M. Okay
                                                Christopher M. Okay