DocuSign Envelope ID: AB8328F2-8F59-4BF4-A8A3-F4C99CC051A5

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:18-cv-00066** |
| | ) | |
| **NEXUS SERVICES, INC.,** *et. al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF MICHEAL DONOVAN

I, Micheal Donovan, in my capacity as Chief Executive Officer of Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc. (collectively "Defendants") hereby depose and state as follows:

1.      I am currently an Officer holding the position of Chief Executive Officer of each of the Defendants, and I am authorized to provide this Declaration in response to those certain post-judgment discovery requests made by Plaintiff/Judgment Creditor RLI Insurance, Inc. ("RLI") in this matter.

2.      As previously noted, Defendants have produced multiple, voluminous productions of documents to RLI throughout this matter. Defendants have taken the position that all or nearly all of RLI's post-judgment discovery demands are duplicative to information already provided to them in these prior productions. However, the Court has ordered Defendants to describe with specificity where, when, and how each post-judgment demand was previously produced.

1

3.      To date, Defendants have been unable to comply with the Court's specificity order because they have been unable to secure access to the third-party e-discovery platform hosting such documents. Locating and accessing this data, a prerequisite to responding to the specificity demands of the Court, were delayed and complicated by the facts that (i) the vendor was originally engaged through a prior law firm no longer of record in this matter and no longer engaged in representing Defendants in any capacity, (ii) such prior law firm is currently engaged in separate litigation involving its representation of Defendants in this matter, further complicating productive communication, (iii) in the intervening period, the e-discovery vendor was purchased by another company and changed its trade name, and (iv) upon locating the newly-named vendor, the parties had to then resolve a billing dispute before Defendants could regain access to its documents.

4.      Fortunately, on August 30, 2021, merely two days ago, Defendants were finally able to resolve such issues and regain access to the e-discovery database that contains Defendants' prior productions to RLI.

5.      I conducted an initial review of the database and it confirms Defendants' repeated representations that we have provided volumes of data to RLI throughout this proceeding. In an effort to try and get the specificity responses required by the Court within this immediate deadline, I obtained a summary spreadsheet of the contents of the discovery materials housed on the platform. This summary ended up consisting of 89,863 document group entries. A copy of this summary of previously-produced documents is attached hereto as Exhibit 2.

6. Defendants are willing to provide the Court with in-camera, direct access to the e-discovery database in order to confirm that Exhibit 2 accurately reflects the size and scope of prior productions to RLI in this matter.

7. Within the last 48 hours, it was simply not feasible for Defendants to review the massive scope of Exhibit 2, locate the corresponding files within the database, determine the document's responsiveness to RLI's post-judgment demands, and then provide such location information to RLI and the Court.

8. Nevertheless, Defendants are continuing the process of reviewing Exhibit 2 for completeness and comprehension of its organization and contents. Based on its size alone, we expect this task will take significant man-hours to complete. Therefore, Defendants will provide specificity as to prior produced documents on a rolling basis to the best of its ability.

9. Meanwhile, Defendants were able to locate with specificity certain additional responses to RLI's discovery demands as they pertain to financial data, which should be the core of RLI's status as a judgment creditor.

10. Separate and in addition to the e-discovery database referenced above, Defendants have provided RLI with electronic access to responsive documents through a shared drive on a cloud storage platform called *Egnyte* (the "Egnyte Drive"). RLI maintains continuous access to the Egnyte Drive as part of the Special Master (injunctive) process. Further, Defendants specifically added Egnyte Drive access to RLI's separate collections counsel, jeaton@vanblacklaw.com, at least as early as June 17, 2021.

11.    Defendants are willing to provide the Court with access to the Egnyte Drive to confirm the contents of this shared material.

12.    Within a specific subfolder of the Egnyte Drive labeled */Shared/RLI/Nexus Financial Data/Banking*, Defendants have provided RLI with responsive historical bank statements from at least the following institutions: First Bank, First National Bank, Fifth Third Bank, Wood Forest, Citibank, Bank of West, Bank of America, American Express, Bankcorp South, Citi, City National, Comerica, TD Bank, Key Bank, M&T Bank, First Convenience Bank, Pendleton, Regions Bank, Summit, Suntrust, BBVA Compass Bank, E Deluxe Verify Valid Echecks, Great Western, Iberia, Key Bank, Synovus, and Wells Fargo.

13.    Also, more recent banking statements have been provided to RLI in another Egnyte Drive subfolder labeled *Monthly Reports*, which cover the period between October 2020 and August 2021 (and continue to be updated monthly pursuant to the Court's injunctive order).

14.    Additionally, in response to a Special Master request, Defendants added to the *July 2021* sub-subfolder (within the *Monthly Reports* subfolder) a further subfolder labeled *Historical Statements*. These folders contain historical bank statements from at least 25 banks which largely overlap the financial institutions listed in the *Banking* subfolder referenced above.

15.    While the Special Master process has concluded, Nexus continues to provide sizable productions of such financial information on a monthly basis going forward, in accordance with the Court's Order.

DocuSign Envelope ID: A8B328F2-BF6C-4BF4-AFA3-F4C99CC98145

16.     Furthermore, in response to RLI's first interrogatory, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1.

17.     In response to RLI's second interrogatory, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1.

18.     In response to RLI's sixth interrogatory, Fusion CPA, Grant Thornton, and Randstad are the third-parties responsive to this request. Nexus provided this information to RLI on June 9, 2021, in its Second Consolidated Response to RLI's First Set of Interrogatories and Production.

19.     In response to RLI's seventh interrogatory and 19th request for production of documents, a substantive answer was provided to RLI on 4/30/21 through a supplement of vehicle sale documents. See ECF 658-1.

20.     In response to RLI's tenth interrogatory, Nexus previously explained that it does not list past due program participant payments as part of its Accounts Receivable and therefore does not have responsive documents pertaining to its clients. See ECF 658-1. Nexus further provided a substantive response as Exhibit C to ECF 658-1.

21.     In further response to RLI's tenth interrogatory, on the Egnyte Drive, RLI has access to a subfolder labeled */Shared/RLI/Capsule_Export/results/* which contain the individual CRM file for every Libre program participant. Encased within such files is information about missed or late payments. Nexus does not maintain this data in any other format, such as a collective A/R Report, as previously stated. Nevertheless, Defendants have provided, through this share file within the Egnyte Drive, the native data in Defendants' possession that is responsive to this interrogatory.

22.     In response to RLI's 15th interrogatory, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1.

23.     In response to RLI's 16th interrogatory, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1.

24.     In response to RLI's 19th interrogatory, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1. Nexus provided this information again to RLI on June 9, 2021, in its Second Consolidated Response to RLI's First Set of Interrogatories and Production.

25.     In response to RLI's 7th request for production of documents, Nexus explained that its accountants are continuing to reconcile its accounts for this period and are in the process of creating such returns. Nexus provided this information to RLI on June 9, 2021, in its Second Consolidated Response to RLI's First Set of Interrogatories and Production.

26.     In response to RLI's 10th request for production of documents, Nexus provided a substantive response to RLI on June 9, 2021, in its Second Consolidated Response to RLI's First Set of Interrogatories and Production.

27.     In response to RLI's 14th request for production of documents, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1.

28.     In response to RLI's 15th request for production of documents, a substantive answer was provided to RLI on 4/30/21. See ECF 658-1.

29.     In response to RLI's 17th request for production of documents, any documents directing clients to make payments, to the extent any exist (Nexus previously responded to this request on April 30, 2021, that most such direction comes verbally by telephone.

See ECF 658-1) would be included in the Capsule file data provided to RLI in this same subfolder on the Egnyte Drive.

30.   In response to RLI's 22nd request for production of documents, Nexus previously explained that it has no outstanding PPP Loan as it has already been forgiven in its entirety and is therefore immaterial to this matter. See ECF 658-1.

31.   The combination of the voluminous historical financial (and other) records produced to RLI throughout this proceeding, as evidenced by the sheer size of Exhibit 2, plus the current, ongoing access to financial data as required by C(3) of the Court's Order, which covers all financial records that bear on Defendants' financial status, give RLI as much or more post-judgment discovery than nearly any judgment creditor ever receives.

32.   Given the size and scope of these productions, Defendants have endeavored to provide this meaningful response to the Court's Order to the best of its ability. Defendants will continue to supplement these responses as they dig into the newly-recovered e-discovery materials summarized in Exhibit 2.

**Pursuant to 28 U.S.C. §1746(2), I hereby certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.**

Executed on this 1st Day of September 2021:

For Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc.

Micheal Donovan, Chief Executive Officer

7