IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| RLI INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>NEXUS SERVICES, INC., *et al.*,<br><br>    Defendants. | Case No.: 5:18-cv-00066-MFU |

**RLI INSURANCE COMPANY'S RENEWED MOTION
TO ENFORCE FINAL ORDER AND FOR CONTEMPT SANCTIONS**

Plaintiff RLI Insurance Company ("RLI"), by counsel, respectfully renews its motion for contempt sanctions against each of the Defendants (collectively, "Nexus"), for their continuing disregard of the collateral security provisions of the October 23, 2020 Order.

**INTRODUCTION**

At the August 10, 2021 evidentiary hearing in which the Court adjudged Nexus in civil contempt of the October 2020 Order, Nexus promised the Court that it would take specific actions to minimally purge its undisputed contempt, in an effort to avoid the appointment of a third-party administrator or receiver. In particular, Nexus assured the Court that it would (i) transfer 20% of its gross daily receipts to RLI; and (ii) implement a "completely hands-off" procedure whereby such daily receipts would be automatically and contemporaneously transferred directly from Nexus' merchant account(s) to an RLI bank account. Based on these specific Nexus assurances, the Court took under advisement, for 60 days, RLI's request to appoint a receiver, "to see if Nexus follows through on the promised [20% collateral] payments." ECF No. 721, Order at 10. True to form, however, Nexus has failed to "follow through" on both of its hollow promises.

Nexus never implemented the promised automatic transfer procedure at all and, in fact, refused to do so when pressed by RLI. Meanwhile, Nexus has never come close to transferring 20% of its gross daily receipts. For instance, in the 98 days from the August 10, 2021 hearing through November 16, 2021, Nexus provided payments on only 45 days,[1] and the aggregate of such payments is far closer to **one-half** of Nexus' underwhelming 20% commitment,[2] which itself is far less than Nexus can actually afford, as shown at the hearing. Further, consistent with its history of diminishing compliance efforts as the perceived threat of Court proceedings fades, the frequency of Nexus' payments has decreased significantly since the Court's most recent 60-day "wait-and-see" period expired. Indeed, in the 26 days from October 21, 2021 through November 16, 2021, RLI received only **five** payments from Nexus, and, while Nexus has not yet produced any Lightspeed data for November, based on monthly averages from the four preceding months, Nexus' minimal deposits through the first half of this month appear to be closer to 5% of its gross daily receipts.

Nexus' refusal to meet its own 20% commitment is even more egregious given the unrefuted evidence of Nexus' entirely inexcusable contempt, ongoing now **for well over a year**. At the August 10 hearing, RLI introduced extensive evidence demonstrating Nexus' (i) clear financial ability to satisfy the ordered collateral security requirements; and (ii) rampant discretionary spending in lieu of complying with the Order. For instance, RLI established that Nexus collected more than $14 million in revenues over the 10 months from October 2020 – August 2021. RLI also showed nearly $2 million in unnecessary expenditures, from only a

---

[1] The collateral deposit data set forth herein – and in the accompanying Declaration of Vivian Katsantonis ("Katsantonis Decl.") and exhibits appended thereto – reflects confirmed receipts through November 16, 2021.

[2] While RLI's analysis is derived from Nexus' Lightspeed records, RLI does not concede that those records reflect the full extent of Nexus' revenues, from program participants or otherwise.

sampling of the most overt examples in Nexus' financial records – including on production of a reality-TV series and related marketing and through extensive transfers to insiders and corporate affiliates and subsidiaries ostensibly created to siphon funds from Defendants' accounts. Nexus did not even *attempt* to refute RLI's evidence of Nexus' undisputed capacity, but abject unwillingness, to fully comply with the October 2020 Order. Moreover, little has changed since the August 10 hearing, as Nexus' monthly revenues continue to exceed $1.1 million, and yet it still elects to transfer the bulk of those receipts to anyone but RLI.

While Nexus continues to thumb its nose at the Court, RLI is once again left with no recourse but to seek additional sanctions. A refashioned equitable remedy commensurate with Nexus' ongoing, brazen defiance of the October 2020 Order is necessary and appropriate to end this cycle. In particular, RLI respectfully renews its request for the appointment of a third-party administrator. At minimum, Rule 70(a) would certainly permit such an appointment to effectuate the transfer of the $2.4M collateral deposit required under Paragraph A.1 of the October 2020 Order. Significantly in this regard, the A.1 obligation to transfer the initial $2.4 million collateral deposit, which was ordered to be made by December 1, 2020, is not a "continuous" obligation. Rather, it constitutes a single, "specific act," for which the appointment of a third party under Rule 70(a) is perfectly suited.

Further, to the extent the Court decides to allow Nexus to proceed with any payment plan – *e.g.*, as to Nexus' separate and distinct, continuous obligation under paragraph A.2 of the Order to pay *additional* collateral upon receipt of each Notice to Deliver – Nexus should, at minimum, be required: (i) to increase its payment commitment to 50% of all gross daily receipts; (ii) to demonstrate to the Court's satisfaction, immediately and on a bi-monthly basis, the implementation and continued use of a "hands-off" procedure whereby such funds are transferred,

contemporaneously, automatically and directly from Nexus' merchant account(s) to an RLI bank account; and (iii) to provide RLI with daily access to gross receipts and merchant account transaction data sufficient to verify Nexus' adherence to any such payment plan. Of course, any such payment plan falls far short of the October 2020 Order's requirements, which should be enforced as written, and RLI in no way waives its right to full compliance or related contempt remedies.

## FACTUAL GROUNDS

### A. Nexus' Hollow Commitments to Pay Collateral

After acknowledging its complete failure to meet the collateral security requirements of the October 2020 Order, Nexus inaccurately advised the Court during the July 15, 2021 status hearing that, in an effort to belatedly "come into compliance" with those obligations, it was "now making 20 percent daily revenue payments [to RLI] … through electronic payment."[3] *See* ECF No. 705 (7/15/21 Hearing Tr. 37:10–13; 33:14–16). Nexus further represented that it would, on a daily basis going forward, "provide 20 percent of daily revenues directly to [RLI] through electronic transfer." *Id.* (31:15–18). In taking RLI's request for the appointment of a receiver and imposition of sanctions under advisement, in mid-July, the Court explained:

> the reason why [the Court is] not granting [RLI's motion] today is because [the Court] want[s] to see what happens between July 15 and August 10 with regard to this 20 percent [payment plan]. … Well, [the Court] want[s] to see if something really comes of that … because [the Court has] heard a lot of promises from Nexus, but not a lot of follow-through over the course of the last three years.

*Id.* (72:10–73:9). As the Court is aware from subsequent proceedings, Nexus did <u>not</u> follow through on its July 15, 2021 commitment, and so RLI had to seek further relief from the Court.

---

[3] As of July 15, 2021, however, RLI had *not* received such 20% payments from Nexus.

4

At the ensuing hearing on August 10, 2021, Nexus, in an effort to allay concerns arising from its complete inability to account for the failure of its first "20% plan" commitment, represented that it would promptly implement an automated merchant account system to facilitate contemporaneous, direct, "hands off" payments of 20% of all its daily gross, "top-line" revenue to RLI. In this regard, Micheal Donovan, Nexus' owner and CEO, testified:

> If the Court would lean on RLI to accept [Nexus'] 20 percent daily [payment plan], then we will no longer have any issue with payments, and RLI will no longer have issue with payments. And as our revenues grow, Judge, so will those payments. And it could be decidedly less than ten months if our revenue continues to grow. But … we should get it done in ten months.

(8/10/21 Hearing Tr. 231:25–232:6). Notably, to meet the Order's $2.4M requirement alone (¶ A.1), Mr. Donovan's ten-month payment plan would have required deposits of $240,000 per month, and yet Nexus has not paid *even half* of that rate over the past three-plus months. *See* Katsantonis Decl. ¶¶ 5-6, Exs. A-B. Moreover, even if Nexus met that rate (which it has not), it would not cover the additional collateral ordered to be paid within 48-hours' receipt of a Notice to Deliver ("NTD") (¶ A.2). Based on Notices to Deliver received since the October 2020 Order, the amount of that separate, additional collateral security obligation is $532,000.[4] Katsantonis Decl. ¶ 14. As such, under the Order, Nexus should have already deposited $2,932,000 in collateral with RLI. Yet, as detailed below, Nexus has not come close to meeting those requirements or to fulfilling Mr. Donovan's representations to the Court. *See* § B, *infra*.

---

[4] Moreover, since the August 10, 2021 hearing, Nexus has altogether stopped its practice of paying invoices – delinquent or otherwise. Until the time of that hearing, Nexus had continued its past practice – as though the October 2020 Order never issued – of paying significantly past due *invoices* at, or in several cases beyond, the 120-day delinquent "Treasury Referral Date," rather than depositing any collateral security *within 48 hours after receiving Notices to Deliver*, as ordered. RLI is no longer receiving those additional payments. *See* Katsantonis Decl. ¶ 15.

Likewise, Rebecca Wells, Nexus' latest newly-appointed CFO, made a series of representations regarding Nexus' commitments to satisfy its collateral obligations, which also have proven to be entirely hollow. For instance, Ms. Wells testified that "as soon as [Nexus gets] funding, [RLI also would be] getting funding at the exact same time" and that Nexus would be "completely hands off with this funding[,]" which "would be controlled by the merchant account after we set up this … capability." (8/10/21 Hearing Tr. 185:16-23; 186:1-10; 265:16-23). She also represented that the merchant account system would be "fully functional within five days." (*Id.* 188:19–22; 185:5-11). Ms. Wells further explained that the 20% payments would be automatically transferred on a daily basis to RLI from FluidPay (*i.e.*, Nexus' merchant account). (*Id.* 198:16–200:3). Nexus has not implemented any of the procedures promised by Ms. Wells. *See* § C, *infra*.

Yet, the Court stopped short of appointing a third party to enforce its October 2020 Order based on these very representations by Nexus. Specifically, the Court concluded in an Order dated August 12, 2021:

> <u>Nexus has pledged</u> to <u>set up a system</u> <u>through a merchant pay program</u> to <u>automatically deposit</u> with RLI <u>20 percent</u> of its <u>gross revenues</u> <u>on a daily basis</u>. Because Nexus has indicated that it is paying RLI 20 percent of its gross revenues toward the collateral security and additional security requirements … and <u>will do so automatically in the future</u> … the court does <u>not believe</u> that the extreme remedy of <u>appointment of a receiver is warranted</u> at this time.

ECF No. 721, 8/12/21 Order at 10 (emphasis added). Accordingly, although the Court found Nexus in civil contempt of the October 2020 Order and granted RLI's request for legal fees and costs as a contempt sanction, the Court took RLI's request for further sanctions under advisement, for a (since elapsed) period of sixty days – *i.e.*, from August 12, 2021 to October 11, 2021.

6

### B. Nexus Has Failed to Transfer Even the Promised 20% of Its Gross Daily Receipts Despite Its Clear Ability to Deposit More

Notwithstanding Nexus' various representations, upon which the Court principally relied in postponing the determination to appoint a third party or receiver, since the August 10, 2021 hearing, Nexus has not paid RLI anything close to 20% of its gross daily receipts. Katsantonis Decl. ¶¶ 5-6, Exs. A-B. Indeed, in the 98 days since the August 10, 2021 hearing through November 16, 2021, Nexus made purported "20% payments" on only 45 days. *Id.* Perhaps more egregiously, in the 26 days from October 21, 2021 through November 16, 2021, shortly after the Court's 60-day "wait-and-see" period expired, RLI received only **five** "20% payments" from Nexus, *id.* ¶ 6, Exs. A-B, once again demonstrating Nexus' determination to roll-back its insufficient compliance efforts as the specter of further Court supervision dissipates, and completely belying Mr. Donovan's testimony that RLI "would no longer have any issue with payments" if Nexus were permitted to implement its payment plan.

In fact, as reflected in the tables submitted herewith, including the summary exhibit depicted below (comparing total reported gross daily receipts against total deposits actually received each month), while Nexus continues to report monthly receipts far in excess of $1M, Nexus' total collateral deposits made over the three-plus months since the August 2021 hearing amount to little more than **one half** of the promised 20% of Nexus' gross daily receipts. *See* Katsantonis Decl. ¶¶ 5-6, Exs. A-B. Due to Nexus' inconsistent deposit-designation practices,[5] coupled with its refusal to make contemporaneous transfers or to provide a related accounting of its daily receipts and deposits, it is impossible to match most of Nexus' individual deposits with a

---

[5] For instance, as detailed in Exhibit B to the Katsantonis Declaration, Nexus initially and arbitrarily would designate a specific "business date," often from one month or more earlier, for some but not all its purported "20% payments." Then, as of September 28, 2021, Nexus stopped assigning business dates to any of its individual deposits. *Id.*

particular date's gross receipts. *See id.* ¶¶ 8-13, Exs. B-D. Nexus' antics aside, the below summary, which is supported by further detail provided with the Katsantonis Declaration (Exs. A-B), shows the significant disparity between the 20% amount that Nexus committed to deposit and the amounts that RLI has actually received each month, from July through the first half of November 2021.

**NEXUS' REPORTED GROSS DAILY RECEIPTS vs. AMOUNTS ACTUALLY RECEIVED**
**July 1, 2021 – November 15, 2021**

| Month | Total Gross Daily Receipts (Per Lightspeed Records) | 20% of Receipts (Nexus' Commitment) | Total Amount Actually Received by RLI (Delta) |
|---|---|---|---|
| July 2021 | $1,347,740 | $269,548.00 | $63,061[1] (-$206,487) |
| August 2021 | $1,289,107 | $257,821.40 | $211,498.40 (-$46,323) |
| September 2021 | $1,127,176 | $225,435.20 | $141,413.28 (-$84,021.92) |
| October 2021 | $1,144,928 | $228,985.60 | $118,081.30 (-$110,904.30) |
| November 1- 15, 2021 (estimate based on average of first 15 days from prior four months)[2] | $564,175.25 | $112,835.05 | $39,027.80 (-$73,807.25) |
| Total | $5,473,126.25 | $1,094,625.25 | $573,081.78 (-$521,543.47) |

As this table shows, Nexus has failed to meet its commitment to transfer 20% of its gross daily receipts by a considerable margin of nearly 50%. Moreover, it shows that Nexus' deposits are rapidly declining. Indeed, while Nexus has not yet produced any gross receipts data for November, based on monthly averages as reported in Lightspeed from the four preceding months, Nexus' minimal deposits through the first half of this month appear to be closer to only 5% of its anticipated gross daily receipts for the same duration. *See* Katsantonis Decl., ¶ 6, Exs. A-B.

Further, it bears repeating that Nexus has other revenue streams – *i.e.*, separate and apart from its program participant receipts – from which it could satisfy its Court-ordered collateral security obligations, but which Nexus continues to shield both from RLI and the Court. For

8

instance, Nexus has refused to fully disclose, much less pay RLI from, Defendant Homes by Nexus' revenues, which Ms. Wells revealed have been completely extracted from Nexus' accounting books and records for its other businesses. (8/10/21 Hearing Tr. 174:6–175:11; 200:24–201:2; *see id.* 220:21–25). In this regard, Nexus revealed that Homes by Nexus, as of 2021, "essentially operated as a completely separate entity." (*Id.* 175:1-2). Regardless of Nexus' efforts to re-classify any alter ego Defendant as a "separate entity," Homes by Nexus is equally obligated with the other Defendants, to satisfy the October 2020 Order.

Moreover, as substantiated in numerous prior pleadings and submissions to this Court, it is undisputed that Nexus, despite collecting over $14 million in revenues from the October 2020 Order through the August 10, 2021 hearing, has simply decided to use such significant funds <u>not</u> to meaningfully pay down, if not altogether satisfy, its Court-ordered collateral obligations, but instead, to engage in unnecessary discretionary spending (*e.g.*, on the production of various reality-TV series and related social media marketing as well as recurring multi-thousand-dollar charitable donations) and to facilitate extensive transfers to Nexus insiders, subsidiaries, and affiliates, *see, e.g.*, ECF No. 709 at 16–17 & exhibits thereto.[6] Financial records productions received since the August 10, 2021 hearing only confirm that Nexus continues to engage in such indiscriminate spending practices. Katsantonis Decl. ¶ 7. Additionally, RLI's independent research continues to reveal newly formed corporate entities through whom Nexus may be further dissipating its assets,

---

[6] Indeed, Nexus did *not* even attempt to rebut evidence adduced by RLI demonstrating that Nexus' monthly revenues, totaling more than $14 million since October 23, 2020, much less RLI's evidence of Nexus' indiscriminate spending (*see* ECF No. 721, 8/12/21 Order at 6; *see also* 8/10/21 Hr'g Tr. 73:16-19, 79:15-18, 91:6-12, 255:25-256:21, 269:2-16), leading the Court to conclude: "Well, one thing that's not a priority is paying the monies required by the Court's Order. That's not a priority [of Nexus]. They're getting all this – they got $14 million in revenue since October 23rd [2020], and they're paying everybody else but who the Court ordered them to pay. That's the problem here." *See* 8/10/21 Hr'g Tr. 53:14–19.

9

such as a Texas-based limited liability company, Valortech USA, LLC, apparently created by Micheal Donovan (its listed "Manager") in March 2021. *See id.* ¶ 16, Ex. E. Further, while Nexus clearly has funds sufficient to deposit far more than what it has remitted since the August 10, 2021 hearing, Nexus has never presented evidence demonstrating an inability to satisfy the October 2020 Order in full.

### C. Nexus Has Refused to Implement the Promised Automatic, Contemporaneous, Direct Transfer Protocol

Nexus has failed and refused to implement the promised automated system whereby 20% of its gross daily receipts were to be automatically and contemporaneously paid directly from its merchant account(s) (such as FluidPay) to RLI. Katsantonis Decl. ¶¶ 4, 8. On September 3, 2021, RLI wrote to Nexus memorializing Nexus' failure, *inter alia*, to implement the promised automated, contemporaneous payment procedure and inquiring as to Nexus' intentions in that regard. *Id.* ¶ 9, Ex. C. In the same letter, RLI further noted that "daily receipts" payments had not been made for many of the dates since the August 10, 2021 hearing and requested a detailed accounting of gross daily receipts and payments made or missed for each date. *Id.*, Ex. C. As was the case before the August 2021 hearing, such an accounting was necessary due to Nexus' continuing, albeit entirely inconsistent, practice of significantly back-dating many of its individual collateral deposits. *See id.* ¶¶ 11-12, Exs. B-C. In an evasive response letter dated September 9, 2021, however, Nexus' counsel made clear that Nexus had no intention of establishing the promised automatic payment procedure or of providing an accounting as to daily receipts payments made or missed. *Id.* ¶ 10, Ex. D.

Thus, Nexus' limited "20% payments" to RLI since August 10, 2021 have neither been contemporaneous nor made automatically and directly from Nexus' merchant account(s), such as FluidPay. *Id.* ¶¶ 4, 8. Instead, to the limited extent payments have been made, Nexus has indicated

10

that at least a portion of those funds were allegedly from revenues collected 25-35 days earlier. *See id.* ¶ 11, Ex. B. Further, although Nexus has previously taken the position that it began paying "20% payments" in early July 2021, it has refused to provide an accounting of "20% payments" corresponding to any of the following day's gross receipts: (i) July 1, 2, 3, 9, 15, 18, and 28; (ii) August 6, 12, 14, 15, 19, 22–31; (iii) September 1–30; (iv) October 1–31; and (v) November 1–16. *Id.* ¶ 12, Ex. B.[7] Rather than implementing its own unilaterally-devised plan, Nexus continues to pay whatever and whenever it chooses, without any accountability – and never anything close to the promised 20% of gross daily receipts – as though it never made any related commitments to the Court, and always without any serious consideration of the far greater obligations this Court imposed through its October 2020 Order.

Nexus' complete failure to implement a system, whether through its merchant account(s) or otherwise, to *contemporaneously* transfer 20% of its gross daily receipts *automatically* and *directly* to RLI completely undermines Nexus' representation to the Court on August 10, 2021 that such an automated protocol would be "fully functional within five days." It is equally clear that Nexus' promise of an automated payment protocol in which Nexus' role was to be "completely hands off" has not been fulfilled. Indeed, since August 10, 2021, all of Nexus' limited collateral deposits have been made by wire transfers apparently originating from another Nexus bank account(s), with First Premier Bank, rather than by automatic, direct daily transfers from its merchant account(s), as promised. *Id.* ¶ 13.

---

[7] Nexus' past efforts to demonstrate a correlation between an individual deposit and a given date's gross receipts have, at best, been incomplete and inconsistent. As of September 28, 2021, Nexus stopped making any such efforts at all, despite RLI's request for an accounting. *See* Katsantonis Decl. ¶¶ 9-12, Exs. B-D.

11

### D. Nexus Continues to Disregard Its Collateral Security Obligations under Paragraph A.2 of the October 2020 Order

In addition to the foregoing failed commitments, Nexus remains in ongoing contempt of its obligations under paragraph A.2 of the October 2020 Order, requiring Nexus to deposit as collateral the penal sum of any RLI bond for which an NTD has issued within 48 hours of Nexus' receipt thereof. *See* Katsantonis Decl. ¶ 14. Additionally, with respect to the individual bond claims, since the August 10, 2021 hearing, Nexus has stopped altogether remitting payments for breached bond invoices. *Id.* ¶ 15. Thus, the <u>only</u> payments RLI now receives from Nexus are the purported "20%" collateral payments, which, as set forth above and in the tables attached to the Katsantonis Declaration (Exs. A-B), have never actually come close to meeting 20% of Nexus' reported gross daily receipts and, in fact, are steadily decreasing each month. As such, no matter how Nexus accounts for its transfers, it continues to pay RLI less and less over time.

### ARGUMENT

This Court has broad discretionary powers to enforce its Orders and fashion equitable contempt remedies. *See* ECF No. 709 pp. 15–16, 18; ECF No. 694 pp. 16–18, ECF No. 647 pp. 2–6, ECF No. 607 pp. 8–9. Moreover, as previously demonstrated, the Court is authorized under Rule 70(a) to appoint a third-party administrator to perform specific acts, which at minimum, would include the "specific act" of depositing the $2.4 million in collateral security that was due to be paid on December 1, 2020 under Paragraph A.1 of the Order. *See, e.g.*, *Solis v. Williams*, 2013 WL 497972, at *1–2 (N.D. Cal. Feb. 8, 2013) (appointing an independent fiduciary under Rule 70(a) with the authority to "collect, marshal, pay out, and administer" the assets of a company's 401(k) Profit Sharing Plan after the defendant fiduciary and trustee to the Plan failed to comply with a judgment requiring the defendant to restore certain funds owed to the Plan). As the Court has recognized, it also may appoint a receiver under Rule 66. Those remedies continue

to be necessary and appropriate enforcement mechanisms here, in the absence of which Nexus has only continued to demonstrate that it will <u>not</u> comply even with its own commitments, much less with the plain terms of the October 2020 Order.

Indeed, Nexus has now squandered two "last chance" opportunities to avoid the appointment of a third-party administrator or receiver by failing to adhere to its own proposed "20%" payment plan – a plan which, even if fulfilled, would not come close to affording RLI the relief to which it is entitled under the plain terms of the October 2020 Order. In any event, just as it failed to implement its promised 20% plan following the July 15, 2021 status conference, Nexus has completely failed to meet its commitments following the August 10, 2021 hearing. Even now, more than one month beyond the Court's prescribed sixty-day "wait-and-see" period, which ended on October 11, 2021, RLI has received nothing close to 20% of Nexus' gross receipts from program participants (let alone from Nexus' other sources of revenue) for the corresponding three-month period, and the frequency and amounts of such payments are steadily decreasing. Nexus has also completely refused to establish the promised "hands off," automated payment protocol to effectuate direct, contemporaneous transfers to RLI. Further, while Nexus flouts the authority of this Court while merely alleging – albeit with no evidential support – that it cannot meet its Court-ordered collateral obligations in full, Nexus engages in rampant unnecessary discretionary spending, all while stringing along RLI and the Court with unfulfilled promises of minimal collateral deposits. In short, despite every opportunity, Nexus has forfeited any remaining "benefit of the doubt" and instead continues to demonstrate only that it will <u>not</u> comply with the October 2020 Order without constant judicial intervention and further sanctions.

In light of the foregoing, and as competing claims from unsecured creditors continue to mount and Nexus continues to transfer funds to insiders and new corporate entities, the swift

imposition of an equitable remedy commensurate with Nexus' unchecked defiance of the October 2020 Order is not only warranted, but urgently needed to ensure that RLI is provided the collateral security awarded by this Court <u>over one year ago</u>.  As such, RLI respectfully requests that the Court exercise its broad discretion and fashion further contempt sanctions that will ensure prompt compliance with the collateral security provisions of the October 2020 Order, including at minimum the appointment of a third party administrator to perform the "specific act" of transferring the $2.4 million deposit that was ordered to be paid on December 1, 2020.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons and for the reasons set forth in its prior related pleadings, including ECF Nos. 607, 622, 647, 694, and 709, RLI respectfully renews its request that the Court enforce the injunctive collateral security provisions of the final judgment set forth in the October 2020 Order, including by the appointment of a third party administrator, at least to perform the specific transfer of $2.4 million required under Paragraph A.1 of the October 2020 Order.  Further, to extent the Court decides to allow Nexus to proceed with any payment plan – *e.g.,* as to Nexus' separate and distinct, continuous obligation under paragraph A.2 of the Order to pay *additional* collateral upon receipt of each Notice to Deliver – Nexus should be required, at bare minimum: (i) to increase its payment commitment to 50% of *all* gross daily receipts; (ii) to demonstrate to the Court's satisfaction, immediately and on a bi-monthly basis, the implementation and continued use of a "hands-off" procedure whereby such funds are transferred, contemporaneously, automatically and directly from Nexus' merchant account(s) to an RLI bank account; and (iii) to provide RLI with daily access to gross receipts and merchant account transaction data sufficient to verify Nexus' adherence to any such payment plan; and RLI requests

as a further sanction that Nexus be ordered to pay RLI's further, post-hearing legal fees and costs expended in attempting to compel Nexus' compliance with the October 2020 Order.

DATED: November 22, 2021

Respectfully submitted,

**RLI INSURANCE COMPANY**

By its Counsel:

*/s Vivian Katsantonis*
Vivian Katsantonis (VSB No. 30448)
Christopher M. Harris (VSB No. 48361)
John F. Finnegan III (VSB No. 93880)
*Counsel for RLI Insurance Company*
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
Email: vkatsantonis@watttieder.com
Email: charris@watttieder.com
Email: jfinnegan@watttieder.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

*s/ Vivian Katsantonis*
Vivian Katsantonis