IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | Civil Action No. 5:18-cv-00066 |
| Plaintiff, | ) | |
| | ) | **ORDER FOR NEXUS AND THE** |
| v. | ) | **ENTITIES TO SHOW CAUSE &** |
| | ) | **CERTIFICATION UNDER** |
| NEXUS SERVICES, INC., et al., | ) | **28 U.S.C. § 636(e)(6)(B)(iii)** |
| Defendants. | ) | |
| | ) | By:   Joel C. Hoppe |
| | ) | United States Magistrate Judge |

This matter is before me on Plaintiff RLI Insurance Company's ("RLI") Motion for

Contempt Against Defendants Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus,

Inc. (collectively, "Nexus"), ECF No. 684; RLI's Motion for Contempt Against Non-Parties

Nexus Commercial Ventures, LLC, Nexus Properties, LLC, and One Fish, Two Fish, LLC

(collectively, "Entities" or "the Entities"), ECF No. 677; and RLI's Motion to Compel

Attendance at Motion for Contempt Hearing, ECF No. 686. These motions have been fully

briefed[1] and argued and are ripe for decision.

I. Background

This litigation has a long and complex history that the Court has detailed extensively in

its prior decisions. *See generally* Mem. Op. 4–18, July 3, 2020, ECF No. 488; Order 2–4, Aug.

12, 2021, ECF No. 721. In July 2020, Chief United States District Judge Michael F. Urbanski

---

[1] The Entities did not respond to RLI's Motion for Contempt against them within the time allowed. *See* W.D. Va. Civ. R. 11(c)(1) (requiring any responsive briefing to be filed within fourteen days of service of any motion); Sched. Order ¶ 8 ("If any motion, properly filed and briefed, is to be opposed, a brief in opposition must be filed . . . . within fourteen (14) days of the date of service of the movant's brief . . . . Except for good cause shown, if a brief opposing a motion is not timely filed, the court will consider the motion to be unopposed."), ECF No. 77. At a hearing before the Court on August 25, 2021, Christopher Okay, Esq., counsel of record for Defendant Nexus, asserted that he also represented the Entities and presented argument in opposition to RLI's Motion for Contempt Against the Entities on their behalf. Despite the Entities' failure to properly respond to RLI's motion in a written response brief, I have considered Mr. Okay's arguments.

entered partial summary judgment in RLI's favor and "granted specific performance of certain provisions of its Indemnity Agreement with defendant Nexus Services, Inc." Mem. Op. of Oct. 23, 2020, at 1, ECF No. 584 ("the October 2020 Order"). After a two-day evidentiary hearing, Judge Urbanski ordered Nexus to (1) deposit with RLI $2.4 million in collateral security on or before December 1, 2020; (2) pay additional security on an ongoing basis and within forty-eight (48) hours of its receipt of a Notice to Deliver from the government on an RLI bonded program participant; (3) provide access to various books and records on an ongoing basis; and (4) pay RLI "losses, costs, damages, attorneys' fees and expenses" totaling $3,331,197.55. *Id.* at 25–27.

Nexus did not fully comply with the October 2020 Order. Order 2, Apr. 13, 2021, ECF No. 654. Accordingly, in April 2021, Judge Urbanski appointed a Special Master to advise the Court as to the status of Nexus's compliance with the October 2020 Order and to make recommendations to ensure compliance therewith. *Id.* Since his appointment, the Special Master has conducted multiple meetings with the parties and has submitted three reports to the Court. *See* First Report of Special Master, ECF No. 662; Second Report of Special Master, ECF No. 693; Third Report of Special Master, ECF Nos. 711 to 713. Nexus's compliance with the October 2020 Order remains minimal. *See* Order 1, 11, Aug. 12, 2021 (finding "Nexus in civil contempt for failure to comply" with "the collateral deposit" and "the additional security" provisions of the October 2020 Order). To date, Nexus has made "some effort" to give RLI access to its financial records, and it has paid "a small fraction" of its collateral security obligations. *See* Order 5–6, Aug. 12, 2021; *see generally* Hr'g Tr., Aug. 10, 2021 Hr'g, ECF No. 727. But it has still largely failed to deposit the required collateral security with RLI, *see* Order 5–6, Aug. 12, 2021, it has not produced all its books and records to RLI, *id.* at 6, and it has not

2

paid the $3,331,197.55 it owes RLI in damages, fees, and expenses, *see* Aug. 10, 2021 Hr'g Tr. 92 (RLI's counsel represented that RLI had collected "just shy of $300,000" on its judgment).

RLI has sought to collect on the judgment since early 2021. In February, it served post-judgment interrogatories and requests for production upon Nexus pursuant to Rule 69 of the Federal Rules of Civil Procedure. *See* Mem. in Supp. of Mot. to Compel Nexus to Respond to Post-J. Disc. 2–3, ECF No. 651; *id.* Ex. 1, RLI's Post-J. Disc. Reqs. to Nexus, ECF No. 651-1 ("Post-J. Reqs."); *see generally* Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."). RLI's Post-Judgment Requests seek various categories of information pertaining to Nexus's financial status over the past three years. RLI also began serving subpoenas upon various non-parties it believed to be connected in some way to Nexus, including the Entities. *See generally* RLI's Mem. in Supp. of Mot. for Contempt Against the Entities 3–4, ECF No. 678.

As discussed in detail herein, Nexus's and the Entities' responses to RLI's Post-Judgment Requests and subpoenas have been "wholly inadequate." Order 2, May 27, 2021, ECF No. 665. In April 2021, RLI moved to compel complete responses to its requests. *See* RLI's Mot. to Compel Nexus to Respond to Post-J. Reqs., ECF No. 650; RLI's Mot. to Compel the Entities, ECF No. 652; *see generally* Fed. R. Civ. P. 37(a)(1)–(4). I granted RLI's motions to compel after a hearing at which counsel for Nexus and the Entities appeared and argued. By Order dated May 27, 2021, I directed Nexus and the Entities to respond "with specificity and particularity" to RLI's Post-Judgment Requests and subpoenas within fourteen days. Order 1–2, May 27, 2021. Neither Nexus nor the Entities did so. Accordingly, RLI filed twin motions for civil contempt. RLI asks the Court to: (1) hold Nexus and the Entities in contempt; (2) award attorneys' fees and

costs incurred in relation to its successful motions to compel, ECF Nos. 650, 652, and its pending motions for contempt, ECF Nos. 677, 684; (3) prohibit Nexus and the Entities from using information, in this proceeding and in any future, related proceedings, that should have been produced in response to RLI's Post-Judgment Requests and subpoenas; and (4) enter an adverse-inference ruling that had Nexus and the Entities produced the information RLI seeks, it would have been detrimental to their case. RLI also asked the Court to (1) direct nonparties Micheal Donovan, Richard Moore, and Evan Ajin, in their personal capacities, to fully respond to RLI's Post-Judgment Requests and subpoenas within seven days. Should they fail to do so, RLI asked the Court to sanction them by (1) prohibiting Donovan, Moore, and Ajin from using information, in this proceeding and in any future, related proceedings, that should have been produced subject to RLI's Post-Judgment Requests and subpoenas; (2) enter an adverse-inference ruling that unexplained financial transfers to Donovan, Moore, and Ajin are fraudulent transfers; (3) fine Donovan, Moore, and Ajin each $5,000 per day until they produce the information RLI seeks; and (4) pierce the corporate veil with adverse-inference rulings that Donovan, Moore, and Ajin are personally liable for the underlying judgment in this case. *See* RLI's Mem. in Supp. of Mot. for Contempt Against Nexus 5–6, ECF No. 685.

## II. The Legal Framework

Rule 37(b)(2) of the Federal Rules of Civil Procedure grants the district court where an action is pending broad discretion to impose sanctions when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A). *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). "Once a court makes the threshold determination under Rule 37(b)" that a party or its agent violated a prior discovery order, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D.

Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what sanction(s) to impose against that party, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).[2] "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (citing Fed. R. Civ. P. 37(b)(2)(A)). Such sanctions "may include" orders deeming facts established, permitting or requiring an adverse inference, or "treating as contempt of court the failure to obey any order expect an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A). *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533–34 (D. Md.

---

[2] Federal district courts may also order nonparties to provide or permit discovery of relevant information within the nonparty's custody or control. *See* Fed. R. Civ. P. 37(a)(1)–(2) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . . A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."); *Koenig v. Johnson*, No. 2:18cv3599, 2020 WL 635772, at *2 (D.S.C. Feb. 11, 2020) ("[B]oth Rule 37 and Rule 45 require that when a party seeks to compel a non-party's action pursuant to a subpoena duces tecum, the party must file its motion to compel in the district *where the sought documents are located*, not [necessarily] the district where the subpoena was issued." (emphasis added) (citing Fed. R. Civ. P. 37(a)(2), 45(c)–(d)); *Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv1630754, at *6 (W.D. Va. Apr. 23, 2014) ("The scope of discovery for a nonparty litigant under a subpoena duces tecum is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue. It is well-settled that district courts are allowed broad discretion in resolving discovery disputes." (cleaned up)). Because Rule 37(b)(2)(A) applies only when "a party" or its agent fails to obey a discovery order, however, the court where the action is pending must rely on some other source of authority to sanction or remedy a local nonparty's failure to obey a subpoena or related court order. *See, e.g.*, Fed. R. Civ. P. 45(g); *cf. Todd v. XOOM Energy, LLC*, No. GJH-15-154, 2018 WL 5081156, at *2 (D. Md. Oct. 18, 2018) ("Although motions to quash subpoenas are generally brought in 'the court for the district where compliance is required,' Rule 45 'does not alter the broader concept that the district court in which an action is pending has the [inherent] right and responsibility to control the broad outline of discovery.'" (quoting *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 2014 WL 2559285, at *1 (M.D.N.C. June 6, 2014)); *In re White*, No. 2:07cv342, 2013 WL 5295652, at *27–35 (E.D. Va. Sept. 13, 2013) (discussing district court's inherent authority to hold nonparty in civil contempt for bad-faith conduct in violation of court orders). Here, the District Court is "entitled to rely on the axiom that courts have inherent powers to enforce compliance with their lawful orders through civil contempt," *Spallone v. United States*, 493 U.S. 265, 276 (1990), in determining whether to sanction a nonparty Entity for disobeying my May 27, 2021 Order directing that Entity to permit discovery in this case. *Cf. Henderson v. City of Woodbury*, Civ. No. 15-3332, 2016 WL 11020059, at *1–2 (D. Minn. Nov. 4, 2016) (noting that federal courts have inherent contempt authority and recommending that a nonparty witness be held in civil contempt for failing "to appear as ordered by the Court" at a show-cause hearing and deposition), *adopted*, 2016 WL 11020058 (D. Minn. Dec. 1, 2016).

2010) (quoting Fed. R. Civ. P. 37(b)(2)(A)); *Thompson*, 219 F.R.D. at 102 ("Rule 37(b)(2)

provides a non-exclusive list of possible sanctions[.]").

The Federal Magistrates Act, 28 U.S.C. § 636, defines a magistrate judge's contempt

authority where an act of civil contempt "occur[s] outside of the magistrate judge's presence, and

not in a proceeding where the magistrate judge [is] presiding" with the parties' consent under

§ 636(c). *Wallace v. Kmart Corp.*, 687 F.3d 86, 92 (3d Cir. 2012) (capitalization altered); *see* 28

U.S.C. § 636(e)(6). A magistrate judge overseeing an action under § 636(b)(1) who is faced with

an act that constitutes a civil contempt

> shall forthwith certify the facts to a district judge and may serve or cause to be
> served, upon any person whose behavior is brought into question under this
> paragraph, an order requiring such person to appear before a district judge upon a
> day certain to show cause why that person should not be adjudged in contempt by
> reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii). "The district judge shall thereupon hear the evidence as to the act

or conduct complained of and, if it is such to warrant punishment, punish such person in the

same manner and to the same extent as for a contempt committed before a district judge." *Id.*

The magistrate judge's role in certifying facts under § 636(e)(6) is "to determine whether

the moving party can adduce sufficient evidence to establish a prima facie case of contempt."

*Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999) (citing *Proctor v. State Gov't of*

*N.C.*, 830 F.2d 514, 521 (4th Cir. 1987)). To establish civil contempt, a movant must produce

"clear and convincing evidence" showing:

> (1) the existence of a valid decree of which the alleged contemnor had actual or
> constructive knowledge; (2) that the decree was in the movant's favor; (3) that the
> alleged contemnor by [his or her] conduct violated the terms of the decree, and had
> knowledge (at least constructive) of such violations; and (4) that the movant
> suffered harm as a result.

*JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004) (cleaned up).

Where the contemnor had "at least constructive" knowledge that he or she violated a specific

court order, *id.*, "[t]he absence of willfulness [should] not relieve from civil contempt," *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). *See McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) ("[G]ood faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order." (citing *McComb*, 336 U.S. at 191)).

### III. Certified Facts

The undersigned hereby CERTIFIES the following facts to the Honorable Michael F. Urbanski, Chief United States District Judge. 28 U.S.C. § 636(e)(6)(B).

A.  *Defendants Nexus Services, Inc., Homes by Nexus, Inc., and Libre by Nexus, Inc. (collectively, "Nexus") failed to adequately respond to RLI's post-judgment discovery requests and violated the terms of two Court orders directing them to do so.*

1.  On February 23, 2021, RLI served its Post-Judgment Requests upon Nexus. The Post-Judgment Requests include twenty interrogatories and twenty-eight requests for production.[3] *Id.* They seek six broad categories of information:

    a.  Nexus's corporate structure and members, *see id.* at 3–9 (Interrog. 2 (members and their respective membership interests); Reqs. for Produc. 3 (corporate documents), 14 (member conflict of interest disclosure forms), 18 (corporate documents for entities in which Nexus has had an interest within the past three years), 21 (EIN/Federal Tax ID)).

    b.  Financial transfers of any kind from Nexus to a Nexus member, *see id.* (Interrogs. 3 (nature, amount, and basis of all transfers to members), 4 (loans from Nexus to any employee or member), 16 (executives, officers, or employees who received over $100,000 in compensation in the past year); Reqs. for Produc. 2 (transfer

---

[3] For brevity, I summarize the Post-Judgment Requests below. For the full text of RLI's requests, *see* Post-J. Reqs., ECF No. 651-1.

documentation), 8 (member/owner tax forms), 11 (promissory notes), 12 (loans), 25 (credit card statements for which any executive, officer, or employee earning over $100,000 per year received reimbursement), 26 (transfer documentation)).

c.  Nexus's assets and asset transfers, *see id.* (Interrogs. 5 (ownership, membership, or shareholder interests in other companies), 7 (vehicles), 8 (real property), 9 (financial accounts), 10 (amounts owed to Nexus), 11 (other tangible assets), 12 (other intangible assets), 14 (collateral posted to or available to any entity other than RLI); Reqs. for Produc. 1 (financial statements), 4 (profit and loss statements), 5 (income statements and balance sheets), 7 (federal and state tax returns), 13 (property conveyances), 19 (vehicle titles), 20 (real property leases), 24 (credit card statements), 27 (any other documentation relating to assets available to satisfy Nexus's debts)).

d.  Nexus's debts, *see id.* (Interrog. 13 (mortgages, deeds of trust, liens, loans, or other debts); Reqs. for Produc. 6 ("accounts payable" reports), 10 (liens or other encumbrances against Nexus or its property/collateral), 16 (loan/credit applications), 28 (mortgages, deeds of trust, liens, loans, or other debts)).

e.  Payments and other financial transfers from Nexus to individuals and other companies, *see id.* (Interrogs. 17 (legal fees paid in the last two years), 19 (explain Nexus's relationship with a company called "8 bit Gamer Oasis"), 20 (identify all other entities funded in whole or in part by Nexus in the past three years)).

f.  Payments and other financial transfers from individuals and other companies to Nexus, *see id.* (Interrogs. 15 (client payments), 18 (amounts listed in "accounts

receivable" in Nexus's financial records); Reqs. for Produc. 6 ("accounts

receivable" reports), 17 (communications regarding client payments)).

The Post-Judgment Requests also seek other court and financial information. *See id.*

(Interrog. 6 (companies responsible for maintaining Nexus's financial records); Reqs. for

Produc. 9 (judgments for or against Nexus in the past ten years), 15 (charging orders

against Nexus), 22 (federal Paycheck Protection Program ("PPP") applications or

requests for forgiveness), 23 (financial documentation provided to any government

official in the past 36 months)).

2.   On March 24, 2021, Nexus requested an extension to respond to RLI's Post-Judgment

Requests. *See* RLI's Mem. in Supp. of Mot. to Compel Nexus to Respond to Post-J. Disc.

Ex. 2, E-Mail from O. Simkins to J. Eaton (Mar. 24, 2021, 7:29 PM), ECF No. 651-2. A

day later, the parties met and conferred, and RLI agreed to a "short 7-day extension."

RLI's Mem. in Supp. of Mot. to Compel Nexus to Respond to Post-J. Disc. Ex. 4, E-Mail

from J. Eaton to J. Shoreman (Mar. 25, 2021, 3:01 PM), ECF No. 651-4. RLI explained

that it did so because Nexus "represented that [it was] working through documents now

and would be producing substantive discovery responses in the next 7 days, which will

include contemporaneous financial records and other materials post-dating the records

produced in the underlying litigation." *Id.*

3.   On April 2, 2021, Nexus emailed draft discovery responses to RLI. RLI's Mem. in Supp.

of Mot. to Compel Nexus to Respond to Post-J. Disc. Ex. 5, Nexus's Draft Disc. Resps.

1, ECF No. 651-5. Nexus noted that the responses were in draft form and that it was "still

reviewing its files" to "complete [its] production." *Id.*

4.   Nexus's draft responses, provided by Evan Ajin, contained essentially no substantive information in response to any of RLI's post-judgment discovery requests. *See id.* at 2–42. For almost every request, Ajin answered: "Information provided in prior discovery." *Id.*

5.   On the same day, RLI emailed Nexus and asserted that Nexus's draft discovery responses were entirely inadequate. *See* RLI's Mem. in Supp. of Mot. to Compel Nexus to Respond to Post-J. Disc. Ex. 6, E-Mail from J. Eaton to J. Shoreman (Apr. 2, 2021, 2:24 PM), ECF No. 651-6.

6.   RLI moved to compel Nexus's complete responses on April 12, 2021. *See* RLI's Mot. to Compel Nexus to Respond to Post-J. Reqs. Nexus filed its opposition to RLI's motion to compel on April 30, 2021. *See* ECF No. 658.

7.   In response, Nexus claimed that it had already produced the information and documents RLI sought through prior discovery and/or the Special Master process. *Id.* at 1–2. Nexus attached amended responses to RLI's Post-Judgment Requests, which provided marginally more information than the draft responses. *See generally* Nexus's Opp'n to RLI's Mot. to Compel Nexus to Respond to Post-J. Disc. Ex. A, Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs., ECF No. 658-1. Specifically, Nexus represented that:

     a.   Nexus had three members and listed their membership interests (Micheal Donovan (51%), Richard Moore (39%), and Evan Ajin (10%)), *id.* at 2–3 (Interrog. 2);

     b.   Nexus does not maintain accounts receivable reports in its ordinary course of business, *id.* at 5 (Interrog. 10);

    c.   Most of Nexus's clients pay Nexus by money order or three alternative payment methods, *id.* at 8 (Interrog. 15);

    d.   Nexus has "no relationship to 8 bit Gamer Oasis," *id.* at 10 (Interrog. 19);

    e.   Most of Nexus's "client communication involving payments is conducted verbally by phone," *id.* at 14 (Req. for Produc. 17); and

    f.   Nexus had no "application or request for forgiveness concerning a Paycheck Protection [Program] Loan to Nexus" because "Nexus's PPP loan has already been forgiven in its entirety," *id.* at 15 (Req. for Produc. 22).

Nexus also produced:

    g.   Nexus's Employee Earnings Record for 2021, which shows salary and other payroll information, *see id.* 3 (Interrog. 3); *see also id.* at 19–121.

    h.   Carmax documents showing sales of sixteen vehicles in December 2020 and one vehicle in February 2021, *see id.* at 4 (Interrog. 7); *see also id.* at 122–67.

    i.   A list of clients, identified by Capsule ID number, "who have a 'due' tag entered into their Capsule record." *Id.* at 6 (Interrog. 10), *see also id.* at 168–451.[4]

    j.   A report of transactions recorded by VersaCheck, "an ACH processor" that Nexus "uses . . . to print out a physical check" for deposit into one of its bank accounts. *Id.* at 8 (Interrog. 15); *see also id.* at 452–69.

---

[4] Nexus stated that "[a] 'due' tag is supposed to be entered by Nexus staff whenever a client has not made his or her full payments as required under their contract with Libre by Nexus, Inc." It further stated, however, that, "[b]ecause of the potential for coding mistakes, [it] cannot represent that these tags have been properly added or not added in any particular instance." *Id.* at 6. Nexus also did not provide the amount due from each client because "Nexus does not maintain a database which can display the exact amounts owed by these clients." *Id.* Instead, Nexus noted that "[s]uch information is spread throughout multiple incompatible databases, all of which have been provided to RLI as part of the Court's order." *Id.*

8. Otherwise, Nexus responded to RLI's Post-Judgment Requests with boilerplate responses directing RLI to Nexus's prior discovery responses and/or to information produced through the Special Master process. For example, in response to Interrogatory 4, which seeks information about loans that Nexus made to Nexus members and employees, Nexus stated:

> Information responsive to this interrogatory has already been produced in response to Plaintiff's previous pre-judgment and/or post-judgment discovery requests, and/or has already been produced pursuant to the District Court's Order that Nexus provide RLI with real-time share-drive access to its Quickbooks, Lightspeed, and other financial databases, bank account statements, credit card statements, accounts payable reports, KPI reports, general ledger data (including receipts and disbursements, financial statements, balance sheets, and profit and loss statements), to the extent Nexus maintains such reports and information. There have been no changes since such production(s).

*Id.* at 3–4. Nexus gave similar responses to most of RLI's Post-Judgment Requests. *See generally id.* at 2–18 (Interrogs. 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20; Reqs. for Produc. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28).

9. Evan Ajin certified under oath that Nexus's amended responses were "true and accurate." *Id.* at 18.

10. On May 27, 2021, I held a hearing on RLI's motion to compel. Nexus's then-counsel John Shoreman, Esq., asserted that Nexus was already producing the information RLI seeks. He again argued that Nexus should not have to duplicate production of materials it is already producing through the Special Master process to separately respond to the Post-Judgment Requests. RLI disagreed, contending that Nexus was not producing complete financial information through the Special Master process.

11. I generally agreed with RLI, noting that although there might be some overlap between the information Nexus was providing to RLI through the Special Master process and the information RLI sought through the Post-Judgment Requests, it was not clear that the two processes significantly overlapped.

12. I also explained that Nexus's vague discovery responses generally asserting that it had already produced the information RLI sought did not demonstrate that Nexus had, in fact, fully responded to the Post-Judgment Requests.

13. I concluded that Nexus's responses had been "wholly inadequate to date," and I ordered Nexus to respond to RLI's Post-Judgment Requests "with specificity and particularity" within fourteen days. Order of May 27, 2021.

14. I explained that if Nexus took the position that it had already provided "some or all" of the requested discovery to RLI, then Nexus had to "identify, for each interrogatory and request for production individually, what responsive information has previously been produced," explaining "what information and/or documents were produced, the specific prior discovery request(s) in response to which the information and/or documents were produced, the Bates numbers of previously produced documents, and the date of production, as applicable." *Id.* at 1–2.

15. Further, I directed that if Nexus took the position that any information responsive to RLI's requests would be produced in the future via the Special Master process, then Nexus had to "indicate that the Special Master process contemplates that [Nexus] will produce documents on a future date certain and must confirm that [it] will, in fact, produc[e] such documents on that date." *Id.* at 2.

16. Finally, I deemed waived any objections that Nexus may have posed to RLI's Post-Judgment Requests. *Id.*; *see* Fed. R. Civ. P. 33(a)(4), 34(b)(2).

17. On June 17, 2021,[5] Nexus served its second amended responses to the Post-Judgment Requests upon RLI. *See* RLI's Mem. in Supp. of Mot. for Contempt Against Nexus Ex. 1, Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs., ECF No. 685-1. These responses provided little additional information.

    a. Nexus had previously represented that Donovan, Moore, and Ajin are all members of Nexus, *see* Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 2–3 (Interrog. 2), ECF No. 658-1. In the second amended responses, Nexus stated that Moore had subsequently "divested his ownership interest back to the Company," Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs. 2 (Interrog. 2), ECF No. 685-1. Nexus did not explain whether Donovan and Ajin were now Nexus's sole members or identify their respective membership interests. *See id.*

    b. Nexus's second amended responses also:

        i. stated that RLI already knew of three non-party entities that maintain Nexus's financial records, *id.* at 5 (Interrog. 6) (stating that RLI recently sent a letter to the Special Master "pertaining to 'Fusion CPA, Grant Thornton, and Randstad'");

---

[5] After the May 27, 2021 hearing, Nexus's prior counsel, John Shoreman, Esq., and Mario Williams, Esq., moved to withdraw as counsel for Nexus. *See* Mots. to Withdraw, ECF Nos. 680, 681; *see also* Order of Aug. 16, 2021, ECF No. 724 (granting motions to withdraw). New counsel, Carl Anderson and Christopher Okay, filed Notices of Appearance on Nexus's behalf. *See* Notices of Appearance, ECF Nos. 670, 674. Through its new counsel, Nexus requested a fourteen-day extension to comply with my May 27, 2021 Order. *See* Nexus's Mot. for Ext. of Time, ECF No. 675. I granted Nexus's motion in part, giving Nexus until June 18, 2021 to properly respond to RLI's Post-Judgment Requests. Order of June 11, 2021, ECF No. 676.

    ii.   stated that Nexus "is not posting or pledging any collateral, or otherwise setting aside assets to any surety, insurer, financial institution, or any other entity," *id.* at 10 (Interrog. 14);

    iii.   "question[ed] why a historical record of legal payments is at all relevant to RLI's present efforts to collect upon the immediate judgment," *id.* at 12–13 (Interrog. 17);

    iv.   stated that Nexus has "no relationship with an entity named '8 bit Gamer Oasis,'" *id.* at 13 (Interrog. 19);

    v.   indicated that Nexus would produce its tax returns (which RLI sought for 2018, 2019, and 2020) "[a]s soon as" its accountants "complete[d] the process of creating" them, *id.* at 18 (Req. for Produc. 7);

    vi.   confirmed that Nexus had "no current liens or encumbrances" responsive to RLI's requests, *id.* at 19 (Req. for Produc. 10);

    vii.   stated that it was "not presently aware" of any documents responsive to RLI's requests for charging orders against Nexus and for conflict-of-interest disclosure forms, *id.* at 22 (Reqs. for Produc. 14 & 15);

    viii.   indicated that RLI already had Nexus's EIN number, *id.* at 25 (Req. for Produc. 21); and

    ix.   produced no PPP loan documents because its "loan ha[d] already been forgiven in its entirety," *id.* (Req. for Produc. 22).

c.   Otherwise, Nexus again offered a vague, boilerplate response to almost every discovery request. For example, in response to Interrogatory 13, which asks

Nexus to "[i]dentify all mortgages, deeds of trust, liens, loans or other debts or

obligations owed by the Company," Post-J. Reqs. 6, Nexus stated:

> In response to this item, concurrent with this response, Nexus has provided access to RLI's counsel, Vandeventer Black LLP, real-time cloud-based access to information pertaining to Nexus's financial status, including its Quickbooks, Lightspeed, NetSuite, and other financial databases, bank accounts, credit card statements, reports, invoices, and other related records bearing on Nexus's financial position. As for historical information responsive to this request, such information has been and will continue to be [] included in the detailed financial production provided to RLI with the cloud file provided concurrent to this item and in the Special Master production process. RLI last received an update as to Nexus's financial records on June 7, 2021, and Nexus contemplates that it will continue to provide updates of such financial information on a monthly basis going forward, in accordance with the Court's Order.
>
> Moreover, historical information responsive to this interrogatory was further produced in response to Plaintiff's previous pre-judgment and/or post-judgment discovery requests. Nexus does not have access to the specific date or dates that such production(s) occurred because most of these prior productions were produced through shared drives and/or other similar access that did not result in Bates Stamped production sets that can be referenced.

*Id.* at 10. Almost every one of Nexus's responses used similar (and, in some cases,

identical) language. *See generally id.* (Interrogs. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16,

17, 18, 20; Reqs. for Produc. 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 16, 17, 18, 19, 20, 23, 24,

25, 26, 27, 28).

18.   On June 23, 2021, RLI moved for contempt against Nexus, citing Nexus's failure to

adequately respond to its Post-Judgment Requests and contending that Nexus had failed

to comply with my May 27, 2021 Order. *See* RLI's Mot. for Contempt Against Nexus;

RLI's Mem. in Supp. of Mot. for Contempt Against Nexus 2–4 (arguing that Nexus's

responses improperly placed the burden on RLI to "sift through previous productions to

check for compliance"). Nexus opposed the motion, arguing that RLI already has the

information it seeks, that Nexus should not be required to duplicate its production, and

that RLI seeks "extreme sanctions against [Nexus] effectively for producing **too many**

responsive documents." *See* Nexus's Opp'n to RLI's Mot. for Contempt Against Nexus

2–3, ECF No. 689.

19. On August 25, 2021, I held an in-person hearing on RLI's motion for contempt. ECF No.

748, Nexus's counsel urged the Court to focus on recent improvements in Nexus's

compliance with the "books and records" provision of Judge Urbanski's October 2020

Order, arguing that Nexus is now making "massive" monthly productions of invoices and

bank records in a "very organized" electronic database through the Special Master

process. But when pressed for specifics, Nexus's counsel could not provide any details to

support his assertions that Nexus has already produced all information responsive to

RLI's Post-Judgment Requests.

20. I suggested that if Nexus claims to have produced in a prior discovery response the

information RLI seeks, then Nexus should be able to direct RLI to that prior discovery

response specifically.

21. Nexus's counsel represented that he did not personally have access to Nexus's prior

discovery responses.

22. When asked why he did not have access to his own client's prior productions in this

matter, Nexus's counsel could not provide any explanation. And when pressed to explain

his basis for representing that Nexus had produced information responsive to RLI's Post-

Judgment Requests in its prior productions, Nexus's counsel stated that he relied on

representations from his client.

23. Accordingly, I directed Nexus to file a sworn declaration within seven days, "identifying

'with specificity and particularity' what information [it has] produced in response to each

of RLI's post-judgment interrogatories and requests for production." Order of Aug. 25, 2021, at 1, ECF No. 733 (internal citation omitted) (quoting Order of May 27, 2021 ¶¶ 1– 2, ECF No. 665).

    a.  I ordered Nexus to "clearly articulate: (1) what specific information and/or documents [it has] produced in response to each of RLI's discovery requests, (2) where, specifically, [it has] produced it, and (3) when [it] produced it." *Id.*

    b.  I also admonished Nexus that "[b]lanket assertions" that it had "generally produced documents responsive to RLI's requests" were "insufficient" and did not "assist the Court in determining what, specifically," Nexus had "provided in response to each of RLI's discovery requests." *Id.*

24.  On September 1, 2021, Nexus filed a sworn declaration signed by Micheal Donovan. *See* Nexus's Notice of Filing Ex. 1, Decl. of M. Donovan on Behalf of Nexus (Sept. 1, 2021), ECF No. 738-1.

    a.  First, Donovan asserted that Nexus had "been unable to comply with the Court's specificity order because [it had] been unable to secure access to the third-party e-discovery platform hosting" its prior productions. *Id.* ¶ 3. He explained that Nexus resolved billing and other disputes concerning access to the e-discovery platform "merely two days" before the deadline in the August 25, 2021 Order. *Id.* ¶ 4. Accordingly, Donovan "conducted an initial review of the database," stated that it "confirms [Nexus's] repeated representations that [it has] provided volumes of data to RLI throughout this proceeding," and attached a 675-page "summary spreadsheet of the contents of the discovery materials housed on the platform," which lists "89,863 document group entries." *Id.* ¶ 5.

b.  Second, Donovan asserted that over the course of the Special Master process, Nexus has given RLI electronic access to various financial documents on "a cloud storage platform called *Egnyte* (the 'Egnyte Drive')." *Id.* ¶ 10. Donovan represented that the Egnyte drive contains "historical bank statements" from "at least" twenty-seven named banks. *Id.* ¶ 12, *see also id.* ¶¶ 13–14.

   i.  His declaration does not represent that Nexus has produced *all* bank statements from those institutions or that Nexus's list of banking institutions is a complete list of institutions with which Nexus has accounts. *See id.* ¶¶ 12–14.

c.  Finally, Donovan asserted that Nexus has already provided substantive responses to several of RLI's Post-Judgment Requests. *See id.* ¶¶ 16–30 (citing Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs.; Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs.).

25. Donovan's declaration violated the terms of my August 25, 2021 Order, which was intended to enforce compliance with my May 27, 2021 Order.

a.  First, Donovan's assertion that he did not have sufficient time to review Nexus's productions prior to filing his declaration does not excuse Nexus's noncompliance. Nexus has had several months to gather the information it needs to properly respond to RLI's Post-Judgment Requests.[6] *See* Decl. of D. Paul ¶ 1, ECF No. 740.

---

[6] I decline Donovan's offer "to provide the Court with in-camera, direct access to the e-discovery database in order to confirm that" its list of 89,863 previously produced documents "accurately reflects the size and scope of prior productions to RLI in this matter." Decl. of M. Donovan on Behalf of Nexus ¶ 6, ECF No. 738-1. Nexus has repeatedly tried to place the burden of sorting through its prior productions on RLI, and it now attempts to place that burden on the Court. Nexus alone bears the burden of fully and completely responding to RLI's Post-Judgment Requests, including by identifying previously produced

b.  Second, contrary to Donovan's position, RLI does not dispute that Nexus produced various financial and other documents in pre-judgment discovery. *See generally id.* ¶¶ 2, 4. Instead, RLI claims that it lacks complete financial information needed to assess Nexus's financial status. *See generally id.* ¶¶ 6–31.

c.  While Nexus has provided some information responsive to certain of RLI's requests, its responses to date are wholly insufficient and fail to provide much of the information RLI seeks, and which my discovery orders of May 27, 2021, and August 25, 2021 directed Nexus to produce. For example:

   i.  Nexus partially responded to RLI's requests for information about its corporate structure and members. *See* Post-J. Reqs. (Interrog. 2; Reqs. for Produc. 3, 14, 18, 21). Nexus initially represented that it had three members (Donovan (51%), Moore (39%), and Ajin (10%)), Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 2–3 (Interrog. 2), and it later represented that Moore had "divested his ownership interest back to the Company" without clarifying who its members are and delineating their membership interests, Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs. 2 (Interrog. 2). To the extent Nexus has produced other information or documents responsive to these requests, Nexus has failed to specifically identify them to the Court.

---

responsive information, and the Court will not take on that responsibility. I have reviewed Nexus's list of previously produced documents, and I note that some of the documents on the list do appear to contain financial information (*e.g.*, bank statements, credit card statements, etc.). But merely knowing that Nexus previously produced a variety of financial documents does not assist the Court in determining whether Nexus has complied with my Order directing it to fully and completely respond to RLI's specific requests.

ii. Nexus has not fully responded to RLI's requests for information about financial transfers from Nexus to Nexus members. *See* Post-J. Reqs. (Interrogs. 3, 4, 16; Reqs. for Produc. 2, 8, 11, 12, 25, 26).

1. In his declaration, Donovan did not assert that Nexus has provided specific responses to Interrogatories 3 and 4 and Requests for Production 2, 8, 11, 12, 25, and 26, all of which pertain to financial transfers from Nexus to its members. *See* Decl. of M. Donovan on Behalf of Nexus 5–7. Donovan did claim that Nexus provided a response to Interrogatory 16, *id.* ¶ 23, which asks Nexus to identify its executives, officers, and employees who earned more than $100,000 in salary or compensation in the past year and provide details about their employment, including a "general statement of their responsibilities," *see* Post-J. Reqs. 21.

2. Nexus produced its Employee Earnings Report for 2021, which shows salary and other information. *See* Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 19–121. But Nexus failed to respond to RLI's request in all other respects. Decl. of D. Paul ¶ 18.

3. To the extent Nexus has produced other information or documents responsive to these requests, Nexus has failed to specifically identify them to the Court, as required by my discovery orders of May 27, 2021, and August 25, 2021.

iii.  Nexus has not fully responded to RLI's requests for information about Nexus's assets and asset transfers. *See* Post-J. Reqs. (Interrogs. 5, 7, 8, 9, 10, 11, 12, 14; Reqs. for Produc. 1, 4, 5, 7, 13, 19, 20, 24, 27).

1.  Nexus continues to cite its production of bank statements and invoices to suggest that it has provided information about its assets and asset transfers. *See* Decl. of M. Donovan on Behalf of Nexus ¶¶ 12–14.

2.  Nexus has produced various bank statements, invoices, and credit card statements. *See, e.g.*, Nexus's Notice of Filing Ex. 2, List of Pre-J. Disc. Producs. 33–41, ECF No. 738-2. But it has not represented under oath that it has produced all bank and credit card statements from all financial accounts for the relevant period, as required by my discovery order of August 25, 2021.

a.  In particular, it is not clear that Nexus has produced *all* of its bank statements for any month within the relevant period, and it is not clear that Nexus has produced *any* bank statements from the first three quarters of 2020. *See* Decl. of D. Paul ¶¶ 3, 6–7.

b.  Nexus has failed to produce concrete information fully responding to RLI's other requests pertaining to its assets (including vehicle titles, real property, federal and state tax returns). *See id.* ¶¶ 13, 14, 23. It provided Carmax documents showing recent sales of several vehicles, *see*

Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 122–67, but it has not made any representations about what vehicles it currently owns or produced the titles to those vehicles.

c. Nexus's failure to produce current information concerning its ownership interests in real property and real property conveyances is inconsistent with known records suggesting that Nexus owns or owned multiple real properties. *See* RLI's Mem. in Supp. of Mot. for Contempt Against the Entities Ex. 2, Nexus Property Inventory – Apr. 2020 1–2, ECF No. 678-2 (listing twenty-five properties held by Nexus in the state of Virginia); Nexus's Notice of Filing Ex. 2, List of Pre-J. Disc. Producs. 40–41, ECF No. 738-2 (listing previously-produced documents concerning fifty-six properties).

3. To the extent Nexus has produced other information or documents responsive to these requests, Nexus has not specifically identified them to the Court, as required by my discovery orders of May 27, 2021, and August 25, 2021.

iv. Nexus has not fully responded to RLI's requests for information about Nexus's debts. *See* Post-J. Reqs. (Interrogs. 13; Reqs. for Produc. 6, 10, 16, 28).

1. Nexus produced a list of clients who have a "due" tag in the Capsule database, *see* Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 168–451, but it disclaimed any representation about the accuracy of those tags and did not provide any data about the amounts those clients owe, *id.* at 6.

2. Donovan also claims that Nexus provided a substantive response to Request for Production 10 by representing that Nexus "has no current liens or encumbrances that would be responsive to" RLI's request. Decl. of M. Donovan on Behalf of Nexus ¶ 26 (citing Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs. 19). But, as RLI points out, Nexus's "July 2021 financial statements" include "a series of entries that would appear to involve liens including 6 entries for 'vehicle loans'. . . ; 2 entries for 'mortgage loans'. . . ; an entry for 'equipment loan'. . . ; an[] entry for 'Delage Copies' . . . ; an entry for 'Vehicle Loan Payable' in excess of $200,000 . . . ; and entries related to 'Interest-Mortgage' on more than 50 properties." Decl. of D. Paul ¶ 25. Without further explanation from Nexus, the information cited by RLI cannot be reconciled with Nexus's assertion that it has no relevant liens or encumbrances. Accordingly, such gaps show that Nexus has not fully responded to RLI's requests for information about Nexus's debts, as required by my discovery orders of May 27, 2021, and August 25, 2021.

3. To the extent Nexus has produced other information or documents responsive to these requests, Nexus has failed to specifically identify them to the Court, as required by my discovery orders of May 27, 2021, and August 25, 2021.

v. Nexus has not fully responded to RLI's requests for information about payments and other financial transfers from Nexus to individuals and other companies. *See* Post-J. Reqs. (Interrogs. 17, 19, 20).

1. First, Nexus disclaimed any relationship with "8 bit Gamer Oasis," Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 10, but RLI cites a "balance sheet entry" in Nexus's July 2021 financial records "entitled '8 bit Gamer Oasis' and listing a value of $29,394.33," Decl. of D. Paul ¶ 20. Thus, Nexus appears to have some relationship with 8 bit Gamer Oasis, and it has not explained what that is.

2. Second, despite the fact that I previously deemed any objections to RLI's requests waived, Nexus appears to object to RLI's request for information concerning legal fees. Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs. 12–13 (Interrog. 17). Nexus "question[ed]" the request's relevance, *id.*, and it has not adequately shown the Court that it has responded to this request.

3. Third, Nexus has failed to provide information concerning all other entities it has funded in part or in whole over the past three years.

25

*See* Decl. of D. Paul ¶ 21 (noting that Donovan "does not even contend [that] Nexus has answered Interrogatory 20").

4. To the extent Nexus has produced other information or documents responsive to these requests, Nexus has failed to specifically identify them to the Court, as required by my discovery orders of May 27, 2021, and August 25, 2021.

vi. Nexus has not fully responded to RLI's requests for information about payments and other financial transfers from individuals and other companies to Nexus, *see id.* (Interrogs. 15, 18; Reqs. for Produc. 6, 17).

1. For example, Nexus has made contradictory representations concerning its client payment methods, *see* Decl. of D. Paul ¶ 17, and has represented that "[m]ost"—i.e., not all—of its client communications concerning payments are done over the phone without producing any relevant written communications, Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 14.

2. Nexus has claimed that it does not "keep accounts receivable information concerning *clients*," Decl. of D. Paul ¶ 15 (emphasis added); *see also* Nexus's Suppl. Consolidated Resps. to RLI's Post-J. Reqs. 4–5, but it has not provided information about whether anyone else, including, for example, "landlords, tenants, affiliated companies, employees, members, [or] officers . . . might owe Nexus funds," Decl. of D. Paul ¶ 15.

26

3.  To the extent Nexus has produced other information or documents responsive to these requests, Nexus has failed to specifically identify them to the Court, as required by my discovery orders of May 27, 2021, and August 25, 2021.

vii.  Nexus has failed to fully respond to RLI's requests for other court and financial information. *See* Post-J. Reqs. (Interrog. 6; Reqs. for Produc. 9, 15, 22, 23).

1.  For example, Nexus appears to contend that it has responded to Interrogatory 6 by identifying "Fusion CPA, Grant Thornton, and Randstad" as the three entities responsible for maintaining Nexus's financial records. Nexus's Second Consolidated Resp. to RLI's Post-J. Reqs. 5. But RLI notes that Nexus uses a variety of databases to store its financial information in various formats and for various purposes. *See* Decl. of D. Paul ¶ 9. Tracking down what those databases are and what they are used for has been a persistent struggle throughout this litigation. *Id.*; *see also* Order of Aug. 12, 2021 6–7. Accordingly, Nexus's response to Interrogatory 6 is incomplete.

2.  Nexus also acknowledged that it had a federal PPP loan that has been forgiven, but it has refused to provide any responsive documentation to RLI's request for production concerning the same. *See* Decl. of D. Paul ¶ 30 (explaining that "[b]ased upon public records, RLI believes Nexus Services received a loan in the

amount of $1,399,856"). The Court does not credit Nexus's

assertion that it no longer has custody or control of any relevant

documentation.

3.  To the extent Nexus has produced other information or documents

responsive to these requests, Nexus has not specifically identified

them to the Court, as required by my discovery orders of May 27,

2021, and August 25, 2021.

26. RLI served interrogatories and requests for production on Nexus because it seeks

information that will allow it to collect upon the underlying judgment against Nexus. RLI

is entitled under Rule 69 to obtain accurate, current information about Nexus and the

status of its available assets. Nexus's repeated willful failures to produce that information

have frustrated RLI's collection efforts, caused RLI to incur significant attorneys' fees to

secure compliance, and hindered the Court's ability to discern the true extent of the

Nexus's ability (or lack thereof) to satisfy the judgment. Such conduct violates the terms

of my May 27, 2021, and August 25, 2021 Orders and RLI suffered harm as a result.

B.    *Nexus Properties, LLC, Nexus Commercial Ventures, LLC, and One Fish, Two Fish, LLC (collectively, "Entities" or "the Entities") failed to respond to RLI's subpoenas* duces tecum *and violated the terms of two Court orders directing them to do so.*

27. In early 2021, RLI served subpoenas *duces tecum* upon each of the Entities in which it

believed Nexus had an ownership interest. *See* RLI's Mem. in Supp. of Mot. to Compel

the Entities 1–2, ECF No. 653 (explaining that Nexus had "offered sworn deposition

testimony, discovery responses, and documentation that confirmed that Defendant Nexus

Services, Inc. had an ownership interest in the Entities").

28

28. The Entities failed to respond to, object to, or move to quash the subpoenas by their March 15, 2021 response deadline. *Id.* at 2; *see Williams v. Big Picture Loans*, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018) ("Normally, failure to object timely waives any objection[.]"); Fed. R. Civ. P. 45(d)(2)–(3).

29. After RLI's counsel reached out to Nexus's then-counsel to inform him that the Entities' response deadline had passed, Nexus's then-counsel confirmed that he represented the Entities and agreed to produce documents pursuant to the subpoenas. *Id.*; *see also* RLI's Mem. in Supp. of Mot. to Compel the Entities Ex. 5, E-Mail from D. Paul to J. Shoreman (Mar. 17, 2021, 3:12 PM), ECF No. 653-5.

30. The Entities subsequently failed to produce any substantive response to subpoenas. *See* RLI's Mem. in Supp. of Mot. to Compel the Entities 2.

31. On March 19, 2021, the Entities asserted that Nexus was not a member of any of the three Entities and that the Entities therefore did not have documents responsive to RLI's requests. *Id.*; *see also* RLI's Mem. in Supp. of Mot. to Compel the Entities Ex. 6, Entities' Resps. to RLI's Subpoenas *Duces Tecum*, ECF No. 653-6 (stating that the "Judgment-Debtors are not now and never have been members of" the Entities).

32. On March 22, 2021, RLI served revised subpoenas upon the Entities. *See* RLI's Mem. in Supp. of Mot. to Compel the Entities Ex. 2, Revised Subpoenas *Duces Tecum* to the Entities, ECF No. 653-2. The revised subpoenas are identical in content, and they do not condition the Entities' responses on the existence of any membership relationship between Nexus and any of the Entities. *Id.* at 4, 8, 12.

33. Like RLI's Post-Judgment Requests to Nexus, the subpoenas to the Entities request information about financial transfers between Nexus and the Entities. *Id.* Specifically, they seek documents concerning:

    a. Financial transactions between the Entities and Nexus, and communications regarding the same, *see id.* (Req. 1 (deposits/checks/wires/other transfers), Reqs. 5 & 6 (property conveyances), Req. 10 (all financial transactions in the past three years), Reqs. 8 & 11 (communications about financial transactions and property conveyances)).

    b. Contracts with Nexus in the past three years, and communications regarding the same, *see id.* (Req. 7 (all contracts), Req. 9 (communications about contracts)).

    c. The Entities' corporate structure and their relationship with Nexus, *see id.* (Req. 2 (corporate documents referencing Nexus), Req. 3 (business records referencing Nexus), Req. 4 (documents regarding any business relationship with Nexus)).

34. The Entities failed to provide any substantive response to RLI's revised subpoenas. *See* RLI's Mem. in Supp. of Mot. to Compel the Entities 2–3.

35. On April 12, 2021, RLI moved to compel the Entities to respond to its revised subpoenas. ECF Nos. 652, 653; *see* Fed. R. Civ. 37(a)(1)–(2) ("[A] party may move for an order compelling disclosure or discovery. . . . A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.").

36. In response, the Entities again asserted that they did not possess responsive documents because Nexus Services, Inc. was not, and never had been, a member of the Entities. *See* Entities' Opp'n to RLI's Mot. to Compel 1–2, ECF No. 659 (stating that prior testimony to the contrary was inaccurate). Because the Entities still construed RLI's subpoenas to

demand information "only in the event" that Nexus held a membership interest in the Entities, they refused to make any substantive responses thereto. *Id.*

37.     On May 27, 2021, I held a hearing on RLI's Motion to Compel the Entities to respond to its subpoenas. Nexus's then-counsel, John Shoreman, confirmed that he represented both Nexus and the Entities. He again argued that Nexus did not own or otherwise have a membership interest in the Entities, but he represented that he would "provide the financial information concerning" the Entities as soon as he "g[o]t [his] hands on them."

38.     I found that Nexus's membership (or lack thereof) in the Entities was irrelevant, noting that RLI's revised subpoenas did not condition the Entities' responses upon any ownership or membership relationship between Nexus and the Entities.[7] I gave the Entities fourteen days to identify "with specificity and particularity" what information they had already produced or planned to produce on a date certain that responded to RLI's subpoenas. *See* Order of May 27, 2021, at 2.

39.     Because the Entities had "failed to respond or object to the subpoenas within the required time-frame," I also deemed all objections waived. *Id.*; *see* Fed. R. Civ. P. 45(d)(2)–(3).

40.     The Entities failed to respond to RLI's subpoenas within the next fourteen days, as required by my discovery order of May 27, 2021. *See* RLI's Mem. in Supp. of Mot. for Contempt Against the Entities 2.

---

[7] Because RLI represented that Micheal Donovan and Richard Moore had previously testified under oath that Nexus had a membership interest in the Entities, and because Nexus now contended that the same testimony was inaccurate, I directed Donovan and Moore to file signed declarations within seven days from the date of my Order "addressing [Nexus's] ownership interests, if any, in the Entities." Order of May 27, 2021 2. On June 3, 2021, Donovan and Moore filed declarations asserting that they had each owned fifty percent "of the membership and ownership interests" in each of the three Entities "since the Entities were formed." *See* Decl. of M. Donovan, ECF No. 669-1; Decl. of R. Moore, ECF No. 669-2.

41. On June 11, 2021, Nexus filed a motion to hold the Entities in civil contempt. RLI's Mot. for Contempt Against the Entities.

42. RLI contended that "there ha[d] been no compliance, let alone substantial compliance, with the Court's Order" and argued that it had been harmed by the Entities' delays and non-compliance. RLI's Mem. in Supp. of Mot. for Contempt Against the Entities 2–3.

43. The Entities did not file a brief in opposition to RLI's motion for contempt within the time allowed. *See* W.D. Va. Civ. R. 11(c)(1); Sched. Order ¶ 8 ("If any motion, properly filed and briefed, is to be opposed, a brief in opposition must be filed . . . . within fourteen (14) days of the date of service of the movant's brief . . . . Except for good cause shown, if a brief opposing a motion is not timely filed, the court will consider the motion to be unopposed.").

44. On June 14, 2021, the Entities filed a Notice of Discovery, "notify[ing] the Court, that on June 11, 2021," the Entities "submitted [their] consolidated response" to RLI's subpoenas. Entities' Notice of Disc., ECF No. 679. The Notice did not provide any detail about the substance of the Entities' response. *See id.*

45. On June 16, 2021, RLI filed a "Notice Regarding the Entities' Discovery Requests." *See* ECF No. 682. RLI claimed that the Entities had "failed to produce *any* documents" in response to RLI's subpoenas, *id.* at 1, and attached a copy of the Entities' recent response thereto, *see* RLI's Notice Regarding the Entities' Disc. Reqs. Ex. 1, Entities' Consolidated Resp. to RLI's Subpoena, ECF No. 682-1.

46. The Entities' consolidated response to RLI's subpoenas violates the terms of my Order directing them to respond to RLI's subpoenas "with specificity and particularity." Order 2, May 27, 2021.

a.  The Entities produced no documents, and their written responses consist largely of vague, boilerplate assertions that Nexus had already produced the information RLI sought.

b.  For example, in response to RLI's request for "[d]ocuments sufficient to show all financial transactions in the past three years with Nexus Services, Inc., Homes by Nexus, Inc., and/or Libre by Nexus, Inc.," *see* Revised Subpoenas *Duces Tecum* to the Entities 4, ¶ 10, the Entities stated:

> The Entities are not aware of any documents responsive to this request. In the event we uncover any such responsive documents, we will update this response on a rolling basis. In any event, all records depicting deposits, checks, wires, or transfers to/from Nexus Services, Inc., Homes by Nexus, Inc., and/or Libre by Nexus, Inc. (collectively, the "Defendants,") to the extent any exist, would [have] been provided by the Defendants as part of their detailed financial production provided to RLI in the ongoing Special Master process. RLI last received an update as to the Defendants' financial records on June 7, 2021, and the Defendants have represented that they will continue to provide updates of such financial information on a monthly basis going forward, in accordance with the Court's Order.
>
> Moreover, prior years' documents responsive to this production request, to the extent any exist, would have been produced in response to RLI's previous pre-judgment and/or post-judgment discovery requests to Defendants. The Entities do not have access to the specific date or dates that such production(s) occurred.

Entities' Consolidated Resp. to RLI's Subpoena ¶ 10. The Entities' responses to each of RLI's other requests are similarly deficient. Order of May 27, 2021 1–2; *see also* Entities' Consolidated Resp. to RLI's Subpoena ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 11.

47. On August 25, 2021, I held an in-person hearing on RLI's motion for contempt.

48. Appearing on behalf of the Entities, Christopher Okay, Esq., conceded that the Entities had not yet fully responded to RLI's subpoenas. He represented that although he had "repeatedly" asked the Entities to give him access to the information he needed to prepare

responses to RLI's subpoenas, he had not yet received "anything." He explained that the

Entities' corporate officers are aware that they need to respond to RLI's subpoenas, but

he argued that they were busy addressing other aspects of this litigation, including

avoiding receivership and the threat of veil-piercing to satisfy the underlying judgment.

Accordingly, he represented that he would "try to provide" information responsive to

RLI's subpoenas to the Entities "when [he] g[o]t it."

49. The Entities' representation that they simply had not had time to pay attention to RLI's

subpoenas or to this Court's May 27, 2021 Order directing them to respond to the same

violated the terms of that Order.

50. Accordingly, I directed the Entities to file a sworn declaration within seven days

"identifying 'with specificity and particularity' what information [they have] produced in

response" to each request in RLI's subpoenas. Order of Aug. 25, 2021, at 1 (internal

citation omitted) (quoting Order of May 27, 2021 ¶¶ 1–2, ECF No. 665).

   a. Specifically, I ordered that the Entities' sworn declaration "clearly articulate: (1)

   what specific information and/or documents they have produced in response to

   each of RLI's discovery requests, (2) where, specifically, they have produced it,

   and (3) when they produced it." *Id.* I further admonished them that "[b]lanket

   assertions" that they had "generally produced documents responsive to RLI's

   requests" were "insufficient" and did not "assist the Court in determining what,

   specifically," they have "provided in response to each of RLI's discovery

   requests." *Id.*

51. On September 1, 2021, Nexus's counsel filed on the Entities' behalf a sworn declaration

signed by Micheal Donovan. *See* Entities' Notice of Filing Ex. 1, Decl. of M. Donovan

on Behalf of the Entities, ECF No. 737-1. Donovan's declaration violated the terms of
my August 25, 2021 Order.

52. Donovan represented that he is both the "President/CEO" of Nexus (including
Defendants Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc.), *id.* ¶
4, and the "Managing Member" of the three Entities (Nexus Properties, LLC, Nexus
Commercial Ventures, LLC, and One Fish, Two Fish, LLC), *id.* ¶ 1.

53. He further stated that because he is "President/CEO" of Nexus, he is "personally aware
that [Nexus's] prior productions to RLI have been 'massive.'" *Id.* ¶ 4. He offered vague,
boilerplate representations that much of the information and documents RLI seeks from
the Entities have already been produced to RLI through Nexus's prior productions. *See
id.* at 3–7. Specifically, in response to several of RLI's requests, Donovan stated:

> *Outside* of the massive database of previously produced electronic files, of
> which the defendants only recently gained access (see accompanying
> affidavit on behalf of the defendants), which could potentially contain
> documents responsive to this request, *the Entities possess no records*
> responsive to this request. To the extent that any such records are present
> on the previous production database, we will describe the file location and
> other specific identifiable location information as soon as it is discovered.

*Id.* ¶¶ 1, 4, 6, 8, 11 (emphasis added); *see also id.* ¶¶ 5, 9–10.

54. Donovan gave the above response to RLI's requests for:

   a. "records depicting deposits, checks, wires, or transfers for calendar years 2020
      and 2021 to/from" Nexus, *id.* ¶ 1;

   b. "documents listing, describing, or memorializing any business relationship with"
      Nexus, *id.* ¶ 4;

   c. "documentation regarding any conveyance, sale or lease of property" by Nexus to
      the Entities "in the last three years," *id.* ¶ 6;

     d.  "[a]ll communications with [Nexus] or any of their respective authorized representatives regarding the purchase[,] sale, or lease of real property in the last three years," *id.* ¶ 8;

     e.  "[a]ll communications with [Nexus] or any of their respective authorized representatives regarding any financial transaction in the last three years," *id.* ¶ 11.

55. In response to a few of RLI's requests, Donovan gave a slightly more substantive response. Most of these responses are nonetheless insufficient for the following reasons: In response to RLI's requests for business and corporate documents naming, listing, or identifying Nexus, Donovan stated, there are "no documents responsive to this request." *Id.* ¶¶ 2–3. These responses lack sufficient detail for the Court to determine whether they comply with its Orders and adequately respond to the discovery requests.

     a.  In response to RLI's requests for business and corporate documents naming, listing, or identifying Nexus, Donovan stated, there are "no documents responsive to this request." *Id.* ¶¶ 2–3. These responses lack sufficient detail for the Court to determine whether they comply with its Orders and adequately respond to the discovery requests.

     b.  In response to RLI's request for documents regarding "any conveyance, sale, or lease of property" by the Entities to Nexus in the last three years, Donovan represented that one of the Entities—Nexus Commercial Ventures, LLC—"has executed and subordinated a deed of trust in favor of Financial Casualty & Surety Inc. and Independent Surety Agents of America, LLC, in connection with the financing of real property in Virginia." *Id.* ¶ 5. Donovan also stated that

documents pertaining to such transaction(s) would be provided to RLI's counsel "under separate cover." *Id.* Assuming the Entities did, in fact, produce such documents to RLI, this appears to constitute a partial response to RLI's fifth subpoena request. At the same time, Donovan also included in his response the boilerplate language quoted above, vaguely claiming that Nexus's prior productions "could potentially contain documents responsive to this request" and indicating that the Entities would identify such documents "as soon as [they are] discovered," *id.* ¶ 5. Accordingly, the Entities have not shown that they provided a complete response to this request.

c.   In response to RLI's request for "contracts [the Entities] entered into in the last three years with" Nexus, Donovan stated: "There are no records responsive to this request. Most agreements between [Nexus] and these [E]ntities were verbal agreements not reduced to writing." *Id.* ¶ 7. This response is contradictory. Donovan's representation that "[m]ost"—i.e., not *all*—agreements between Nexus and the Entities are verbal agreements implies that there are at least *some* written agreements between Nexus and an Entities or Entities. To date, Nexus has either not produced those contracts and/or has not identified where and when it produced them, as required by my discovery orders of May 27, 2021, and August 25, 2021.

d.   In response to RLI's request for "[a]ll communications" with Nexus "or any of [its] respective authorized representatives regarding any contract or transactions with [the Entities] in the last three years," *id.* ¶ 9, Donovan made the same vague, boilerplate response, *id.* He also stated that "on or about July 14, 2021, Counsel

for the [E]ntities produced approximately 450 pages of electronic mail communications responsive to this request by uploading such documents to a shared drive supplied by Counsel" for RLI. *Id.* ¶ 9.

    i. To the Court's understanding following the August 25, 2021 hearing, the 450 pages to which Donovan refers were produced by Entlest Brands, LLC in response to a separate subpoena *duces tecum* served upon that company. At the hearing, counsel for the Entities did not represent that those documents also responded to RLI's subpoenas upon the Entities. Thus, again, given the Entities' vague and contradictory responses, I am unable to conclude that the Entities have properly responded to this request, as my Order of August 25, 2021, was intended to accomplish.

e. In response to RLI's request for "[d]ocuments sufficient to show all financial transactions in the past three years with" Nexus, Donovan represented that "[t]o the extent any responsive documents exist," RLI has access to them through the Egnyte share drive as part of the Special Master process. *Id.* ¶ 10. Donovan further represented that (1) within the "Banking" folder on the Egnyte drive, RLI has access to "historical bank statements" from at least twenty-seven financial institutions; (2) within the "Monthly Reports" folder on the Egnyte drive, RLI has access to "[m]ore recent banking statements . . . which cover the period between October 2020 and August 2021"; and (3) within the "Historical Statements" folder, RLI has access to "historical bank statements from at least 25 banks which largely overlap with the financial institutions listed in the Banking subfolder referenced above." *Id.* ¶ 10.

i.  This response is inadequate. Nexus has produced a variety of bank statements through both pre-judgment discovery and the Special Master process. It is far from clear, however, that the Entities have produced all "[d]ocuments sufficient to show all financial transactions in the past three years" with Nexus, as RLI has requested. *Id.* It is not clear that Nexus's productions to date provide all responsive information. And importantly, the Entities do not appear to have produced any of their *own* records documenting or explaining transactions between them and Nexus. Accordingly, Donovan's response to this request on behalf of the Entities is plainly insufficient.

56. Overall, Donovan's blanket assertions that the Entities have no records responsive to several of RLI's requests, coupled with his vague assertions that Nexus's prior productions might contain unidentified responsive information that will be identified "as soon as it is discovered," *id.* at 3–7, violated the terms of my May 27, 2021 and August 25, 2021 orders to fully respond to RLI's subpoenas and/or to specifically identify what responsive information has already been produced. Similarly, his vague, partial responses to various of RLI's other requests are insufficient. To the extent they identify documents responsive to RLI's requests, they largely do not appear to offer a complete response.

57. RLI served its subpoenas upon the Entities because it seeks information that will allow it to collect upon the underlying judgment against Nexus. RLI is entitled to post-judgment discovery under Rule 69 to obtain accurate, current information on the Entities' relationships with Nexus and the status of their assets. The Entities' repeated willful failures to produce that information have frustrated RLI's collection efforts, caused RLI

to incur significant attorneys' fees to secure compliance, and hindered the Court's ability to discern the true extent of the Entities' compliance (or lack thereof) with RLI's subpoenas. Such conduct violates the terms of my May 27, 2021, and August 25, 2021 Orders and RLI suffered harm as a result.

## IV. Order to Appear

I submit that the facts certified above show that Nexus and the Entities have failed to adequately respond to RLI's discovery requests and subpoenas. Nexus and the Entities have made vague claims asserting that the discovery RLI seeks has been produced in prior discovery and/or through the Special Master process. I twice directed Nexus and the Entities to identify "with specificity and particularity" what information each had produced in response to each of RLI's discovery requests. *See* Order 1–2, May 27, 2021; Order, Aug. 25, 2021. They have not done so.

Accordingly, RLI's Motion to Compel Attendance at Motion for Contempt Hearing, ECF No. 686, is **GRANTED**. It is hereby **ORDERED** that Micheal Donovan, Richard Moore, Evan Ajin **SHALL APPEAR** before the Honorable Michael F. Urbanski, Chief United States District Judge, to **SHOW CAUSE** why Nexus and the Entities should not be adjudged in contempt by reason of the facts so certified. 28 U.S.C. § 636(e)(6); *see Proctor*, 830 F.2d at 521. Judge Urbanski may consider additional "evidence from the parties either to challenge the accuracy of the facts certified by the [undersigned] magistrate [judge] or to establish the existence of other relevant facts" in determining "whether . . . a finding of contempt [is] warranted." *Proctor*, 830 F.2d at 522.

## IV. Recommended Sanctions

Whether Nexus's and the Entities' conduct "constitutes contempt and any sanctions therefore are committed to discretion of the" presiding district judge. *Church*, 35 F. Supp. 2d at 217; *see also JTH Tax, Inc.*, 359 F.3d at 705. "Upon certification" under § 636(e)(6), however, the "magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt." *Church*, 35 F. Supp. 2d at 217. Based on my familiarity with Nexus's and the Entities' intransigence and refusal to comply with its discovery obligations under the Federal Rules, I respectfully recommend that the presiding district judge **GRANT IN PART** RLI's motions for contempt, ECF Nos. 677, 684, and impose the following sanctions to coerce compliance with my prior discovery orders:

1. Impose upon Defendants Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc. (collectively, "Nexus"), a fine of $1,000 per day of non-compliance with the Orders, which shall be jointly and severally payable to RLI in addition to any other judgment, fine, or fee imposed against Nexus in this case.

2. Impose upon Non-Parties Nexus Commercial Ventures, LLC, Nexus Properties, LLC, and One Fish, Two Fish, LLC (collectively, "the Entities") a fine of $1,000 per day of non-compliance with the Orders, which shall be jointly and severally payable to RLI in addition to any other fine or fee imposed against the Entities in this case.

3. Award attorneys' fees and costs incurred in relation to briefing and arguing RLI's motions to compel, ECF Nos. 650 & 652, and motions for contempt, ECF Nos. 677 & 684.

RLI's requests for additional sanctions are **TAKEN UNDER ADVISEMENT** pending the civil contempt proceedings before Judge Urbanski.

**IT IS SO ORDERED.**

The Clerk shall send a copy of this Order to the parties and the non-party Entities.

Further, a copy of this Order shall be served upon non-parties Micheal Donovan, Richard Moore, and Evan Ajin. Within three (3) days from the date of this Order, counsel for Nexus and the Entities are **ORDERED** to file a declaration listing current addresses for Donovan, Moore, and Ajin. The declaration shall be filed under seal and shall remain under seal for the duration of this litigation. Once the declaration is filed, the Clerk shall send copies of this Order to Donovan, Moore, and Ajin at the addresses provided by counsel.

ENTER: December 16, 2021

Joel C. Hoppe
U.S. Magistrate Judge