**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **RLI INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **5:18-cv-00066-MFU-JCH** |
| **NEXUS SERVICES, INC., *et. al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SUPPLEMENTAL RESPONSES TO RLI INSURANCE COMPANY'S ("RLI'S") RENEWED MOTION TO ENFORCE FINAL ORDER AND FOR CONTEMPT SANCTIONS**

Defendants, NEXUS SERVICES, INC., LIBRE BY NEXUS, INC., and HOMES BY NEXUS, INC. (collectively, "Nexus"), hereby file these Supplemental Responses to RLI's Renewed Motion to Enforce Final Order and for Contempt Sanctions, ECF No. 758,[1] as Ordered by the Court in its most recent briefing schedule, ECF No. 773.

**POST-HEARING STATUS UPDATES**

**A. Over $500,000 of additional collateral has been disbursed since the last hearing; the remaining $500,000 promised at the hearing has closed with Nexus's financiers and will be disbursed to RLI in advance of RLI's March 11th filing deadline; thus, in aggregate, Nexus's collateral payments to RLI will exceed $1.8 million dollars by March 11, 2022.**

Subsequent to the last week's February 25, 2022, Hearing, Nexus disbursed to RLI via Stampli (its Automation Payment System) an additional five hundred thousand dollars **($500,000)** in full payment of all outstanding Section A(2) NTD breach notices to date. See Exhibit A. As represented at the hearing, Nexus also closed on an additional five hundred

[1] The Court administratively cleared all other pending RLI motions on the same subject as duplicative and consolidated them under RLI's latest motion, ECF No. 758. See ECF No. 774.

thousand dollars ($500,000) in financing, which funds closed but did not clear for disbursement by today's filing deadline, but which will be disbursed to RLI as Section A(1) collateral payments before RLI's March 11, 2022, filing deadline. See Declaration of Micheal Donovan, attached hereto as Exhibit B.

Thus, as of this filing date, Nexus has disbursed in excess of $1.3 million dollars in aggregate collateral payments to RLI. All NTDs for which RLI is or could be at risk have been paid to date. Further, in advance of RLI's responsive filing next week, Nexus will have disbursed an aggregate of over $1.8 million dollars.

Notably, this progress occurred without need of a receiver. Indeed, given these efforts, a receiver cannot be said to be the appropriate remedy. See *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("Civil contempt is a "severe remedy," and should therefore "not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct.") The Supreme Court has made clear that "a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Taggart*, 139 S. Ct. at 1802; see also *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 880 (Fed. Cir. 2011).

**B. <u>Post-hearing, RLI refuses Court-encouraged mediation.</u>**

Much to Nexus's disappointment, even after the Court's encouragement and offer of Magistrate Ballou's facilitation, RLI has extended its ongoing refusal to participate in mediation. As noted by their email communication to Nexus dated March 4, 2022, RLI "do[es] not believe that mediation would be beneficial." See Exhibit C, attached hereto. RLI also cites as a reason to not participate the fact that "the Court did not order mediation." *Id.*

In contrast, Nexus has been willing to participate in good faith with Court-supervised or other forms of mediation in an effort to resolve this matter.

Appointment of a receiver is considered a "last resort" equitable remedy, one that should only be taken when all other remedial measures have been exhausted. *G. v. Mayor & City Council of Baltimore*, 2005 U.S. Dist. LEXIS 16922, *23 (D. Md. 2005). Given that Nexus has shown itself willing to proffer creative solutions toward satisfying this judgment (*e.g.*, the financing referenced in Section A, above), and further that RLI is unwilling to even entertain mediation discussions *absent a Court order*, the Court should consider issuing just such an order for mandated, court-facilitated mediation in advance of any "last resort" equitable remedies.

**ARGUMENT**

**I. There is no version of an appointed third party or receiver that can protect Nexus's viability and program participants' freedom; the recent sizeable payments also show that such a drastic remedy is neither necessary nor appropriate.**

As the Court is aware, RLI has been singularly focused on foisting a general receiver[2] on Nexus, with extensive powers comparable to that of a bankruptcy trustee, almost as soon as the Collateral Order was entered. See, *e.g.*, RLI filings ECF No. 607 (12/08/20); No. 622 (1/07/21); No. 647 (3/15/21), No. 694 (7/15/21); No. 758 (11/22/21); and No. 766 (2/23/22). While RLI has repeatedly insisted in various hearings that it would be a simple and reasonable remedy to install a receiver to take the "singular act" of "marshalling Nexus's assets," RLI's proposed Receiver Orders (ECF Nos. 772-1 and 772-2) reveal its true intentions.

Among other intrusive authority, RLI envisions its hand-picked receiver needing the following powers to accomplish the simple "singular act" of "marshalling assets:" Nexus must surrender all assets to the receiver's exclusive control; the receiver (who is not shown to have any experience operating an immigration social services and monitoring organization) will

[2] Nexus uses the term *receiver* to cover both a receiver or a third-party under either of Rules 66 or 70(a), because RLI's versions of these entities effectively have the same broad powers in either case, each akin to a fully empowered bankruptcy trustee.

determine the reasonable and ordinary expenses of the business; the receiver can terminate or adjust all existing contracts (including with other sureties); he can terminate employees or reduce their salaries; he can communicate with all vendors, sureties, and financial institutions, alerting them to his receivership; further, such third-parties shall be ordered to cooperate with the receiver in providing information and assets (even more burdensome than the third-party subpoenas issued by RLI that have already caused several financial institutions to cut ties with Nexus); and the receiver may take any other actions he deems advisable or appropriate, among other powers. See ECF 772-1 and -2.

***RLI's concept of receivership is so broad as to include collection of its legal fee damages.***

Most tellingly, RLI's Order also envisions that its receiver, who is appointed solely to perform the singular act of enforcing the Court's injunctive relief, can also "facilitate enforcement … and may remit to RLI … all interest and attorney's fees and other monetary sanctions to which RLI is entitled under the law… until such obligations are satisfied in full."

Collection of damages through receivership was never a remedy requested by RLI in its many filings in support of its Renewed Motion to Enforce, ECF No. 758. Moreover, an equity receiver is not even authorized to assist a creditor with such collection of legal (as opposed to equitable) damages. See, *e.g., Spain v. Mountanos*, 690 F.2d 742, 744-45 (9th Cir. 1982) ("Ordinarily, the equitable remedies provided under Rule 70 are not appropriate in enforcing a money judgment.")

RLI still has all the typical methods available to collect on its judgment. It can use attachment, garnishment, *etc.*; instead, RLI hopes that the court will do its enforcing for it. This overreach exposes RLI's true vision of receivership: it seeks a *de facto* bankruptcy trustee (in all but name) to collect assets for RLI's enforcement of its legal as well as its equitable damages.

This is a gross expansion of Plaintiff's request for a receiver and is evidence of their ever-increasing desire to seize control of Nexus.

More significantly for this court, the scope of RLI's proposed orders is not merely premised on RLI's animosity toward Nexus; rather, there simply is no narrow or "light touch" receiver scenario that avoids Nexus's multiple defaults and concordant risks to its program participants. Unlike a special or limited receivership where the specific act is to take possession specific property, or to sign over a deed, here any appointed receiver will be required to run Nexus's operations while it harvests Nexus's fungible cash, comparable to a bankruptcy or foreclosure trustee.

***A Receiver Appointment will not only harm Nexus but put thousands of Program Participants at risk.***

RLI has been disingenuous with its arguments each time the Court attempts to understand whether Nexus's *de facto* insolvency through receivership might harm Nexus's program participants. RLI deflects each such inquiry with an inapposite statement about immigration bonds being "irrevocable" contracts between the government and a surety. The statement is true, of course, which is precisely why the insolvency of the surety's indemnitor only incentivizes such surety to remand all bonded alien(s) to DHS custody and thereby terminate its [otherwise irrevocable] exposure to the government.

This is more than a theoretical risk. For example, under Nexus's Immigration Bond Indemnity Agreements with Financial Casualty & Surety, Inc. ("FCS"), in the form of ECF No. 772-4, FCS expressly reserves the right to "withdraw from its Suretyship upon said bond or undertaking at any time that it may see fit, as provided by law." *Id.* at ¶ 6. Likewise, Nexus is contractually obligated to "not make any transfer… of any of the property, real or personal, given as security." *Id.* at ¶ 4. This means that the actions of any receiver marshalling assets for

RLI will necessarily breach Nexus's indemnity agreements with FCS, at which point FCS will be entitled to withdraw its suretyship through remand, *i.e.*, the only way FCS can eliminate its exposure under its "irrevocable" bond agreement with the government.

RLI's assertions that this kind of voluntary remand is unavailable is patently false. The remand process is expressly established in immigration policy and practice. Pursuant to the U.S. Immigration and Customs Enforcement's ("ICE") *Bond Management Handbook, Enforcement and Removal Operations*, Doc. No. ICE 2016-ICLI-00005 (the "ICE Handbook," attached hereto as Exhibit D), for example, any bond obligor can "seek to surrender the bonded alien into ICE custody before ICE issues a demand notice… because they [the surety] want to avoid future liability under the terms and conditions of the bond when they believe the alien has become a flight risk." Ice Handbook at p. 16.[3] Likewise, American Surety Company ("ASC"), another major surety of thousands of Nexus program participant bonds, has the added benefit of a special court settlement that further entitles them to "submit a written requests to surrender an alien before ICE issues a demand." See Exhibit E, attached hereto.

---

[3] This remand process is subject to ICE discretion, but such discretion is usually focused on the timing and location of the remand transfer and the government's bed space availability at such time and location. See, *e.g.*, ICE Handbook at p. 16-17 (considering, *inter alia*, as factors "whether the obligor can reasonably guarantee delivery on demand given the circumstances" and "whether adequate detention space is available to house the bonded alien.")

***Receivership will cause a cascading effect of breaches on Nexus, having a cascading effect on Nexus's program participants' remand.***

The Court should be under no illusions: entry of either of RLI's proposed orders, or of *any* third-party taking control of Nexus's accounts, assets, or operations, will extinguish Nexus as a viable ongoing business, cripple the very cash flows that would otherwise fund any hope of RLI's full recovery in this matter, and—most concerningly to Nexus and this Court—seriously imperil the freedom of tens of thousands of immigrant program participants released from secure custody based on Nexus's package of services and indemnities with RLI and other sureties.

There is a reason that the filing of a bankruptcy petition immediately triggers an automatic litigation stay; otherwise, all other creditors would initiate a myriad of proceedings against the bankruptcy estate. But here, the Court cannot preclude such third parties (such as Nexus's other sureties) from filing a cascading series of lawsuits that will only put RLI in a worse position. An equity receiver here also has no power to discharge debts like a bankruptcy court. In other words, RLI's very receivership concept is an impractical measure that is destined to harm RLI by its very structural limitations.

The fact that RLI has been myopic in its quest for receivership should not distract the Court from recognizing this path as an extreme and drastic remedy. Receivership is disfavored and reserved as a last resort for a reason. Receivership orders are difficult to draft, administer, and enforce. There is no body of established statutes and common law to guide an equity receiver as there is for a bankruptcy trustee; the Court is put in the untenable position of creating new rights through an order that must anticipate every unforeseen contingency in the hope of avoiding Nexus's unintended destruction. But, given the nature of Nexus's unique business model and third-party obligations, no amount of drafting can save Nexus's viability with a receiver appointment under any set of conditions.

The purpose of a remedy is to make RLI whole and insulate it from risk, per the parties' original contract. Installing a receiver creates a substantial likelihood of exactly the opposite outcome. A receiver will likely destroy Nexus as a viable business, which only ensures that RLI will be in a worse position than the present course. This assertion is especially true given the creative efforts Nexus has pursued to comply with the Order given very difficult financial constraints.

All the various sureties who accepted the role of obligor on immigration bonds for Nexus's program participants accepted such exposure based in part on (i) Nexus's suite of programmatic services that help keep the bonded aliens in compliance with their bond conditions, and (ii) Nexus's indemnification. In the event that a receiver is appointed, both these protections will be lost. Nexus will cease to function as an ongoing business. The sureties will be incentivized to initiate a mass remand process with ICE to minimize their exposure, and RLI will find itself without a viable indemnitor. RLI's proposed remedy serves neither party, nor the program participants, Nexus's remaining employees, nor its other creditors. *Everyone* loses.

***Fortunately, other less drastic remedies remain available to the Court***

Nexus proposes, as an alternative to RLI's receivership remedy, reengaging a neutral third-party such as the Special Master to independently verify and report Nexus's monthly revenues and the percentage of such revenues paid to RLI as collateral. The Court then can review such reports on an ongoing basis and determine whether the percentages being paid are reasonable in relation to the Nexus's historical revenues. Given its recent actions, Nexus should be permitted to continue to try and create workable solutions in good faith to pay this judgment.

If the goal is coercion, the court must determine the least coercive sanction reasonably calculated to prompt compliance with its order. *United States v. Flores*, 628 F.2d 521, 527 (9th

Cir. 1980); *Matter of Grand Jury Impanelled January 21, 1975*, 529 F.2d 543, 551 (3d Cir. 1976). A receivership is not a wise path.

**CONCLUSION**

RLI's proposed Orders for receiver are inappropriate given Nexus's recent efforts at substantial compliance, including collateral payments in excess of $1.8 million dollars by March 11, 2022. The extraordinary remedy of receivership should not be available where Nexus continues to find creative solutions to make payments and while RLI refuses to even engage in mediation. Receivership will have a significant effect on Nexus's program participants' ability to remain free from secure custody. And the remedy RLI's seeks will only make it less likely that RLI mitigates its exposure to its immigration bond portfolio. The only way Nexus can come into compliance with the Court's Order is to allocate its revenues in a way that ensures the viability of its ongoing operations while sending percentages in excess of costs to RLI. This cannot be done if a receiver is appointed and thereby triggers cascading breaches of Nexus's existing obligations and terminates Nexus's ongoing viability to continue generating the very cash flows that RLI must rely upon to ever be made whole.

WHEREFORE, Nexus respectfully requests that Plaintiff's Renewed Motion to Enforce Final Order and for Contempt Sanctions be denied in its entirety.

Respectfully submitted this 4th day of March, 2022.

/s/ CHRISTOPHER M. OKAY
Christopher M. Okay (VSB #35611)
Chris Okay, Attorney at Law
117 South Lewis Street, Suite 218
Staunton, Virginia 24401
Tel: (540) 466-3130
chrisokay@icloud.com

/s/ CARL A. ANDERSON
Carl A. Anderson
Rock Spring Law Group, PLLC
1050 30th Street, NW
Washington, DC 20007
Tel: (202) 258-2776
caa@rockspringlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on this 4th day of March, 2022, a copy of the foregoing was filed via CM/ECF, which will send a notification of such filing to all counsel of record.

By:

/s/ CHRISTOPHER M. OKAY
Christopher M. Okay (VSB #35611)
Chris Okay, Attorney at Law
117 South Lewis Street, Suite 218
Staunton, Virginia 24401
Tel: (540) 466-3130
chrisokay@icloud.com

/s/ CARL A. ANDERSON
Carl A. Anderson
Rock Spring Law Group, PLLC
1050 30th Street, NW
Washington, DC 20007
Tel: (202) 258-2776
caa@rockspringlaw.com

*Counsel for Defendant*