IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

RLI INSURANCE COMPANY,       )
     Plaintiff,              )
                               )    Civil Action No. 5:18-cv-00066
v.                         )
                               )    By:    Michael F. Urbanski
NEXUS SERVICES, INC., et al.,   )    Chief United States District Judge
     Defendants.          )

## MEMORANDUM OPINION

On October 23, 2020, the court entered an Order directing the Clerk to enter a Judgment in the amount of $3,331,197.50 in favor of plaintiff RLI Insurance Company ("RLI") against defendants Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc. (collectively "Nexus" or "the Nexus defendants"). ECF No. 585. On October 28, 2020, the Clerk entered a Judgment in that amount. ECF No. 588.

Nexus filed an appeal, ECF No. 605, and unsuccessfully sought to stay the Judgment pending appeal. Order, ECF No. 613. The Fourth Circuit Court of Appeals affirmed the Judgment on January 27, 2022. ECF No. 765.

### I.    History of the Struggle Over Post-Judgment Discovery.

For more than two years, RLI has sought post-judgment discovery from Nexus; three related entities, Nexus Commercial Ventures, LLC, Nexus Properties, LLC, and One Fish, Two Fish, LLC (collectively "Entities" or "the Entities"); and their individual owners. RLI served its post-judgment discovery on February 23, 2021, and Nexus first responded on April 2, 2021, by providing a draft, unsigned response stating in substance: "Information provided in prior discovery." See Ex. 5 to RLI Mem. in Supp. of Mot. to Compel, ECF No. 651-5. In

response to a Motion to Compel filed by RLI on April 12, 2021, ECF No. 652, Nexus served

written responses to the interrogatories and requests for production of documents on April

30, 2021. ECF No. 658-1. While the interrogatory answers were signed by Evan Ajin, Nexus's

Corporate Secretary, they were not under oath. Nexus's response to the interrogatories and

document requests was essentially unchanged, typically stating as follows:

> Information responsive to this interrogatory has already been
> produced in response to Plaintiff's previous pre-judgment
> and/or post-judgment discovery request, and/or has already
> been produced pursuant to the District Court's Order that Nexus
> provide RLI with real-time share-drive access to its Quickbooks,
> Lightspeed, and other financial databases, bank account
> statements, credit card statements, accounts payable reports, KPI
> reports, general ledger data (including receipts and
> disbursements, financial statements, balance sheets, and profit
> and loss statements), to the extent Nexus maintains such reports
> and information.  There have been no changes since such
> production(s).

Answer to Interrog. 4, Nexus Suppl. Consolidated Resp., ECF No. 658-1, at 2–3.  Most of the

answers to interrogatories and written responses to document requests track this language.

As reflected above, in response to RLI's post-judgment discovery requests, Nexus has

taken the position that RLI had all the information it needed from the discovery produced

earlier in the litigation. After a hearing held on May 27, 2021, Magistrate Judge Joel C. Hoppe

rejected this argument, issuing an Order granting RLI's motion to compel. ECF No. 665.

Nexus provided a Second Consolidated Response to RLI's Interrogatories and

Requests for Production of Documents on June 17, 2021, ECF No. 685-1, to which RLI

responded by filing a Motion for Contempt.  Mot. for Contempt Against the Entities, ECF

No. 677.

Following another hearing on August 25, 2021, Judge Hoppe entered an Order requiring Nexus to provide sworn declarations stating "with specificity and particularity . . . what information they have produced in response to each of RLI's post-judgment interrogatories and requests for production." Order, ECF No. 733, at 1. On September 1, 2021, Nexus and the Entities filed Declarations by Micheal Donovan, as President/CEO of Nexus and Managing Member of the Entities, regarding responses to RLI's post-judgment discovery.

On December 16, 2021, Judge Hoppe entered an Order for Nexus and the Entities to Show Cause & Certification Under 28 U.S.C. § 636(e)(6)(B)(iii) ("Show Cause Order & Certification"), concluding that "Nexus's and the Entities' responses to RLI's Post-Judgment Requests and subpoenas have been 'wholly inadequate.'" ECF No. 761, at 4. Judge Hoppe's certification of facts in the Show Cause Order & Certification is sprawling, spanning fifty-seven paragraphs over thirty-three pages, detailing the abject failure by the Nexus defendants and the Entities to provide discovery in contempt of the Orders entered on May 27, 2021, and August 25, 2021. In addition to certifying a mountain of facts, the Show Cause Order & Certification ordered the principals of the Nexus defendants and the Entities, Micheal Donovan, Richard Moore, and Evan Ajin, to appear at a hearing before the district court and show cause why the Nexus defendants and the Entities should not be adjudged in contempt.

The court held an evidentiary hearing on the Show Cause Order & Certification on February 25, 2022, and issued a Memorandum Opinion and Order on July 8, 2022, granting RLI's motions for civil contempt against the Nexus defendants and the Entities and ordering tailored sanctions, as follows: fines against Nexus, the Entities, and Nexus's chief executive

Donovan of $1,000 per day of continued noncompliance with the May 27, 2021, and August 5, 2021, Orders, reasonable attorneys' fees and costs, and certain evidentiary sanctions in the collection proceedings. Order, ECF No. 797.

## II.     RLI's Motion to Increase Sanctions.

On November 3, 2022, RLI filed a Motion to Increase Sanctions, contending that "[i]n an unsurprising continuance of events, the Nexus defendants, the Entities, and Micheal Donovan (collectively, the "Contemnors") have failed to remedy their respective contempt and have further failed to pay RLI the sanctions owed for ongoing noncompliance with the Court's various discovery orders." RLI Br. in Supp. of Mot. to Increase Sanctions, ECF No. 807, at 1. In its written response, Nexus offered excuses for its failure to comply as follows:

> Nexus, to the best of its ability, continues to navigate a very challenging economic crisis, Nexus has made payments to RLI and wishes to produce relevant financial information that RLI is entitled to receive, however the company's efforts have been slowed because of the current economic uncertainty affecting revenues and outside influences that have made it difficult to produce material it has already produced.  Nexus has had multiple counsel over multiple years in this case and is still trying to locate all of the productions that have been made to Plaintiffs previously.  That effort has been hampered further by Nexus losing access to a discovery vendor, and then having its offices illegally searched by the Augusta County Sheriff.  Pursuant to this end, and in compliance with the Court's Order, Nexus would like to propose and invite RLI to participate in a live bicameral review session. Nexus would request that the Plaintiffs submit a list of items they'd like to view at least a week prior to the date of review, so that Nexus can insure that RLI has access to anything it requests, or can help RLI understand why Nexus cannot produce any item that is no longer in its custody or control.

Nexus Mot. for Leave to File Late Resp. to Mot. to Increase Sanctions, ECF No. 813, at 3. In addition, Nexus argued that "[o]rdering increased sanctions will only increase the amount that will remain unpaid." Id. at 1.

The court held a hearing on this matter on February 14, 2023, at which the court indicated it was considering the full range of available options. At the hearing, RLI argued as follows:

> So since your order on July the 8th, 2022, they have done absolutely and completely nothing. They have not produced any additional documents. They've not responded to the interrogatories. Neither the three debtor entities have, nor the three other entities. And so we are now 219 days later and, you know, looking at the problem that we always have, which is that Nexus won't do anything.
>
> It's been nearly two years since the discovery was issued looking for what is straightforward information. The assets, the liabilities, who has been paying the principals, how they've been paid, how much they have been paid. And this is the basic information that we're entitled to in this post-judgment collection, and we've got nothing. In fact, if anything, it's gotten worse since your July order because Nexus has now decided not to follow your previous orders either.

Feb. 14, 2023 Hr'g Tr., ECF No. 831, at 3.

For its part, Nexus blamed its noncompliance with the discovery requests on the "vigorous" "collection efforts," id. at 7, of plaintiffs "[t]hat has severely impacted almost all methods of financial transactions." Id.  Nexus's counsel argued that "the continued inability to produce these not just interrogatories but financial data, it is in – somewhat in place because of the efforts of the plaintiffs, but they do realize that they do need to make this information available. I've been working with them in order to do that and to come into compliance." Id. Counsel again noted a recent seizure of records by the Augusta County Sheriff's Office. Id.

Following the hearing, on March 30, 2023, Nexus filed a Supplemental Notice Related to Contempt Proceedings, ECF No. 834, recounting recent efforts to confer with RLI and comply with its discovery requests. Nexus states that it has taken the following actions since the February 14, 2023, contempt hearing: (1) provided RLI with login credentials to Egnyte, the discovery production platform on March 15; (2) conferred with RLI on March 16, at which point RLI found the production deficient and requested "several specific documents and further answers to their interrogatories[;]" (3) provided the documents and answers requested at the March 16 meeting on March 24 via the Egnyte platform; (4) conferred with RLI again on March 28, at which point RLI still found production deficient and requested additional specific documents: 2019 tax returns and documents related to the transfer of ownership; and (5) re-shared the documents requested at the March 24 meeting on March 30, which Nexus claimed had already been uploaded on the Egnyte platform. Id. at 1–2. Nexus also makes the following commitments: to "respond within two business days to any request for clarification or further production" from RLI; to "continue to cooperate as RLI examines the full production[;]" and to "rectify any deficiencies or assist Plaintiff in locating the documentation within the production already made." Id. at 2–3. Nexus claimed "confidence that after a thorough review of the production, Nexus has purged contempt in this Court." Id.

In response, RLI disputes the factual assertions in Nexus' Supplemental Notice and argues that Nexus has not fully produced the required documents, has provided incomplete and sometimes inaccurate interrogatory responses, and has already failed to keep the promises it made in its filing with the court. Therefore, RLI does not believe contempt has been purged and asks that the court increase sanctions, as requested. Resp. to Defs.' Notice Related to

Contempt Proceedings. ECF No. 841. RLI concludes that "Nexus is nowhere near compliance with the Court's Sanctions Opinion and Order" and that "Nexus's description of those meager efforts" in its Supplemental Notice "is inadequate, misleading, and, in some cases, simply false." Id. at 1. RLI agrees that two assertions in Nexus's Supplemental Notice are true: Nexus produced documents on March 15 and March 24, 2023, and participated in two calls with RLI on March 16 and March 28, 2023. Id. Beyond these statements, RLI contends that "virtually nothing else in the filing is accurate." Id. at 2. RLI's response boils down to the following: (1) document production remains incomplete; (2) Nexus has failed to substantively answer interrogatories; and (3) Nexus has made false representations to both RLI and the court.

First, RLI claims that Nexus's failure to produce documents prior to the March conferences went far beyond a few specific documents, as Nexus implies. RLI contends that, since "there were swaths of documents" not produced, these so-called specific requests were "non-exhaustive examples of certain documents and certain categories of documents" that had not been produced. Id. at 3. RLI claims that they used the 2019 tax returns as "an example of the lowest hanging fruit . . . absent from the productions." Id.

Second, even after the documents shared following these conferences, RLI asserts that production remains incomplete. Id. at 9. Nexus has still not produced: loans paid to members; financial transfers made to/from members outside of payroll; payments made from other companies to Nexus; and "a vast array of other information sought in the Request for Production of Documents." Id. at 9–10. For example, RLI has reason to believe that Nexus has four bank accounts with North American Banking Company for which it has produced

no documents.[1] In RLI's words, "Nexus gathered a small sampling of documents, placed them on Egnyte, and hoped the Court would forgive their contemptuous conduct of the last two years if it claimed loud enough that it had now complied." Id. at 10.

Further, RLI contends that the related Entities—Nexus Commercial Ventures, LLC, Nexus Properties, LLC, and One Fish, Two Fish, LLC, have not made any further attempt to comply with the discovery orders and purge contempt. Id. at 10–11.

RLI contends that Nexus's interrogatory responses are deficient because they are both unsigned and unresponsive. Id. at 5–6. The "supplemented" responses add little, relying instead on broad assertions that responsive information had been produced previously, without specifying when or where. RLI highlights that Judge Hoppe rejected "almost verbatim these 'vague discovery responses generally asserting that [Nexus] had produced the information RLI sought' because they 'did not demonstrate that Nexus had, in fact, fully responded.'" Id. at 6 (quoting ECF No. 761, at 13). RLI provided several specific examples demonstrating Nexus's pattern of failing to substantively respond to RLI's requests and, in at least three instances, responding inaccurately.

First, Nexus states that it has not provided any loans to any employees beyond the employee home purchase assistance program from 2015 to 2016. RLI claims this is false because Nexus carried "shareholder loans" on its books from transactions between 2017 and 2020. ECF No. 841, at 7. Second, Nexus claims that it did not rely on outside entities to maintain, revise, process, or keep financial records. RLI disputes this as false, as the 2019 external tax preparer must have possessed Nexus's financial records. Id. at 8. Third, Nexus

---

[1] Nexus has provided documents for one account with this bank, the x4891 account. ECF No. 841, at 10.

claimed that it had no relationship with "8 bit Gamer Oasis" in a response to an interrogatory. However, Nexus's 2019 tax return shows that Nexus maintained a sweep account with this entity. Id. at 9.

In addition to the allegedly false interrogatory answers previously mentioned, RLI accuses Nexus of misrepresenting the date on which certain documents were added to the Egnyte platform. Id. at 3. Nexus represented to the court that it confirmed that the 2019 tax return and documents related to the transfer of ownership "were already included in the production and responses provided via the Egnyte platform" when they re-shared these documents on March 30, 2023.[2] ECF No. 834, at 2. RLI claims that it had searched for the 2019 tax return and had been unable to find it "when the Court's order was entered to respond to the supplemental filing." ECF No. 841, at 4. More concretely, RLI points to the metadata from a document related to the transfer of ownership, which displays a "modified" date of March 30, 2023, despite the document's location in a folder titled "RLI March 23 Production." Id. RLI contends that this document "was surreptitiously added a week later to obscure Nexus's actual production efforts" at this point. Id. at 3.

Finally, Nexus represented to the court that it would respond within two business days to any requests for clarification or further production from RLI. ECF No. 834, at 2. On March 31, RLI requested that Nexus disclose the date the 2019 tax return and transfer-of-ownership documents had been previously uploaded to the Egnyte platform and their respective file locations. At the time of RLI's filing on April 13, Nexus had yet to respond.

### III.    Options Available to the Court.

---

[2] Nexus made a similar assertion to RLI via email, claiming that the documents were in a different folder on Egnyte.

The court has the authority to hold Nexus and the Entities in civil contempt or to refer the case to the United States Attorney for criminal contempt – or both. See United States v. United Mine Workers of Am., 330 U.S. 258, 298–99 (1947) ("Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures."). "Contempts such as failure to comply with document discovery, for example, while occurring outside the court's presence, impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power." Mine Workers of Am. v. Bagwell, 512 U.S. 821, 833–34 (1994) (contrasting the above with "contempts involving out-of-court disobedience to complex injunctions," which often require "elaborate" factfinding and therefore at least an evidentiary hearing, if not a trial by jury).

Courts should use the "least possible power adequate to the end proposed" when crafting sanctions for contempt of court. Shillitani v. United States, 384 U.S. 364, 371 (1987). While not required, this rule encourages courts to first explore whether civil contempt sanctions are appropriate before resorting to criminal contempt. Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 896 (3d Cir. 1992).

The line between civil and criminal contempt is defined by the relief sought. If a contempt sanction "either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained,'" it is civil in nature. Bagwell, 512 U.S. at 829 (quoting Mine Workers, 330 U.S. at 303–04).

### A. Civil Contempt

Federal courts have the inherent authority to hold parties in civil contempt for violating court orders. See Redner's Mkts., Inc. v. Joppatowne G.P. LP, 608 F. App'x 130, 131 (4th Cir. 2015) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (quoting Shillitani, 384 U.S. at 370).

"A court may impose sanctions for civil contempt to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." Id. (quoting Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 821 (4th Cir. 2004)). "The appropriate remedy for civil contempt is within the court's broad discretion." Id. (citing Cromer, 390 F.3d at 822); see also Rainbow School, Inc. v. Rainbow Early Educ. Holding, LLC, 887 F.3d 610, 617 (4th Cir. 2018). Civil contempt sanctions may be "imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." Bagwell, 512 U.S. at 827.

The most common penalties are civil confinement and monetary penalties. However, equitable remedies such as the appointment of a receiver or disgorgement of profits attributable to contempt are also available. Colonial Williamsburg Found. v. Kittinger Co., 792 F. Supp. 1397, 1407 (E.D. Va. 1992), aff'd, 38 F.3d 133 (4th Cir. 1994) (citations omitted).

## 1. Civil Confinement

Confining a contemnor "indefinitely until he complies with an affirmative command" is the "paradigmatic coercive, civil contempt sanction." Bagwell, 512 U.S. at 828. "If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.'" Hicks on Behalf of Feiock

v. Feiock, 485 U.S. 624, 632 (1988) (quoting Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911)). "When the petitioners carry 'the keys of their prison in their own pockets,' the action is 'essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.'" Shillitani, 384 U.S at 368 (first quoting In re Nevitt, 117 F. 448, 461 (8th Cir. 1902), then quoting Green v. United States, 356 U.S. 165, 197 (1958) (Black, J., dissenting)). The period of such civil confinement can be lengthy. See, e.g., Armstrong v. Guccione, 470 F.3d 89, 110–12 (2d Cir. 2006) (holding that seven-year imprisonment for refusing to produce $15 million in property did not violate contemnor's due process rights); United States v. Harris, 582 F.3d 512, 515–18 (3d Cir. 2009) (holding that five-year civil confinement for contempt did not violate due process or become de facto criminal in nature).

Imprisonment is appropriate in cases in which a corporate officer fails to fulfill his obligation to produce documents. In Penfield Co. of Cal. v. Sec. & Exch. Comm'n, 330 U.S. 585, 588 (1947), Young, a corporate officer, refused to comply with a Securities and Exhange Commission subpoena and was held in contempt of court. The district court imposed a flat $50 fine for non-compliance. The court of appeals reversed, holding that the imposition of a flat fine was in error and ordering Young "imprisoned until he produced the documents." Id. at 589. The Supreme Court affirmed, holding that the unconditional nature of the original fine was punitive—and therefore criminal—while Young's imprisonment was civil because it "would be suffered only if the documents were not produced or would continue only so long as Young was recalcitrant." Id. at 592–93. In a similar case, the court imposed confinement for failure to obey a subpoena when monetary sanctions had not secured compliance. Trustees

of Heating, Piping & Refrigeration Pension Fund v. Clean Air Mech., Inc., No. CV JKB-17-3690, 2021 WL 5760906, at *2 (D. Md. Dec. 3, 2021).

The court's authority to imprison an individual for civil contempt is not unlimited. First, a contemnor cannot be confined when he has no opportunity to purge his contempt. See Shillitani, 384 U.S. at 371–72 (concluding that individuals held in contempt for refusing to testify before a grand jury could not be held after the grand jury was discharged); Armstrong, 470 F.3d at 113 (directing the district court to consider with fresh eyes whether the contemnor was presently able to comply with the court's order and suggesting he ought to be released if unable to comply). Second, the court ought not impose a fine and imprisonment simultaneously. See Penfield Co., 330 U.S. at 594 (interpreting 28 U.S.C. § 385, now codified at 18 U.S.C. § 401, and assuming, arguendo, that it applies to civil contempt proceedings); Estes v. Potter, 183 F.2d 865, 866 (5th Cir. 1950) ("The proceeding is one of civil contempt, which is not punishable by both fine and imprisonment for the same offense; but that does not preclude the court from imposing a fine as a punitive measure and imprisonment as a remedial measure, or vice versa."). Within the same order, the court may impose a schedule of sanctions that calls first for an escalating sequence of fines and then for imprisonment upon continued noncompliance. See Bralley v. Carey, No. 3:10CV138, 2011 WL 6326503, at *6 (E.D. Va. Dec. 1, 2011).

### 2.  Civil Fines & Attorney's Fees

"Where a fine is not compensatory, it is civil only if the contemnor has had an opportunity to purge." Bagwell, 512 U.S. at 829. This power to fine "is based on the power to fashion injunctive relief; without the authority to levy fines, a court would have the power to

grant a remedy but no effective means of enforcement." <u>Chesapeake Bank v. Berger</u>, No. 4:14CV66, 2014 WL 5500872, at *4 (E.D. Va. Oct. 30, 2014) (citing <u>Consolidation Coal Co. v. Local 1702, United Mine Workers of Am.</u>, 683 F.2d 827, 829–30 (4th Cir. 1982)).

Per diem fines "imposed for each day a contemnor fails to comply with an affirmative court order" are often used to sanction contempt. <u>Bagwell</u>, 512 U.S. at 830. These fall into the civil category because, "once the command is obeyed, the future, indefinite, daily fines are purged. <u>Id.</u> at 829; <u>cf.</u> <u>Penfield Co.</u>, 330 U.S. at 594–95 (holding that a $50 fine that could not be purged through compliance was punitive and therefore criminal in nature).

Upon continued violation of a court's order, fines may be increased, either on a predetermined schedule, <u>Roe v. Operation Rescue</u>, 730 F. Supp. 656, 661 (E.D. Pa. 1989), <u>aff'd</u>, 920 F.2d 213 (3d Cir. 1990), or via a new order, <u>United States v. Mongelli</u>, 2 F.3d 29, 30 (2d Cir. 1993) (affirming order increasing fine from $4,000 to $10,000 per day).

Courts may also require the contemnor to reimburse the complainant for reasonable attorney's fees, <u>In re Gen. Motors Corp.</u>, 61 F.3d 256, 259 (4th Cir. 1995), particularly where the contemnor has willfully disobeyed a court order. <u>Omega World Travel, Inc. v. Omega Travel, Inc.</u>, 710 F. Supp. 169, 172–73 (E.D. Va. 1989) (citing <u>Wright v. Jackson</u>, 522 F.2d 955, 957–58 (4th Cir.1975)).

The contemnor's inability to pay can be a defense to a coercive civil sanction, though the burden lies with the defendant to demonstrate their lack of financial resources. <u>Maggio v. Zeitz</u>, 333 U.S. 56, 76 (1948); <u>F.T.C. v. Leshin</u>, 719 F.3d 1227, 1234 (11th Cir. 2013) (noting that inability to pay can be a defense to a coercive contempt sanction).

### 3. Receivership

A "district court has within its equity power the authority to appoint receivers and to administer receiverships." Gilchrist v. Gen. Elec. Capital Corp., 262 F.3d 295, 302 (4th Cir. 2001). The court may also appoint a receiver to coerce compliance with the court's orders. See United States v. JK Peris, Inc., No. 6:12-CV-6628(MAT), 2018 WL 3949896, at *4 (W.D.N.Y. Aug. 16, 2018) (determining "that appointment of a receiver as a coercive sanction is warranted in this case if Defendants do not promptly purge their contempt"); United States v. Latney's Funeral Home, Inc., 41 F. Supp. 3d 24, 36 (D.D.C. 2014) (determining that, to achieve the "court's goal" of "fashion[ing] a remedy that will coerce the contemnor into compliance," the "court's equitable powers include the ability to appoint a receiver to enforce compliance with the law"); see also United States v. Bartle, 159 F. App'x. 723, 725 (7th Cir. 2005) ("Appointment of a receiver is authorized by the inherent equitable power of a federal court.") (internal citation omitted).

Federal Rule of Civil Procedure 66 acknowledges the court's inherent authority to appoint receivers and provides:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

Fed. R. Civ. P. 66. In a diversity action such as this, federal law applies "because the appointment of a receiver does not directly affect the outcome of the underlying action." Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 843 (9th Cir. 2009) (cleaned up). "[R]eceivers appointed by a federal court are directed to "manage and operate" the receivership estate "according to the requirements of the valid laws of the State in which such property is situated,

in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b).

"[T]he appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court." Hutchison v. Fidelity Inv. Ass'n., 106 F.2d 431, 436 (4th Cir. 1939). "The appointment of a receiver is an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property." Wilmington Trust v. Homes4Families, LLC, No. DKC 19-1896, 2019 WL 5787985, at *3 (D. Md. Nov. 6, 2019) (quoting 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (3d ed. 2021)). "Neither the Supreme Court nor the Fourth Circuit has provided a concrete list of factors for courts to weigh in considering whether to appoint a receiver." LNV Corp. v. Harrison Family Bus., LLC, 132 F. Supp. 3d 683, 689 (D. Md. 2015). However, other federal courts commonly consider: (1) fraudulent conduct on the part of the defendant; (2) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and (5) the plaintiff's probable success in the action—a point not at issue here—and the possibility of irreparable injury to its property interests. See, e.g., Wilmington Trust v. Homes4Families, LLC, No. DKC 19-1896, 2019 WL 5787985, at *3 (D. Md. Nov. 6, 2019) (quoting 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (3d ed. 2021)).

Comparison to JK Peris, Inc., is particularly apt. In that case, defendants failed to comply with a permanent injunction intended to secure payment of their outstanding taxes.

16

The court found them in civil contempt, gave defendants just over a month to purge the contempt, and determined that appointment of a receiver would be appropriate if defendants failed to do so. Several factors led the court to this determination: the defendants' demonstrated "pattern and practice of noncompliance," the court's doubt that the defendants could "remedy their historic noncompliance or repay their substantial outstanding . . . judgment without close supervision and support," and the fact that a receiver could "guarantee compliance with the Injunction moving forward." Id. at *5 (citing Latney's Funeral Home, Inc., 41 F. Supp. at 38) (internal quotations omitted).

Receivers have been appointed in analogous situations. For example, in Cluck-U Corp. v. C.U.C. of Columbus, Inc., No. 2:07-CV-816, 2011 WL 2682523, at *3–4 (S.D. Ohio July 11, 2011), report and recommendation adopted, No. 2:07-CV-816, 2011 WL 3473353 (S.D. Ohio Aug. 9, 2011), the magistrate judge recommended that the court find defendants in contempt and appoint a receiver to carry out the court's order and ensure that materials improperly using the trademark of another were delivered to the plaintiffs for destruction.

The Federal Rules of Civil Procedure also provide for the appointment of third parties to execute compliance should a party fail to do so. Rule 70 provides federal district courts with the authority to appoint a third person to perform specific acts in order to enforce a judgment, explaining:

> If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense— by another person appointed by the court. When done, the act has the same effect as if done by the party.

Fed. R. Civ. P. 70(a).

## B. Criminal Contempt

Criminal contempt "is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control." <u>Nilva v. United States</u>, 352 U.S. 385, 392 (1957). "To support a conviction of criminal contempt for violation of a court order, it must be proved beyond a reasonable doubt that a person willfully, contumaciously, intentionally, with a wrongful state of mind, violated a decree which was definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed." <u>United States v. McMahon</u>, 104 F.3d 638, 642 (4th Cir. 1997).

Criminal contempt is "a crime in the ordinary sense" – "criminal penalties cannot be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." <u>Bagwell</u>, 512 U.S. at 826 (first quoting <u>Bloom v. Illinois</u>, 391 U.S. 194, 201 (1968), then quoting <u>Hicks v. Feiock</u>, 458 U.S. 624, 632 (1988)). An individual charged with criminal contempt has due process rights including: the right to notice of charges, assistance of counsel, summary process, and to present a defense, <u>Cooke v. United States</u>, 267 U.S. 517, 537 (1925), as well as the privilege against self-incrimination and the right to proof beyond a reasonable doubt, <u>Gompers</u>, 221 U.S. at 444. A trial by jury is required for a "serious" criminal contempt "involving imprisonment of more than six months." <u>Bagwell</u>, 512 U.S. at 826–27.

Courts have the power to punish criminal contempt "by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401.

Pursuant to Federal Rule of Criminal Procedure 42, the court is authorized to refer the matter to the United States Attorney for prosecution. Fed. R. Crim. P. 42; see also SonoMedica, Inc. v. Mohler, No. 1:08-CV-230(GBL), 2009 WL 2371507, at *5 (E.D. Va. July 28, 2009) (referring defendants to the United States Attorney for criminal contempt for willfully disobeying a direct court order); Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, at *528 (D. Md. 2010), aff'd in part, modified in part, No. CV MJG-06-2662, 2010 WL 11747756 (D. Md. Nov. 1, 2010) (explaining the procedural hurdles to criminal contempt prosecutions for discovery violations).

In sum, the court has many options available to it under its contempt authority to address the ongoing discovery violations by Nexus and the Entities. The court also has the power to subject corporate officers to the same contempt sanctions, as long as they are "officially responsible for the conduct of [the corporation's] affairs." Wilson v. United States, 221 U.S. 361, 376 (1911) (holding that if corporate officers "apprised of the writ directed to their corporation, prevent compliance or fail to take appropriate action within their power for the performance of a corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt").

## IV.     The Path Forward.

For more than two years, RLI has pressed for fulsome and sworn answers to its February 23, 2021, interrogatories and comprehensive production of documents responsive to its February 23, 2021, request for production of documents. It is worth noting that the interrogatories and document requests are not particularly onerous or burdensome. There are only twenty interrogatories and twenty-eight document requests directed toward obtaining

information as to Nexus's corporate structure and financial circumstances, requesting very basic information as to its assets, liabilities, financial statements, tax returns, judgments, liens, promissory notes, loans, leases, credit card statements, payments to a member or owner of the company, income streams, and indebtedness.

For more than two years, Nexus has evaded its discovery obligations, largely insisting that RLI already has the documents it seeks.  The problem with this approach is that when ordered by Judge Hoppe to identify where in its prior productions the documents requested may be found, Nexus falls flat, blaming its inability on its failing business, its former counsel, third-party document vendors, RLI's vigorous collection efforts, and most recently, the Augusta County Sheriff.

On July 8, 2022, the court held Nexus in contempt and ordered payment of fines, jointly and severally due from Nexus, the Entities and Nexus's President/CEO Micheal Donovan, of $1,000 per day until the discovery is produced and the contempt purged. Apparently, this contempt sanction has proven ineffective, as several months later, RLI sought to increase the sanctions, claiming that they have had no effect and that RLI has not complied with the court's discovery orders.  Nexus asserts that it cannot pay the present fines, much less any increased fines, and that its recent efforts have purged the contempt.

In other words, after two years of efforts, and significant involvement by the court, the parties remain at a discovery impasse.  The court has entered Order after Order, including contempt sanctions, to no avail. During the past two years, multiple counsel for Nexus involved in the discovery process have withdrawn, citing conflicts of interest and ethical obligations. See Order Granting Motion for Leave to Withdraw as Counsel by Mario Williams

20

and John Shoreman, ECF No. 724; Order Granting Motion for Leave to Withdraw by Carl Anderson, ECF No. 836.  The frequent and repeated withdrawal of counsel speaks volumes as to Nexus's discovery intransigence. As such, it is clear that the path taken to date by the court is not working, and new remedies must be employed to obtain the basic information requested by RLI. Accordingly, the court will chart a new course to resolve this languishing post-judgment dispute. The new course has two components.

First, the court will calculate the amount of monetary contempt fines incurred to date as directed in the July 8, 2022, Order and direct the Clerk to docket a Judgment in that amount. The monetary contempt sanctions ordered in the July 8, 2022, Order will then be terminated.

Second, the court will impose the new civil contempt sanctions outlined below, to include (a) civil confinement of the Nexus principals if they continue to fail to provide sworn and complete answers to RLI's post-judgment interrogatories; and (b) appointment of a Receiver for the limited purpose of taking possession of the books and records of Nexus and the Entities to allow discovery of the requested and subpoenaed documents.

**Before ordering the new contempt sanctions, however, the court will provide Nexus and the Entities with ONE FINAL OPPORTUNITY to (1) comply with Judge Hoppe's Orders of May 27, 2021, and August 25, 2021; (2) provide sworn and complete answers to RLI's post-judgment interrogatories; and (3) produce the documents requested by RLI in its request for production of documents and subpoenas. Nexus and the Entities have until June 30, 2023, to do so.**

On or before June 30, 2023, RLI is **DIRECTED** to notify the court as to whether Nexus and the Entities have provided sworn and complete answers to interrogatories and produced the documents requested.

If Nexus and the Entities choose not to fully comply with Judge Hoppe's May 27, 2021, and August 25, 2021, Orders and provide complete discovery responses by June 30, 2023, as a further civil contempt sanction, the court will take the following steps:

1.      As a consequence of Nexus's continued failure to provide sworn and complete interrogatory answers, as a further contempt sanction, effective July 3, 2023, the court will **ORDER** the United States Marshal to take Nexus's officers, Micheal Donovan and Evan Ajin, into civil confinement until sworn and complete interrogatory answers are served.

2.      As a consequence of the failure of Nexus and the Entities to produce the documents requested in the request for production of documents to Nexus and the subpoenas to the Entities, as a further contempt sanction, effective July 3, 2023, the court will **ORDER** the appointment of an independent forensic accountant to serve as a Receiver for the limited purpose of taking possession of the books and records of Nexus and the Entities and allowing the discovery of the documents requested by RLI from Nexus and the Entities.  The parties may submit names of independent forensic accountants to serve as Receiver within fourteen (14) days of the date of the accompanying Order.

It is long past time that Nexus and the Entities comply with Judge Hoppe's Orders and RLI's post-judgment discovery requests, and given the continuing discovery failures, the court concludes that these further civil contempt sanctions are necessary to obtain compliance with the court's Orders and the Federal Rules of Civil Procedure.

An appropriate Order will be entered.

Entered: June 1, 2023

Digitally signed by Michael F.
Urbanski      Chief U.S.
District Judge
Date: 2023.06.01 17:48:08
-04'00'

Michael F. Urbanski
Chief United States District Judge