**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Harrisonburg**

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 5:18cv00066-MFU-JCH |
| | ) | |
| NEXUS SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## NOTICE

It is time to appoint a receiver to take control of Nexus's books and records and fully respond to RLI's discovery. Despite multiple clear and express mandates by this Court, Defendants refuse to answer discovery as required by the Federal Rules of Civil Procedure or this Court's orders. RLI still lacks basic information that it has been seeking for more than two years. As such, RLI hereby notifies the Court that the Defendants' and the Entities' respective responses to post-judgment discovery remain woefully incomplete and deficient. It is clear Defendants will never answer the discovery without the appointment of a receiver to take control of their records, interact with third parties, and reveal the hidden financial information that Defendants continue to seek to obscure.

## BACKGROUND

The Court hardly needs a recitation of Nexus's ongoing noncompliance in this matter. Defendants and the Entities were repeatedly ordered to fully respond to post-judgment discovery. In its June 2, 2023, Order, this Court gave Nexus and the Entities "ONE FINAL OPPORTUNITY" (ECF No. 847 at 21 (emphasis in original)) to achieve full compliance with the Court's prior Orders by no later than June 30, 2023. In his August 25, 2021, Order, Judge

Hoppe made clear that: "Blanket assertions that Nexus and the Entities have generally produced documents responsive to RLI's requests are insufficient and do not assist the Court in determining what, specifically, Nexus and the Entities have provided in response to each of RLI's discovery requests." Dkt. No. 733. Defendants and the Entities were to respond to RLI's requests "with specificity and particularity" to all of RLI's requests. Dkt. Nos. 665 and 733. In the event of noncompliance, this Court stated it will order the appointment of an independent forensic accountant to serve as a Receiver for the limited purpose of taking possession of the books and records of Nexus and the Entities and allowing the discovery of the documents requested and subpoenaed by RLI from Nexus and the Entities. Dkt. No. 848 at 2.

Nexus and the Entities have not come anywhere near compliance with this Court's "ONE FINAL OPPORTUNITY" and the time to appoint a receiver is now.

## ARGUMENT

### I. Defendants' and the Entities' production is not even facially compliant with the Court's Order.

#### A. Defendants and the Entities made no effort to respond "with specificity and particularity" to RLI's document requests.

Judge Hoppe's Order could not have been more clear: "Nexus must clearly articulate: (1) what specific information and/or documents they have produced in response to each of RLI's discovery requests, (2) where, specifically, they have produced it, and (3) when they produced it." Dkt. No. 733. Defendants have failed to comply.

Defendants' responses to RLI's requests for production of documents simply make the general claim throughout that they "have produced all responsive documents which are in their custody and control" or that "[a]ll responsive documents produced." (*see* Exhibit 1). This is the

2

exact same conduct that led to Judge Hoppe's original orders. We are at the same place we were more than two years ago.

The Court doesn't have to look far in Defendants' responses to see this noncompliance as even the first request reflects this repeated misconduct:

> 1. Provide all bank or other statements for each of the financial institutions listed in the interrogatories above for calendar years 2020 and 2021.
>
> **All responsive documents produced. Any further responsive documents will be produced in compliance with the FRCP.**

*Id.* (depicting Defendants' response to RLI's first request for production of documents). Defendants' responses plainly fail to state "with specificity and particularity" what, when, and where these documents were produced. *See id.* They do not even try.

The lack of specificity and particularity is also true with respect to the Entities' production. *See* Exhibit 2. The Entities seem to acknowledge that they were supposed to respond with specificity and particularity, but they expend no effort to do so and instead include blanket citations to hundreds of thousands of pages that are purportedly responsive:

> 1. All records depicting deposits, checks, wires, or transfers for calendar years 2020 and 2021 to/from Nexus Services, Inc., Homes by Nexus, Inc., and/or Libre by Nexus, Inc.
>
> **Response to 1:**
>
> Entities have produced all such documents in Entities possession and control, which could be located after a diligent search, and they are contained in Annex 1 attached hereto and incorporated within this Declaration by reference.
>
> Other responsive documents may be located in the production of Nexus Services, Inc. at 00000001-00173496, 00174135-00178669, 00213658-00222325 (contained in "OCR & Bates RLI Production March2023") which on information and belief has been provided to RLI's Counsel.
>
> On information and belief, to the extent other documents may exist, such documents would be in the custody and control of the Augusta County Circuit Court, which retains custody of property seized pursuant to search warrants issued by the same Court. The Augusta County Sheriff's Office seized an unknown number of documents on or about, October 5, 2022, pursuant to search warrant 015CM2200006355, which were stored at 113 Mill Place Parkway, Verona, Virginia 24482.

Defendants and the Entities have yet again flagrantly disregarded an order of this Court. For this reason alone, the Defendants and the Entities remain in contempt.

**B. Defendants' interrogatory responses are deficient.**

Finally, after more than two years, Defendants have produced at least some sworn answers to interrogatories (Exhibit 3), but these responses are also woefully deficient because they are incomplete, inaccurate, and rely on general statements of production for materials that are not reasonably accessible or do not exist.

**1. The interrogatory responses are incomplete and verifiably inaccurate.**

The incompleteness and inaccuracy of Defendants' responses are best highlighted by an example. In its Interrogatory Request No. 3, RLI asked Defendants to: "Identify the nature, amount, and basis for any compensation, benefit, loan, distribution, *or other financial transfer to*

4

*a Member* (or to the benefit of a Member) in the past 36 months." Exhibit 3 at 2 (emphasis added). In response, Defendants provide a list of salary payments made to Messrs. Donovan, Moore, and Ajin and then state, in part, that: "No member has taken any distributions in the past 36-month period. Shareholder loans stopped entirely on May 4 of 2020." Ex. 3 at 2-4. Defendants further state in response to Interrogatory Request No. 15 that Subversivo processes all payments and conducts all financial transactions of Defendants "due to the current lack of institutional relationships." Ex. 3 at 19. This is not a good faith attempt to respond to the interrogatory.

  As part of its third-party discovery in this matter, RLI received copies of bank records from DuPont Community Credit Union for a bank account ending in x943. RLI became aware of this bank account through garnishment efforts related to one of Defendants' tenants. Those efforts allowed identification of where a check, made out to Defendants, was deposited.  Once aware of the bank account, RLI issued its subpoena to DuPont seeking records related to that account. Dkt. No. 808 (Notice of Subpoena to DuPont).

  Revealingly, when RLI received these records, it was clear that the tenant's rent check was not deposited into an account held by its landlord, Homes by Nexus, Inc., but rather a bank account jointly owned by Messrs. Donovan and Moore. A review of those records further showed that this personal bank account of Messrs. Donovan and Moore was being used to make financial transfers to the members by depositing countless business-related checks—made payable to Defendants. Proof of ownership as well as a sampling of those deposits are included below, including checks for the balance of accounts when Defendants closed out their business accounts at various banks:

**APPLICATION FOR MEMBERSHIP**

Account Number ▮▮▮▮ 943

I/We are eligible for membership in DuPont Community Credit Union through one or more of the affiliations:

Harrisonburg

I/We affirm, under penalty of perjury, that all of the information provided in order to join DuPont Community Credit Union is true.

Primary Owner Name: RICHARD EDWARD MOORE  SS#: ▮▮▮
Primary Employer: ▮▮▮
Type of ID Document: ▮▮▮
Place of Issuance: ▮▮▮
Physical Address: ▮▮▮

First Joint Owner Name: MICHEAL PAUL DONOVAN  SS#: ▮▮▮
First Joint Owner Employer: ▮▮▮
Type of ID Document Used: ▮▮▮
Place of Issuance: ▮▮▮



**DuPont Community**
CREDIT UNION
540.946.3200 | 800.245.8085 | mydccu.com
PO Box 1365, Waynesboro, Virginia 22980

RETURN SERVICE REQUESTED
547239   44123   1/6   UNQ   01-31-22 CLT
000044122  1

RICHARD EDWARD MOORE
MICHEAL PAUL DONOVAN
47 S WINDSONG CT
FISHERSVILLE VA 22939-2175

**Account Statement**

Account Number **xxxxxxx943**
Statement For **01/01/2022 - 01/31/2022**
Page **1 of 5**



Win a $1,000 scholarship
learn more at







RLI has dozens and dozens of examples of checks made out to the Defendants that were deposited in this personal bank account of Messrs. Donovan and Moore to the extent that the Court wishes to see additional examples.

Nowhere in Defendants' response to Interrogatory No. 3 do Defendants reference these deposits as "*other financial transfer[s] to a Member*" nor do they report that the Defendants have been utilizing this account to transact its business. *See* Ex. 3. They do not disclose the basic information about how or why the Defendants' members are receiving all of these funds that clearly belong to Defendants and should have been subject to post-judgment collection efforts.

Defendants have undertaken a wide range of activities to hide their assets and transfers. They have refused to disclose how they are actually conducting business and respond fully to the discovery requests. RLI is entitled to information regarding Defendants' current financial status, has requested such information in its post-judgment discovery, and has not been provided with current or historical information regarding Defendants' financials. After years of this behavior, appointment of a receiver is the only answer.

**2. Defendants hide and evade their post-judgment obligations by pointing to an entity called Subversivo.**

Defendants claim that they have had no banking relationships whatsoever since March of 2023. Ex. 3 at 12[1]; Exhibit 4 (email from counsel confirming that "my clients have made the statement under penalty of perjury that the only bank that Nexus has had an account with, *etc.*, was North American Banking Company, since March 2023.").

---

[1] RLI notes that on its face this response is technically only responsive as to Nexus Services, Inc. and makes no mention of Homes by Nexus or Libre by Nexus. But, taken with the representation of counsel in Exhibit 2 that his "clients" made the representation that there were no other banking relationships, RLI will assume for purposes of this Notice that the referenced Interrogatory Response No. 9 was intended to refer to all Defendants.

9

Instead, Defendants claim that all of their finances are run through "Subversivo." *Id.* ("Finally, as to Subversivo and transactions, <u>all current transactions</u> of Nexus, due to lack of banking relationships, are being conducted by Subversivo, through the Subversivo Services Agreement") (emphasis added); *see also* Ex. 3 at 19.

Subversivo is a Nexus-affiliated entity. Notably, the SCC records reveal that Subversivo is controlled by David See, director of operations and a nearly decade long employee of Defendants. *See* Exhibit 5 and 6. In its June 2023 production, Nexus produced, for the first time, an "Administrative Services Agreement," dated April 15, 2022, between Nexus and Subversivo, pursuant to which Subversivo agreed to provide payment processing and administrative services to Nexus at a rate of $10,000/month. Nexus also produced, for the first time, a Loan Repayment Agreement, dated February 26, 2022, between Nexus and Subversivo (also executed by, respectively, Donovan and See), pursuant to which Subversivo agreed to provide an unexplained loan to Nexus in the amount of $1,000,000 by way of eleven staggered payments spanning the period of March 4, 2022 through June 29, 2022.

No documentation or accounting records from Subversivo have been provided despite the ongoing relationship between it and Defendants. Instead, the Defendants represent that "the records kept in Zoho and Quickbooks are identical to the records which would be maintained by Subversivo" and therefore RLI has access to them. Ex. 4. Nexus does not provide any ongoing communications with Subversivo or the basic daily records that would actually exist if this was a legitimate arrangement and not yet another attempt to evade Defendants' obligations and to avoid revealing Defendants' financial transactions.

As the Court is well aware, the parties have been down this road before. The Defendants have a history of providing RLI access to various databases that purportedly house anything and

10

everything RLI could want. This "contemporaneous" access to its records has been anything but and is only used as a red herring for Defendants' failures to comply with the Court's instructions. Defendants seek yet again to suggest that they have produced everything by granting RLI access to various platforms. This is not the case.

When RLI's counsel reviewed the documents in Zoho and stressed that those materials "appear[]to just include client contact information and some authorization forms" and then inquired as to "[w]hat other information in purportedly included in Zoho?," Defendants' counsel acknowledged that the platforms were "hard to utilize and not necessarily intuitive," but that " all records related to them should be on Zoho." Exhibit 7 (email chain between RLI's counsel and Defendants' counsel regarding Zoho). These generalities are not responsive. Defendants cannot delegate their responsibility to comply with the Court's Order by pointing to some database that supposedly contains responsive documents that cannot be reasonably accessed—RLI's counsel has doubts they even contain the records at all. RLI's request for an FTP transfer of the supposed documents was met with refusal by Defendants' counsel because "the main issue with downloading and transferring involves both the size and that it is an active database which changes on a daily basis." Exhibit 7.

Screenshots depicting examples of what RLI is able to see on Zoho are attached hereto as Exhibit 8 for each of the respective available tabs. Client information is redacted in this filing for privacy reasons. As is clear from these screenshots, the available documentation does not show "all financial transactions" as represented in Defendants' responses to interrogatories. Exhibit 3 at 19 (explaining that Nexus "utilizes a vendor, Subversivo, LLC, to both process payments and conduct all financial transactions due to the current lack of institutional relationships."). It is Defendants' obligation to comply with the Court's Order, generalities pointing RLI to a platform

11

where documents are housed is not responsive and, even if it were, Defendants have not taken steps to ensure that RLI has access to the purported materials on the database nor has it attempted to provide the materials by some other accessible means.

### 3. Defendants admit to destruction of the records they were required to have produced years ago.

One of the key questions in post-judgment discovery has been where did all the revenue go that was earned by Defendants and Entities. The answer to that question was in Nexus's financial records which were the subject of the original discovery requests issued more than two years ago. A critical component of those records are the records concerning merchant accounts, credit card service providers, and Point of Sale ("POS") systems (e.g., American Spirit, FluidPay, Tabapay), and the databases that Nexus used to make, track, sort, and report on its expenses. Aside from limited productions from Stampli and Airbase from more than a year ago,[2] Nexus has failed and refused to produce any documents from, or provide full and unfettered access to, all of its account payables databases,[3] including data related to all payments and payables, all associated notes, invoices, payment schedules, and expense reports, and all tools available to track, analyze and sort (*e.g.*, by vendor, other payee, time period, etc.) such data and to generate related reports.

Accordingly, in its July 12, 2023, email, RLI inquired where Nexus's records relating to its merchant accounts/credit card service providers and payables databases were located within the

---

[2] Stampli is an AP automation program used to process invoices via ACH and paper check. *See* ECF No. 712 at 2. Airbase was intended to "replace employee issued credit cards, Wex fuel cards, Wufoo expense reimbursement[s], and Brinks Expense Cards" and to "clear check payments and process ACH vendor payments." *Id.* Additionally, Nexus appears to have discontinued its use of Melio – another of the numerous payables databases cycled through by Nexus – in April 2021. *Id.*

[3] RLI understands that Nexus generally uses, or used, these databases to manage invoice payments and record expenditures as a partial replacement for the Verified Value/Deluxe eCheck database that it had used until December 2020, before discontinuing its use and eliminating all records.

June 2023 production, noting that such documents were responsive to RLI's RFPs. For instance, as reflected in certain of its records, Nexus had apparently used TabaPay – an intermediary financial tool– for over $3 million in transactions in 2022. Yet, other than a 1099-K tax form for the calendar year 2022 in which Libre is identified as the Payee for over $3 million in gross payments and 6,657 individual transactions, no TabaPay records or other supporting materials explaining these extensive payments have been produced.

In response to RLI's inquiry, Nexus asserted that "the records relating to TabaPay, Stampli, Airbase, etc. (collectively 'FinTechs') … are not in the possession or control of Nexus and would need to be subpoenaed from the respective FinTechs. Nexus no longer has accounts with the Fintechs, therefore cannot log into the same accounts, and cannot provide the records." *See* Ex. 4.

It is apparent from this admission that Defendants, while subject to ongoing discovery requests and other obligations to provide its books and records to RLI, instead refused to provide the records while they were in their custody and control, terminated the relevant relationships, and now years later reveals that those records are unavailable. It is this type of conduct and prejudice, clear contempt for this Court's orders, that justifies the appointment of a receiver.

**C. The time has come to appoint a Receiver.**

RLI has tried and tried again to work with Defendants and their numerous counsel to no avail. RLI has gone above and beyond to try and work with the Defendants and its efforts have been in vain, only causing further delay, obfuscation, and incurring unnecessary costs. RLI has no confidence in the empty promises and invitations of Defendants to cure.[4] It is clear to RLI that

---

[4] Defendants' counsel has offered for RLI to come to its offices to inspect its records among other things. Given the posture of the case, the years of waiting, the efforts RLI has already expended to try to work with Defendants, these offers do not seem useful nor does RLI believe it bears the burden of ensuring Defendants' compliance. Nor have Defendants indicated what such a visit would actually achieve.

it is never going to get the information it has sought from the Defendants themselves despite their discovery obligations. The only way to get to the bottom of the Defendants' current and historical financial transfers is to appoint a receiver.

## CONCLUSION

Defendants and the Entities pretend like they are in compliance with this Court's mandates when they continue to engage in the same deceptive behavior over and over. RLI has expended considerable time and effort reviewing what Defendants and the Entities have provided, attempted to get access to documents and materials that were purportedly available by database, communicated with opposing counsel, but to no avail. The time has come for Defendants and the Entities to be held accountable for refusing to comply with the Court's Orders. RLI still lacks basic information that it has been seeking for more than two years. Given the failure of the Defendants to fully comply with the Court's June 2, 2023, Order, RLI asks for the appointment of a receiver for the limited purpose of taking possession of the books and records of Nexus and the Entities to allow discovery of the sought-after information and requested and subpoenaed documents encompassed in RLI's requests, specifically sufficient documentation and information revealing Defendants' current and historical financial status, relationships, and transactions.

Dated: August 15, 2023

RLI INSURANCE COMPANY

/s/ _____

Dustin M. Paul (VSB No.: 75287)
Jennifer L. Eaton (VSB No.: 87491)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600

14

Facsimile: 757-446-8670
dustin.paul@wrvblaw.com
jennifer.eaton@wrvblaw.com
*Attorneys for Plaintiff RLI Insurance Company*