IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

RLI INSURANCE COMPANY,

    Plaintiff,

v.

NEXUS SERVICES INC.,
LIBRE BY NEXUS INC.,
HOMES BY NEXUS INC.,

    Defendants.

Case No.: 5:18CV00066-MFU-JCH

# **DECLARATION OF ZACHARY LAWRENCE**

ZACHARY LAWRENCE, declares as follows pursuant to 28 U.S.C. § 1746:

1. I am attorney for Nexus Services, Inc. ("Nexus"), in this matter and competent to make this declaration, which is based on my own personal knowledge, unless stated on information and belief.

2. I entered this case on April 12, 2023, prior to this time, on February 25, 2022, Nexus Service, Inc., (hereinafter "Nexus") was held to be in contempt for various failures in post-judgment discovery proceedings, on the same day Nexus produced documents electronically to RLI using Egnyte, a secure shared drive service. When retained, Nexus asked me specifically to help bring them into compliance with this Court's orders.

3. Given the voluminous docket and significant confusion left in the wake of myriad counsel, it took significant time to familiarize myself with the case, the filings made within it, and the nature and scope of the work of previous counsel, especially as it pertained to document production and discovery.

4. Prior to my own entrance in this matter, Peter T. Hansen—co-counsel on this matter—received a case file from Carl Anderson, an attorney who had withdrawn from this matter after some contention.

5. Mr. Anderson's file revealed that discovery had hitherto been plagued and that this was only compounded by a breakdown in Nexus's relationship with Mr. Anderson, Nexus's legal and financial situation, and Nexus' historical record keeping practices.

6. In the hopes of receiving a more organized or helpful case file I contacted each of Nexus's prior attorneys on this matter, on April 19, 2023, through an email addressed to each individual attorney which read:

[Attorney's Name],

I am reaching out in the hopes of getting certain discovery materials that your firm may still have access to; to the extent that those might be available, either within an entire case file or in stand alone documents, I would be deeply appreciative if those could be provided.

Cocounsel, Peter Hansen (cc'd), and I represent Nexus, et al. ("Nexus"), currently and are reaching out to former counsel in the hopes that they continue to have case notes relating to discovery or productions and requests, and those actual productions and requests. I am aware that given timing and current

discovery practices--service by secure drive, etc.--that it may be possible that the documents are no longer accessible or available. To the extent this is the case, if you could simply confirm that, it would be of equal help.

I am aware that at least certain discovery was conducted while you were representing Nexus and this is specifically what concerns me; however, to the extent a full case file is available which would contain information relating to the same, that would be equally appreciated.

I wish to thank you for your time and for your efforts. I know that this request may require some inconvenience and want to be clear that I do appreciate your assistance.

Best,

7. John Shoreman, Juliana Johnson, Anne Marie DiNardo-Cleary, and Tony Troy responded electronically and each reported that they no longer, for various reasons, had copies of a case file.

8. After receiving these emails, it was clear that Eckert Seamans had provided the file to John Shoreman and Mary Donne Peters, who in turn had transferred their files to Carl Anderson, who in turn had produced the same to my co-counsel.

9. Given the above, the discovery process was started anew—much of the work would have to be redone and the state of the case file did not allow for simply picking up where other counsel had left off—and bates stamped versions of responsive documents were produced to RLI on or about April 12, 2023, these had previously been produced in or about March 2023 without bates stamps.

10. This production was supplemented with an additional production made by Nexus on or about June 29, 2023.

11. That production contained all responsive documents in Nexus's possession and control that author is aware exist and represents hundreds of hours of labor of both the author and Nexus workers.

12. Each document was individually Bates stamped and sorted into folders corresponding with each document request.

13. Those responsive documents total 319,899 pages—again each sorted into a folder corresponding to the request to which it is responsive—and very greatly in volume: for instance folder one has 0173495 pages, folder two approximately 500, folder three approximately 300, folder four approximately 45,000, and so on and so forth.

14. The variance in pages corresponds to the difference in breadth of the particular request and the number of documents which remained in Nexus's possession and control that might be considered responsive to the request.

15. Additionally, Nexus served its Responses to RLI's post-judgment interrogatories and document requests on the same day and provided historic productions to RLI. This was done both electronically and through delivery of five terabyte hard-drive. There were approximately 198 gigabytes of files in that production.

16. Prior to the June 29, 2023, production, it does not appear as if RLI had accessed Nexus's historic production, which was contained in a folder available on

Egnyte labeled "RLI." The contents of that folder was contained and produced in the latest June 29, 2023 production.

17. Beyond the above, Nexus made a standing offer for inspection and copying of original records in its response to RLI's document request:

> Additionally, Defendant's shall make available for inspection all records in their possession and control and has ensured that counsel will be available at Defendants' offices on June 29, 2023 through June 30, 2023; Defendants further will make all records available for inspection at their offices on any date mutually agreed to by Defendants' counsel and RLI's counsel. Defendants' counsel agrees to make himself available on five days' notice on any day on which he does not have a previously-scheduled court appearance, deposition, or meeting which requires his physical presence.

18. Nexus, through counsel has reiterated the availability of documents for inspection and copying on multiple occasions. RLI has never expressed any desire to inspect or copy records.

19. Additionally, Nexus has re-iterated its offer to physically inspect *any and all* records in Nexus's offices on five separate occasions. Again, no desire to inspect or copy records was displayed.

20. Since this time, RLI has expressed interest in accessing records to which Nexus lacks possession or control over, which the author attempted to facilitate, but RLI expressed no interest in receiving help of Nexus's counsel.

21. Additionally, RLI's counsel expressed an inability to utilize Zoho, on which the majority of Nexus's transactional records are kept. Nexus's counsel attempted

to rectify the issue, but again RLI declined the majority of assistance offered and after a short colloquy ceased to express any concern relating to its ability to utilize or otherwise view records on Zoho.

22. Further, *never*, since my involvement in this case, has Nexus counsel refused a request of RLI. In every exchange Nexus's counsel has offered answers or proposed solutions after which silence ensued, which Nexus's counsel interpreted reasonably to mean that the issue had been resolved.

23. On or about June 30, 2023, the Entities[1] counsel served both Nexus and RLI with Entities supplemental responses to a subpoena issued by RLI as well as produced various responsive documents.

24. On information and belief, this production represented all documents in the possession and control of the entities.

25. On information and belief, copies of these documents were physically as well as electronically served on RLI. This was done via hard-drive rather than paper copies for convenience.

26. Likewise, the documents themselves were processed utilizing a discovery program in order to allow for ease of ESI processing.

---

[1] Nexus adopts the naming structure utilized by the Court in its contempt orders (ECF Doc. Nos. 797, 848).

27. On information and belief the structure of the production, *i.e.*, native files, images, text files, and data files, allows for ease of processing utilizing various e-discovery vendors and normal practice.

28. On information and belief, Nexus is currently and has historically been run in a manner akin to a small business, which has greatly contributed to the difficulty in document production and discovery.

29. On information and belief, record keeping more recently has been complicated by Nexus' financial and legal challenges, as the company has lost access to various vendors and records, and historically appeared to neither be systematic or uniform.

30. Moreover, Nexus's professional turnover—especially as it relates to attorney's and accountants—greatly complicated compliance with discovery matters.

31. On information and belief, Nexus is unable to conduct normal day to day business, and has contracted with a third-party company, Subersivo, LLC, to refer its clients to for services.

32. On information and belief, this company is owned and operated by a *former* Nexus employee, David See.

33. On information and belief, Mr. See no longer holds a position at Nexus, though formerly he did hold an executive level position at Nexus.

34. On information and belief Nexus has only chosen to operate in this manner because the extreme difficulty in maintaining traditional relationships with financial institutions and the costs associated with utilizing traditional other third-party payment processors, required Nexus to assign its responsibilities to a third-party company to satisfy sureties and to avoid bond cancellations.

35. On information and belief, Nexus is in true financial distress and only avoided foreclosure of multiple properties after frantic efforts of counsel. This did not represent an inability to locate hundreds of thousands of dollars but legitimately struggling to find approximately $70,000 in liquid assets.

36. While Nexus did lose its campus to foreclosure, a loss of over a million dollars in equity because it lacked approximately $180,000, RLI and Nexus's counsel were able to negotiate releases which allowed for the sale of property, and recovery of $40,000 for RLI and the avoidance of foreclosure on another property.

37. On information and belief, RLI and Nexus can cooperate where it is mutually beneficial.

38. I have attached true and correct copies of the following as Exhibits A-X respectively:

    A. Nexus's Supplementary Document Responses;

    B. Nexus's Interrogatory Responses;

    C. Email Chain with RLI's Counsel (beginning June 29, 2023);

    D. Email Chain with RLI's Counsel (beginning June 30, 2023);

    E. Email Chain with RLI's Counsel (beginning July 12, 2023);

    F. Email Chain with RLI's Counsel (beginning July 25, 2023);

    G. Screenshots of Egnyte displaying most recent production;

    H. Certificate of Service for Production;

    I. Entity Production; and

    J. Screenshots demonstrating Zoho functionality.

39. On information and belief, Nexus Parties have now complied with the Court's previous orders and satisfied the requirements of those orders to purge themselves of contempt.

Under the terms of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of August 2023, Mexico City, Mexico.

_____

ZACHARY LAWRENCE