## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
### Harrisonburg

RLI INSURANCE COMPANY,   )
          )
   Plaintiff,     )
          )
   v.       )   C.A. No. 5:18cv00066-MFU-JCH
          )
NEXUS SERVICES, INC., *et al.*,  )
          )
   Defendants.    )
_____ )

### RLI INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO NEXUS SERVICES, INC,'S MOTION TO PARTIALLY VACATE, MODIFY, OR IN THE ALTERNATIVE ORDER CONTEMPT PURGED

The Court has seen Nexus's familiar refrain.  It produces some documents or information of its choosing, and then hopes to obfuscate and claim full compliance with its obligations.  It has happened time and time and time again in this matter.  This time is no different. Nexus comes before the Court claiming—yet again—that they are in compliance with their post-judgment discovery obligations. Yet again, they are not.  As every time before, an evaluation of those claims demonstrates that those claims are paper thin.

Although Mr. Lawrence's Declaration (Dkt. No. 862) may show he personally expended efforts to comply, it should come as little surprise to the Court that Nexus is nowhere near compliance and continues to hide information and flaunt court orders.  Nexus will never voluntarily provide the information sought.  RLI has waited years for its discovery and continues to expend considerable time, effort, and resources to address Nexus's misrepresentations and ongoing contempt. The cycle must be broken.  RLI holds a multimillion-dollar judgment against Nexus and it holds a judgment for hundreds of thousands of dollars as contempt sanctions for

discovery non-compliance.  To effectively collect those judgments, RLI must be able to review, understand, and track the myriad of illegitimate, obscured, and unexplained financial transactions of Nexus.  It must be able to inventory and account for Nexus' assets and other liabilities.  It must have full, complete, and accurate answers to its discovery.

Nexus is a multimillion-dollar company with a full time Chief Financial Officer, who has been employed since September 27, 2021 (Dkt. No. 862-1 at 8) making more than $100,000 to handle the day-to-day management of the accounting department. *Id*. at 20. There is no excuse for failing to respond to basic discovery about its operations and transactions.

Nexus's goal since the very start of this litigation has been obvious—it seeks to hide its financial information and its true financial condition and delay disclosing that information as long as possible.  It has largely been successful in that campaign of non-disclosure.  It did it in the underlying litigation, it did it despite the books-and-records orders of this court, and it has done it in post-judgment discovery.  The Court has said it best: "Why shouldn't the Court simply say enough is enough."  Dkt. No. 831 (Feb. 14, 2023, Tr. 9:19-21).  It has—as the Court has stressed—been "years and years and years of noncompliance." *Id.* at 12:6-7.

Enough is enough.  The time for a Receiver is now.

## <u>HISTORY OF NEXUS'S CLAIMED "COMPLIANCE"</u>

Nexus repackages the same documents and information they have already produced, adds a few extra documents, and now claims that constitutes full compliance.  Nexus continues to refuse to provide the substantive information that would allow an actual analysis of their finances.  The refrain is familiar. *See, e.g.*, Dkt. No. 658 at 2 ("The information sought by RLI's collection counsel is entirely duplicative…"); Dkt. No. 689 at 1 ("RLI's collection counsel

already has access to all the financial information they seek in post-judgment collection …");

Dkt. No. 834 at 2 ("Nexus believes it has made a full production…").

Each time Nexus makes such a claim, RLI is forced to reveal information it has independently gathered about the company and demonstrate Nexus's non-compliance.  This has happened again and again, as RLI points to documents and information outside of Nexus' discovery responses which demonstrates that Nexus' responses are incomplete and misleading. *See, e.g.*, Dkt. No. 660 at 9-10 (examining conflicting ownership information regarding the Entity One Fish, Two Fish); Dkt. No. 685 at 5 (exposing unreported, illegitimate expenses of Donovan and Moore and the payment of expenses for properties not owned by Nexus); Dkt. No. 692-1 at 1-3 (showing discussions between Richard Moore and his accountant obtained by subpoena); Dkt. No. 692-1 at 13-14 (showing undisclosed wire transfers to owner Evan Ajin); Dkt. No. 841 at 8 (revealing an undisclosed accountant who prepared Nexus's taxes); Dkt. No. 841 at 9 (showing tax reporting regarding "8 Bit Gamer Oasis" despite Nexus denying any connection); Dkt. No. 841-6 (showing records related to undisclosed bank accounts).

Here we are again. Nexus claims it has fully complied with post-judgment discovery. That claim is demonstrably false.  In addition to the examples previously articulated in RLI's Notice (Dkt. No. 859),[1] RLI herein provides further evidence to the Court of Nexus's ongoing contempt.

## **ARGUMENT**

### **I.     Nexus is far out of compliance with regard to its interrogatory responses.**

---

[1] RLI will not rehash the deficiencies outlined in that previous filing.

Nexus has finally given <u>some</u> information in response to the interrogatory requests.  But it is nowhere near accurate or complete, and Nexus continues to evade its responsibilities. Below is just a sampling of the problems inherent throughout their discovery responses.  Because these responses do not appear to be in good faith, RLI will not undertake a full accounting of each and every deficiency.  But emblematic of the problems are the following interrogatories.

<u>Interrogatory No. 3</u>

Nexus' pattern of noncompliance starts right at the beginning of their substantive responses.  The request requires Nexus to "Identify the nature, amount, and basis for any compensation, benefit, loan, distribution, or other financial transfer to a Member (or to the benefit of a Member) in the past 36 months."  To be sure, Nexus provides more than they ever have before—they finally disclose what the salaries are for Nexus' three members.  *See* Dkt. No. 862-1 at 2-3.  But to say that they have provided more than they ever have is still not saying much.

What Nexus fails to do is actually describe what other "financial transfers" Donovan, Moore, and Ajin have received over past 36 months.  Instead, Nexus points to "Annex 1 and 6" which consist only of salary information (Dkt. No. 862-1 at 25), a list of what appears to be every Quickbooks entry for the company from January 2018-December 2020 marked as related to the "shareholder loans" (Dkt. No. 862-1 at 26-180) and a 1-page transaction report related somehow to credit cards between January 1- June 26, 2023 (Dkt. No. 862-1 at 241).

What is missing, however, is a listing of non-salary financial transfers to members and an explanation of the basis on which those transfers were made.  Nexus cannot possibly claim ignorance that RLI was seeking this information—aside from being asked for explicitly in the

text, RLI has repeatedly been before this Court seeking an explanation and listing of those transfers. *See*, *e.g.* Dkt. No. 692 at 5 ("Defendants have made countless suspicious transactions between and amongst the entities and their members" and citing to Dkt. No. 692-1 at 12 ("wire transfer to Donovan in the amount of exactly $8,000 labeled "invoice reimbursement"); Dkt. No. 682-1 at 13 (wire transfer to Ajin in the amount of exactly $4,000 labeled "30 S. Windsong Court Rent"); Dkt. No. 682-1 at 14 (wire transfer to Ajin only 4 days after the previous transfer now in the amount of $8,075.00 and also labeled as "30 S. Windsong Court Rent."). What creditor would not want an explanation of why hundreds of thousands of dollars go to the company's owners in this erratic and unexplained fashion?

These types of problematic transactions are rampant throughout what little financial documentation Nexus has produced. Attached as Exhibit 1 is a <u>single</u> month of Nexus' bank statement from Mercury Bank showing transactions for February 1-February 28, 2022. Mercury Bank's statement is rare in that it clearly shows to whom wire transfers are sent. In that one month alone, wire payments to Richard Moore in the amount of $13,779.85, (2/1/2023) $4,135.94 (2/1/2023), $4,215.96 (2/4/2023); $4,215.96 (2/7/2023); $3,895.42 (2/8/2023); $6,250.81 (2/14/2023); $2,982.44 (2/23/2023); and $3,828.57 (2/24/2023) are captured within that one statement.

Enough is enough. Nexus owes an accounting and explanation of what these and similar financial transactions have been. They refuse to provide it. They remain in contempt of court.

<u>Interrogatory No 4</u>

Interrogatory No. 4 required Nexus to "Identify all loans given by the Company to any employee or member of the Company and state the date, amount, terms, and recipient of the

loan, and identify any documents, including communications, which support or relate to such a loan."

In response, Nexus simply points to "Annex 1 and 6" and then claims that "Nexus Service, Inc. has no additional information relating to these loans and …[Nexus could not] identify or locate any additional documents or communications relating to such loans." Dkt. No. 862-1 at 5.

For <u>years</u>, RLI has been trying to determine why and under what terms Nexus is carrying hundreds of thousands of dollars in loans on its balance sheets to its members. It is the members themselves that owe the loans, yet Nexus claims to know nothing about them. Annex 1 is the same Quickbook entries that led to all the questions. The interrogatory tells RLI <u>nothing</u> about the nature of the loans, what the payment terms are, or identifies a <u>single</u> piece of communications regarding the loans. The claim to not have any documentation concerning the loans is even more astounding since the Court's own docket contains more information than is identified in the interrogatory response. *See* Dkt. No. 692-1 at 1-7 (email by Richard Moore reflecting ongoing communications in August 2020 with the company accountants regarding validity and amount of the shareholder loans). Nexus has failed to produce any of this information.

<u>Interrogatory No. 8</u>

This interrogatory sought a list of all properties and, and among other things, the identity of who used, resides, leased, or otherwise occupied the property. Dkt. No. 862-1 at 11. Nexus provides its purported response in "Annex 3." *Id*. Annex 3 lists 25 "SFH" (believed to be single family homes) and 27 townhomes. Dkt. No. 862-1 at 185. Thus, in total, Nexus (or its related entities) owned in the relevant period more than 50 residential properties.

6

Here again, Nexus plays another of its familiar games. RLI quite appropriately wants to know how these properties were used, why Nexus owned them to begin with, and who would have been making lease payments for all of these residential properties (in part so RLI can figure out where all these payments went). As to who "uses resides, leases, or otherwise occupies the property" Nexus identifies a single person for one property. *Id*. For another property, Nexus simply says "Third Party lease" without any identifying information. Nexus provides no leasing or usage information for the other 50 residential properties.[2] *Id.*

<u>Interrogatory No. 9</u>

Interrogatory No. 9 requests information about the relationship between the company and 8-bit Gamer Oasis. Dkt. No. 862-1 at 22. Confronted by its own tax returns in RLI's last filing, Nexus finally admits in the discovery responses that, in fact, it understands what entity is at issue and that it does have a relationship. *Id*. RLI now learns that a gaming business was purchased "by a subsidiary" (which is not named) and then sold in March 2019 to one of Nexus' owners. The interrogatory is clear that Nexus "has had no relationship with Gamer Oasis, LLC, nor have any transactions occurred between Nexus Services, Inc. and Gamer Oasis, LLC. The only transaction which occurred between Nexus Services, Inc. and 8 Bit Oasis, LLC is described above." *Id.*

But these are not plausible claims in light of the very limited information financial Nexus has produced. Nexus' own production shows the contrary. There is a $61.36 transaction in Nexus's Quickbooks ledger without explanation. Dkt. No. 862-1 at 117. Another $358

---

[2] To be sure, Nexus has divested itself (largely through foreclosure) of most of these properties. But Nexus cannot avoid its disclosure obligations by refusing to answer for two years while it sells off the properties and then claim that "currently" no one resides there.

transaction on 8/31/2019.  *Id.* at 143.  Another on 3/5/2020 for $1,137.07.  *Id.* at 174.  Nexus makes no effort to explain why its July 2021 balance sheet lists "8 Bit Gamer Oasis" with a value of $29,394.33.  Dkt. No. 740 at 7.

And those are just transactions actually reflected in Nexus' inaccurate and misleading version of Quickbooks.  References exist elsewhere throughout the documents Nexus has produced.  *See, e.g.* Exhibit 2 at 5, 8 (12-31-21 Statement of Trustco Bank showing six transactions totally nearly $6,000 referencing "Gamer Oasis") (highlighting added); Exhibit 3 (pg. 107 of the financial statement produced in Nexus's September 2021 production showing an amount due and paid concerning "LS Gamer Oasis" in the amount of $1,328.29 on August 23, 2021) (highlighting added).

Nexus is not truthfully or accurately answering this and other interrogatories.

<u>Interrogatory No. 12</u>

RLI asked Nexus to "Identify all intangible assets not already listed above that are held by the Company or in which the Company holds an interest with a present value in excess of $1,000.00 and identify the nature and extent of the Company's interest in each such asset."  Quite appropriately, Nexus listed three potential legal claims.  We know, however, that Nexus did not list all of its legal claims.

Nexus can remember to brag to the media about its supposed victory in a matter where it sued Dave Zimmerman for defamation.  *See* "Nexus Services Triumphs in Defamation Case: Zimmerman to Pay $10,000" by Breaking Through News, attached as Exhibit 4.  It cannot

remember, however, to disclose that cause of action when it describes its intangible assets.  *See*

Dkt. No. 862-1 at 15.  It is unclear what other information Nexus is choosing to omit.[3]

<u>Interrogatory No 14</u>

 This request seeks for Nexus to "Identify any and all collateral the Company has posted

or pledged with, or otherwise set aside or made available to, any surety, insurer, financial

institution, or any other entity stating the nature, value and owner(s) of the collateral, the

collateral terms, the date of each such transaction . . ."  Dkt. No. 862-1 at 17.  Nexus claims that

"Annexes 3 & 7" contain the response.  *Id* at 18.

The Court can itself review Annex 3 and 7 and quickly conclude that Nexus is again not

being truthful and forthcoming.  Annex 3 lists a 1-page list of real properties.  Dkt. No. 862-1 at

185.  Annex 7 is nothing but a series of foreclosure notices and related correspondence (Dkt. No.

862-1 at 243-279), and one page identifying checks written in 2015-2017 to "AIA Insurance"

(Dkt. No. 862-1 at 280).

Public records refute the adequacy of this answer.  While the discovery was outstanding,

Nexus has apparently pledged its merchant accounts as collateral to some entity known as "Blue

Creek Funding LLC" in all amounts up to $224,850.00.  *See* Exhibit 5 (UCC filing date

3/25/2022).

<u>Interrogatory No. 15</u>

Nexus was asked here to "Explain and identify in detail how clients of the Company are

currently transmitting or otherwise making payments for any goods, services, or other products

---

[3] Revealing such information is important to the collection efforts.  Once RLI was able to
identify this lawsuit from the media coverage, it was able to garnish the $10,000 settlement
payment and apply that amount towards the judgment balance.

of the Company and how the Company is receiving such payments, including a listing of all accounts, systems and other mechanisms established or used for the receipt or collection of such payments."  Dkt. No. 862-1 at 19.  Nexus identifies that some payments are made via "Zoho" and that Subversivo, LLC[4] conducts some transactions.  *Id.*

Completely missing from this response, however, is any explanation of what funds are received by the company through money orders.  RLI knows that Nexus has always received a significant portion of its revenue through money orders sent by its immigrant clients.  Indeed, as recently as July, Nexus sent undersigned counsel a stack of such money orders is a purported payment towards the judgment, which were returned because they were unendorsed by Nexus and so were not negotiable instruments.  *See* Correspondence between Ms. Eaton and Mr. Lawrence dated July 6-7, 2023 (Attached as Exhibit 6).

How Nexus is currently receiving these money orders, how they are processed, how that that money recorded, and other critical information is simply omitted from Nexus' response.

### Interrogatory No. 17

Nexus was asked here to "State the amount of legal fees the Company has paid in the last 24 months, and identify the recipient of any such funds by date and amount. This request does not seek the nature of the representation or the disclosure of legal advice or services requested or rendered, and this request is not prohibited by the attorney-client privilege."  Dkt. No. 862-1 at 20.  Nexus purportedly provides an answer in Annex 8.

---

[4] In RLI's previous filing it outlined the complete lack of documentation from Subversivo.  This is despite the fact that the purported agreement between the two entities put the records in Nexus legal custody and control by granting Nexus the right to "make copies of, or otherwise review the financial and program records of SubV[ersivo] in any manner suggested by [Nexus]."  Dkt. No. 862-1 at 393.

In "Annex 8" Nexus provides a hodgepodge listing of law firms and attorneys and payment amounts in different styles. Dkt. No. 862-1 at 281-388. But even a cursory look at some of its bank statements reveals that the sworn interrogatory responses are nowhere near accurate. Previously attached as Exhibit 1 is the Nexus bank statement from Mercury Bank showing transactions for February 1-February 28, 2022. That one month shows wire payments to "Lowther Walker LLC" in the amount of $12,000 (2/9/2022) and $20,000 (2/10/2023). Exhibit 1 at 3. Based on the information available at www.lowtherwalker.com, this is an Atlanta-based criminal defense firm. That information appears nowhere in Nexus' interrogatory response. And there are other firms clearly missing as well.

Nexus's responses are not accurate or complete.

**II.     Like its Interrogatory responses, Nexus has similar evasive, inaccurate, incomplete, and inappropriate responses for its Request for Production of Documents.**

Request for Production 2

This request sought Nexus to specifically "Produce any and all documentation showing distributions or other transfers of funds or other assets of any type made to members of the Company within calendar years 2018, 2019, 2020, and 2021." If one reviews the folder that Nexus claims contains all responsive documents, one quickly sees this is nothing but a production of bank statements for Nexus. There is no attempt to show what is actually a transfer to a member, no documentation showing the basis for the transfer, no documentation recording the transfer, no cancelled checks, no internal accounting, no communications, etc. This is not compliance.

Request for Production 9

This request seeks "copies of any judgments entered for or against the Company in the past ten years, other than the judgment issued in this case."  Dkt. No. 862-2 at 5.

Nexus produced a total of four documents as pictured below:



Nexus produces a copy of a 2/2/23 judgment from the N.D.Cal (twice) and a notice of filing of foreign judgment dated February 10, 2023 in Augusta Circuit Court owned by HFH Capital, LLC (twice).[5]

Notably, no other judgments are produced, not even those listed in Interrogatory No. 13 (judgment of Sherman-Stoltz Law Group, judgment of Eckert Seamans, judgment of the Estate of Michael Hassen, judgment of Buddi U.S.)  *See* Dkt. No. 862-1 at 16. Does Nexus actually claim that despite paying an outside counsel more than $100,000 last year to supervise and manage its legal affairs (*See* Dkt. No. 862-1 at 20) it does not even have copies of judgments worth millions against the company?

---

[5] Strangely, HFH Capital does not seem to appear anywhere in Nexus' interrogatory responses, despite a request to identify other debt obligations of the company (Interrogatory No. 13).  So RLI does not even know what this judgment concerns.

And a simple public records search shows that Nexus is not disclosing full information. Attached as Exhibit 7 is a judgment from a federal court in Illinois that appears to be disclosed nowhere in Nexus' response.

<u>Request for Production 13</u>

This request seeks, amongst other things, any leases for properties owned or listed on the financial statements of Nexus of the past 36 months.  Dkt. No. 862-2 at 6-7.  Nexus produced four documents, none of which contains a single lease:



<u>Request for Production 16</u>

This request seeks Nexus to "Produce any applications for loans or other credit related to the Company."  Nexus gives its typical non-responsive answer and identifies the folder concerning RFP 16.  A review of that folder reveals that that Nexus only produced 3 documents. All are merely agreements with local hotels for discounted rates:



This answer is perplexing, because Nexus knows it has applied for a variety of loans. While one could not learn this fact from Nexus's own sworn interrogatory responses or document production, public UCC filings show all of Nexus's assets have been pledged as collateral for a series of loans.  See Exhibit 8 (UCC filing date 3/30/2022 for "Lien Solutions"); Exhibit 9 (UCC filing dated 2/28/2022 for "Corporation Service Company.")  Indeed, docket searches reveal some of the actual applications for loans for Nexus which they have refused to identify or reveal.  *See* Exhibit 10 (Fusion Funding Loan Agreement from Kings County litigation).

<u>Request for Production 24</u>

This request sought the credit card statements for the company.  This request perfectly encapsulates the non-answers that Nexus is constantly pushing, If one goes to the folders that Nexus is identifying there are four folders of credit cards before 2021:



After those folders there are five individual pdf files related to First National Bank of Omaha (FNBO) statements for Mr. Shipe, Ms. Wells, and Mr. Moore.

Mr. Shipe and Mr. Moore have statements for December 2022 and January 2023.  Ms. Wells has a statement covering two transactions in January 2023.  But Mr. Moore and Mr. Shipe's statements contain "previous balance" information and "new balance" amounts.  This extremely limited production begs the obvious questions of where the other statements are located and why they were not produced?

<u>Nexus's "all records" production</u>

A final note may be necessary regarding Nexus's refrain in its Motion that it "made *any and all documents* available for inspection and copying."  Dkt. No. 861 at 14.  It is unclear what Nexus thinks would happen in such a scenario.  Either Nexus is inviting RLI to go on a scavenger hunt for documents that it knows it has in its office and has not produced or it is using

the invitation as purported cover for not satisfying its obligations. In either event, saying that "any and all documents are available" fails to comply with FRCP 26 and this court's orders.  It is not a cure for contempt of court.

## **CONCLUSION**

RLI could spend countless hours and waste tens of thousands of dollars recounting each and every deficiency in Nexus' responses.  But to what end?  It is clear from the examples above and those cited in RLI's previously filed Notice that Nexus has not come into compliance with the Court's orders.  Given their conduct over the past two years of post-judgment discovery (and the years of non-compliance in the underlying litigation), it is clear Nexus will never voluntarily disclose its financial information.  Nexus has been in contempt and remains in contempt.

The time to appoint a Receiver is long past.  Only a CPA, trained in forensics accounting with real-time access to all of Nexus's records and access to its employees (who must cooperate subject to the jurisdiction of this Court) can be expected to fully answer the post-judgment discovery.  Accordingly, RLI reiterates its request that the Court appoint such a Receiver, that it deny Nexus's Motion, and that it grant any other relief it deems appropriate.

Dated: September 15, 2023

                                                                    RLI INSURANCE COMPANY

                                                                     /s/

Dustin M. Paul (VSB No.: 75287)
Jennifer L. Eaton (VSB No.: 87491)
Woods Rogers Vandeventer Black PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
Phone: 757-446-8600 / Facsimile: 757-446-8670
dustin.paul@wrvblaw.com
jennifer.eaton@wrvblaw.com
*Attorneys for Plaintiff RLI Insurance Company*