IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>NEXUS SERVICES INC.,<br>LIBRE BY NEXUS INC.,<br>HOMES BY NEXUS INC.,<br><br>    Defendants. | Case No.: 5:18-CV-00066-MFU-JCH |

**MEMORANDUM IN FURTHER SUPPORT OF NEXUS SERVICES, INC.'S MOTION TO PARTIALLY VACATE, MODIFY, OR IN THE ALTERNATIVE ORDER CONTEMPT PURGED.**

**INTRODUCTION & FACTS**

RLI Insurance Company ("RLI") seeks "a CPA, trained in forensics accounting with real-time access to all of Nexus's records and access to its employees (who must cooperate subject to the jurisdiction of this Court) [to ensure compliance with this court's orders]." ECF Doc. No. 866 at 16. The great irony of this request is that *nothing* bar RLI's own choice not to view the records made available to it makes this impossible: RLI has had every right, and an invitation ignored time and time again, to begin this process. *See generally* ECF Doc. No. 861 at 4 (noting that RLI continued to ignore invitations to help it access records or to assist it in locating any documents which it believes missing).

1

If RLI believes that a CPA with forensics accounting training and real-time access to records will allow for compliance with this Court's Orders, Nexus Services Inc. ("Nexus") explicitly states that the offer Nexus has made to RLI's attorneys, over and over, extends to any of their agents, including a CPA of its choice.[1] Nothing previously, and certainly nothing now, would prevent RLI from having one or many forensic accountants from reviewing the books and records which Nexus possesses and from reviewing the records which Nexus keeps in real-time.

The remedy which RLI seeks to coerce—it does not appear that RLI seeks for incarceration any longer—through contempt is already available if it simply chooses to hire a CPA.

Nexus's previous offers implicitly allowed for this to happen, *see, e.g.*, ECF Doc. No. 862-5 at 3, and now the offer explicitly made here allows for this to happen. This said, RLI in the past has shown *no* interest in undertaking such an exercise. *See generally id.* It is wholly unclear why, if RLI wished to have a CPA analyze Nexus's records RLI has chosen not to utilize its ability to review, copy, and view, those records and refused to inspect those records or to learn how to utilize the systems on which Nexus keeps those records. *See* ECF Doc. Nos. 862-5, 6. The behavior raises numerous questions: Were RLI desirous of real-time access to Nexus's records, why

---

[1] If RLI is desirous of having a CPA review Nexus's records, of course RLI should hire a CPA, not threaten the life of Nexus and its clients.

refuse to learn to use the systems on which those records are available? Why ignore Nexus's counsel after such an offer is made? Why ignore a standing offer to review the records held by Nexus with assistance of parties who know how to utilize the systems on which those records are kept?

A second question—less rhetorical than those posed above—is what does RLI's proposed solution offer that is different than either it inspecting Nexus's records, as it has the ability to do, or Nexus doing the same. The answer is that any receiver will face a "scavenger hunt," ECF Doc. No. 866 at 15. Quite frankly, it is wholly reasonable to wish to avoid this scavenger hunt, but *anyone* and *everyone* will face the same "scavenger hunt": if records are unavailable because vendors or past professionals have not been paid, or they have been seized by third parties, then they are unavailable—Nexus can try to get them, RLI can try to get them, a receiver can try to get them, but they will each face the same hurdles and arguably those hurdles will be far more onerous for Nexus because of the history it has with many of these parties—it should come as no surprise to RLI that many past-partners of Nexus are none too fond of the company and do not seek to do it favors.

These records are lost, destroyed, seized by the Augusta County Sheriff, will remain unavailable without paying funds to the record keeper (funds that neither Nexus nor a receiver could pay). RLI has previously hinted at spoliation, *see, e.g.*, ECF Doc. No. 859 at 3-11 (arguing non-compliance spoliation and failure to specifically note

bates numbers and times of production), if RLI believes such has happened, it should simply seek evidentiary sanctions rather than attempting to convert what was coercive contempt into punitive contempt. The same is true of the argument of perjury, *see* ECF Doc. 866 (arguing that answers provided under penalty of perjury were untrue), and the same is true of accusations of fraudulent transfers. If RLI believes that alternative wrongdoing has occurred, it should seek appropriate redress for such rather than attempting to punish Nexus for something with which they have complied to the greatest of their ability and sworn under penalty of perjury that they have done so.

      RLI has refused to look at what Nexus has offered or is otherwise purposefully ignorant of how to view what Nexus has produced. *See generally* ECF Doc. No. 859 at 11 (complaining of the functionality of Zoho and failing to understand how to navigate the platform). Its choice not to view records made available to it and to not have an accountant review the same are quite simply its choices—if it continues to make the same choice *no* receivership will cure them. Moreover, and critically, it seems that RLI understands that many records are either unavailable, destroyed, or for one reason or another non-existent. *Id.* at 12.

      For instance, Nexus has not provided terms and information for loans beyond the amounts of the same because *it does not have them*. If Nexus lacks loan agreements, states that it lacks them, has counsel look for them and determines that they are no documents that even resemble loan agreements, a receiver's experience

4

will be no different—he or she will look for loan agreements and contracts, discover none exist, and state that none exist.[2]

This is a theme of each complaint made by RLI. take for instance Subversivo, LLC; RLI contacted Nexus's counsel with inquiries about Subversivo, Nexus's Counsel offered to supplement the records provided, but noted they might be duplicative:

> As to Subversivo, I believe I addressed it in a previous email:
>
> "Finally, as to Subversivo and transactions, all current transactions of Nexus, due to lack of banking relationships, are being conducted by Subversivo, through the Subversivo Services Agreement. In essence, what this means is that all records from Zoho, Quickbooks, etc., that you have access to that are currently being recorded and took place after the effective date of the Subersivo Services Agreement are records of transactions being conducted by Subversivo under that Agreement on Nexus' behalf. Because the records kept in Zoho and Quickbooks are identical to the records which would be maintained by Subversivo, Nexus has never requested that Subversivo provide it with additional internal Subversivo records of transactions--the same would be completely duplicative of the Quickbooks and Zoho records."
>
> I can request that Subversivo provide records that will be identical to the records kept in Zoho/Quickbooks, but my assumption is that they will be duplicative, as all transactions recorded currently on Zoho, ie, are Nexus transactions that are conducted by Subversivo on Nexus's behalf and recorded in Nexus's Zoho. I can/will request that Subversivo provide the same if you want to have copies.

---

[2] Again, now that Nexus has sworn it lacks these records, and that the only other party that may have them is a court administrator, RLI can do with that what it wants. If RLI were making an argument for piercing the corporate veil (which is surely a goal), I see no reason why it is more beneficial to have a receiver say that records do not exist than to have an attorney or company report the same.

5

RLI then neither accepted the offer, requested something different, expressed dissatisfaction, or continued communication, ECF Doc. No. 862-5; it simply stopped communication. *Id.* Nexus's counsel can provide many records and can do so with celerity, but he cannot divine that RLI wishes for him to do the same from a question followed by abrupt silence. *See id.*

It appears that RLI believes that Subversivo is an alter-ego of Nexus, or potentially its principals, and that funds have been fraudulently transferred to Subversivo—RLI is free to think this, and can seek recourse either through a separate action, or alternative motion, but it cannot punish it through trying to turn a coercive contempt order into a tool of punishment.

Honestly, Nexus understands RLI's frustration—indeed, it even understands a desire to cause pain—but that cannot be done through coercive contempt. If RLI wishes to punish Nexus for past transgressions it can do so,, if it truly believes perjury was committed and wishes to punish perjury it may do so, if it wishes to undo a fraudulent transfer it may seek to do so through an equitable action. The problem is what RLI says it is seeking to do, it can already do, and an appointment of a receiver will do nothing to facilitate what RLI states it seeks.[3]

---

[3] Again, RLI seems to understand that Nexus's past-record keeping practices makes the process of finding documents fraught and difficult, at this point the appointment of a receiver will just result in further delay: the receiver will need to go through the self-same process which counsel had to go through and the same took hundreds of hours.

6

RLI wishes to have "a CPA, trained in forensics accounting with real-time access to all of Nexus's records and access to its employees (who must cooperate subject to the jurisdiction of this Court) [to ensure compliance with this court's orders]." ECF Doc. No. 866 at 16. It has had the ability to do such for months and has willfully chosen to not do so. It cannot seek to punish Nexus through the appointment of a receiver where Nexus has already both answered interrogatories to the best of its abilities (and under penalty of perjury) and provided an "open-books-come-and-inspect-everything" policy in addition to trying to provide all it can to RLI in a readily understandable and digestible organization.

## ARGUMENT

### I. RLI FAILS TO CITE ANY CASELAW AND DISCUSS THE LEGAL IMPLICATIONS OF CONTINUED CONTEMPT THE SANCTION IS NO LONGER COERCIVE.

To begin, imposing a penalty at this point presents significant questions which RLI neither analyzes nor acknowledges. *See generally* ECF Doc. No 866. Nexus made clear in its brief, *see, e.g.*, ECF Doc. No. 861 at 2, n.2, that there exists a not insubstantial risk that the imposition at this point would be criminal in nature. *Id.* Obviously coercive contempt is meant to coerce and where it does not do so it is punitive. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("The primary purpose of the imposition of a sanction for civil contempt is to coerce the contemnor into future compliance and to

7

remedy past non-compliance, rather than to punish him."); *accord Rainbow Sch., Inc. v. Rainbow Early Educ. Hldg. LLC*, 887 F.3d 610, 620 (4th Cir. 2018) (affirming that civil contempt "fines are designed primarily to coerce behavior") (citations omitted); *Cromer v. Kraft Foods N. Am. Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).

As the Supreme Court has made clear: "sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. U.M.W. of Am.*, 330 U.S. 258, 303-04 (1947); *see also United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("A contempt fine accordingly is considered civil and remedial if it either coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained.") (citation and internal quotation marks omitted omitted).[7]

Where, as here, RLI wishes for the appointment of a receiver to gain access to records and to be able to subject those records to a forensic accountant, there is a legitimate question as to whether imposing a receiver will provide them with that

---

[7] Likewise, compensatory civil contempt is only compensatory when it addresses the loss, in other words there is something of a proportionality principle. *See, e.g., In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995) ("Generally, a compensatory sanction may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding.") (cleaned up).

remedy or coerce compliance. *See Harris*, 47 F.3d at 1329 (reversing "inappropriate sanction for civil contempt" because it "was not compensatory[,] [n]or was it designed to have a coercive effect"); *In re Magwood*, 785 F.2d 1077, 1082 (D.C. Cir. 1986) (reversing finding of contempt and sanctions when "the court's contempt citation could not 'coerce' Hicks to obtain the Trustee's written approval for a listing because the matter had been fully resolved before the contempt citation issued").

Even if—and Nexus does not believe this to be true—Nexus has not fully made available all records, and provided real-time access, the appointment of a receiver does nothing to coerce that. RLI *has* real-time access and claims that it cannot discern how to utilize that access. It *has* access to all records, but sends no lawyers or accountants to perform analysis of them; it complains of lacking documents or suspiciously missing documents, but chooses not to inspect or seek what it now has.

Nexus has provided RLI with its record keeping platforms—this is not disputed—and it has offered to make all other documents which RLI would like to investigate available to RLI, Nexus could do no more for a receiver, nor could a receiver do any more than RLI. If RLI has the keys to the garden but does not wish to go in and does not wish to unlock the gate, no one can force them to do so. RLI is a horse with no interest in drinking.

RLI can seek appointment of a receiver as a punishment; it *can* seek punitive contempt in whatever form it wishes to seek it. RLI, however, cannot do so without

9

requesting that such be imposed and without ensuring that procedural protections are in place.

## II. ALTHOUGH THE COURT IS FREE TO PUNISH PAST INTRANSIGENCE, IT MAY ONLY DO SO AFTER CERTAIN DUE PROCESS GUARANTEES ARE PROVIDED.

Without belaboring the point, a Court cannot issue criminal sanctions without various safeguards being present, RLI urges the Court to do just what it cannot do: punish parties without *full* criminal processes and protections. *See Bagwell*, 512 U.S. at 822; *Cromer*, 390 F.3d at 822 (vacating civil contempt sanction because it was "actually criminal in nature" and "could be imposed only after affording Cromer *full criminal process*") (emphasis added; internal citations omitted).

## III. RLI DEVELOPS NO LEGAL ARGUMENT AND OFFERS NO SUPPORT IN EITHER STATUTE OR CASELAW FOR ITS ASSERTIONS THAT VARIOUS ACTS JUSTIFY CONTINUED SANCTION UNDER THE PAST ORDERS OF CONTEMPT.

Assuming, arguendo, that past orders required Nexus to pay its vendors, or pay past counsel, or cease doing business with Subversivo, then continuation of these behaviors would justify the continued coercive contempt sanctions (assuming that sanction would coerce compliance). The orders, however, did not require any of those things and it is completely unclear how the proposed sanction would in anyway coerce any further compliance—indeed, it does not seem such is possible—or how the appointment of a receiver to allow for access to records, which RLI already has access

to, but refuses to investigate or inspect, would result in a different outcome or further compliance.

If RLI wished to say that contempt sanctions could issue for related "wrongdoing," it should have developed that argument. If RLI wished to argue that providing untruthful answers under penalty of perjury justifies the issue of a similar contempt sanction, it should have provided support for it. It provided none and cited *no* caselaw whatsoever that holds that a contempt sanction fashioned to coerce compliance with discovery obligations can translate seamlessly and without additional notice to remedy alleged financial trickery and fraud—again, Nexus asserts none exists, but even assuming it does, RLI provides no support whatsoever that one contempt sanction can "spill over" to remedy a new and different wrong.

If an argument is undeveloped, there is no need to consider it and the Court should not do so here. RLI has had months (and a further extension) to present its best arguments to impose further sanctions, their best argument had no legal backing and should not be considered: "It is not the obligation of th[e] court to research and construct legal arguments open to parties, especially when they are represented by counsel, and perfunctory and undeveloped arguments are waived. *Steves and Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)) (cleaned up).

## **CONCLUSION**

For the foregoing reasons, and all reasons set forth in its original moving papers, Nexus respectfully requests this Court hold Nexus Services, Inc., and other parties no longer in contempt and issue all other relief the Court believes just and proper.

Dated: September 22, 2023

Cold Brook, NY

Respectfully submitted,

/s/Zachary Lawrence

Lawrence Law Firm PLLC
166 Five Acres Lane
Cold Brook, NY 13324
202-468-9486
zach@zlawpllc.com
*Pro hac vice* (NY Bar No.: 5798202)
*Attorney for Nexus Services, Inc.*