IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NEXUS SERVICES INC., et al.<br><br>Defendants. | Case No.: 5:18-CV-00066-MFU-JCH |

### **DECLARATION OF ZACHARY LAWRENCE**

ZACHARY LAWRENCE, declares as follows pursuant to 28 U.S.C. § 1746:

1. I am attorney for Defendants, Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc. (collectively "Nexus"), in this matter and competent to make this declaration, which is based on my own personal knowledge, unless stated on information and belief.

2. Since my entrance into this case, RLI has continuously expressed discontent with the state of post-judgment discovery—at this point the main complaints seem to center around not having the identities of certain tenants who may have rented Nexus-owned properties from Nexus, a lack of historic record keeping around documenting expense reimbursements, and a lack of internal record-

keeping which has ceased since Libre by Nexus, Inc. has entered an administrative services agreement with Subversivo, LLC ("Subversivo").

3. Nexus, and counsel, have been unable to exercise a contractual right, or otherwise due to suboptimal record keeping provide more robust responses or documentation relating to the above, but certainly have disclosed current incoming revenue and the scope and volume of reimbursements and transfers to principals. For an unknown reason, RLI has not attempted to subpoena parties who may have such information, to conduct a personal inspection of Nexus' records and documents, or to utilize alternative discovery tools which provide significantly more flexibility such as depositions.

4. During the course of recent efforts to comply with the Court's Order (ECF Doc. No. 874), I worked with Nexus Services' CEO Micheal Donovan in an exhaustive attempt to determine the exact scope and nature of all transfers made to Nexus' principals. In that effort, it became apparent that the only transfers that existed beyond those we initially set forth in interrogatory responses were transfers that were made to Mr. Moore and Mr. Donovan; however, those transfers were made on an *ad hoc* basis without the use of formal documentation or requests. The only possible manner to determine what those were for, due to the lack of documentation, was through deducing the nature of the transfers by analyzing the date the transfer was made, the amount of the

transfer, and the other transfers that had been made in the same week. Through this process it was possible to determine whether or not a transfer was a salary payment, or if greater than a salary payment in a week where no salary payment occurred a combined salary and reimbursement payment, or if neither of the above an expense reimbursement. Beyond doing this no further information could be given because of the lack of formal documentation or uniform internal policies and it was impossible to determine to whom the payment was made because Mr. Donovan and Moore, being spouses, shared a bank account.

5. Throughout the course of my representation of Nexus, and related parties, I have come to learn that record keeping at its best was *ad hoc* and that many "concrete" policies that may exist in more mature or traditional companies simply did not exist—this has led to extreme difficulty in providing information. On information and belief, this state of affairs is largely due to the lack of formal training of many Nexus executives (who all are "self-made")—very few employees worked previously in major corporations or took traditional paths into business—and the mercurial growth and subsequent losses due to Covid and serious litigation.

6. RLI continues to have various remedies available to it both as it relates to discovery, or should any court find that such existed various torts. There is no reason, on information and belief, why independent legal action could not be

taken against third parties, or discovery be conducted either through the issuance of subpoena, the propounding of additional discovery requests, conducting depositions, *etc.*, would be insufficient. Further, it is unclear why such actions have not taken place if RLI believes irreparable harm may occur absent drastic remedy.

7. I have significant experience utilizing various legal platforms for in litigation; however, typically I utilize those which are familiar to me, and which make sense for my firm and client base. For instance, I utilize a fairly comprehensive Westlaw subscription based on a 36-month contract; I do not charge my clients for this as I consider it useful to all clients.

8. I also utilize Logickull, specifically because it allows me to more fairly bill my clients—the vast majority of my clients do not require significant e-discovery and thus I find it more equitable to bill only clients who require e-discovery for the cost of a subscription.

9. Logickull, is on information and belief, the most modestly priced "pay-as-you-go" discovery platform, which charges a per-project-per-month minimum of $300 and charges $30 per gigabyte-uploaded monthly fee.

10. I do not subscribe to Logickull's service on a long-term contract because the cost of such ranges between $6,000 and $10,000 per month and would require a

single client to cover a year-long commitment or for my fees to increase by approximately $60 per hour for all clients to cover the increased operating cost.

11. While I do have *de minimus* knowledge of other discovery platforms, through work with other firms, and from years past, neither I nor any discovery contractor I regularly employ has extensive knowledge of other platforms.

12. Prior to drafting a proposed inspection and copying agreement I contacted Logikcull to attempt to negotiate a shorter-term contract or a lower-rate extended contract, but was informed that such would be impossible. Thereafter, I discussed the cost of attempting to produce all ESI and delivering it electronically with executives at Nexus, and it was determined that the cost of such would make electronic delivery impossible. Thereafter, the inspection and copying agreement was drafted requiring in-person inspection and copying to avoid what would be an impossible cost. RLI, however, was not open to in-person copying and inspection and never attempted to do so.

13. Beyond the inspection and copying, which never occurred because RLI never exercised the right, nor agreed to do such without ESI being delivered to it, RLI never attempted to subpoena Subersivo despite expressing significant discontent relating to what it claimed to be a fraudulent transfer.

14. In order to simply resolve the issue, I attempted on multiple occasions to contact Subversivo's attorney to demand compliance with contract and

ultimately issued a subpoena to Subvesivo while threatening legal action that will occur as soon as such is possible to pursue; because I lack a Texas or Delaware bar, local counsel must be found and hired. I have done this in spite of the damage it has done to the only business that is willing to facilitate financial transactions for Nexus.

15. The entirety of the process has been very trying and few efforts seem to be particularly fruitful. I fully understand why RLI's counsel has chosen not to undertake such actions as well as the inspection and copying of Nexus' records.

16. I have attached true and correct copies of Nexus' Annexes prepared for the supplemental interrogatory responses ordered by the Court, relating to property owned by Nexus as and transfers to Mr. Moore and Mr. Donovan as Exhibits A and B respectively. Those Annexes were derived from Excel files and have been printed as PDFs which does affect the ease of viewing the documents. Exhibit B contains payroll transfers in green, combined transfers in purple, and expense transfers in blue.

Under the terms of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of March 2024, Cold Brook, N.Y.

/s/Zachary Lawrence

ZACHARY LAWRENCE