CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

May 17, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | |
|---|---|
| **RLI INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 5:18-cv-066** |
| ) | |
| **v.** ) | **By:    Michael F. Urbanski** |
| ) | **Chief United States District Judge** |
| **NEXUS SERVICES, INC., <u>et al.</u>,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION**</u>

This matter is before the court on the Report of Special Master Paul G. Beers, ECF No. 891, and responses filed by plaintiff RLI Insurance Company ("RLI"), ECF No. 916, and defendants Nexus Services, Inc., Libre by Nexus, Inc., and Homes by Nexus, Inc. (collectively "Nexus"), ECF No. 917. In his Report, the Special Master recommends appointment of a receiver for Nexus. After years of involvement by the court and many interim steps, Nexus's diversion of its financial operations to a third party, Subversivo LLC, and subsequent refusal to provide RLI with records concerning its current revenues and expenses being processed by Subversivo, lies in stark contravention of the court's discovery orders, requiring the extraordinary equitable remedy of the appointment of a receiver for Nexus as recommended by the Special Master.

**I.**

This is the fifth occasion in the past three years in which the court has been called upon to consider appropriate remedies for Nexus's post-judgment civil contempt. On each of the prior occasions, the court has stopped short of appointing a receiver, hopeful that the

incremental remedies imposed would induce Nexus into cooperating with its post-judgment discovery obligations authorized by Federal Rule of Civil Procedure 69(a)(2).

First, on April 13, 2021, less than six months after the court ordered final judgment against Nexus,[1] the court determined that it was "clear from the parties' briefing and this court's latest hearing that Nexus is not fully compliant with this court's October order." Order, ECF No. 654, at 2. Declining RLI's request to impose a receivership at that time, the court instead appointed a Special Master, Gregory T. St. Ours, to facilitate Nexus's compliance with its post-judgment discovery obligations. Id. at 2. The court advised that it was "postpon[ing] consideration of a receiver until after it obtain[ed] the report of the special master." Id. at 4.

On July 8, 2022, the court granted RLI's motion for civil contempt and imposed daily fines of $1,000 against Nexus, related Entities,[2] and Micheal Donovan, Nexus's chief executive officer, along with an award of attorneys' fees and costs and evidentiary sanctions. Mem. Op. and Order, ECF Nos. 796, 797.

After continued noncompliance, on June 2, 2023, the court entered a memorandum opinion tracing RLI's two-year struggle to obtain post-judgment discovery and identifying sanction options available to the court, including civil confinement of Nexus's officers, fines, and receivership. Mem. Op., ECF No. 847. In that opinion, the court stated that it was **"provid[ing] Nexus and the Entities with ONE FINAL OPPORTUNITY"** to produce

---

[1] The court ordered final judgment against Nexus on October 23, 2020, awarding damages to RLI in the amount of $3,331,197.55 for its breach of contract claim. Order, ECF No. 585; Clerk's Entry of Judgment, ECF No. 588. RLI's troubles with Nexus's post-judgment noncompliance began almost immediately thereafter. See RLI's Motion for Order to Show Cause, ECF No. 607, at 1–2 (filed Dec. 8, 2020) (requesting a show cause order because Nexus has "completely failed and refused to comply" with the court's October 23, 2020, Order).

[2] RLI's post-judgment discovery was sought from Nexus and three related entities, Nexus Commercial Ventures, LLC, Nexus Properties, LLC, and One Fish, Two Fish, LLC, which are collectively referred to as "the Entities."

2

the requested discovery by June 30, 2023. Id. at 21.  If Nexus and the Entities failed to provide

complete discovery by the deadline, the court informed the parties that it would appoint a

receiver:

> [A]s a further contempt sanction, effective July 3, 2023, the court
> will **ORDER** the appointment of an independent forensic
> accountant to serve as a Receiver for the limited purpose of
> taking possession of the books and records of Nexus and the
> Entities and allowing the discovery of the documents requested
> by RLI from Nexus and the Entities. The parties may submit
> names of independent forensic accountants to serve as Receiver
> within fourteen (14) days of the date of the accompanying Order.

Id. at 22. In so doing, the court observed,

> It is long past time that Nexus and the Entities comply with Judge
> Hoppe's Orders and RLI's post-judgment discovery requests,
> and given the continuing discovery failures, the court concludes
> that these further civil contempt sanctions are necessary to obtain
> compliance with the court's Orders and the Federal Rules of Civil
> Procedure.

Id.

Nexus did not completely ignore this Order, supplementing its document production

and providing sworn interrogatory answers.  After review of the responses, however, on

August 15, 2023, RLI filed a Notice with the court indicating that the discovery responses

from Nexus and the Entities "remain woefully incomplete and deficient.  It is clear Defendants

will never answer the discovery without the appointment of a receiver to take control of their

records, interact with third parties, and reveal the hidden financial information that

Defendants continue to seek to obscure." RLI Notice, ECF No. 859, at 1.

After further briefing, the court entered an Order on October 27, 2023, addressing the

insufficiency of Nexus's responses to RLI's discovery and directing Nexus to provide access

to "all of its documents and data, stored in whatever fashion, including in hard copy, digital storage, and online" within ninety (90) days. Order, ECF No. 874, at 14.  The documents to be made available included documents regarding transfers and payments to Nexus's employees and members, documents regarding judgments, real estate, loans and credit arrangements, and credit card statements. Id.  Nexus was also ordered to provide within twenty (20) days "written authorization to any third-party payment processing or financial services firm or platform which has done business with Nexus or the Entities since October 23, 2020, or is currently doing business with Nexus and the Entities, including Tabapay, Stampli, Airbase, Zoho, and Subversivo, to make any documents or data referring or relating to Nexus, the Entities, [and Nexus's present and former officers] [Richard] Moore, [Micheal] Donovan, and [Evan] Ajin, immediately available to RLI." Id. at 15.  The court also ordered supplementation of interrogatory answers within sixty (60) days. Id. at 15–16.

Further, "[t]o provide the court and the parties with some assurance that Nexus and the Entities will provide good faith and exhaustively complete discovery responses," the court appointed—for the second time during the post-judgment discovery period—a Special Master to "monitor Nexus's promised production of any and all documents and data of Nexus and the Entities to ensure that it is exhaustive and complete." Id. at 16.[3]  The appointment of a Special Master was an important component of the court's Order, which sought to focus Nexus and the Entities "on their legal obligation to exhaustively complete their discovery responses" and was

---

[3] The Special Master reappointed on October 27, 2023, could not serve, so the court made the substitute appointment of Paul G. Beers on November 3, 2023. Order, ECF No. 876.

"intended to resolve the matter" of RLI's post-judgment discovery difficulties in this case. Id. at 1, 17.

After working with RLI and Nexus for several months, the Special Master filed a Report on March 5, 2024, detailing his efforts to obtain compliance with the outstanding discovery issues. Special Master Report, ECF No. 891. While Nexus provided supplemental answers to interrogatories and requests for production of documents, the Special Master identified Nexus's administrative transfer of its financial operations to Subversivo as a substantial stumbling block to discovery as to Nexus's present financial condition.

> Nexus has transferred essentially all its funds, property, books, and records to an alter ego, Subversivo, LLC, a Delaware limited liability company that may be based in Texas. Subversivo's owner is a former principal and officer of Nexus. Counsel for Nexus, when pressed for discoverable information, documents, and data, asserts that Subversivo refuses to disclose Nexus'[s] own records or answer questions about Nexus's property and finances. Subversivo serves as Nexus's asset manager, bookkeeper, and custodian because no bank or credit union will accept Nexus as a customer, counsel for Nexus has repeatedly informed the Special Master. Thus, although the debtor compensates Subversivo ($10,000 a month) as Nexus's agent and financial caretaker, Nexus's lawyer insists the debtor is unable to retrieve any information from Subversivo or Subversivo's lawyer.
>
> Subversivo's unwavering refusal to share information with its client has prompted Nexus's lawyer to issue a documents subpoena to Subversivo as a purported showing of good faith on the part of the judgment debtor.

Special Master Report, ECF No. 891, at 5.

In its Position Statement provided to the Special Master on February 27, 2024, Nexus explained the arrangement with Subversivo:

> Libre by Nexus, Inc. and Nexus Services, Inc. no longer have direct relationships with payment processors or banks—this may

> be the result of ongoing litigation with various states and states'
> attorneys general, or criminal matters relating to a former
> principal of Nexus Services, Inc., or potentially the ongoing
> litigation against the Consumer Financial Protection Bureau.
> Regardless, they no longer bank and they could not and cannot
> remain a "going concern" absent an unique arrangement, thus
> the arrangement with Subversivo LLC ("Sub.").
>
> Nexus has subpoenaed Sub., is in the process of retaining local
> counsel to bring suit against Sub., and has previously demanded
> that Sub. honor its contractual obligations. Beyond this, it is
> unclear what other legal options are available to Nexus to gain
> control of the records at issue to then produce them to RLI.

Nexus's Position Statement to Special Master, ECF No. 891-4, at 5.

Subsequently, in its response to the Special Master Report, Nexus advised the court as follows:

> Nexus has previously explained that all incoming revenue is
> transferred to Subversivo, which pays operating expenses for
> Nexus and then utilizes the remaining funds to repay a substantial
> loan made by Subversivo to Libre by Nexus, Inc. In other words,
> all incoming revenue is transferred to Subversivo, which is
> contractually obligated to ensure that Nexus' payroll is paid, that
> vendors are paid, and the remaining income is utilized to satisfy
> Libre by Nexus' obligations to Subversivo.

Defs.' Br. on Special Master's Report and Propriety of Suggested Relief, ECF No. 917, at 4 n.4.

For its part, RLI characterizes Nexus's failed efforts to obtain its own records from Subversivo as "mere theatre," explaining,

> It is simply inconceivable that Nexus is operating as an ongoing
> business for nearly two years (since the services agreement was
> signed) and no one in the company knows what it is spending
> money on and that nowhere in its possession, custody, or control
> is a single third-party invoice, check, transfer, receipt or other
> document. The subpoena by Nexus is a deflection of its own

> responsibilities under the Court's orders and an attempt to distract
> from its own conduct.

RLI Position Statement to Special Master, ECF No. 891-3, at 5.

Indeed, the Administrative Services Agreement between Libre by Nexus, Inc. and Subversivo provides Nexus with the "absolute right to inspect, make copies of, or otherwise review the financial and program records of SubV[ersivo] in any manner suggested by Libre." ECF No. 870, at 393. Despite this contractual right and efforts reflected in email correspondence by counsel for Nexus to obtain access to its own documents in the possession of Subversivo, including by subpoena, see Exs. E and F to Nexus's Position Statement to Special Master, ECF No. 891-4, at 49–68, the record contains no reference to the production to RLI of any data from Subversivo regarding Nexus's current revenues and expenses.

The Special Master emphasized Nexus's transfer of all of its financial operations to the non-responsive Subversivo, making the following findings of facts and conclusions of law:

1.   The contractual arrangement between Nexus and Subversivo is little more than a badge of fraud. The contractual arrangement between Nexus and Subversivo is a fraudulent conveyance by a cynical debtor determined to conceal its assets and financial records from its creditor.

2.   Nexus's statements through counsel that the debtor is unable to retrieve data and documents from Subversivo are not credible.

3.   The Special Master process instituted by the Court in a well-meaning attempt to avoid placing Nexus in receivership no longer stands any reasonable prospect of success.

Special Master Report, ECF No. 891, at 5–6. The Special Master recommended that the court suspend or terminate the Special Master appointment and place Nexus in receivership under a

qualified forensic accountant. Id. at 6.  RLI agrees with the Special Master's recommendation to appoint a receiver for Nexus. RLI's Resp. to Special Master's Report, ECF No. 916.

Nexus, for its part, argues that a receiver ought not be appointed while traditional remedies remain available to RLI, including physical search of its files, depositions of Nexus officials, and more tailored document requests. Defs.' Br. on Special Master's Report and Propriety of Suggested Relief, ECF No. 917, at 7, 9–12.  While it is true that these methods may provide more insight to RLI as to its concerns about Nexus's historic transfer of real estate assets and payments to its officers, those means are unavailing to shed any light as to Nexus's financial position in the time since the Administrative Services Agreement was signed with Subversivo on April 15, 2022. See ECF No. 870, at 392.

In short, while RLI seeks to collect a judgment against Nexus first ordered by the court more than three years ago, Order, ECF No. 585 (Oct. 23, 2020), Nexus has shifted its revenue stream to Subversivo to pay Nexus's payroll and vendors, and to repay a $1 million Subversivo loan, to the detriment of RLI.  In light of this blatant diversion of Nexus's assets to make preferential payments to its vendors and lender, it is no wonder that the Special Master saw no option other than to recommend appointment of a receiver for Nexus.

## II.

A "district court has within its equity power the authority to appoint receivers and to administer receiverships." Gilchrist v. Gen. Elec. Capital Corp., 262 F.3d 295, 302 (4th Cir. 2001) (citing Fed. R. Civ. P. 66).  "The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993); accord 12 Charles A.

Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2983 (3d ed. 2023) ("Whether a federal court should appoint a receiver in a diversity action appears to be a question properly determined on the basis of federal law.").  "[T]he appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court." Hutchinson v. Fidelity Inv. Ass'n, 106 F.2d 431, 436 (4th Cir. 1939) (citing Pennsylvania v. Williams, 294 U.S. 176, 182 (1935)).

"The appointment of a receiver by a federal court may be sought by any person having an interest in property that a statute or one of the general principals of equity authorizes the court to protect by this remedy." Wilmington Tr., NA v. Homes4Families, LLC, No. DKC 19-1896, 2019 WL 5787985, *3 (D. Md. Nov. 6, 2019) (alterations omitted) (quoting Wright & Miller, § 2983).  "A receiver may be appointed to 'protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment.'" Aviation Supply, 999 F.2d at 317 (quoting Leone Indus. v. Associated Packaging, Inc., 795 F. Supp. 117, 120 (D.N.J. 1992), and citing Levin v. Garfinkle, 514 F. Supp. 1160, 1163 (E.D. Pa. 1981)).  "The appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect [the] plaintiff's interests in the property." Wright & Miller, § 2983; see also Aviation Supply, 999 F.2d at 316 (referring to a receiver as an "extraordinary equitable remedy that is only justified in extreme situations").  "[R]eceivership . . . should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid." Gordon v. Washington, 295 U.S. 30, 39 (1935).

"Neither the Supreme Court nor the Fourth Circuit has provided a concrete list of factors for courts to weigh in considering whether to appoint a receiver." LNV Corp. v.

Harrison Family Business, LLC, 132 F. Supp. 3d 683, 689 (D. Md. 2015) (citing Manuel v. Gembala, No. 7:10-cv-4-FL, 2010 WL 3840407, at *6 (E.D.N.C. Sept. 30, 2010)). In Aviation Supply, however, the Eighth Circuit considered in a diversity case whether to appoint a receiver on behalf of a judgment creditor and identified several factors as part of the calculus:

> [F]actors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.

999 F.2d at 316–17. Many courts have employed the same or similar formulation of factors, including several circuit courts of appeals. See Santibanez v. Wier McMahon & Co., 105 F.3d 234, 241–42 (5th Cir. 1997); Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009); Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc., 683 F.2d 25, 26–27 (1st Cir. 1982); KeyBank N.A. v. Fleetway Leasing Co., 781 F. App'x 119, 122 (3d Cir. 2019).

Leading commentators have described the test in similar terms.

> Factors that courts have considered relevant to establishing the requisite need for a receivership include the following: fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

Wright & Miller, § 2983.

> The appointment of a receiver is not an exact science. There are, however, certain factors the courts take into consideration when

determining if a receiver should be appointed. Generally, a court will consider:

- Whether the person seeking the appointment has a valid claim;
- Whether there is an immediate danger that the property will be harmed or lost;
- Whether legal remedies are adequate;
- Whether some less drastic equitable remedy is sufficient;
- Whether there is fraudulent conduct or the probability of fraudulent conduct on the part of the defendant;
- Whether it is probable that the appointment of the receiver will be more beneficial than harmful; and
- Whether those who seek protection actually will be in a better position by the appointment.

Beyond these general factors, the inquiry is situational and fact-specific.

13 Moore's Fed. Prac. – Civil § 66.04.

### III.

Applying the factors identified above, the court agrees with the Special Master that a receiver be appointed for the limited purpose of facilitating post-judgment discovery.  In the court's view, Nexus's years-long pattern of noncompliance and deception, evident most recently in the Subversivo shell game, leaves it no choice but to appoint a limited receiver.  In so doing, the court appreciates that "[a]ppointing a receiver is an extraordinary remedy, but this is an extraordinary situation." United States v. Latney's Funeral Home, Inc., 41 F. Supp. 3d 24, 38 (D.D.C. 2014) (quoting SEC v. Universal Express, Inc., No. 04 CIV. 2322, 2007 WL 2469452, at *12 (S.D.N.Y. Aug. 31, 2007)).

The Aviation Supply case bears comparison.  There, the judgment debtor, Ross Barber, refused to respond to post-judgment discovery, invoking the privilege against

self-incrimination. <u>Aviation Supply</u>, 999 F.2d at 316.  To resolve the ensuing motion to compel, Barber's counsel "offered to produce Barber's November 30, 1991, financial statement, representing that Barber's financial condition had not substantially changed since that time." <u>Id.</u>  Later, Barber's counsel reported that the financial statement did not reflect major asset transfers, and Aviation Supply moved for appointment of a receiver. <u>Id.</u>  The district court entered a temporary restraining order prohibiting Barber from transferring his assets and appointed a receiver to take possession of Barber's property, convert it into money, and deposit all funds into a trust account. <u>Id.</u>  Affirming the district court's decision to appoint a receiver, the Eighth Circuit concluded: "Faced with this pattern of willful nondisclosure and false disclosure, followed by transfer to avoid a tenacious judgment creditor, the district court was well within its discretion in turning to a drastic remedy such as a receiver." <u>Id.</u> at 317.

Although there are certain factual differences between Barber's conduct in <u>Aviation Supply</u> and Nexus's discovery failures here, the Special Master found that "[t]he contractual arrangement between Nexus and Subversivo is little more than a badge of fraud." Special Master Report, ECF No. 891, at 5.  While Nexus excuses its transfer of all of its financial operations to Subversivo because of an inability to maintain banking or credit relationships, that does not explain why no records have been provided to RLI as to Nexus's financial operations handled by Subversivo during the two-year existence of their contractual arrangement.  While Nexus claims to have demanded on its own that Subversivo provide documents as to its financial management of Nexus's affairs both under its contractual rights and by subpoena, the record is devoid of any suggestion that Subversivo has produced anything.  Under such circumstances, RLI's characterization of these efforts as "mere theatre," ECF No. 891-3, at 5, rings true.  While Nexus

may be reluctant to do so, a receiver will be authorized to bring suit on its behalf against Subversivo to gain access to records relating to Nexus's financial operations as administered by Subversivo.   Accordingly, Nexus's historic failures demonstrate that nothing short of the appointment of a receiver will provide RLI with information regarding Nexus's current financial picture.

Moreover, not only has the Subversivo charade prevented RLI from obtaining an idea of Nexus's revenues and expenses, it has also served to shield Nexus from any efforts to collect on its judgment out of ongoing operations.   For example, in its response to RLI's efforts to garnish Subversivo, David See, responding under oath for Subversivo, confirmed that the Subversivo scheme left nothing for Nexus's judgment creditors such as RLI.

> Garnishee, pursuant to various contracts, receives various payments from Libre by Nexus, Inc., clients, which are paid directly to Subversivo, LLC, pursuant to contract. Those funds are utilized to pay various expenses under an administrative services agreement and loan repayment agreement, with the remainder retained by Subversivo, LLC, to repay a substantial loan, as well as the interest on that loan.

Subversivo LLC's Answer to Writ of Garnishment, ECF No. 903, at 1. In other words, Subversivo collects Nexus's revenue, pays Nexus's bills, and keeps the rest for itself to repay a loan made to Nexus.   This arrangement leaves no room for judgment creditors such as RLI. Whatever revenues are due Nexus, Subversivo diverts them to others and itself, diminishing on an ongoing basis any revenue that RLI could otherwise access.

The court also notes that it has put off appointing a receiver as long as possible.   For over three years, RLI has sought without success to obtain straightforward information regarding Nexus's assets, including real estate, transfers to its principals, and its revenues and expenses.

Time and again, the court has imposed incremental remedies to facilitate discovery, and time and again, Nexus has dissembled. Daily fines, evidentiary sanctions, and an award of attorneys' fees have not proven successful. While the prospect of civil confinement of Nexus's officers Micheal Donovan and Evan Ajin spurred Nexus to finally provide sworn answers to interrogatories, the information provided falls short of what was ordered due to the Subversivo smokescreen.

Accordingly, efforts short of appointing a receiver have failed, and there is no likelihood that judgment creditor RLI will have any prospect of making any meaningful recovery without appointment of a receiver. Plainly, the probability of harm to RLI by denying appointment of a receiver far outweighs any speculative injury to Nexus.

As discussed above, Nexus argues that the appointment of a receiver is not necessary because RLI has other avenues available to it to obtain the requested discovery, such as physical inspection of Nexus's offices and files, depositions of its principals, and a subpoena to Subversivo. These remedies have no prospect of success. Notably, the obvious problem with Nexus's argument is that Nexus has already been **ORDERED** "to provide sworn and complete answers to RLI's post-judgment interrogatories and produce the documents requested by RLI in its request for production of documents and subpoenas," Order, ECF No. 848, at 1–2, and "provide good faith and **exhaustively complete** discovery responses," Order, ECF No. 874, at 16 (emphasis added).

To be clear, Nexus was **ORDERED** on October 27, 2023, to supplement its interrogatory answers to provide, inter alia, "a **complete accounting of loans, transfers, and payments**, of any kind or nature, to Moore, Donovan, and Ajin (Interrog. Nos. 3 and 4); a

**full summary of real estate and other assets** owned or leased by Nexus or the Entities on or after October 23, 2020 (Interrog. No. 8); a **fulsome history of the transfer of any of [the] assets** owned or leased by Nexus or the Entities since October 23, 2020 (Interrog. No. 8); **all accounts, systems, platforms, and mechanisms used by Nexus to process revenue payments** (Interrog. No. 15); [and] **a complete picture of loans and credit arrangement[s]** involving Nexus or the Entities (Interrog. Nos. 13 and 14)." Id. at 15 (emphasis added).

In contrast to what was **ORDERED**, Nexus's responses have been anything but fulsome and complete, and consist largely of bare bones lists and excuses.  It is difficult to see how, given the scant nature of the information provided about Nexus's assets, real estate and payments to its principals, see Defs.' Suppl. Answers to Interrogs., ECF Nos. 891-4, at 38–46, 891-3, at 19–46, 917-2, and 917-3, a deposition on those topics could be fruitful.  Likewise, a deposition or opportunity to rummage through Nexus's Virginia files would provide RLI with no information as to Nexus's current financial position, as it has over the past two years outsourced its financial operations to Subversivo, a Delaware LLC based in Texas, which Nexus claims is unwilling to respond to requests or a subpoena for information about its own operations.  Accordingly, the court concludes that the legal remedies suggested by Nexus are inadequate given the Subversivo scheme.  Under these circumstances, RLI's observation that Nexus's claims that it cannot access data about its own financial operations by request or subpoena is a "game . . . [that] has been going on for nearly a year," RLI Position Statement, ECF No. 891-3, at 4, is apt.  It is time for the game to end.

In United States v. Bartle, 159 F. App'x 723 (5th Cir. 2005), the Fifth Circuit evaluated the district court's appointment of a receiver to oversee payment of delinquent taxes.  The

Fifth Circuit's description of Bartle's tactics is all too familiar: "Despite promises to pay and extensive judicial supervision, Bartle has evaded collection of this debt for many years by engaging in what the district court characterized as a 'shell game.' To curtail Bartle's evasive tactics and to impose order upon his purposeful financial 'chaos,' the district court appointed a receiver." Id. at *1. The Fifth Circuit affirmed the district court's appointment, concluding as follows:

> In this case, the district court policed Bartle's shenanigans over several years, listened to his excuses, and ultimately determined that Bartle was untrustworthy and intentionally avoiding the government's collection of its judgment. With ample evidence in the record to support the district court's decision, we conclude that the district court did not abuse its discretion when it appointed a receiver for Bartle.

Id. at *2. The same rationale applies in this case, and the court will appoint a forensic accountant as receiver for Nexus.

An appropriate Order will be entered.

Entered: May 16, 2024

Michael F. Urbanski
Chief United States District Judge

16